Douglas A. Winthrop (No. 183532)
douglas.winthrop@arnoldporter.com
Jeremy T. Kamras (No. 237377)
jeremy.kamras@arnoldporter.com
Joseph Farris (No. 263405)
joseph.farris@arnoldporter.com
Tommy Huynh (No. 306222)
tommy.huynh@arnoldporter.com
Mark E. Raftrey (No. 352610)
mark.raftrey@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: 415-471-3100
Facsimile: 415-471-3400

*Counsel for Defendant*
*Adobe Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| STEPHANIE WOHLFIEL and VIANCA MARQUEZ, | Case No. 5:25-cv-6562-NC |
| *Plaintiffs*, | **DEFENDANT ADOBE INC.'S MOTION TO DISMISS AND MOTION TO STRIKE** |
| v. | Assigned to: Hon. Nathanael M. Cousins |
| ADOBE INC., | Date: Nov. 12, 2025 |
| *Defendant*. | Time: 11:00 a.m. |
|  | Place: Courtroom 5, 4th Floor |

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................... 2

    A.    Adobe's Services And Its Subscription Model ........................................ 2

    B.    Adobe's Terms Of Use ............................................................................. 3

    C.    Plaintiffs' Complaint ................................................................................ 5

III.   STATEMENT OF ISSUES TO BE DECIDED ................................................... 6

IV.  LEGAL STANDARDS ........................................................................................ 6

V.    ARGUMENT ........................................................................................................ 7

    A.    Plaintiffs Agreed To Adobe's Terms Of Use .......................................... 7

    B.    Plaintiffs Failed To Fulfill The Conditions Precedent To Filing Suit Set Forth In the TOU's Dispute Resolution Provisions ................................. 10

    C.    Plaintiffs' Claims Fail As A Matter Of Law .......................................... 11

        1.    Plaintiffs' Claims Are Barred By The 1-Year Contractual Limitations Period ....................................................................... 12

        2.    Plaintiffs Fail To Allege Reliance On Fraudulent Statements Sufficiently ................................................................................... 13

        3.    Plaintiffs' Claims Alleging That The "Annual, Billed Monthly" Plan Is Misleading Fail To State A Claim As A Matter Of Law ................. 15

        4.    Plaintiffs Fail To Allege That They Renewed Their Subscriptions Such That They May Contest Compliance With CARL Or Allege Harm From Renewal ...................................................................... 17

        5.    Plaintiffs Do Not Allege They Are Consumers As Required Under The CLRA ................................................................................... 19

        6.    Plaintiffs Fail To Allege Any Entitlement To Injunctive And Other Equitable Relief ........................................................................... 20

    D.    Plaintiffs Cannot Pursue Class Claims Because The TOU Includes An Enforceable Class Waiver .................................................................... 21

VI.  CONCLUSION .................................................................................................. 22

- i -

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE
MEMORANDUM OF POINTS AND AUTHORITIES**
Case No. 5:25-cv-6562

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

### <u>Cases</u>

4

5

*Archer v. Carnival Corp.*,
No. 20-cv-04203-RGK-SK, 2020 WL 6260003 (C.D. Cal. Oct. 20, 2020) ..........................21

6

7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................................7

8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................................7

9

10

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ..................................................................................................8

11

12

*Brosnan v. Dry Cleaning Station Inc.*,
No. C-08-02028 EDL, 2008 WL 2388392 (N.D. Cal. June 6, 2008) ....................................10

13

*Burgos v. Citibank*,
745 F. Supp. 3d 959 (N.D. Cal. 2024) .................................................................................21

14

15

*Castillo v. Cava Mezze Grill, LLC*,
No. CV 18-7994-MWF, 2018 WL 7501263 (C.D. Cal. Dec. 21, 2018) ...............................21

16

17

*Charbonnet v. Omni Hotels & Resorts*,
No. 20-cv-01777-CAB-DEB, 2020 WL 7385828 (S.D. Cal. Dec. 16, 2020) ........................15

18

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ...............................................................................................20

19

20

*Dohrmann v. Intuit*,
823 F. App'x 482 (9th Cir. 2020) ...........................................................................................9

21

*Ellis v. U.S. Sec. Assocs.*,
224 Cal. App. 4th 1213 (2014) ............................................................................................12

22

23

*Han v. Mobil Oil Corp.*,
73 F.3d 872 (9th Cir. 1995) .................................................................................................12

24

25

*Herskowitz v. Apple Inc.*,
940 F. Supp. 2d 1131 (N.D. Cal. 2013) .................................................................................7

26

*In re Arris Cable Modem Consumer Litig.*,
No. 17-CV-01834-LHK, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ...............................14, 15

27

28

- ii -

*In re Google Assistant Priv. Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020) ..................................................................8

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
   298 F. Supp. 3d 1285 (N.D. Cal. 2018) .............................................................21

*Jeong v. Nexo Cap. Inc.*,
   No. 21-cv-02392-BLF, 2022 WL 3590329 (N.D. Cal. Aug. 22, 2022) ...........7, 21

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .............................................................................13

*Keebaugh v. Warner Bros. Ent. Inc.*,
   100 F.4th 1005 (9th Cir. 2024) ..............................................................................9

*Lacour v. Marshalls of CA, LLC*,
   No. 20-cv-07641-WHO, 2021 WL 1700204 (N.D. Cal. Apr. 29, 2021) ...............7

*Lee v. Ticketmaster L.L.C.*,
   817 F. App'x 393 (9th Cir. 2020) ...........................................................................9

*Lipeles v. United Airlines*,
   No. CV 23-7143-KK-MAAx, 2024 WL 891792 (C.D. Cal. Jan. 9, 2024).......10, 11

*Martinez v. Newsom*,
   46 F.4th 965 (9th Cir. 2022) .................................................................................18

*Meza v. Coty, Inc.*,
   No. 22-cv-05291-NC, 2023 WL 3082346 (N.D. Cal. Apr. 24, 2023) ..................20

*Murphy v. DirecTV, Inc.*,
   724 F.3d 2018 (9th Cir. 2013) .............................................................................21

*Opperman v. Path, Inc.*,
   84 F. Supp. 3d 962 (N.D. Cal. 2015) ....................................................................8

*Order of United Com. Travelers v. Wolfe*,
   331 U.S. 586 (1947).............................................................................................12

*Pampena v. Musk*,
   705 F. Supp. 3d 1018 (N.D. Cal. 2023) ................................................................8

*Person v. Google, Inc.*,
   No. C 06–7297 JF (RS), 2007 WL 832941 (N.D. Cal. Mar. 16, 2007)................19

*Phillips v. Apple Inc.*,
   No. 15-CV-04879-LHK, 2016 WL 1579693 (N.D. Cal. Apr. 19, 2016) ........14, 15

*Roffman v. Perfect Bar, LLC*,
  No. 22-cv-02479-JSC, 2022 WL 4021714 (N.D. Cal. Sept. 2, 2022) ...................................14

*Rojas-Lozano v. Google, Inc.*,
  159 F. Supp. 3d 1101 (N.D. Cal. 2016) ..................................................................................14

*Rose v. Bank of Am., N.A.*,
  57 Cal. 4th 390 (2013) ...........................................................................................................20

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) .....................................................................................7

*Singh v. Adobe Inc.*,
  No. 3:24-cv-03980-JSC (N.D. Cal. Mar. 12, 2025) (Dkt. 36) ................................................18

*Soltani v. W. & S. Life Ins. Co.*,
  258 F.3d 1038 (9th Cir. 2001) ................................................................................................12

