

Nicholas A. Coulson (SBN 358903)
**COULSON P.C.**
300 River Place Drive
Suite 1700
Detroit, Michigan 48207
T: (313) 644-2685
Nick@CoulsonPC.com

*Attorney for Plaintiffs and the Putative Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| STEPHANIE WOHLFIEL and VIANCA MARQUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ADOBE INC.,<br><br>Defendant. | Case No. 5:25-cv-06562-NC<br><br>**PLAINTIFFS' CORRECTED OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE**<br><br>Assigned to: Hon. Nathanael M. Cousins<br><br>Date: Nov. 12, 2025<br>Time: 11:00 am<br>Place: Courtroom 5, 4th Floor |

TABLE OF CONTENTS

INTRODUCTION ........ 1

BACKGROUND ........ 2

I. ADOBE'S DECEPTIVE LICENSING MODEL ........ 2

II. ADOBE'S TERMS OF USE AND THEIR UNCONSCIONABLE DISPUTE RESOLUTION SECTIONS ........ 3

III. PLAINTIFFS' EFFORTS TO ENGAGE IN ADOBE'S DISPUTE RESOLUTION PROCESS. ........ 7

LEGAL STANDARDS ........ 8

I. RULE 12(b)(1) ........ 8

II. RULE 12(b)(6) ........ 8

III. RULE 12(f) ........ 9

ARGUMENT ........ 9

I. ADOBE'S DISPUTE RESOLUTION CLAUSE IS UNCONSCIONABLE AND SHOULD BE STRICKEN IN ITS ENTIRETY. ........ 9

A. Standard for Unconscionability. ........ 10

B. Adobe's Dispute Resolution Section, Including Each of its Components, is Procedurally Unconscionable. ........ 10

C. Together and Independently, Adobe's Dispute Resolution Requirements Are Substantively Unconscionable. ........ 11

D. Regardless of Enforceability, Adobe's Dispute Resolution Clause Does Not Bar Plaintiffs' Claims. ........ 17

II. PLAINTIFFS SUFFICIENTLY ALLEGE EACH CAUSE OF ACTION ........ 18

A. The One-Year TOU Limitations Period Is Independently Unconscionable and Unenforceable. ........ 18

B. Plaintiffs Sufficiently Allege Reliance and Satisfy the Requirements of Rule 9(b). ........ 18

C. Plaintiffs Plausibly Allege that the ABM Plan is Deceptive. .................................... 20

D. Plaintiffs Sufficiently Allege that the ABM Plan Constitutes an Automatic Renewal and/or Continuous Service, and that They were Injured as a Result. ................................ 21

E. Plaintiffs Sufficiently Allege Statutory Standing as Consumers under the CLRA ...... 22

F. Allegations for Plaintiff Marquez are Sufficient to Establish "Consumer" Standing Under the CLRA. .................................................................................................. 23

III. PLAINTIFFS SHOULD BE GRANTED LEAVE TO ADD AN ALLEGATION, IN THE ALTERNATIVE, THAT THEIR REMEDIES AT LAW ARE INADEQUATE SUCH THAT THEY ARE ENTITLED TO EQUITABLE RELIEF................................................ 24

IV. THERE IS NO BASIS TO STRIKE THE CLASS ALLEGATIONS......................... 24

CONCLUSION............................................................................................................... 25

Page ii

**Plaintiffs' Opposition to Defendant's Motion to Dismiss and Motion to Strike**

COULSON P.C.

COULSON P.C.

## TABLE OF AUTHORITIES

**CASES** **Page(s)**

*Ali v. Daylight Transp., LLC,* 59 Cal. App. 5th 462 (2020) ........ 15

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ........ 8

*Augustine v. United States,* 704 F.2d 1074 (9th Cir. 1983) ........ 8

*Bartling v. Apple Inc. (In re Apple Processor Litig.),* 2023 U.S. App. LEXIS 24257, (9th Cir. Sep. 13, 2023) ........ 19

*Bell Atlantic Corp., v. Twombly,* 550 U.S. 544 (2007) ........ 8

*Cetacean Cmty. v. Bush,* 386 F.3d 1169 (9th Cir. 2004) ........ 8

*City of Hollister v. Monterey Ins. Co.,* 165 Cal. App. 4th 445 (2008) ........ 17

*Cohen v. DIRECTV, Inc.,* 142 Cal. App. 4th 1442 (2006) ........ 15

*Daniel v. Ford Motor Co.,* 806 F.3d 1217 (9th Cir. 2015) ........ 19

*Davidson v. Kimberly-Clark Corp.,* 889 F.3d 956 (9th Cir. 2018) ........ 24

*Davis v. Clients on Demand, LLC,* 2025 U.S. Dist. LEXIS 96204 (C.D. Cal. May 19, 2025) ........ 22

*Davis v. Shutterstock, Inc.,* U.S. Dist. LEXIS 136520 (E.D. Cal. July 31, 2024) ........ 9, 21

*Delux Cab v. Uber Techs., Inc.,* 2017 U.S. Dist. LEXIS 57494 (S.D. Cal. Apr. 13, 2017) ........ 25

*Dennison v. Rosland Capital LLC,* 47 Cal.App.5th 204 (2020) ........ 16-17

*Discover Bank v. Superior Court of Los Angeles,* 36 Cal. 4th 148 (2005). ........ 14

*Fisher v. MoneyGram Int'l, Inc.,* 66 Cal. App. 5th 1084 (2021) ........ 10-11, 16

*Gostev v. Skillz Platform, Inc.,* 88 Cal. App. 5th 1035 (2023) ........ 10

*Hartranft v. Encore Capital Grp., Inc.,* 543 F. Supp. 3d 893 (S.D. Cal. 2021) ........ 9, 25

*In re Ford Tailgate Litig.,* 2015 U.S. Dist. LEXIS 159534 (N.D. Cal. Nov. 25, 2015) ........ 22

*In re Tobacco II Cases (Tobacco II),* 46 Cal. 4th 298 (2009) (UCL). ........ 19

*Intershop Communications AG v. Superior Court*, 104 Cal.App.4th 191 (2002) ........ 10

*Jeong v. Nexo Capital Inc.,* 2023 U.S. Dist. LEXIS 54152 (N.D. Cal. Mar. 29, 2023) ............... 13

*Johnson v. Trumpet Behav. Health, LLC*,
2022 U.S. Dist. LEXIS 3706 (N.D. Cal. Jan. 7, 2022) ............................................. 24

*Little v. NatureStar N. Am., Ltd. Liab. Co.*,
2024 U.S. Dist. LEXIS 163677 (E.D. Cal. Sep. 11, 2024) ........................................ 24

*Lipeles v. United Airlines, Inc*., 2024 U.S. Dist. LEXIS 67526 (C.D. Cal. Apr. 11, 2024) ......... 25

*McEnery v. McEnery,* 621 F. Supp. 3d 1059, 1065 (N.D. Cal. 2022) ........................................ 9

*Nyulassy v. Lockheed Martin Corp.,* 120 Cal.App.4th 1267 (2004) ......................................... 16

*Pandolfi v. Aviagames, Inc.,* 2024 LX 180500 (N.D. Cal. Sep. 4, 2024) .............................. 12, 16

*Pandolfi v. Aviagames, Inc.,* 2025 LX 398047 (9th Cir. Aug. 27, 2025) .................................... 12

*Parada v. Superior Court,* 176 Cal. App. 4th 1554 (2009) ................................................ 12-13

*Pereda v. GM LLC,* 2022 U.S. Dist. LEXIS 242771 (N.D. Cal. Dec. 9, 2022) ..................... 20, 24

*Pinela v. Neiman Marcus Grp., Inc.,* 238 Cal. App. 4th 227 (2015) .......................................... 11

*Rubio v. Marriott Resorts Hosp. Corp.*
2023 U.S. Dist. LEXIS 211867 (C.D. Cal. Oct. 18, 2023) ........................................ 25

*Rutter v. Apple Inc.,* 2022 U.S. Dist. LEXIS 82549 (N.D. Cal. May 6, 2022) ............................ 21

*Sanchez v. Superior Court,* 108 Cal. App. 5th 615 (2025) ...................................................... 11

*Sanchez v. Valencia Holding Co., LLC,* 61 Cal. 4th 899 (2015) ........................................ 10-11

*Sanders v. Kennedy*, 794 F.2d 478 (9th Cir. 1986) ..................................................................... 8

*Shroyer v. New Cingular Wireless Servs.,* 498 F.3d 976 (9th Cir. 2007) .................................... 14

*Sullivan v. Built Brands LLC,* 2025 LX 444593 (N.D. Cal. Oct. 3, 2025) .................................. 24

*Suski v. Marden-Kane, Inc.,* 2022 U.S. Dist. LEXIS 157448 (N.D. Cal. Aug. 31, 2022) ............ 13

*United States v. Adobe, Inc.,* 2025 U.S. Dist. LEXIS 87777 *(N.D. Cal. May 2, 2025)* ........... 20-21

*United States v. Ritchie,* 342 F.3d 903 (9th Cir. 2003) ................................................................ 9

*Viral DRM LLC v. Seven W. Media Ltd.*,
768 F. Supp. 3d 1025 (N.D. Cal. 2025) .................................................................. 8

COULSON P.C.

