# Exhibit B

# Arnold & Porter

**Joseph Farris**
+415.471.3454 Direct
Joseph.Farris@arnoldporter.com

May 15, 2025

**VIA E-MAIL (NICK@COULSONPC.COM)**

Nicholas A. Coulson
Coulson P.C.
300 River Place Dr., Suite 1700
Detroit, MI 48207
(313) 644-2685

   Re: *Adobe Customer Claims*

Dear Mr. Coulson:

   This responds to your letter of May 6, 2025.

   In my prior letter of May 2, 2025, I notified you that the 10,926 boilerplate demand letters that you delivered on a thumb drive do not comply with Adobe's Terms of Use because they do not provide individualized notice of each Claimant's claim.[1]  Even for the small subset of Claimants that I identified in my letter as a random sample, your response provided no additional detail about the person's individual claim.

   Instead, you appear to take the position that you are under no obligation to provide any details regarding each claim and that Adobe instead must conduct its own investigation to attempt to divine what each person is claiming based solely on the form letter and user contact information provided.  This does not comply with the Terms of Use, which make clear that users must provide "a description of the nature and basis of [the] Claim."  You even acknowledge in your letters that the Claimants are not identically situated, contending that some customers were harmed because they were charged an Early Termination Fee (ETF) and that others were "deterred from cancellation upon learning of the fee."  Yet, the sample of letters that Adobe has reviewed are all identical in content and do not even make that rudimentary distinction.  Moreover, you admit that that you have made no effort to explain "how" or "why" any individual was allegedly deceived, and take the position that notice of how and why Claimants were deceived would only be necessary for "formal allegations of fraud" under Federal Rule of Civil Procedure 9(b). Again, this does not comply with the Terms of Use.

   You now also claim that the $1,000 monetary demands reflected in each letter are "offers to compromise" rather than "detailed damage itemizations." But the demands did not call these

---

[1] We do not object to receiving a single thumb drive as opposed to 10,000 thumb drives.  We object to getting 10,000+ identical demands on boilerplate form letters.

# Arnold&Porter

Nicholas A. Coulson
May 15, 2025
Page 2

"offers to compromise," it said they were "demands" for "monetary relief." And even assuming that they were not individualized demands for the "specific" monetary relief, this would be another reason why they would then fail to comply with the Terms of Use.

It is equally troubling that you do not deny the assertions in my letter that a number of Claimants do not even appear to have ever been paying Adobe customers or subscribers of an account that could have been subject to an ETF. Nor do you identify any basic diligence you did that would have given you a good faith basis to believe that they were. Absent even the ability to verify that basic information for a handful of your purported clients, it is no wonder that you also lack the ability to provide individual details about the rest of the 10,000+.

The informal dispute resolution process would be rendered meaningless if Claimants were permitted to proceed in the fashion that you suggest. If any of the Claimants that are actually paying Adobe customers who were subject to the possibility of ETF are instead willing to submit individualized notices that comply with Adobe's Terms of Use, Adobe remains open to discussing resolution of those claims on an individualized basis. If instead, you intend to file over 10,000 arbitration demands, as you state in your letter, Adobe reserves all rights.

Finally, Adobe reminds you that under Section 14.4 of the Terms of Use and if these cases were deemed to qualify for arbitration, they would certainly be a "Coordinated Action," for which the parties may be required to equally share all of the fees and costs of arbitration. Thus, for example, if any of the Claimants have used Adobe products as part of commercial activities, JAMS rules would provide that the allocation of fees you referenced in your letter would not be correct.

Sincerely,

Joe Farris