*Song Fi, Inc. v. Google, Inc.*,
  No. C 14-5080 CW, 2016 WL 1298999 (N.D. Cal. Apr. 4, 2016) .........................................19

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ..................................................................................................20

*Suchite v. ABM Aviation, Inc.*,
  741 F. Supp. 3d 878 (S.D. Cal. 2024) .....................................................................................21

*Ting v. AT & T*,
  182 F. Supp. 2d 902 (N.D. Cal. 2002), *aff'd in part, rev'd in part sub nom. Ting v. AT&T*,
  319 F.3d 1126 (9th Cir. 2003) ................................................................................................13

*Tompkins v. 23andMe, Inc.*,
  840 F.3d 1016 (9th Cir. 2016) ................................................................................................12

*Torres v. Veros Credit LLC*,
  No. 8:23-CV-00688-DOC-DFM, 2023 WL 5505887 (C.D. Cal. July 13, 2023) ...................21

*United States v. Adobe, Inc.*,
  No. 24-cv-03630-NW, 2025 WL 1303419 (N.D. Cal. May 2, 2025) ......................................16

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ................................................................................................14

*Watkins v. MGA Ent., Inc.*,
  550 F. Supp. 3d 815 (N.D. Cal. 2021) ....................................................................................20

*Weizman v. Talkspace, Inc.*,
  705 F. Supp. 3d 984 (N.D. Cal. 2023) .....................................................................................7

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 5:25-cv-6562

*Yuksel v. Twitter, Inc.*,
    No. 22-cv-05415-TSH, 2022 WL 16748612 (N.D. Cal. Nov. 7, 2022) ....................................8

**<u>Statutes</u>**

California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*................. *passim*

California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*................... *passim*

California's Automatic Renewal Law, Cal. Bus. & Prof. Code § 17600, *et seq.* ............... *passim*

Cal. Civ. Code § 1750, *et seq.*................................................................................................. *passim*

**<u>Other Authorities</u>**

Fed. R. Civ. P. 9(b) ................................................................................................................13, 14

Fed. R. Civ. P. 12(b)(1) ........................................................................................................ *passim*

Fed R. Civ. P. 12(b)(6) ....................................................................................................7, 10, 11

Fed. R. Civ. P. 12(f) ................................................................................................................7, 21

- v -

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE
MEMORANDUM OF POINTS AND AUTHORITIES**
Case No. 5:25-cv-6562

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 12, 2025, at 11:00 a.m., or as soon thereafter as available, in the courtroom of the Honorable Nathanael M. Cousins, located at 280 South 1st Street, San Jose, California 95113, Defendant Adobe Inc. ("Adobe") will and hereby does move the Court for an order dismissing all of Plaintiffs' claims or, at a minimum, striking the class allegations.

Specifically, Adobe moves to dismiss all claims under Federal Rule of Civil Procedure 12(b)(1) and/or 12(b)(6) because: (1) Plaintiffs failed to comply with the contractual pre-litigation dispute resolution requirements; and (2) the claims are otherwise deficient, including because all of the claims are barred by the contractual limitations period, Plaintiffs do not sufficiently allege reliance under the heighted pleading standard for claims sounding in fraud, certain of the statements alleged to be misleading already have been held otherwise as a matter of law, certain of the claims are predicated on allegations regarding subscription renewals that never occurred, Plaintiffs fail to allege they are consumers under the California Legal Remedies Act, and Plaintiffs fail to allege that they are entitled to pursue injunctive and other equitable relief.

Finally, Adobe moves under Rule 12(f) to strike all class claims (or alternatively moves to dismiss them under Rule 12(b)(1) and/or 12(b)(6)) because Plaintiffs expressly agreed not to bring any class claims against Adobe.

This Motion is based on the Complaint; this Notice of Motion; Adobe's Memorandum of Points and Authorities; the concurrently filed Declaration of Arshiya Naseer, and any exhibits attached thereto; the papers on file; any Reply which Adobe may file in support of this Motion; and any evidence and argument presented to the Court.

Dated:  October 6, 2025                    ARNOLD & PORTER KAYE SCHOLER LLP

By:  _/s/ Jeremy T. Kamras_____

Douglas A. Winthrop

- vi -

Jeremy T. Kamras
Joseph Farris
Tommy Huynh
Mark E. Raftrey

*Counsel for Defendant Adobe Inc.*

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**I.    INTRODUCTION**

3      Adobe makes its popular creative tools available online through customer-friendly

4  subscription practices.  Adobe clearly and conspicuously discloses the Terms of Use that govern the

5  contractual subscription agreement with each consumer during the enrollment process before and

6  after checkout, including providing numerous disclosures about the Early Termination Fee ("ETF")

7  associated with its "Annual, Billed Monthly" plans.  As its name makes clear, the "Annual, Billed

8  Monthly" plan is an annual subscription that offers customers the convenience of paying on a

9  monthly basis, instead of requiring an up-front payment for the full year (which is another option

10 Adobe provides to customers via its "Annual, Prepaid" subscription plans).  Adobe also offers

11 several easy-to-use cancellation options.  Despite Adobe's clear disclosures and customer-friendly

12 enrollment and cancellation processes, in the Complaint, Plaintiffs allege that they purchased

13 "Annual, Billed Monthly" subscriptions to Adobe products while "unaware" that they had expressly

14 agreed to an annual commitment and to pay an ETF should they desire to cancel before the end of

15 the annual term.  Complaint ("Compl.") ¶¶ 93-94, 101-102.  Plaintiffs appear to assert that their lack

16 of awareness of the annual term and/or other practices related to the enrollment and cancellation

17 processes give rise to various causes of action.  For multiple reasons, the Court should dismiss the

18 Complaint and/or strike the class claims.

19      <u>First</u>, as a threshold matter, Plaintiffs lack standing because they did not comply with the

20 contractual pre-litigation dispute resolution requirements that are a condition precedent to their

21 ability to bring claims against Adobe in any forum.  Specifically, Plaintiffs agreed to take several

22 steps before resorting to litigation: contacting Adobe Customer Care, providing a detailed and

23 individualized Notice of Claim to enable Adobe to evaluate and address each claim, trying to resolve

24 the dispute informally with Adobe, and then waiting a specified period before resorting to legal

25 action, typically in small claims court or arbitration.  These requirements are not a mere formality;

26 they are a contractually-binding promise that the parties would communicate and attempt in good

27 faith to seek an efficient resolution *before* resorting to litigation.  But it is indisputable that Plaintiffs

28

fail to allege that they complied with these contractual conditions (and indeed, they did not comply with them). Therefore, the Complaint must be dismissed.

Second, even putting aside Plaintiffs' failure to comply with the contractual pre-litigation requirements, Plaintiffs fail to state a claim for multiple reasons. Foremost among them is that these claims are facially barred by the contractually-agreed limitations period. According to Plaintiffs' own allegations, the latest event giving rise to a claim by either Plaintiff was in January 2024. However, the parties agreed to a one-year limitations period—meaning that these claims were all untimely when this case was filed in August 2025. Plaintiffs also fail to state a claim and/or the Court lacks subject matter jurisdiction for other reasons: (i) Plaintiffs fall woefully short of sufficiently alleging reliance with specificity under the heightened pleading standard for claims sounding in fraud; (ii) their allegations that Adobe's disclosure regarding the "annual" nature of the "Annual, Billed Monthly" plan was misleading were recently rejected as a matter of law in another case in this District involving Adobe; (iii) their theories based on California's Automatic Renewal Law or other legal theories about automatic renewal fail as a matter of law because their subscriptions were not renewed (consistent with the holding in a different recent case in this District involving Adobe); (iv) they fail to allege that they are "consumers" who have standing under California's Consumers Legal Remedies Act; and (v) they fail to allege the remedies available to them at law are inadequate or that they may suffer future harm, such that they may pursue injunctive or other equitable relief.