*Z.A. ex rel. K.A. v. St. Helena Unified Sch. Dist.*,
2010 U.S. Dist. LEXIS 12858 (N.D. Cal. Jan. 25, 2010) .................................................... 9

## RULES

Federal Rule of Civil Procedure 9(b) ......................................................................... 18-20

Federal Rule of Civil Procedure 12(b)(1) ..................................................................... 8, 18

Federal Rule of Civil Procedure 12(b)(6) ..................................................................... 8, 18

Federal Rule of Civil Procedure 12(f) .........................................................................8-9, 24-25

## STATUTES

Cal. Bus. & Prof. Code § 17601(a)(5) ........................................................................... 21

Cal. Civ. Code § 1761(d) .................................................................................................. 22

Page v

**Plaintiffs' Opposition to Defendant's Motion to Dismiss and Motion to Strike**

COULSON P.C.

COULSON P.C.

## INTRODUCTION

As will become apparent, Adobe's Motion to Dismiss and to Strike is the latest gambit in its yearslong campaign to ensure that consumers never obtain redress for a practice that its own executive(s) described as "a bit like heroin for Adobe" and for which "there is absolutely no way to kill off [] or talk about [] more obviously [without] taking a big business hit."[1] This litigation seeks to redress Adobe's widespread unlawful and deceptive product licensing scheme, which was designed to trap consumers into long-term commitments through opaque enrollment flows, inadequate disclosures, oppressive termination fees, and automatic renewal mechanisms. Adobe's avoidant tactics—including attempting to modify the terms of its unconscionable "Dispute Resolution" provision (the "DRP") *three days before it filed this motion*—must be wholeheartedly repudiated.

Adobe first seeks to shield itself from liability by selective enforcement of the DRP in a since-replaced and plainly unconscionable version of its Terms of Use ("TOU"). The DRP consists of a pre-dispute notice requirement (which incorporates a unidirectional one-year limitations period), an arbitration provision that greatly multiplies costs for claimants whose counsel represents other Adobe customers, and a class action waiver. In an indicator of the credibility that should be afforded its positions, Adobe's motion completely omits that Plaintiffs complied with the DRP's pre-dispute notice requirements (despite their unenforceability). Nevertheless, Adobe seeks to deploy this procedural barrier to unilaterally decide whether legal claims against it can be filed. Adobe cannot weaponize its own lack of good faith to bar Plaintiffs from seeking relief.

Also based on the DRP is Adobe's motion to strike the class allegations, which is equally meritless. First, the class action waiver in the TOU does not foreclose Plaintiffs' class claims as both the Dispute Resolution provision generally and the class action waiver specifically are unenforceable as a matter of law.  Even were this not so clear, the requested relief would be improper for the same reasons courts nearly always find such motions premature and/or improper.

Adobe's arguments as to Plaintiffs' lack of standing and failure to state a claim are similarly unfounded. Plaintiffs have sufficiently alleged each of their claims, including as to standing. The

[1] Complaint, Dkt. 1, ("Compl.") ¶3.

Complaint details how Adobe's licensing model and ABM plan operate deceptively, inducing consumers into a purported one-year commitment upon threat of a substantial early termination fee ("ETF") without clear consent. Plaintiffs describe their own experiences with the ABM plan thoroughly and plausibly allege reliance, injury, and statutory standing under California's consumer protection laws. Adobe's attempts to dismiss these claims fail to account for the well-pleaded facts in the Complaint and the reasonable inferences to be drawn therefrom.

Adobe's motion should be denied, and this Defendant should at last face the reckoning it so desperately seeks to avoid.

## BACKGROUND

Plaintiffs Stephanie Wohlfiel and Vianca Marquez brought this action to challenge Adobe's widespread deceptive product licensing practices that were designed to confuse consumers and extract inflated revenue despite a lack of consent. Plaintiffs filed this action on behalf of themselves and similarly situated consumers who were misled into long-term subscription commitments upon pain of substantial ETFs without clear and conspicuous disclosure. *See generally* Compl.

### I. ADOBE'S DECEPTIVE LICENSING MODEL

Rather than offer its products through the traditional software purchase model, wherein a customer pays a one-time fee to own and indefinitely use that product, Adobe now exclusively offers its products through a temporary licensing model, in which its customers pay a recurring fee for continued access to its products. The particular licensing model at issue here is Adobe's "annual, billed monthly" ("ABM") plan. The ABM plan purports to require a year-long commitment but is marketed at a monthly price, creating the impression of a flexible, month-to-month arrangement. Adobe's enrollment process emphasizes the monthly cost while obscuring the annual nature of the commitment and the ETF associated with "early" cancellation. Key terms, including the ETF and its relationship to the remaining contract obligation, are buried in hyperlinks and pop-up windows that are not readily accessible or clearly presented during the purchasing process.

Plaintiffs allege in detail that Adobe's enrollment flow is designed to mislead consumers. Compl. ¶¶ 39-71. For example, the checkout page repeatedly displays only the monthly installment price and does not disclose the total annual cost. Compl. ¶¶ 59-62. The cancellation terms are only available through a hyperlink at the bottom of the page, and even then, consumers must scroll to the end of a pop-up window to find the ETF disclosure. Compl. ¶¶ 66-67. Adobe's use of vague language such as "cancel anytime" further contributes to consumer deception, suggesting flexibility that does not exist under the ABM plan. Compl. ¶¶ 64-65.

Plaintiffs' experiences illustrate the harm caused by these practices. Plaintiff Wohlfiel purchased multiple products under the ABM plan believing they were monthly and later paid a substantial number of ETFs upon cancellation. Compl. ¶¶ 93-100. Plaintiff Marquez attempted to cancel her roughly $45/mo. subscription shortly after purchase, believing it to be month-to-month, but abandoned the process upon learning of the ETF, which amounted to approximately $250. Compl. ¶¶ 101-106. Neither Plaintiff was aware of the purported annual commitment or ETF at the time of purchase due to Adobe's intentional deceptive practices. Compl. ¶¶ 94, 97-98, 102, 104.

Adobe's practices have drawn widespread consumer complaints and regulatory scrutiny. Compl. ¶¶ 83-90. After investigating Adobe, the Federal Trade Commission has filed a complaint against it for these practices, alleging violations of the Restore Online Shoppers' Confidence Act. Compl. ¶¶ 87-90. Despite the growing chorus of condemnation, Adobe seeks to avoid accountability (including through its conduct here) in reliance on a set of "Dispute Resolution" requirements in the TOU that it purports to impose on all customers.