Third, Plaintiffs also agreed to class action waiver. Therefore, at a minimum, even if the Complaint is not dismissed, the Court must strike or dismiss the class allegations based on a straightforward reading of the Terms of Use and well-established precedent.

## II.     BACKGROUND

### A.     Adobe's Services And Its Subscription Model

Adobe provides services that power creative expression, such as applications like Acrobat and Lightroom, which the Plaintiffs allege they purchased via subscriptions. Compl. ¶¶ 93, 101. Adobe offers a flexible subscription model that caters to a variety of customer preferences.

Customers can opt for monthly or yearly subscriptions, and pay all-at-once, or as-they-go. Specifically, these plans are as follows:

- Monthly: The "Monthly" plan is a month-to-month contract, billed monthly, which customers can cancel any time, for no fee.

- Annual, Prepaid: The "Annual, Prepaid" plan is an annual contract, billed up front, which provides a discount on the average monthly cost compared to the "Monthly" plan.

- Annual, Billed Monthly: Adobe's third option, "Annual, Billed Monthly," is a hybrid:  it is an annual contract that allows customers to pay in monthly installments, and which provides nearly the same discount as the "Annual, Prepaid" plan.  Though customers commit for one year, they can still cancel their subscription during the first year by paying a cancellation fee of half of the remaining monthly installments.  After the first year, customers can cancel the "Annual, Billed Monthly" plan at any time without paying a fee, while retaining the discounted monthly price.

Customers can cancel their subscriptions online in around a minute, can contact live representatives on the phone to cancel, or can use web chat to cancel.  Adobe's customer base has rapidly expanded in recent years because of—not in spite of —the customer-friendly subscription options it provides.

## B.    Adobe's Terms Of Use

Customers must agree to Adobe's Terms of Use ("TOU") when they sign up for Adobe's services.  Declaration of Arshiya Naseer in Support of Adobe's Motion to Dismiss and Motion to Strike ("Naseer Decl.") ¶ 4.  Plaintiff Wohlfiel alleges that she purchased the subscriptions at issue "[b]etween July 2023-September 2023" (Compl. ¶ 93), and Plaintiff Marquez alleges that she purchased the subscription at issue "[i]n or around mid-June 2023" (*id.* ¶ 101).  As alleged in the Complaint, a hyperlink to the TOU was presented on the "final checkout page" when they made their purchases, below which they were asked to "Agree and subscribe."  *Id.* ¶ 59.  The relevant

portions of the "final checkout page" at the times of their purchases in 2023 were substantially

identical to those depicted in "Example D" in the Complaint. *Id.*; Naseer Decl. ¶ 12. Plaintiffs

allege multiple times that customers are aware they are entering an agreement when they

subscribe. Compl. ¶ 31 (to get a free trial, customers "must enter their payment information and

agree to automatic enrollment"); ¶ 38 (similar); ¶ 63 (alleging that consumers believe they are

entering a "flexible monthly agreement").

The same TOU were in effect at the time both Plaintiffs subscribed. Naseer Decl. ¶¶ 6-8.

A copy of that version of Adobe's TOU is provided as **Exhibit A** to the concurrently filed Naseer

Declaration. That version of the TOU includes, as relevant to this Motion: (1) an agreement to

comply with a dispute resolution process before resorting to legal action, (2) a one-year

contractual limitations provision, and (3) a class action waiver.

**Dispute Resolution Provision.** Section 14.1 of the TOU is titled "Notice of Claim and

Required Information Dispute Resolution Process," and states (Naseer Decl. ¶ 6 & Ex. A at §

14.1):

> If you have any concern or dispute that Adobe Customer Care is unable
> to resolve ("Claim"), you agree to first try to resolve the dispute
> informally and in good faith by contacting us and providing a written
> Notice of Claim to the address provided in section 18.2 (Notice to
> Adobe). The Notice of Claim must provide Adobe with fair notice of
> your identity, a description of the nature and basis of your Claim, and
> the relief you are seeking, including the specific amount of any
> monetary relief you are seeking, and cannot be combined with a Notice
> of Claim for other individuals…. Neither party shall initiate legal action
> until 60 days after the Notice of Claim is received.

**Contractual Limitations Period.** Section 14.1 of the TOU states (*id.*):

> Claims related to the Terms, Services, or Software are permanently
> barred if not brought within one year of the event resulting in the Claim.

**Class Action Waiver.** Section 14.2 of the TOU is titled "No Class Actions," and states

(Naseer Decl. ¶ 7 & Ex. A at § 14.2):

> You may only resolve disputes with us on an individual basis, and you
> may not bring a claim as a plaintiff or a class member in a class,
> consolidated, or representative action. Nonetheless, if any portion of this
> class action waiver is deemed unenforceable or invalid as to a particular
> remedy, then that remedy (and only that remedy) must be severed from

- 4 -

1
2

> the arbitration and may be sought in court. The parties agree, however, that any adjudication of remedies not subject to arbitration shall be stayed pending the outcome of any arbitrable claims and remedies.

3   These particular terms have remained exactly the same in subsequent versions of the TOU

4   except that, in the dispute resolution provision, the 60-day period was shortened to a 30-day

5   period.  Naseer Decl. ¶¶ 6-8.

6   **C.    Plaintiffs' Complaint**

7   This is a putative class action that generally appears to allege that Adobe's subscription

8   enrollment process does not clearly and conspicuously disclose the material terms of its "Annual,

9   Billed Monthly" ("ABM") subscription option and that the cancellation process is difficult.

10   Compl. ¶¶ 39-82.  Plaintiffs make numerous allegations about the allegedly deceptive nature of

11   the enrollment process, including that "Adobe's enrollment process fails to clearly and

12   conspicuously disclose and intentionally obscures material terms of the ABM plan, including but

13   not limited to that the subscription is a one-year commitment and not a monthly plan, the

14   existence of an early termination fee, the relationship of the early termination fee to the one-year

15   contract, and the amount of the early termination fee." *Id.* ¶ 39.  Regarding the cancellation

16   process, Plaintiffs allege, among other things, that "consumers often learn about the early

17   termination fee for the first time" when they seek to cancel and that "Adobe fails to provide

18   simple, accessible ways to cancel, and instead purposefully designed its cancellation process to be

19   confusing and frustrating." *Id.* ¶¶ 73, 77.

20   Plaintiffs assert six Counts: (I) violation of California's Unfair Competition Law ("UCL"),

21   Cal. Bus. & Prof. Code § 17200, *et seq.*, including as a result of allegedly violating California's

22   Automatic Renewal Law ("CARL"), Cal. Bus. & Prof. Code § 17600, *et seq.*; (II) Conversion;

23   (III) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et*

24   *seq.*; (IV) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code

25   § 1750, *et seq.*; (V) Unjust Enrichment/Restitution; and (VI) Negligent Misrepresentation.

26   Plaintiffs seek damages under Counts I, II, III, IV, and VI, injunctive relief under Counts I,

27   III, and IV, and restitution or disgorgement under Counts I, III, IV, V and VI.

28

- 5 -

### III.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether Plaintiffs' claims should be dismissed because they failed to comply with the contractual pre-litigation dispute resolution requirements in the TOU.