## II. ADOBE'S TERMS OF USE AND THEIR UNCONSCIONABLE DISPUTE RESOLUTION SECTIONS

### A. Variations of Adobe's TOU

#### *1. August 1, 2022 TOU*

Adobe seeks to bind its customers to Terms and Conditions it publishes on its website in the form of the TOU. *See* Dkt. 8, Dkt. 8-1. The version of the TOU Adobe submitted in support of its Motion is dated August 1, 2022 (the "2022 TOU"). *Id*. That iteration provides (among many other things) that the terms are self-updating:

> **1.5 Updates to Terms.** We may make changes to the Terms from time to time, and if we do, we will notify you by revising the date at the top of the Terms and, in some cases, we may provide you with additional notice. ***Any such changes will not apply to any dispute between you and Adobe arising prior to the date on which we posted the revised Terms incorporating such changes, or when the Terms otherwise become effective.*** You should look at the Terms regularly. Unless otherwise noted, the amended Terms will be effective immediately, and your continued use of our Services and Software confirm your acceptance of the changes. If you do not agree to the amended Terms, you must stop using our Services and Software and, if applicable, cancel your subscription.

*Id.* at 3 (emphasis added). Importantly, the foregoing language limiting future changes to disputes predating the change is contradicted later in the terms, in the DRC.

The DRP, Section 14 of the 2022 TOU is entitled "**Dispute Resolution, Class Action Waiver, Arbitration Agreement.**" *Id.* at 10. It purports to govern any disputes that may arise between Adobe and its customers, who it demands engage in a series of one-sided "dispute resolution" measures designed to prevent Adobe from facing ordinary consumer claims. It first demands that consumers—even those harmed in small amounts—individually participate in Adobe's "Notice of Claim and Required Information Dispute Resolution Process." *Id.* That Subsection (14.1, which contains the contractual limitations period Adobe presently seeks to enforce) purports to mandate that

> [i]f you have any concern or dispute that Adobe Customer Care is unable to resolve ("Claim"), you agree to first try to resolve the dispute informally and in good faith by contacting us and providing a written Notice of Claim to the address provided in section 18.2 (Notice to Adobe). ***The Notice of Claim must provide Adobe with fair notice of your identity, a description of the nature and basis of your Claim, and the relief you are seeking, including the specific amount of any monetary relief you are seeking, and cannot be combined with a Notice of Claim for other individuals***. If any dispute related to your Claim is not resolved within 60 days of receipt, any resulting legal actions must be resolved through either small claims court or final and binding arbitration, including any dispute about whether arbitration is required for the dispute, subject to the exceptions set forth below. Neither party shall initiate legal action until 60 days after the Notice of Claim is received. ***This agreement to arbitrate shall apply, without limitation, to all claims that arose or were asserted before the effective date of the Terms. The arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability or enforceability of the Terms or formation of the Terms, including whether any dispute between us is subject to arbitration (i.e., the arbitrator will decide the arbitrability of any dispute) and whether all or any part of these Terms are void or voidable. Claims related to the Terms, Services, or Software are permanently barred if not brought within one year of the event resulting in the Claim.***

*Id.* (emphasis added). In summary, Subsection 14.1 purports to require arbitration (or small claims court litigation) of all consumer claims (including delegating the fact of arbitrability to the arbitrator), but only after a consumer provides Adobe with an "individual" Notice of Claim

meeting Adobe's specifications. It also purports, contrary to the TOU's general language, to govern disputes predating a particular set of updates to the terms, and to impose a one-year limitations period on all claims. *Id.* This dynamic, though, merely sets the table for the provision's most oppressive terms.

The TOU's Subsection 14.2 on "Arbitration Rules" states that "[i] f you reside in the Americas, JAMS will administer the arbitration in Santa Clara County, California, USA, pursuant to its Streamlined Arbitration Rules and Procedures…In the event of a conflict between the rules of the arbitration provider and the Terms, including with respect to the assessment of the fees and costs of arbitration, the Terms will govern." *Id.* at 10-11. After forcing all consumer claims into arbitration (subject to compliance with Adobe's onerous notice and 60-day delay requirement) Subsection 14.4 of the TOU, titled "Arbitration Fees and Costs[,]" seeks to deter the filing of any claims in arbitration that are brought by customers who share representation with other customers. *Id.* Adobe states that:

> Payment of all filing, administration, and arbitrator fees and costs of arbitration will be governed by the rules of the arbitration provider***, except that to the extent that you bring a Claim as part of a Coordinated Action, we agree that the parties will equally share all of the fees and costs of arbitration*** (to the extent that allocation is not already required under applicable rules). For purposes of this section, a "Coordinated Action" is ***any action in which you are represented by a law firm or collection of law firms that has filed numerous coordinated individual arbitration demands of the same or similar nature against Adobe within a short time.*** Notwithstanding the above, if you are unable to afford fees or costs of arbitration, Adobe will pay them. If the arbitrator finds that either the substance of a Claim or the relief sought in arbitration was frivolous, or a Claim was brought for an improper purpose, the parties may seek to re-allocate the fees and costs of arbitration, according to the rules of the arbitration provider.

*Id.* at 11 (emphasis added). Of course, the DRP also seeks to prohibit class actions. *Id.* at 10.

In sum, the 2022 TOU both disclaims and claims retroactive applicability, requires consumers to provide individual notice of their claims, and substantially multiplies the cost[2] of arbitration for any customer whose counsel represents (as Plaintiffs' counsel does)[3] "numerous" other customers.

2. ***February 17, 2024 TOU***

[2] *See* Section I(C)(1).

[3] *See* Declaration of Nicholas A. Coulson ISO Plaintiffs' Opposition ("Coulson Decl.") ¶2.

Adobe updated the TOU on February 14, 2024 (the "Feb. 2024 TOU"), claiming that they became effective that same day. Coulson Decl. ¶10, Ex. C. This version retains Section 1.5 regarding "Updates to Terms[,]" adding a single sentence (after the first sentence of the prior version) that states "Adobe will not make changes that have the effect of imposing additional fees or charges without providing additional notice." *Id.* p. 6. The "Notice of Claim and Required Information Dispute Resolution Process" subsection is identical to the prior TOU, except it shortens the 60 day period to 30 days. *Id.* p. 23. The class action waiver, arbitration rules, and "Coordinated Action" provisions are substantially identical to the 2022 TOU. *Id.* p. 34.

3. ***June 18, 2024 TOU***

The TOU were again updated on June 18, 2024, claiming to take immediate effect. Coulson Decl. ¶11, Ex. D. They retain substantially similar language for each of the clauses discussed in the prior versions. *Id.* at 8, 37-46.

4. ***October 3, 2025 TOU***

Remarkably, Adobe issued an update to the TOU on October 3, 2024 (the "Post-filing TOU"), nearly two months after this case was filed and three days before Adobe filed the instant motion. Coulson Decl. ¶12, Ex. E. This version nakedly attempts to modify the arbitration provision in a way that Adobe ostensibly hopes might actually be enforceable. The Post-filing TOU keeps the "Updates to Terms" language, which purports to carve out previously-arisen disputes from TOU modifications." *Id.* at 7. But it rewrites the "Arbitration Rules" and "Arbitration Fees and Costs" sections in a gambit to impose, for the first time, arguably defensible provisions regarding customers who share counsel. It provides that in addition to JAMS' Streamlined Arbitration Rules, arbitration disputes will be governed by JAMS' "Mass Arbitration Procedures and Guidelines for any action in which you are represented by a law firm or collection of law firms that has filed at least 25 arbitration demands of a similar nature against Adobe within a year." *Id.* at 35-36. Abandoning the longstanding requirement that customers in a "Coordinated Action" share equally in the "fees and costs" of the proceedings, the Post-filing TOU provide that "[p]ayment of all filing, administration, and arbitrator fees and costs of arbitration will be governed by the rules of the arbitration provider." *Id.* at 36.

## III. PLAINTIFFS' EFFORTS TO ENGAGE IN ADOBE'S DISPUTE RESOLUTION PROCESS.

Tellingly, Adobe fails to mention Plaintiffs *did* comply with Adobe's pre-dispute "Notice" requirement, despite its onerous nature. Prior to the initiation of this litigation, Plaintiffs attempted, over the course of multiple months, to participate in Adobe's informal resolution process, only to be met with refusal. On April 2, 2025, Plaintiffs' counsel submitted individual Notices of Claim to Adobe for each of 10,926 claimants, including the Plaintiffs. Each of these Notices was a separate document containing the information Section 14.1 of the various iterations of the TOU purports to require. Among other details, the Notices identified: (1) Plaintiffs' first and last names; (2) that the dispute involved claims for violations of California law, including the Consumer Legal Remedies Act, the Unfair Competition Law, the False Advertising Law, and the Automatic Renewal Law, specifically arising from the imposition of deceptive cancellation or termination fees for products; and (3) the specific amount of monetary relief sought. *See Coulson Decl.* ¶¶3-6. These details readily satisfy the written requirements of Section 14.1 of the TOU and provide more than fair notice to initiate an informal dispute resolution process.