2.    Whether Plaintiffs' claims should be dismissed because they were asserted after the contractual limitations period had run.

3.    Whether Plaintiffs' claims should be dismissed because they do not sufficiently allege reliance under the heightened pleading standard for claims sounding in fraud.

4.    Whether Plaintiffs' claims should be dismissed because they allege that the "Annual, Billed Monthly" plan did not clearly disclose the annual commitment and monthly payments during such commitment.

5.    Whether Plaintiffs' claims should be dismissed to the extent they are predicated on violations of CARL, or similarly contest renewal features, because their subscriptions were never renewed.

6.    Whether Plaintiffs' claims under the CLRA should be dismissed because they do not allege that they are "consumers."

7.    Whether Plaintiffs' claims for injunctive and other equitable relief should be dismissed because they have not alleged the remedies available to them at law are inadequate or that they may suffer future harm.

8.    Whether Plaintiffs' class claims should be struck and/or dismissed because Plaintiffs expressly agreed to bring any claims only as individual claims and to waive any right to bring a class action by agreeing to Adobe's TOU.

### IV.    LEGAL STANDARDS

"A Rule 12(b)(1) motion to dismiss tests whether a complaint alleges grounds for federal subject matter jurisdiction. A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction…. Once a party has moved to dismiss for lack of subject matter jurisdiction under

1   Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction."

2   *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1138 (N.D. Cal. 2013).

3          To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient

4   factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has

5   facial plausibility when the plaintiff pleads factual content that allows the court to draw the

6   reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

7   556 U.S. 662, 678 (2009).  A plaintiff must provide "more than labels and conclusions, and a

8   formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*,

9   550 U.S. 544, 555 (2007).

10         Under Rule 12(f), a court may "strike from a pleading an insufficient defense or any

11  redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Motions to

12  strike are appropriate where "the complaint demonstrates that a class action cannot be maintained"

13  and "that under no set of circumstances could the claim or defense succeed." *Sanders v. Apple*

14  *Inc.*, 672 F. Supp. 2d 978, 989-90 (N.D. Cal. 2009).  This includes when claims are foreclosed by

15  a class action waiver.  *See Jeong v. Nexo Cap. Inc.*, No. 21-cv-02392-BLF, 2022 WL 3590329, at

16  *16 (N.D. Cal. Aug. 22, 2022); *Lacour v. Marshalls of CA, LLC*, No. 20-cv-07641-WHO, 2021

17  WL 1700204, at *6-7 (N.D. Cal. Apr. 29, 2021).  "Ultimately, 'whether to grant a motion to strike

18  lies within the sound discretion of the district court.'"  *Weizman v. Talkspace, Inc.*, 705 F. Supp.

19  3d 984, 988 (N.D. Cal. 2023) (citation omitted).

20  **V.    ARGUMENT**

21       **A.    Plaintiffs Agreed To Adobe's Terms Of Use**

22          Customers must agree to Adobe's TOU before they can enroll in an Adobe subscription, as

23  the two named Plaintiffs here did.  Naseer Decl. ¶ 12.  That agreement requires this Court to

24  dismiss the Complaint for multiple reasons.  And there is no doubt that these Plaintiffs did assent

25  to the TOU based on their own allegations, which make clear that they knew they were entering an

26  agreement with Adobe when they signed up.  *See, e.g.*, Compl. ¶¶ 31, 38, 63.

27

28

- 7 -

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE
MEMORANDUM OF POINTS AND AUTHORITIES**
Case No. 5:25-cv-6562

1      "To form a contract under . . . California law, the parties must manifest their mutual assent

2   to the terms of the agreement." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th

3   Cir. 2022). "These elemental principles of contract formation apply with equal force to contracts

4   formed online. Thus, if a website offers contractual terms to those who use the site, and a user

5   engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be

6   formed." *Id.* at 855-56.

7      The Court may properly consider the TOU here as incorporated by reference in the

8   Complaint.[1] Documents are considered incorporated by reference where they "are either

9   referenced extensively in Plaintiffs' complaint or form the basis of their claims." *See In re Google*

10  *Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 813-14 (N.D. Cal. 2020) (finding that Google's Terms

11  of Service were incorporated by reference into complaint in consumer lawsuit against Google);

12  *Pampena v. Musk*, 705 F. Supp. 3d 1018, 1039 (N.D. Cal. 2023) (finding that merger agreement,

13  SEC filing, and social media posts were incorporated by reference into complaint). The TOU are

14  properly considered incorporated by reference for both reasons here. Plaintiffs extensively

15  reference the "terms of subscriptions," such as "cancellation policies." *E.g.*, Compl. ¶¶ 1, 2, 19,

16  21, 22, 55, 64-82, 131, 141, 153, 155, 162, 167. For example, in Count I, Plaintiffs allege that

17  they "would not have purchased the subscription or they would have cancelled their subscriptions

18  earlier had the terms associated with the subscription, including the early termination fee, been

19  clearly disclosed." *Id.* ¶ 131. In Count III, Plaintiffs allege that Adobe "fail[ed] to disclose the

20  cancellation policy and process for its subscription, misleading consumers about their ability to

21  stop charges." *Id.* ¶ 141(e). The cancellation terms and policies, including with regard to the

---

22  [1] Alternatively, Adobe requests that the Court take judicial notice of the TOU in effect during the
23  time period relevant to the allegations in the Complaint, as they are facts "not subject to
    reasonable dispute," and are publicly available on the "Wayback Machine" from Internet Archive
24  at https://web.archive.org/web/20240201080402/https://www.adobe.com/legal/terms.html.
    *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 976 (N.D. Cal. 2015) ("The Court will take judicial
25  notice of the Software License Agreements . . . as they are publicly available, standard documents
    that are capable of ready and accurate determination, and they are relevant to Plaintiffs' UCL and
26  FAL claims."); *Yuksel v. Twitter, Inc.*, No. 22-cv-05415-TSH, 2022 WL 16748612, at *3 (N.D.
    Cal. Nov. 7, 2022) ("[C]ourts in the Ninth Circuit routinely take judicial notice of terms of
27  services," and the fact that they are "archived webpages obtained from the Internet Archive's
    Wayback Machine does not change the analysis.").

28                                          - 8 -

1    ETF, are set forth in part in Adobe's TOU.  *See* Naseer Decl., Ex. A § 11.1 ("You may cancel

2    your subscription and terminate your use of the Services and Software at any time.  Cancellation

3    or termination of your account does not relieve you of any obligation to pay any outstanding fees

4    associated with your subscription, including, but not limited to early cancellation fees.").  Based

5    on Plaintiffs' extensive references to and reliance on the contents of the TOU, the Court should

6    conclude that the TOU have been incorporated by reference into the Complaint.

7         Further, the TOU are conspicuously presented during the enrollment process, as evident in

8    the images of Adobe's enrollment process included in the Complaint.  *See* Compl. ¶ 59 &

9    Example D; *see also* Naseer Decl. ¶¶ 13-14.  As shown in "Example D" in the Complaint, Adobe

10   informs customers about the TOU in a disclosure above the button by which customers are asked

11   to "Agree and subscribe."  That disclosure provides in relevant part:  "By clicking 'Agree and

12   subscribe,' . . . [y]ou also agree to the Terms of Use and the Subscription and Cancellation

13   Terms."  *Id*.  The text is bolded and the phrase "Terms of Use" in particular is distinguished in

14   blue text, and provides a link to the TOU.  *Id*.