However, rather than engaging in its own informal dispute resolution process, Adobe refused to credit these Notices, claiming, among other things, that (i) the Notices were considered to be "combined" because Plaintiffs' counsel sent multiple, individual notices to Defendant at the same time, (ii) the Notices were not sufficiently different from one another, (iii) the Notices did not provide sufficiently specific details as to Adobe's own ETF, as to how Plaintiffs' believe they were deceived, and in general, were not sufficiently personalized, (iv) the Notices asked for the same amount in monetary relief, and (v) the Notices did not detail how the figure was calculated. *Id.* None of these requirements appear in the DRC or anywhere else. Further correspondence with Adobe over the Notices of Claim and initiating the dispute resolution process were unproductive, with Adobe refusing to reconsider its position. It now seeks to use its own recalcitrance to bar the courthouse doors to Plaintiffs.

## LEGAL STANDARDS

Adobe moves to dismiss the Complaint based on lack of standing[4] under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Adobe also moves to strike Plaintiffs' class allegations under Federal Rule of Civil Procedure 12(f).

### I. RULE 12(b)(1)

Rule 12(b)(1) allows a defendant to move for dismissal for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When considering a Rule 12(b)(1) challenge to subject matter jurisdiction, the Court is not constrained to the pleadings and may "hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). "However, where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).

### II. RULE 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) must be denied where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp., v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations and construes them in the light most favorable to the plaintiff. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). Materials outside the complaint can be considered on a Rule 12(b)(6) motion if they are incorporated by reference

---

[4] Defendant appears to conflate constitutional and statutory standing. While its motion relies in part on Rule 12(b)(1) in its motion, its "standing" arguments all relate to statutory standing. But "motions challenging Article III standing should be brought under Rule 12(b)(1) while motions challenging statutory standing should be brough under Rule 12(b)(6))." *Viral DRM LLC v. Seven W. Media Ltd*., 768 F. Supp. 3d 1025, 1028 (N.D. Cal. 2025) (citing *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174-75 (9th Cir. 2004)).

COULSON P.C.

therein or otherwise judicially noticeable. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### III. RULE 12(f)

Federal Rule of Civil Procedure 12(f) provides that a court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are regarded with disfavor because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *McEnery v. McEnery*, 621 F. Supp. 3d 1059, 1065 (N.D. Cal. 2022) (quoting *Z.A. ex rel. K.A. v. St. Helena Unified Sch. Dist*., No. C 09-03557 JSW, 2010 U.S. Dist. LEXIS 12858, at *2 (N.D. Cal. Jan. 25, 2010)). "Because the class certification stage is the more appropriate time to consider striking a class allegation, motions to strike class allegations during the pleading stage are particularly disfavored." *Davis v. Shutterstock, Inc.*, No. 2:23-cv-01241-KJM-DB, 2024 U.S. Dist. LEXIS 136520, at *8 (E.D. Cal. July 31, 2024); *Hartranft v. Encore Capital Grp., Inc*., 543 F. Supp. 3d 893, 926 (S.D. Cal. 2021).

## ARGUMENT

### I. ADOBE'S DISPUTE RESOLUTION CLAUSE IS UNCONSCIONABLE AND SHOULD BE STRICKEN IN ITS ENTIRETY.

Adobe argues that Plaintiffs' Complaint should be dismissed based on the DRP in the 2022 TOU, and Plaintiffs' alleged failure to comply with requirements therein. While Plaintiffs' *did* comply with the "notice" requirement, the DRP is unenforceable because it is riddled with unconscionability. This likely explains why Adobe decided to seek dismissal on the merits rather than attempting to enforce its "requirement" that any disputes be brought in arbitration, not a court (and relatedly, why Adobe is attempting to resurrect its arbitration provision by amending the TOU three days before it filed this motion).

Adobe's attempted imposition of enormous arbitration costs and expenses on any potential claimant who shares counsel with other Adobe customers is fatal to its arbitration clause. The invalidity of the arbitration clause damns Adobe's class action waiver. And its "pre-dispute" procedures and contractual shortening of the limitations period are each independently

unconscionable. Taken together, the dispute resolution section is so riddled with unconscionability that the section as a whole can be given no effect.

**A. Standard for Unconscionability.**

Under California Civil Code Section 1670.5, a court may refuse to enforce an unconscionable contract or clause, enforce the remainder of the contract without the unconscionable provision, or limit its application to avoid an unconscionable result. In California, unconscionability has both procedural and substantive components, and while both must be present, they need not exist in equal measure. *See Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015) ("[T]he doctrine of unconscionability has both a procedural and substantive element."); *Gostev v. Skillz Platform, Inc.*, 88 Cal. App. 5th 1035, 1054-55 (2023) ("Both procedural and substantive unconscionability must be shown for the defense to be established, but they need not be present in the same degree"); *Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084, 1093 (2021) ("California courts employ a sliding scale to determine unconscionability, the more substantively oppressive the contract terms, the less evidence of procedural unconscionability is required to conclude the terms are unenforceable, and vice versa").

**B. Adobe's Dispute Resolution Section, Including Each of its Components,[5] is Procedurally Unconscionable.**

Procedural unconscionability focuses on oppression and surprise, namely whether the contract was imposed without meaningful choice and whether key terms were hidden or obscured. See *Fisher*, 66 Cal. App. 5th at 1094-95. Adobe's TOU is procedurally unconscionable in several ways. First, the TOU's status as a contract of adhesion establishes a measure of procedural unconscionability. The TOU is a classic contract of adhesion, as it is a standardized agreement presented to all Adobe consumers on a take-it-or-leave-it basis, with no opportunity for negotiation. *See Intershop Communications AG v. Superior Court*, 104 Cal.App.4th 191, 201 (2002) (noting that an adhesion contract is "a standardized contract … imposed upon the subscribing party without an opportunity to negotiate the terms"); *Fisher v. MoneyGram Int'l*, Inc., 66 Cal. App. 5th 1084, 1095 (2021) (finding an adhesive contract where the plaintiff "had no

[5] This specifically includes the "delegation clause" in the arbitration provision, which purports to delegate gateway issues of arbitrability to an arbitrator.

bargaining power in the transaction," "was presented with the preprinted Send Form to fill out and sign," and had "no opportunity to negotiate"). The "adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability." *Sanchez v. Superior Court*, 108 Cal. App. 5th 615, 626 (2025) (quoting *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 915 (2015)).

Adobe's superior bargaining power compounds the procedural unconscionability. Consumers, who are often legally unsophisticated, are unlikely to grasp the implications of clauses waiving class action rights, delegating arbitrability, or imposing forum selection and carve-outs. *See Pinela v. Neiman Marcus Grp., Inc*., 238 Cal. App. 4th 227, 243 (2015) (finding delegation clause was presented on a take-it-or-leave-it basis, making it procedurally unconscionable; noting that courts recognize arbitrability delegation is an arcane issue unlikely to be understood by laypersons, especially where a complex choice of law clause adds further confusion).

The purposeful obfuscation of the TOU further adds to the procedural unconscionability. During the enrollment process, the TOU is presented and accessible only through a hyperlink presented in small typeface and buried in an inconspicuous paragraph at the end of the process. Compl. ¶¶ 59-66. Once accessed on a separate webpage, the dispute resolution clause is hidden (in the form submitted by Defendant, on the tenth of twelve densely-worded pages of small text) in multi-layered provisions without sufficient emphasis to draw attention to the critical terms. *Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084, 1103-04 (2021) (finding "tiny font size alone weighs heavily in making [defendant's] [a]rbitration [p]rovision procedurally unconscionable" and that inconspicuous placement of the arbitration provision furthers establishes procedural unconscionability). Taken together, the above factors establish substantial procedural unconscionability.