15        The Ninth Circuit has routinely held that such disclosures sufficiently "put[] the reasonable

16   user on notice that they are agreeing to be bound by the [t]erms."  *Keebaugh v. Warner Bros. Ent.*

17   *Inc.*, 100 F.4th 1005, 1020-21 (9th Cir. 2024) (holding that the statement "By tapping 'Play' I

18   agree to the Terms of Service," which was displayed below the Play button, "clearly denotes that

19   [tapping Play] will constitute acceptance of the Terms of Service" and that the Terms of Service

20   link was "conspicuously distinguished from the surrounding text … by a contrasting white font

21   and emphasized through white borders outlining the hyperlinks") (citations omitted); *see also Lee*

22   *v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394-95 (9th Cir. 2020) (holding plaintiff "validly

23   assented to [defendant's] Terms of Use … each time he clicked the 'Place Order' button when

24   placing an order for tickets, where directly above the button, the website displayed the phrase, 'By

25   clicking 'Place Order,' you agree to our Terms of Use,' where in both contexts, 'Terms of Use'

26   was displayed in blue font and contained a hyperlink to [defendant's] Terms'"); *Dohrmann v.*

27

28

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE**
**MEMORANDUM OF POINTS AND AUTHORITIES**
Case No. 5:25-cv-6562

*Intuit*, 823 F. App'x 482, 483-84 (9th Cir. 2020) (similar).  In sum, there can be no dispute that the TOU apply here.

**B.    Plaintiffs Failed To Fulfill The Conditions Precedent To Filing Suit Set Forth In the TOU's Dispute Resolution Provisions**

Plaintiffs filed their claims without following the dispute resolution provisions mandated by the TOU, which requires their claims to be dismissed.  "[W]hen a party fails to allege compliance with a contract term that creates a condition precedent to filing a lawsuit, dismissal is warranted" under Rule 12(b)(6).  *Lipeles v. United Airlines*, No. CV 23-7143-KK-MAAx, 2024 WL 891792, at *3 (C.D. Cal. Jan. 9, 2024); *see also Brosnan v. Dry Cleaning Station Inc.*, No. C-08-02028 EDL, 2008 WL 2388392, at *1 (N.D. Cal. June 6, 2008) ("Failure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to filing a lawsuit warrants dismissal.").

The steps in that process are listed in Section 14.1.  They required Plaintiffs to:

- Attempt to resolve their concerns through Adobe Customer Care;

- Try to resolve the dispute informally by contacting Adobe and providing an individual written Notice of Claim that includes notice of the claimant's identity, a description of the nature and basis of the claim, and relief they are seeking, including the specific amount of any monetary relief; and

- Refrain from initiating legal action until 30 or 60 days after the Notice of Claim is received before filing any resulting legal action in the appropriate forum which in most cases will be small claims court or binding arbitration.

Plaintiffs failed to comply with any of these terms of their contract with Adobe.  They do not allege that they contacted Adobe Customer Care, that they provided the required individualized and detailed Notice of Claim including details such as a statement of the monetary relief sought, or that they waited 30 or 60 days after doing so before filing a legal action.  And they self-evidently did not bring this action in small claims court or arbitration.  Therefore,

1  Plaintiffs' claims should be dismissed for failure to allege they satisfied the TOU's conditions

2  precedent to any legal action.

3       *Lipeles* is directly on point.  2024 WL 891792, at *4.  There, plaintiff filed a putative class

4  action against defendant United Airlines ("United") after the airline lost his baggage, asserting

5  claims under multiple theories (sounding in contract and tort).  *Id.* at *1-2.  The plaintiff's contract

6  required him to notify United "of any dispute arising out of or related to transportation … by

7  submitting concerns via the online form" and to allow United "a period of sixty (60) days [after

8  the submission] to provide a substantive response and to try to resolve the dispute prior to filing

9  any lawsuit." *Id.* at *3 (brackets and citations omitted).  However, the plaintiff failed to allege that

10 he did either of those things.  *Id.* at *4.  And because plaintiff "fail[ed] to allege he satisfied the

11 [contract's] condition precedent to filing a lawsuit," the court granted United's motion to dismiss

12 under Rule 12(b)(6).  *Id.* at *4. The exact same result is warranted here.

13      Adobe's dispute resolution procedures benefit all parties by requiring communication and

14 disclosures *before* costly litigation commences.  Plaintiffs Wohlfiel's and Marquez's claims are

15 illustrative examples of why Adobe's dispute resolution provisions are in place.  If Plaintiffs had

16 followed the required steps, Adobe could have understood and communicated with them about

17 their individual complaints and monetary relief sought, including informing them that these

18 particular claims are barred by the contractual limitations provision (among other issues), and

19 worked with each of them to find an amicable solution consistent with the limitations of their

20 claims.  Further, to the extent the parties were not able to resolve their dispute, the parties would

21 then be in a position to make an informed decision about how to proceed from there based on an

22 understanding of the claims and the individualized relief sought, which in most cases would be in

23 small claims courts or arbitration, and not federal court, as provided in the TOU.

24    **C.    Plaintiffs' Claims Fail As A Matter Of Law**

25      Even assuming their claims were properly before the Court, the Complaint should be

26 dismissed under Rule 12(b)(1) and/or Rule 12(b)(6) because Plaintiffs lack standing and/or fail to

27 state a claim for other reasons.

28

1

2

**1.      Plaintiffs' Claims Are Barred By The 1-Year Contractual Limitations Period**

First, as a straightforward matter of contract interpretation, Plaintiffs' claims are barred by the contractual limitations period.  At the time both Plaintiffs subscribed (and at all points in time since), the TOU provided:  "Claims related to the Terms, Services, or Software are permanently barred if not brought within ***one year*** of the event resulting in the Claim."  Naseer Decl. Ex. A § 14.1 (emphasis added).  As demonstrated below, according to Plaintiffs' allegations, the last date on which any event occurred that might give rise to a claim was January 2024, which is a full 19 months before the Complaint was filed.

"California permits contracting parties to agree upon a shorter limitations period for bringing an action than that prescribed by statute, so long as the time allowed is reasonable."  *Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995); *see also Order of United Com. Travelers v. Wolfe*, 331 U.S. 586, 608 (1947) ("In the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period."); *Ellis v. U.S. Sec. Assocs.*, 224 Cal. App. 4th 1213, 1222–23 (2014) ("Parties may agree to shorten the limitations period" so long as the limitation is "reasonable.").