### C. Together and Independently, Adobe's Dispute Resolution Requirements Are Substantively Unconscionable.

Substantive unconscionability examines whether the contract terms are overly harsh or one-sided. *Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084, 1104 (2021) ("Substantive unconscionability focuses on the actual terms of the agreement and evaluates whether they create overly harsh or one-sided results…[including] involving terms that are unreasonably favorable to the more powerful party"). Each of the primary provisions in Adobe's DRP—the pre-dispute

notice requirement (and its one-year unilateral limitations period), the arbitration provision, and the class action waiver—is substantively unconscionable. Beyond their individual unconscionability, they combined to form a DRP so riddled with unconscionability that even if there were an unoffending subpart, it should not be severed from the rest.

**1. The Arbitration Provision and Its "Delegation Clause" Are Unconscionable.**

The DRP makes arbitration unreasonably expensive as to jointly represented consumers. *Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1574 (2009). The DRP would require any consumer who is represented by counsel who also represents consumers addressing "the same or similar claims," to "equally share all of the fees and cost or arbitration." TOU, Section 14.4. Recent decisions from this District discuss the unconscionability of provisions when arbitration provisions place consumers at a disadvantage based on their counsel's representation of clients with similar claims, avoiding the disadvantage would require them to "find different counsel, which affects the right to counsel of their choice or indeed, the ability to find any counsel at all: where the individual claims are small (as consumer claims often are), it may be difficult to find an attorney who represents only a single or small number of similarly situated clients." *Pandolfi v. Aviagames, Inc.*, No. 23-cv-05971-EMC, 2024 LX 180500, at *36 (N.D. Cal. Sep. 4, 2024), *aff'd at Pandolfi v. Aviagames, Inc.,* No. 24-5817, 2025 LX 398047, at *1 (9th Cir. Aug. 27, 2025) (unpublished). This "chilling effect" reflects substantive unconscionability. *Id.* at *17.

Per the TOU, arbitration in the United States is to be administered by JAMS. TOU, Section 14.3. The filing fees for JAMS consumer arbitrations are $2,000, with $250 to be paid by the consumer and $1,750 to be paid by the company.[6] After the consumer pays their portion of the filing fee, the company is responsible for all additional costs, including "professional fees"

[6] Plaintiffs request that the Court take judicial notice of JAMS' Arbitration Schedule of Fees and Costs. Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). JAMS' arbitration fees can be "accurately and readily determined" from JAMS' public website at https://www.jamsadr.com/arbitration-fees.

COULSON P.C.

(arbitrator compensation, at a minimum thousands of dollars per case[7]), and JAMS' 13% fees based thereupon. Under the DRP, initiating arbitration would cost each jointly-represented consumer at least $1,000, with the total JAMS' fees being well in excess of that amount. The total costs of initiating and pursuing arbitration would necessarily be substantially larger than Plaintiffs', and most other Adobe consumers', claims. In comparison, consumers who agree to bring a claim individually are assessed only a fee of $250. As in *Parada*, this TOU term is substantively unconscionable to a high degree because it unreasonably increases the cost of pursuing arbitration for jointly represented individuals to thousands of dollars, requires consumers to arbitrate separately and bear one-half of the costs due to the prohibition on class actions, and the cost of initiating arbitration is substantially larger than the value of claims. 176 Cal. App. 4th at 1574.

Section 14.2, which dictates the division of arbitration fees and costs, effectively strips consumers of a meaningful mechanism for redress in arbitration by making it prohibitively expensive to challenge Adobe's conduct in a collective manner. It does so before a consumer can even receive a determination regarding the threshold matters of arbitrability Adobe purports to delegate to the arbitrator. The primary purpose of such a term, if not the only purpose, is to discourage viable claims against Adobe.

**a. Because the Arbitration Provision is Unconscionable, The Class Action Waiver is Invalid Under *Discover Bank*.**

Where, as here, a class action waiver is not coupled with a valid arbitration provision, California's *Discover Bank* rule on unconscionability applies. *Suski v. Marden-Kane, Inc.*, No. 21-cv-04539-SK, 2022 U.S. Dist. LEXIS 157448, at *13 n.1 (N.D. Cal. Aug. 31, 2022); *see also, Jeong v. Nexo Capital Inc.*, No. 21-cv-02392-BLF, 2023 U.S. Dist. LEXIS 54152, at *11, n.1 (N.D. Cal. Mar. 29, 2023) ("Although the United States Supreme Court held that Federal Arbitration Act preempts the *Discover Bank* rule when the rule would require classwide

[7] As of 2017, JAMS arbitrator rates "rang[ed] from $400 per hour to $15,000 or more per day." *Trends in Arbitrator Compensation*, American Bar Association Dispute Resolution Magazine Spring 2017, available at https://www.americanbar.org/content/dam/aba/publications/dispute_resolution_magazine/spring2017/3_rothman_trends_in_arbitrator.pdf (last visited Oct. 20, 2025); *see also* Coulson Decl. ¶13, Ex. E.

COULSON P.C.

arbitration…the parties do not dispute that the rule remains in force when a class waiver is not coupled with an arbitration provision").

The class action waiver in the TOU is in its own Subsection, separation from the TOU's arbitration provision, making it a standalone class action waiver. Adobe also seeks to enforce the class waiver separate from the arbitration provision, further demonstrating its status as a standalone provision. Accordingly, the class action waiver must be evaluated as a standalone provision and California's *Discover Bank* rule applies to evaluating its unconscionability.

*i. The Class Action Waiver is Unconscionable Under the Discover Bank Rule.*

Under California's *Discover Bank* rule, courts apply a three-part inquiry to determine whether a class action waiver in a consumer contract is unconscionable:

(1) Whether the agreement is a consumer contract of adhesion drafted by a party that has superior bargaining power;

(2) Whether the agreement occurs in a setting in which disputes between the contracting parties predictably involve small amounts of damages; and

(3) Whether it is alleged that the party with the superior bargaining power had carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money.

*Discover Bank v. Superior Court of Los Angeles*, 36 Cal. 4th 148 (2005).

All three parts of California's *Discover Bank* test are met in this matter. First, Adobe's TOU is a contract of adhesion as it is a standard agreement that applies to all Adobe consumers and is not open for negotiation or change. *Shroyer v. New Cingular Wireless Servs*., 498 F.3d 976, 983 (9th Cir. 2007) ("[a] contract of adhesion is defined as "a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms").

Second, the Adobe TOU "occurred in a setting in which disputes between the contracting parties predictably involve small amounts of damages." Discover Bank, 36 Cal. 4th at 162.. The damages at issue relate to modest monthly fees and early termination fees. At most, Plaintiffs and the putative Class Members suffered individual damages in the hundreds of dollars, an "objectively small amount." *See, e.g.*, *Shroyer v. New Cingular Wireless Servs*., 498 F.3d 976, 984 (9th Cir.

2007) (concluding that the second element of the *Discover Bank* test was met where plaintiffs suffered individual damages in the hundreds of dollars, which was an "objectively small amount, and a smaller figure than the $ 1,000 amount that the [California] Court of Appeal in *Cohen* [*Cohen v. DIRECTV, Inc*., 142 Cal. App. 4th 1442 (2006)] found to be a small enough sum to satisfy the second element of the *Discover Bank* test").

Third, the Plaintiffs' Complaint "allege[s] that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Discover Bank*, 36 Cal. 4th at 162. Plaintiffs' Complaint alleges that, for the purposes of increasing profit, Adobe deliberately induces unwitting consumers to enter into the ABM plan by designing and implementing an unfair and deceptive process that hides, obscures, and misrepresents the nature and terms of the ABM subscription plan, including, but not limited to, the existence of a one-year commitment, early termination fee, and automatic renewal.

In addition to satisfying the *Discover Bank* test, the class action waiver is procedurally and substantively unconscionable for the reasons identified in Section A ("Adobe's Dispute Resolution Clause Is Unconscionable and Unenforceable in Its Entirety"). Substantive unconscionability arises when contract terms are overly harsh, unduly oppressive, or so one-sided as to shock the conscience—particularly when they grant disproportionate advantages to the more powerful party. *See Ali v. Daylight Transp., LLC*, 59 Cal. App. 5th 462, 477 (2020).