Accordingly, "[m]any California cases have upheld contractual shortening of statutes of limitations in different types of contracts."  *Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1042 (9th Cir. 2001) ("Case law heavily favors affirming on this issue.").  Courts have routinely concluded that limitations periods of one year or less, including as short as three months, are reasonable and therefore enforceable.  *Id*. at 1043-44 ("[T]he weight of California case law strongly indicates that [a] six-month limitation provision [for claims of wrongful termination and unfair business practices] is not substantively unconscionable") (collecting cases).  This includes a shortening of the limitations period in consumer actions.  *E.g.*, *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1031-33 (9th Cir. 2016) (holding one-year statute of limitations period in Terms of

- 12 -

Service for claims of unfair business practices, breach of warranty, and misrepresentations was not unconscionable); *Ting v. AT & T*, 182 F. Supp. 2d 902, 933 (N.D. Cal. 2002), *aff'd in part, rev'd in part sub nom. Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003) (holding a two-year limitations period was not substantively unconscionable as applied to common law claims).[2]

Here, the allegations make clear that the claims are time-barred. Plaintiff Wohlfiel alleges that she purchased the subscriptions at issue "[b]etween July 2023-September 2023," and that "[f]rom November 2023-January 2024" she "began progressively cancelling subscriptions, paying the early termination fee for each cancelled product." Compl. ¶¶ 93, 100. Plaintiff Marquez alleges that she purchased the subscription at issue "[i]n or around mid-June 2023" and attempted to cancel "[i]n or around mid-July 2023" at which point she alleges she learned of the ETF and thus "ceased the cancellation process." *Id.* ¶¶ 101, 103-06. The Complaint was filed August 4, 2025. Therefore it was, by Plaintiffs' own allegations, *not* filed "within one year of the event[s] resulting in the Claim[s]"—as the most recent transaction they allege with Adobe was Plaintiff Wohlfiel's cancellation of her last subscriptions in January 2024. *See* Naseer Decl. Ex. A § 14.1; Compl. ¶ 100. Under the TOU, the claims are thus "permanently barred." *See* Naseer Decl. Ex. A § 14.1.

All of the claims must therefore be dismissed as untimely.

### 2.    Plaintiffs Fail To Allege Reliance On Fraudulent Statements Sufficiently

Plaintiffs have not alleged actual reliance on *any* Adobe specific statement or omission. While they broadly allege that many statements or disclosures are deceptive, they fail to explain what specifically misled them.

Because Plaintiffs allege a deceptive scheme sounding in fraud, their claims must be pled with factual specificity as required by Rule 9(b). *See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d

---

[2] Count IV, asserting a violation of the CLRA, is the one claim that is arguably differently situated. "Section 1751 of the CLRA renders 'unenforceable and void' any waiver by a consumer of the statutory rights provided for under the CLRA, and sections 1781(a) and 1783 permit consumers to bring class actions within a three-year limitations period." *Ting*, 319 F.3d at 1147 (citations omitted). However, the Ninth Circuit has held that Section 1751 is preempted by the Federal Arbitration Act. *Id.*

1  1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading

2  standards apply to claims for violations of the CLRA and UCL.") (citation omitted).  Further, "a

3  plaintiff must allege actual reliance in order to have standing to pursue" UCL, FAL, and CLRA

4  claims.  *Roffman v. Perfect Bar*, LLC, No. 22-cv-02479-JSC, 2022 WL 4021714, at *5 (N.D. Cal.

5  Sept. 2, 2022).  Absent a specific allegations of reliance, these claims (and others sounding in

6  fraud) must be dismissed.  *Phillips v. Apple Inc.*, No. 15-CV-04879-LHK, 2016 WL 1579693, at

7  *7 (N.D. Cal. Apr. 19, 2016) (dismissing claims where "Plaintiffs do not allege that they saw or

8  heard any statements, advertising, terms of use, or other representations by Apple before"

9  downloading the software); *In re Arris Cable Modem Consumer Litig.*, No. 17-CV-01834-LHK,

10  2018 WL 288085, at *9 (N.D. Cal. Jan. 4, 2018) (dismissing UCL, CLRA, and FAL claims

11  because the plaintiffs failed to allege actual reliance where they had "identif[ied] a range of

12  statements … that [they] allege are misleading" and "generally allege[d] that they relied on

13  [defendant's] misrepresentations and omissions in purchasing the [product]," but plaintiffs never

14  "specified which statements any of them saw or relied on in deciding to buy the [product]");

15  *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1114 (N.D. Cal. 2016) (dismissing the

16  CLRA and UCL claims where plaintiff had "not even alleged what representations she

17  encountered, let alone that she relied upon them," and "even assuming she encountered one of the

18  [example] prompts identified in the [complaint], she has not alleged that the omission of the

19  challenged information in any way impacted her behavior").

20      All of Plaintiffs' claims fall far short of meeting that heightened pleading standard, which

21  require pleading "the who, what, when, where, and how" of the alleged misconduct.  *Vess v. Ciba-*

22  *Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted); *see* Fed. R. Civ. P. 9(b).

23  In fact, in the 30+ page Complaint, Plaintiffs allege ***in only a single paragraph*** that they "relied"

24  on anything—and that is a conclusory allegation concerning their reliance of unspecified

25  "negligent misrepresentations and omissions."  Compl. ¶ 170.  Plaintiffs are silent on their

26  *personal* experiences with Adobe's enrollment process and cancellation processes, alleging only

27  that they each somehow wound up being "unaware" of the ETFs after going through that process.

28

1   *Id.* ¶¶ 94; 102.  But there is no allegation that Plaintiffs specifically saw any alleged

2   "misstatements" before they purchased their subscriptions, let alone about *which* one(s) they relied

3   on.

4          Making their personal experiences even more difficult to parse, the Complaint includes

5   many seemingly gratuitous—or at least improperly vague—allegations, such as referring to

6   "tacking on hidden fees and charges at checkout" (*id.* ¶ 22(b)) or "[h]iding or delaying

7   presentations of pertinent or material information about a transaction to customers" (*id.* ¶ 22(e)).

8   Many of these allegations plainly do not apply to the Plaintiffs' personal experience.  For

9   example, the Complaint extensively discusses allegedly problematic cancellation process (*e.g.*, *id.*

10  ¶ 22(a) (alleging "cancelling [is] extremely difficult or impossible")) but neither Plaintiff alleges

11  that she had any difficulty cancelling her subscription(s).  *See id.* ¶¶ 100 ("… Plaintiff Wohlfiel

12  began progressively cancelling subscriptions…"), 106 ("After learning about the early termination

13  fee, Plaintiff Marquez ceased the cancellation process.").

14         At most, the Complaint vaguely alleges that Plaintiffs and putative class members

15  "reasonably relied" on some unspecified representations somewhere in the Complaint (Compl.

16  ¶ 170)—but those are precisely the types of "conclusory" and "general[]" allegations that courts

17  routinely deem too thin to confer statutory standing.  *See, e.g.*, *Phillips*, 2016 WL 1579693, at *8;

18  *In re Arris*, 2018 WL 288085, at *7; *Charbonnet v. Omni Hotels & Resorts*, No. 20-cv-01777-

19  CAB-DEB, 2020 WL 7385828, at *5 (S.D. Cal. Dec. 16, 2020) ("conclusory allegations"

20  insufficient to plead "facts establishing that [plaintiff] actually relied on [defendant's] alleged

21  'omission'").  In sum, because Plaintiffs fail to allege actual reliance with the requisite degree of

22  specificity, they cannot establish statutory standing to pursue their UCL, CLRA, and FAL claims

23  or their common law claims.

24         **3.    Plaintiffs' Claims Alleging That The "Annual, Billed Monthly" Plan Is
25                 Misleading Fail To State A Claim As A Matter Of Law**

26         The Court should also dismiss Plaintiffs' claims to the extent they are predicated on

27  allegations that Adobe does not disclose that the ABM plan requires an annual commitment with

28

- 15 -

1    monthly billing.  Another court in this District has already held that, in this regard, the ABM plan

2    is not deceptive.  In *United States v. Adobe*, the Department of Justice sued Adobe for allegedly

3    failing to "adequately disclose to consumers that by signing up for the 'Annual, Paid Monthly'

4    subscription plan … , they are agreeing to a year-long commitment."  *United States v. Adobe*,

5    5:24-cv-03630-NW (N.D. Cal. July 23, 2024) (Wise, J.) (Dkt. 40).  In its order on Adobe's motion

6    to dismiss, that court held that the annual term commitment of the ABM plan was not misleading

7    to a reasonable consumer as a matter of law:

8              As to the plan term or duration, the Court finds that Adobe clearly and
              conspicuously disclosed that its APM plan is an annual or yearly plan.