Adobe's class action waiver, when viewed in context with the surrounding dispute resolution provisions, exemplifies the kind of one-sided and oppressive terms that support a finding of substantive unconscionability. Not only does the TOU strip consumers of the right to pursue collective relief through class actions, but it also imposes additional procedural barriers that make it disproportionately difficult to pursue small-dollar claims. These include burdensome informal dispute resolution requirements and arbitration fee-shifting provisions that deter collective action—provisions that serve to insulate Adobe from accountability rather than facilitate fair resolution.

Plaintiffs' experience with Adobe's informal dispute resolution process underscores the unconscionable nature of the terms. In practice, Adobe retains unilateral control over the process,

COULSON P.C.

using it not as a genuine avenue for resolving disputes, but as a gatekeeping mechanism that obstructs consumer claims. This structure enables Adobe to retain small amounts of money from numerous consumers while shielding itself from meaningful legal challenge, which is precisely the type of imbalance the doctrine of substantive unconscionability is designed to prevent.

Finally, Defendant's selective invocation of the class action waiver of its TOU—while declining to seek to compel arbitration pursuant to the same TOU and refusing to engage in good faith in its own informal dispute resolution process—further reflects a calculated effort to shield itself from liability and evade accountability across all forums.

As all three parts of California's *Discover Bank* test are satisfied, and there are additional procedural and substantive defects that establish unconscionability, Adobe's class action waiver is unenforceable based on unconscionability and should not bar Plaintiffs' claims.

**2. The One Year Limitations Period is Unconscionable.**

DRP imposes a one-year limitations period, which is significantly shorter than the statutory periods for claims under the CLRA (three years), the UCL (four years), the FAL (three years), and the common law claims (three or four years). Courts have repeatedly found such shortened periods to support a finding of substantive unconscionability. *See Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084, 1105 (2021) (finding that one-year limitation in consumer arbitration clause supported finding of substantive unconscionability, as it was "considerably shorter than the otherwise applicable four-year limitations period"); *Pandolfi*, 2024 LX 180500, at *37 (unidirectional one year limitation "is substantively unconscionable as it significantly shortens the limitations period for Plaintiffs' statutory claims" of three to four years); *Dennison v. Rosland Capital LLC*, 47 Cal.App.5th 204, 212 (2020) (one-year arbitral limitations period, compared with four years under the applicable statute of limitations, severely shortened the time for plaintiff to bring his claims and, together with one-sidedness of contract, supported a finding of substantive unconscionability); *Nyulassy v. Lockheed Martin Corp.*, 120 Cal.App.4th 1267, 1283, n.12 (2004) ("the shortened limitations period … is one factor leading us to hold that the contract is substantively unconscionable").

Notably, as in *Dennison* and *Pandolfi* the one-year limitation is unidirectional; it does not purport to apply to claims Adobe might bring against consumers. The DRP would significantly shorten the limitations period for consumers without any corresponding limitation or obligation on Adobe. This term is substantively unconscionable to a high degree.

**3. The Pre-Dispute Notice Requirement is Unconscionable.**

Second, the DRP imposes an onerous, mandatory one-sided informal dispute resolution process. Before initiating any legal action, consumers are required to submit a detailed "Notice of Claim" containing specific information, including their identity, the nature and basis of the claim, the relief sought, and the exact monetary amount requested. TOU, 14.1. Critically, the sufficiency of this notice is left entirely to Adobe's discretion, giving the company unilateral authority to determine whether a consumer has met the threshold to proceed. This structure not only places an unreasonable burden on lay consumers unfamiliar with legal standards but also creates a mechanism for Adobe to delay or deny access to judicial remedies, as it did with Plaintiffs as described above in Section C under "Background." Courts have recognized that such procedural hurdles, when coupled with discretionary gatekeeping by the drafting party, are indicative of a substantively unconscionable scheme designed to deter legitimate claims.

**D. Regardless of Enforceability, Adobe's Dispute Resolution Clause Does Not Bar Plaintiffs' Claims.**

Even if the Court determines that Adobe's informal dispute resolution provision constitutes a condition precedent, Plaintiffs have satisfied its requirements through their good faith efforts to initiate and participate in the process as described above in Section C under "Background." Now, Adobe seeks to weaponize its own obstruction as a basis for dismissal, arguing that Plaintiffs failed to comply with the very process Adobe refused to honor. This contradiction underscores Adobe's intent not to resolve disputes, but to avoid accountability. Arbitration would have been equally futile, and as detailed herein, Plaintiffs challenge the enforceability of the entire dispute resolution framework.

Alternatively, Plaintiffs are excused from performance. Under California law, when one party prevents the other from fulfilling a condition precedent, the burdened party is excused from compliance. *City of Hollister v. Monterey Ins. Co.*, 165 Cal. App. 4th 445, 490 (2008) ("It is

hornbook law that where one contracting party prevents the other's performance of a condition precedent, the party burdened by the condition is excused from performing it, and the benefited party's duty of performance becomes unconditional."). Adobe's obstructionist conduct squarely triggers this principle.

## II. PLAINTIFFS SUFFICIENTLY ALLEGE EACH CAUSE OF ACTION.

Defendant contends that the Complaint should be dismissed under either Rule 12(b)(1) and/or 12(b)(6) for lack of standing and/or failure to state a claim. MTD 11. As an initial matter, Plaintiffs note that Defendant does not clearly delineate the specific claimed bases for its arguments—Rule 12(b)(1) and/or 12(b)(6)—leaving ambiguity as to whether certain parts challenge the Court's subject matter jurisdiction, the sufficiency of the pleadings, or both. This lack of clarity complicates Plaintiffs' ability to respond precisely and invites confusion regarding the applicable legal standards. To the extent Defendant seeks dismissal under Rule 12(b)(1), Plaintiffs respectfully submit that the Complaint adequately alleges standing and jurisdictional facts. To the extent the motion proceeds under Rule 12(b)(6), Plaintiffs have sufficiently stated claims under the relevant legal theories.

### A. The One-Year TOU Limitations Period Is Independently Unconscionable and Unenforceable.

Defendant argues that Plaintiffs' claims are barred by the limitations period in the TOU that reads: "Claims related to the Terms, Services, or Software are permanently barred if not brought within one year of the event resulting in the Claim." MTD 12.

Even if the Court declines to find the TOU's dispute resolution section as a whole to be unconscionable and unenforceable, it should nevertheless find that the TOU's one-year limitations period is independently unconscionable and unenforceable for the reasons stated in Section A.

### B. Plaintiffs Sufficiently Allege Reliance and Satisfy the Requirements of Rule 9(b).

Defendant's argument that "Plaintiffs have not alleged actual reliance on any Adobe specific statement or omission," and "fail to explain what specifically misled them," MTD 13, misapplies the law. Plaintiffs have sufficiently alleged reliance and described Adobe's deceptive scheme with sufficient specificity to satisfy the requirements of Rule 9(b).

To state a claim under the California Consumer Legal Remedies Act ("CLRA"), the Unfair Competition Law ("UCL"), or for fraud, a plaintiff must plead three elements: a knowing misrepresentation [affirmative statement or omission], reliance, and damages. *Bartling v. Apple Inc*. (*In re Apple Processor Litig*.), No. 22-16164, 2023 U.S. App. LEXIS 24257, at *2-3 (9th Cir. Sep. 13, 2023) (CLRA and fraud); *In re Tobacco II Cases* (*Tobacco II*), 46 Cal. 4th 298 (2009) (UCL). Contrary to Defendant's assertion, Plaintiffs are not required to plead reliance on a "specific statement or omission." For reliance, a plaintiff needs to "simply prove that, had the omitted information been disclosed, they would have been aware of it and behaved differently." *Bartling v. Apple Inc*. (*In re Apple Processor Litig*.), No. 22-16164, 2023 U.S. App. LEXIS 24257, at *4 (9th Cir. Sep. 13, 2023) (quoting *Daniel v. Ford Motor Co*., 806 F.3d 1217, 1224 (9th Cir. 2015)).