9              A reasonable consumer would not be misled by this disclosure….  The
              plan name is unavoidable and uses diction and syntax understandable to

10             ordinary consumers: 'Annual, paid monthly.'  Thus, here, the Court
              finds that no reasonable consumer would believe based on the title and

11             context of the plan that its term was more or less than one year.

12

13   *United States v. Adobe, Inc.*, No. 24-cv-03630-NW, 2025 WL 1303419, at *10 (N.D. Cal. May 2,

14   2025).[3]

15             That ruling forecloses what appears to be the core premise of Plaintiffs' claims.  For

16   example, Plaintiffs' claim alleging violations of California's UCL (Count I) is based in part on

17   allegations of Adobe "[m]isrepresenting and/or hiding material facts about its subscriptions,"

18   including "the annual commitment," and "[u]sing misrepresentations and deception to induce

19   consumers to purchase the ABM subscription."  Compl. ¶¶ 124(a), (b); *see also id*. ¶ 129.

20   However, the court in the DOJ matter expressly found that Adobe's disclosure of the annual

21   commitment was not misleading.  The remaining claims are similar.  Plaintiffs' claim for

22   conversion (Count II) takes aim at "unauthorized charges imposed by Defendants on the payment

23   methods of Plaintiffs."  *Id.* ¶ 135.  The allegation is ambiguous, but to the extent it intends to refer

24   to the monthly payments required under the ABM plan, then again, a court in this District has

25   already held that such monthly payments were clearly disclosed.  Plaintiffs' claim under

26

27   ---
     [3] The plan has been sometimes designated as "Annual, billed monthly" and sometimes "Annual,
     paid monthly."  Compl. ¶ 27 n.7.  The meaning is the same.

28                                              - 16 -

California's FAL (Count III) is predicated in part on "[m]isrepresenting and/or omitting material information about its subscription plans in the enrollment process," including "the annual commitment." *Id.* ¶ 141(a). Plaintiffs' claim under California's CLRA (Count IV) likewise is predicated in part on allegations that Adobe "[c]oncealed and/or misrepresented material terms of its subscription plans," including "the annual commitment" and used "misrepresentations and omissions about subscription terms and conditions to induce consumers to purchase the ABM subscription." *Id.* ¶¶ 153(a), (b). Plaintiffs' claim for unjust enrichment and restitution (Count V) generically refers in part to Adobe "retaining revenues from the subscriptions" (*id.* ¶ 162), again, subscriptions that a court in this District has found to have been clear and conspicuous as to their duration. And Plaintiffs' claim for negligent misrepresentation (Count VI) alleges in part that "Defendant misrepresented, omitted, and/or hid material facts regarding its subscription plans, including but not limited to subscription lengths, billing practices" and "automatic payment terms." *Id.* ¶ 167.

Therefore, each of Plaintiffs' claims is predicated in part on a claim already rejected in this District—that it was not clear that the "Annual, Billed Monthly" plan required an annual commitment and monthly billing. To that extent, the claims are foreclosed.

### 4. Plaintiffs Fail To Allege That They Renewed Their Subscriptions Such That They May Contest Compliance With CARL Or Allege Harm From Renewal

Several of Plaintiffs' claims appear to also be predicated on allegations relating to automatic renewals. Most prominently, Plaintiffs predicate their UCL claim (Count I) in part on alleged violations of CARL. Compl. ¶¶ 128-29. Other claims likewise challenge certain renewal features. *Id.* ¶ 141(c)-(d) (Count III - FAL); ¶ 153(d) (Count IV - CLRA). But to sue under CARL, Plaintiffs must have been harmed by an improper "automatic renewal" or "continuous service" (Cal. Bus. & Prof. Code §§ 17601(a), 17602), and Plaintiffs simply fail to allege facts to establish that they were subject to an automatic renewal or continuous service. In fact, they do not even allege they were subject to *any* renewal. Plaintiffs also cannot cure this deficiency by looking to other members of the putative class because "even named plaintiffs who represent a

- 17 -

1    class 'must allege and show that they personally have been injured, not that injury has been

2    suffered by other, unidentified members of the class.'" *Martinez v. Newsom*, 46 F.4th 965, 970

3    (9th Cir. 2022).

4         In fact, in another case in this District, a court recently dismissed similar claims predicated

5    on Adobe's ABM plan for this reason. *Singh v. Adobe Inc.*, No. 3:24-cv-03980-JSC (N.D. Cal.

6    Feb. 13, 2025) (Dkt. 34). There, Adobe moved to dismiss the exact same six causes of action that

7    were asserted in this case – under California's UCL, FAL, CLRA, conversion, unjust enrichment /

8    restitution, and negligent misrepresentation (plus a claim for fraud not asserted here) under Rule

9    12(b)(1) for lack of standing where the plaintiff's subscription had never renewed. *Singh*, Dkt. 29

10   at 9-14. In a hearing on that motion, the court found that the ABM plan was not subject to

11   "monthly" renewals such that there could be no standing in the absence of an annual renewal and

12   dismissed the claims premised on that theory: "It's not a monthly contract that automatically

13   renews. It is an annual contract that then automatically renews for another year." Hearing on

14   Motion to Dismiss at 15:8-12, *Singh v. Adobe Inc.*, 3:24-cv-03980-JSC (N.D. Cal. Mar. 12, 2025)

15   (Dkt. 36) (transcript available on docket).[4]

16        For the same reason, this Court should dismiss Plaintiffs' claims. Neither Plaintiff

17   Wohlfiel nor Plaintiff Marquez were harmed by an "automatic renewal" or "continuous service"

18   because neither alleges that her subscriptions were ever annually renewed. Plaintiff Wohlfiel

19   "purchased approximately ten ABM subscriptions" for Lightroom from July to September 2023."

20   Compl. ¶ 93. Then, "[f]rom November 2023-January 2024, Plaintiff Wohlfiel began

21   progressively cancelling subscriptions, paying the early termination fee for each cancelled

22   product." *Id.* ¶ 100. Therefore, the longest possible time period that one of Plaintiff Wohlfiel's

23   subscriptions could have been active is July 2023 to January 2024, a period of only seven months.

24   Since Plaintiff Wohlfiel canceled each subscription before one year had elapsed, none of her

25   subscriptions ever renewed. For her part, Plaintiff Marquez purchased an ABM subscription for

---

[4] On an amended complaint, the court later found certain claims could be adequately pled based on an allegation that the plaintiff had participated in a trial subscription that converted to a paid subscription. But Plaintiffs make no such allegation here.

Acrobat "[i]n or around mid-June 2023," and considered cancelling it "[i]n or around mid-July 2023, approximately one month after the initial purchase, " but reluctantly kept it active to avoid the ETF.  *Id.* ¶¶ 101, 103.  She does not allege that her subscription renewed after a year.

Accordingly, neither Plaintiff had a subscription renewed, neither was harmed by a renewal, and neither has standing to sue on the basis of CARL or other allegations related to renewal.