Here, Plaintiffs sufficiently allege reliance by detailing that Adobe uses a standardized online enrollment process for consumers to purchase products that intentionally misrepresents and/or omits materials terms of the ABM subscription, including specifically the annual commitment and the existence and calculation of the ETF (Compl. ¶¶ 39-82), that Plaintiffs were unaware during enrollment that they were purchasing a year-long subscription with a hefty early termination fee (Compl. ¶¶ 94-95, 102), and that Plaintiffs would not have purchased the subscriptions or they would have cancelled their subscriptions earlier had they known of the true terms of the subscriptions (Compl. ¶¶ 131, 144, 155). This is all that is required to sufficiently plead reliance.

Defendant also improperly attempts to recast the fraud pleading standard under Rule 9(b), while simultaneously pointing to generalized or irrelevant portions of the Complaint. MTD 14-15. This approach again mischaracterizes the pleading burden and ignores the specific, extensive allegations of deceptive conduct described by Plaintiffs in the Complaint. Plaintiffs' Complaint details the location of the deception (Adobe's enrollment process), the precise misrepresentation and omissions (misleading enrollment format, language, and hiding of material terms related to subscription length, the existence of an ETF, and the calculation of the ETF), as well as real world examples of complaints by consumers related to those misrepresentations and omissions. Compl.

¶ 84. With these extensive details, the Complaint satisfies the requirements of Rule 9(b) and provides Adobe "with adequate notice as to what information it was supposed to disclose…to put [Adobe] on notice of the alleged defect." *Pereda v. GM LLC*, No. 21-cv-06338-JST, 2022 U.S. Dist. LEXIS 242771, at *30 (N.D. Cal. Dec. 9, 2022) (finding that plaintiff had plead omission with sufficient particularity by providing examples that implicate the defect, and details the origin of the defect, the location, and the precise problem).

### C. Plaintiffs Plausibly Allege that the ABM Plan is Deceptive.

Defendant cites to an opinion issued in *United States v. Adobe, Inc.*, No. 24-cv-03630-NW, 2025 U.S. Dist. LEXIS 87777 (N.D. Cal. May 2, 2025) to contend that, as a matter of law, "the annual term commitment of the ABM plan was not misleading," MTD 16. Defendant quotes the following paragraph in support:

> As to the plan term or duration, the Court finds that Adobe clearly and conspicuously disclosed that its APM plan[8] is an annual or yearly plan. A reasonable consumer would not be misled by this disclosure….The plan name is unavailable and uses diction and syntax understanding to ordinary consumers: 'Annual, paid monthly.' Thus, here, the Court finds that no reasonable consumer would believe based on the title and the context of the plan that its term was more or less than one year.

*United States v. Adobe, Inc.*, No. 24-cv-03630-NW, 2025 U.S. Dist. LEXIS 87777, at *27-28 (N.D. Cal. May 2, 2025).

As an initial matter, Defendant mischaracterizes the nature of the Court's determination, which was limited to the court's conclusion that the allegations, as plead *in that case*, failed to state a claim. *United States v. Adobe, Inc.*, No. 24-cv-03630-NW, 2025 U.S. Dist. LEXIS 87777, at *30 (N.D. Cal. May 2, 2025) Thus, Defendant's assertion that the dismissal is dispositive as a matter of law is inaccurate. But Defendant also isolates and misrepresents a single paragraph from the court order, which distorts, and fails to engage with, the meaning of the opinion. When read in context, that paragraph is part of a broader narrative. One paragraph below that cited by Defendant, the Court finds that "the Complaint plausibly alleges that Adobe did not clearly and conspicuously disclose…the ETF [early termination fee], and…the cancellation fee methodology for it, two material terms of the APM subscription." *United States v. Adobe, Inc.*, No. 24-cv-03630-NW, 2025

[8] The ABM plan has also been, at times, designated as "Annual, paid monthly" ("APM"). The name and acronym refer to the same plan described in the Complaint in this matter as the ABM plan.

COULSON P.C.

U.S. Dist. LEXIS 87777, at *28 (N.D. Cal. May 2, 2025). As Defendant is aware, these are also core premises of Plaintiffs' claims. Compl. ¶¶ 39-86, 91-92, 94, 104-105, 124, 128, 141, 152, 174. Moreover, the Court in that matter ultimately denied Adobe's motion to dismiss as to all counts and allowed the case to proceed. *United States v. Adobe, Inc.*, No. 24-cv-03630-NW, 2025 U.S. Dist. LEXIS 87777, at *39 (N.D. Cal. May 2, 2025).

### D. Plaintiffs Sufficiently Allege that the ABM Plan Constitutes an Automatic Renewal and/or Continuous Service, and that They were Injured as a Result.

Defendant contends that Plaintiffs' claims based on violations of the ARL must be dismissed because "neither [Plaintiff] alleges that her subscriptions were ever annually renewed." MTD 18. "The ARL exists to protect consumers from unwittingly consenting to services that continue until the consumer cancels or automatically renew at the end of a term." *Rutter v. Apple Inc.*, No. 21-cv-04077-HSG, 2022 U.S. Dist. LEXIS 82549, at *10 (N.D. Cal. May 6, 2022).

First, this argument fails as Defendant mistakenly confines its analysis to annual renewal events, ignoring the fact that the ABM plan's monthly charges constitute automatic renewals under the ARL. *See Davis v. Shutterstock, Inc.*, 2024 U.S. Dist. LEXIS 136520, No. 2:23-cv-01241-KJM-DB, at *3-4 (E.D. Cal. July 31, 2024) (treating plaintiff's allegations of an annual monthly billed subscription as a monthly automatic renewal under the ARL). As in *Davis*, Adobe's ABM plan is an annual monthly billed subscription that automatically renews monthly, which qualifies as an automatic renewal under the ARL. Plaintiffs do not merely allege that the ABM plan is a one-year automatic renewal; Plaintiffs specifically allege that Adobe deceptively markets the ABM plan as a monthly commitment, leading Plaintiffs to believe they were enrolling in a plan with monthly automatic renewals. Compl. ¶¶ 94, 102. Plaintiffs were then locked into a series of unwanted automatic monthly renewals beyond those they intended. Compl. ¶¶ 95, 99-100, 102, 104-106.

Defendant further ignores the ABM plan's status as a continuous service. Adobe's ABM plan constitutes a "continuous service" under the ARL because it is "a paid subscription [that] continues until the consumer cancels the service." Cal. Bus. & Prof. Code § 17601(a)(5); *Rutter v. Apple Inc.*, No. 21-cv-04077-HSG, 2022 U.S. Dist. LEXIS 82549, at *10 (N.D. Cal. May 6, 2022) ("Here, no one disputes that iCloud is both an "automatic renewal" and a "continuous service"

COULSON P.C.

COULSON P.C.

offering under the ARL because it automatically charges customers each month after they sign up for additional storage and continues to do so until they cancel."). As alleged in the Complaint, the ABM plan charges consumers, including Plaintiffs, on a regular monthly basis until the consumer cancels. Compl. ¶¶ 29, 40.

The Complaint alleges that Plaintiffs enrolled in the ABM plan for their respective products (Compl. ¶¶ 93, 101), that the ABM plan automatically renews and continues each month until cancelled (Compl. ¶¶ 29, 40), that Plaintiffs would not have purchased the subscriptions or would have cancelled sooner had they known the true terms (Compl. ¶¶ 94-95, 102, 131, 144, 155, 164, 171), and that they lost money continuing to pay for months of the ABM plan and/or paying an ETF (Compl. ¶¶ 99-100, 106). Such allegations are sufficient to establish that Plaintiffs experienced monthly automatic renewals and/or a continuous service and that they were harmed as a result.