### 5.    Plaintiffs Do Not Allege They Are Consumers As Required Under The CLRA

Separately, Plaintiffs fail to state a claim under the CLRA because they have not alleged facts demonstrating that they are "consumers" within the meaning of the statute.  The CLRA defines a "consumer" as "[a]n individual who seeks or acquires, by purchase or lease, any goods or services *for personal, family, or household purposes*."  Cal. Civ. Code § 1761(d) (emphasis added).  Accordingly, if an individual makes purchase for business purposes, she lacks standing under the CLRA.  *Song Fi, Inc. v. Google, Inc.*, No. C 14-5080 CW, 2016 WL 1298999, at *11 (N.D. Cal. Apr. 4, 2016) (granting motion to dismiss CLRA claim for lack of standing where plaintiff alleged that it that used YouTube "for commercial purposes"); *Person v. Google, Inc.*, No. C 06–7297 JF (RS), 2007 WL 832941, at *7 (N.D. Cal. Mar. 16, 2007) (granting motion to dismiss CLRA claim for lack of standing because plaintiff's stated purpose for using Google's AdWords computer program was commercial and political).

Here, Plaintiffs allege that "Stephanie Wohlfiel purchased approximately ten ABM subscriptions for Lightroom *for a photography job* scheduled for November 2023."  Compl. ¶ 93 (emphasis added).  Because Plaintiff Wohlfiel's purchase was admittedly for a commercial purpose (i.e., "a photography job") and not for "personal, family, or household purposes," she does not have standing to sue under the CLRA.  Plaintiff Marquez does not allege any facts to establish what her purpose was in subscribing to Acrobat, and therefore she also fails to establish standing.  Accordingly, both Plaintiffs' claims under the CLRA should be dismissed under Rule 12(b)(1).

1

2

### 6. Plaintiffs Fail To Allege Any Entitlement To Injunctive And Other Equitable Relief

Plaintiffs fail to allege facts establishing the inadequacy of a remedy at law or a risk of future harm absent injunctive relief, such that they may pursue claims for injunctive relief. *See, e.g.*, *Meza v. Coty, Inc.*, No. 22-cv-05291-NC, 2023 WL 3082346, at *3 (N.D. Cal. Apr. 24, 2023) (granting motion to dismiss claims for injunctive relief in consumer class action where plaintiff "failed to allege that she faces a threat of future harm from Defendant's labeling") (citing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018)); *Watkins v. MGA Ent., Inc.*, 550 F. Supp. 3d 815, 837-38 (N.D. Cal. 2021) (granting motion to dismiss claims for injunctive relief in consumer class action where plaintiffs had "not alleged any facts establishing that their remedies at law are inadequate … [or] any facts establishing that they are likely to face any future danger") (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)). Here, Plaintiffs make only bare allegations that injunctive relief is sought because Adobe's practice are "ongoing." Compl. ¶¶ 132; 145; 156. Such conclusory pleading plainly fails to establish standing to seek injunctive relief. Nor do Plaintiffs allege that they will purchase the products again, or that they would likely purchase them again if not for Adobe's alleged misrepresentations. Such relief should therefore be dismissed from Plaintiffs' claims under the UCL (Count I; *see* Compl. ¶ 132), the FAL (Count III; *see* Compl. ¶ 145) and the CLRA (Count IV; *see* Compl. ¶ 156).

For the same reasons, Plaintiffs also may not pursue other equitable relief, including restitution and disgorgement. *Sonner*, 971 F.3d at 844 (plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA"; affirming dismissal of claims) (citing cases). As a result, there is no further cognizable relief available for Plaintiffs' claim under the UCL (Count I; *see* *Rose v. Bank of Am., N.A.*, 57 Cal. 4th 390, 399 (2013) ("Private plaintiffs suing under the UCL may seek only injunctive and restitutionary relief….") nor any relief for "Unjust Enrichment / Restitution" (Count V). And the further prayers for such relief should also be dismissed from Plaintiffs' claims under the FAL

- 20 -

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE
MEMORANDUM OF POINTS AND AUTHORITIES**
Case No. 5:25-cv-6562

(Count III; *see* ¶ 146), the CLRA (Count IV; *see* Compl. ¶ 159) and for negligent

misrepresentation (Count VI; *see* Compl. ¶ 172).

### D.    Plaintiffs Cannot Pursue Class Claims Because The TOU Includes An Enforceable Class Waiver

Finally, the Court should strike Plaintiffs' class claims under Rule 12(f) because they

waived such claims when they signed up for Adobe's services.  TOU Section 14.2 is titled "**No**

**Class Actions**" and states:  "You may only resolve disputes with us on an individual basis, and

you may not bring a claim as a plaintiff or a class member in a class, consolidated, or

representative action."  Naseer Decl., Ex. A § 14.2.

Class action waivers like the one in TOU Section 14.2 are regularly enforced in courts

applying California law.  *See Murphy v. DirecTV, Inc.*, 724 F.3d 2018 (9th Cir. 2013); *Burgos v.*

*Citibank*, 745 F. Supp. 3d 959 (N.D. Cal. 2024); *Suchite v. ABM Aviation, Inc.*, 741 F. Supp. 3d

878 (S.D. Cal. 2024); *Torres v. Veros Credit LLC*, No. 8:23-CV-00688-DOC-DFM, 2023 WL

5505887, at *5 (C.D. Cal. July 13, 2023); *Jeong*, 2022 WL 3590329, at *14-15; *Archer v.*

*Carnival Corp.*, No. 20-cv-04203-RGK-SK, 2020 WL 6260003 (C.D. Cal. Oct. 20, 2020); *In re*

*Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 298 F. Supp. 3d 1285, 1303 (N.D. Cal.

2018); *Castillo v. Cava Mezze Grill*, LLC, No. CV 18-7994-MWF (MAAx), 2018 WL 7501263,

at *4 (C.D. Cal. Dec. 21, 2018).

In *Jeong*, for example, the court granted the defendant's motion to strike class claims in a

consumer class action because the parties' agreement had a valid class action waiver.  The

agreement stated, in part:  "You agree that any dispute resolution proceeding … shall be

conducted only on an individual basis and not as a plaintiff or class member in any purported

class, consolidated or representative action or proceeding.  No court or other dispute resolution

authority can consolidate or join more than one claim and can otherwise preside over any form of

a consolidated, representative, or class proceeding."  *Jeong*, 2022 WL 3590329, at *4; *see also In*

*re Samsung*, 298 F. Supp. 3d at 1303 (dismissing consumer class action claims because the

agreement "included a clause waiving class treatment").

- 21 -

1    Here, Plaintiffs brought *all* of their claims as putative class claims.  Compl. ¶¶ 5, 131, 138,

2    144, 155, 165, 172 ("Plaintiffs bring this class action individually and on behalf of all others

3    similarly situated against Defendant for violation of California consumer protection laws,

4    conversion, unjust enrichment/restitution, negligent misrepresentation, and fraud.").  Therefore, all

5    of these class claims are foreclosed by the TOU's class action waiver, and they must be dismissed

6    and/or struck.

7    **VI.    CONCLUSION**

8    For the reasons stated above, Adobe respectfully requests that the Court dismiss Plaintiffs'

9    Complaint in its entirety and/or strike Plaintiffs' class claims.

10

11   Dated:  October 6, 2025                    ARNOLD & PORTER KAYE SCHOLER LLP

12                                              By:   /s/ Jeremy T. Kamras

13                                              Douglas A. Winthrop
14                                              Jeremy T. Kamras
                                                Joseph Farris
15                                              Tommy Huynh
                                                Mark E. Raftrey
16
                                                *Counsel for Defendant Adobe Inc.*
17

18

19

20

21

22

23

24

25

26

27

28