### E. Plaintiffs Sufficiently Allege Statutory Standing as Consumers under the CLRA

Contrary to Defendant's argument, both Plaintiffs sufficiently allege their status as "consumers" under the CLRA. To state a claim under the CLRA, plaintiffs must be "consumers." The CLRA defines a "consumer" as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." Cal. Civ. Code § 1761(d). However, the CLRA does not require that the good or service be solely for personal, family, or household use. Courts interpreting the CLRA have recognized that plaintiffs can establish standing as "consumers" even when goods and services are used for both personal and business purposes. *Davis v. Clients on Demand, LLC*, No. 2:23-cv-10541 MWC (SSCx), 2025 U.S. Dist. LEXIS 96204, at *11-12 (C.D. Cal. May 19, 2025) (court found sufficient evidence that a reasonable factfinder could determine Plaintiff was a "consumer" with a primary personal purpose even in light of evidence of both personal and business use); *In re Ford Tailgate Litig.*, No. 11-cv-02953-RS, 2015 U.S. Dist. LEXIS 159534, at *37 (N.D. Cal. Nov. 25, 2015) (finding sufficient evidence from which a jury could conclude plaintiff purchase the car primarily for personal, family, or household use, despite evidence of use in connection with plaintiff's job).

The allegations in the Complaint regarding Plaintiff Wohlfiel support a reasonable inference that her Adobe Lightroom subscriptions were used, at least in part, for personal, household, or family purposes. Notably, the Complaint states that Plaintiffs "sought or acquired Defendant's goods and/or services for personal, family, or household purposes," (Compl. ¶ 149). While the factors motivating the purchase of these subscriptions included a photography job scheduled for November 2023 (Compl. ¶ 93), the Complaint alleges that these purchases occurred between July and September 2023, several months before the job itself. Importantly, the Complaint does not allege that Plaintiff Wohlfiel's purpose in purchasing the products was exclusively for business or professional use, and the nature of Lightroom, a product commonly used for both personal and professional photo editing, supports the inference of personal or mixed-use. After completing the job, Plaintiff Wohlfiel cancelled subscriptions over a period of several months, from November 2023 through January 2024. (Compl. ¶¶ 96, 100), during which time, various subscriptions remained active and accessible even after the conclusion of the photography event.

At this pleading stage, the Court must draw all reasonable inferences in Plaintiffs' favor, including the inference that Plaintiff Wohlfiel's use of the subscriptions extended beyond the scope of the initial business purpose and included personal or mixed-use, thereby qualifying her as a "consumer" under the CLRA. Alternatively, the Court should grant Plaintiffs leave to amend the Complaint to rectify any identified deficiencies on this issue.

**F. Allegations for Plaintiff Marquez are Sufficient to Establish "Consumer" Standing Under the CLRA.**

The allegations in the Complaint regarding Plaintiff Marquez establish that her Adobe Acrobat subscription was purchased for personal, household, or family use, qualifying her as a "consumer" under the CLRA. The Complaint does not allege any business or professional context for the purchase (Compl. ¶ 101) and specifically states that she "sought or acquired Defendant's goods and/or services for personal, family, or household purposes," (Compl. ¶ 149), which, in the aggregate, establish (at least the inference) that the subscription was acquired for personal purposes. Since at the pleading stage the Court must draw all reasonable inferences in Plaintiffs' favor, the Complaint sufficiently alleges Plaintiff Marquez's use of Adobe Acrobat was personal

in nature, thereby establishing her standing under the CLRA. Alternatively, the Court should grant Plaintiffs leave to amend the Complaint, because any deficiency could easily be remedied.

## III. PLAINTIFFS SHOULD BE GRANTED LEAVE TO ADD AN ALLEGATION, IN THE ALTERNATIVE, THAT THEIR REMEDIES AT LAW ARE INADEQUATE SUCH THAT THEY ARE ENTITLED TO EQUITABLE RELIEF.

Adobe argues that Plaintiffs fail to allege any entitlement to injunctive or other equitable relief. Dkt. 7, 28:1-29:2. It is true that decisions from this District have required plaintiffs seeking equitable relief in the alternative to their damages theories to specifically allege that they lack an adequate legal remedy, *see, e.g., Sullivan v. Built Brands LLC*, No. 24-cv-04565-JST, 2025 LX 444593, at *4 (N.D. Cal. Oct. 3, 2025), and that the Complaint complaints no such explicit allegation. It is also true that the Complaint does not specifically allege Plaintiffs' desire to rely on Defendant's advertising in the future such that they will not purchase the products though they would like to. Plaintiffs can readily remedy these defects (in addition to any other defects the Court may identify), and request that the Court grant them leave for that purpose. Such amendment would clearly not be futile. *See Little v. NatureStar N. Am., Ltd. Liab. Co.*, No. 1:22-cv-00232-JLT-EPG, 2024 U.S. Dist. LEXIS 163677, at *18 (E.D. Cal. Sep. 11, 2024) ("In consumer fraud cases, plaintiffs can satisfy the imminent injury requirement by showing they will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although they would like to.") (quoting *Davidson v. Kimberly-Clark Corp*., 889 F.3d 956, 970 (9th Cir. 2018); *Johnson v. Trumpet Behav. Health, LLC*, No. 3:21-cv-03221-WHO, 2022 U.S. Dist. LEXIS 3706, at *3 (N.D. Cal. Jan. 7, 2022) ("because *Sonner* was decided at a later posture, . . . if a plaintiff pleads that she lacks an adequate legal remedy, *Sonner* will rarely (if ever) require more this early in the case."); *Pereda v. GM LLC*, No. 21-cv-06338-JST, 2022 U.S. Dist. LEXIS 242771, at *36 (N.D. Cal. Dec. 9, 2022).

## IV. THERE IS NO BASIS TO STRIKE THE CLASS ALLEGATIONS.

Defendant's contention that the Court should strike Plaintiffs' class allegations under Rule 12(f) based on the class action waiver in Adobe's TOU (Section 14.2) is without merit. The class action waiver in Adobe's TOU (Section 14.2) is unconscionable, and therefore unenforceable. That waiver is the only basis for the motion to strike, but even were its invalidity uncertain, it would be improper to strike the class allegations.

Courts in this Circuit consistently decline to strike class allegations under Rule 12(f) at the pleading stage. *Rubio v. Marriott Resorts Hosp. Corp.*, No. 8:23-CV-00773-FWS-ADSx, 2023 U.S. Dist. LEXIS 211867, at *3 n.2 (C.D. Cal. Oct. 18, 2023 (noting that "motions to strike class allegations are disfavored" and accordingly denying Defendant's request to strike at the pleading stage); *Hartranft v. Encore Capital Grp., Inc.*, 543 F. Supp. 3d 893, 926 (S.D. Cal. 2021) ("[C]ourts disfavor motions to strike classwide allegations filed at the pleading stage or before plaintiff has had the opportunity to file a motion for class certification."); *Delux Cab v. Uber Techs., Inc.*, No. 16-cv-3057-CAB-JMA, 2017 U.S. Dist. LEXIS 57494, at *23 (S.D. Cal. Apr. 13, 2017) ("Rule 12(f) is not the proper procedural vehicle for challenging class claims.").

This is particularly true where, as here, the plaintiff raises arguments that a class waiver is unconscionable, as such claims may require further factual development and are, accordingly, not appropriately resolved on a motion to strike. See *Lipeles v. United Airlines, Inc.*, No. CV 23-7143-KK-MAAx, 2024 U.S. Dist. LEXIS 67526, at *15-16 (C.D. Cal. Apr. 11, 2024. Accordingly, the Court should deny Defendant's Motion to Strike pursuant to Rule 12(f) as it is not the proper procedural mechanism at the pleading stage to seek dismissal of class allegations, particularly based on an invalid class waiver.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss and Motion to Strike (except as to their request for equitable relief, regarding which they should be granted leave to amend). However, if the Court grants Defendant's Motion in any respect, the Court should grant Plaintiffs leave to amend. *See* Fed. R. Civ. P. 15(a).

Dated: October 21, 2025

**COULSON P.C.**

/s/ Nicholas A. Coulson

NICHOLAS A. COULSON, ESQ. (SBN 358903)
300 River Place Drive
Suite 1700
Detroit, Michigan 48207

T: (313) 644-2685
E: Nick@CoulsonPC.com

*Attorney for Plaintiffs and the Putative Class*

COULSON P.C.

Page 26

**Plaintiffs' Opposition to Defendant's Motion to Dismiss and Motion to Strike**