Douglas A. Winthrop (No. 183532)
douglas.winthrop@arnoldporter.com
Jeremy T. Kamras (No. 237377)
jeremy.kamras@arnoldporter.com
Joseph Farris (No. 263405)
joseph.farris@arnoldporter.com
Tommy Huynh (No. 306222)
tommy.huynh@arnoldporter.com
Mark E. Raftrey (No. 352610)
mark.raftrey@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone:   415-471-3100
Facsimile:   415-471-3400

*Counsel for Defendant*
*Adobe Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE WOHLFIEL and VIANCA MARQUEZ,<br><br>*Plaintiffs,*<br><br>v.<br><br>ADOBE INC.,<br><br>*Defendant.* | Case No. 5:25-cv-6562-NC<br><br>**DEFENDANT ADOBE INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND MOTION TO STRIKE**<br><br>Assigned to: Hon. Nathanael M. Cousins<br><br>Date:  Nov. 12, 2025<br>Time: 11:00 a.m.<br>Place: Courtroom 5, 4th Floor |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ....................................................... 1

II. ARGUMENT ...................................................................................................................... 2

    A.  Plaintiffs Agreed To Adobe's Terms Of Use ....................................................... 2

        1.  Except For Challenges To The Delegation Provision Itself, Challenges To The Unconscionability Of The TOU Are Delegated To An Arbitrator ...................................................................................... 2

        2.  In Any Event, The TOU Are Not Procedurally Unconscionable ................... 3

    B.  Plaintiffs Failed To Fulfill The Conditions Precedent To Filing Suit Set Forth In The TOU's Dispute Resolution Provisions ............................................. 6

    C.  Plaintiffs' Claims Fail As A Matter Of Law ......................................................... 7

        1.  Plaintiffs' Claims Are Barred By The One-Year Contractual Limitations Period ........................................................................................ 7

        2.  Plaintiffs Fail To Allege Reliance Sufficiently ............................................. 9

        3.  Plaintiffs' Claims Alleging That The "Annual, Billed Monthly" Plan Is Misleading Fail To State A Claim As A Matter Of Law ................... 11

        4.  Plaintiffs May Not Contest Compliance With CARL Or Allege Harm From Renewal Because They Did Not Renew Their Subscriptions ................................................................................................ 11

        5.  Plaintiffs Do Not Allege They Are Consumers As Required Under The CLRA ............................................................................................. 12

        6.  Plaintiffs Fail To Allege Any Entitlement To Injunctive And Other Equitable Relief ................................................................................ 13

    D.  Plaintiffs Cannot Pursue Class Claims Because The TOU Includes An Enforceable Class Waiver ................................................................................... 14

III. CONCLUSION ................................................................................................................. 15

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

5

*Aggarwal v. Coinbase, Inc.*,
    685 F. Supp. 3d 867 (N.D. Cal. 2023) ........................................................................4

6

7

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011).....................................................................................................15

8

*Bielski v. Coinbase, Inc.*,
    87 F.4th 1003 (9th Cir. 2023) ...................................................................................3, 7

9

10

*Bonhomme v. Uber Techs., Inc.*,
    2025 WL 1745729 (N.D. Cal. June 24, 2025)..........................................................5, 15

11

12

*Chou v. Charles Schwab & Co.*,
    2022 WL 1127384 (N.D. Cal. Mar. 22, 2022)................................................................4

13

*Darnaa, LLC v. Google, Inc.*,
    2015 WL 7753406 (N.D. Cal. Dec. 2, 2015) ..............................................................4, 9

14

15

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) .......................................................................................14

16

17

*Davis v. Clients on Demand, LLC*,
    2025 WL 2238724 (C.D. Cal. May 19, 2025) .............................................................13

18

*Davis v. Shutterstock, Inc.*,
    2024 WL 3618382 (E.D. Cal. July 31, 2024) ..............................................................12

19

20

*Dennison v. Rosland Cap. LLC*,
    47 Cal. App. 5th 204 (2020) ..........................................................................................8

21

22

*Discover Bank v. Superior Ct. of Los Angeles*,
    36 Cal. 4th 148 (2005) ..............................................................................................5, 15

23

*Fisher v. MoneyGram Int'l, Inc.*,
    66 Cal. App. 5th 1084 (2021) ....................................................................................4, 8

24

25

*Flores-Mendez v. Zoosk, Inc.*,
    2022 WL 2967237 (N.D. Cal. July 27, 2022)................................................................4

26

*In re Apple Processor Litig. (Bartling v. Apple Inc.)*,
    2023 WL 5950622 (9th Cir. Sept. 13, 2023) ..............................................................10

27

28

*In re Ford Tailgate Litig.*,
   2015 WL 7571772 (N.D. Cal. Nov. 25, 2015) ...................................................13

*Jeong v. Nexo Cap. Inc.*,
   2023 WL 2717255 (N.D. Cal. Mar. 29, 2023).................................................15

*Johnson v. Trumpet Behav. Health, LLC*,
   2022 WL 74163 (N.D. Cal. Jan. 7, 2022) .......................................................14

*Lipeles v. United Airlines, Inc.*,
   2024 WL 891792 (C.D. Cal. Jan. 9, 2024) ........................................................6

*Little v. NatureStar N. Am., LLC*,
   2024 WL 4151294 (E.D. Cal. Sept. 11, 2024) ................................................14

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016) .........................................................................5

*Monzon v. S. Wine & Spirits of Cal.*,
   834 F. Supp. 2d 934 (N.D. Cal. 2011) ..............................................................6

*Nyulassy v. Lockheed Martin Corp.*,
   120 Cal. App. 4th 1267 (2004) .........................................................................8

*Oberstein v. Live Nation Ent., Inc.*,
   60 F.4th 505 (9th Cir. 2023) .............................................................................4

*Pandolfi v. AviaGames, Inc.*,
   2024 WL 4051754 (N.D. Cal. Sept. 4, 2024) ...................................................8

*Pereda v. GM LLC*,
   2022 U.S. Dist. LEXIS 242771 (N.D. Cal. Dec. 9, 2022) ..............................11

*Price v. Apple, Inc.*,
   2022 WL 1032472 (N.D. Cal. Apr. 6, 2022) .....................................................5

*Ray v. Google LLC*,
   2023 WL 7305048 (N.D. Cal. Nov. 6, 2023) ....................................................4

*Singh v. Adobe Inc.*,
   2025 WL 2197142 (N.D. Cal. Aug. 1, 2025) .........................................2, 3, 4, 12

*Suski v. Marden-Kane, Inc.*,
   2022 WL 3974259 (N.D. Cal. Aug. 31, 2022) ................................................15

*Teyco Int'l v. Bosch Packaging Tech.*,
   2017 WL 7171718 (C.D. Cal. Aug. 15, 2017)...................................................9

*Tompkins v. 23andMe, Inc.*,
  840 F.3d 1016 (9th Cir. 2016) ...................................................................9

*United States v. Adobe*,
  2025 WL 1303419 (N.D. Cal. May 2, 2025) ...........................................11

*Wayne v. Staples, Inc.*,
  135 Cal. App. 4th 466 (2006) ....................................................................5

*Young v. Meta Platforms Inc.*,
  2025 WL 754064 (N.D. Cal. Mar. 10, 2025)..............................................6

## **Other Authorities**

Fed. R. Civ. P. 9(b) ...........................................................................10, 11

Fed. R. Civ. P. 12(b)(6)...............................................................................6

1

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

2        Plaintiffs Wohlfiel and Marquez concede that they agreed to Adobe's Terms of Use ("TOU")

3   when they purchased their annual subscriptions for Adobe Lightroom and Acrobat.  And they

4   concede that, if applied, various provisions of the TOU would bar their claims as alleged.

5   Specifically, they concede they failed to allege their compliance with the dispute resolution

6   requirements.  Resorting to extrinsic evidence, they argue that in fact they did comply, but even that

7   evidence shows that they did not.  They also concede they did not bring their claims within one year

8   as required.  And they concede the TOU bar class actions.  Each of these contractual obligations to

9   which Plaintiffs agreed is fatal to their claims.  Seeking to avoid them, Plaintiffs argue that all of

10  these provisions are unconscionable.  But that is not a question properly before the Court, and, in any

11  event, the law is otherwise.  These are standard provisions in a standard consumer terms of use,

12  regularly upheld by courts in this District, and they require that Plaintiffs' claims be dismissed.

13       Even if that were not so, Plaintiffs' claims are defective in myriad further ways.  Plaintiffs

14  acknowledge that they must allege reliance, but do not identify any allegation in which they

15  specifically assert that they relied on any of the alleged misstatements or omissions by Adobe.

16  Plaintiffs maintain that a subscription name that begins "Annual" and contains a total of just three

17  words does not convey an ***annual*** commitment to a reasonable consumer, notwithstanding Judge

18  Wise's holding that it does.  Plaintiffs maintain that an annual commitment with monthly installment

19  payments is a "renewal contract" or "continuous service" triggering CARL, but do not allege that

20  they renewed the contract or continued the service beyond their initial annual commitment.

21  Plaintiffs acknowledge that standing as a "consumer" under the CLRA requires that the products are

22  used at least "primarily" for personal purposes, but point to no (non-conclusory) allegation to that

23  effect (and one of them pleads facts affirmatively showing she is not a consumer).  Plaintiffs

24  acknowledge they must allege they lack an adequate remedy at law if they are to pursue equitable

25  relief, but cannot dispute that damages would remedy their alleged loss that is patently monetary;

26  instead, they seek leave to allege that injunctive relief is required so that they may "rely on

27  Defendant's advertising in the future" about the very terms about which they are suing.  This makes

28

**DEFENDANT'S REPLY ISO MOTION TO DISMISS AND STRIKE**
Case No. 5:25-cv-6562

no sense.  For each of these reasons, Plaintiffs' claims should be dismissed.

## II.    ARGUMENT

### A.    Plaintiffs Agreed To Adobe's Terms Of Use

Plaintiffs do not dispute, and thus concede, that they agreed to the TOU.  *See generally* Opp. at 9-18.  And although they take up a number of pages protesting various updates to the TOU over time, they do not specify any reason why those updates materially changed the provisions relevant here, are in any way disadvantageous to Plaintiffs as they have evolved over time, or have caused them any prejudice based on terms Adobe has sought to apply retroactively.  But what is clear is that Plaintiffs seek to avoid the TOU because the TOU as actually agreed to by Plaintiffs contain terms that require dismissal of the Complaint in its entirety.  *See infra* at Parts II(B), (C)(1) and (D).  Plaintiffs therefore argue those terms are unconscionable.  Those arguments fail.

#### 1.    Except For Challenges To The Delegation Provision Itself, Challenges To The Unconscionability Of The TOU Are Delegated To An Arbitrator

The TOU delegate to an arbitrator disputes relating to the "enforceability" of the TOU, including their purported unconscionability.[1]  *See* ECF No. 8-1 § 14.1; *Singh v. Adobe Inc.*, 2025 WL 2197142, at *7 (N.D. Cal. Aug. 1, 2025) (holding that Adobe's TOU "clearly and unmistakably delegate[] the gateway question of arbitrability to the arbitrator," including "Plaintiffs' unconscionability arguments").  Therefore, Plaintiffs are restricted to challenging the unconscionability of the delegation provision itself.  And while Plaintiffs technically recite that they are challenging that delegation provision, they fail to explain why the ***delegation provision itself*** is unconscionable (as opposed to why other terms in the TOU are allegedly unconscionable).  This is insufficient to carry their burden to show that it is unconscionable.  *Id.* at *6 ("While a party can challenge a delegation clause on unconscionability grounds, 'the party resisting arbitration must specifically reference the delegation provision and make arguments challenging

---

[1] All versions of Adobe's TOU cited by Plaintiffs provide: "The arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability or enforceability of the Terms or formation of the Terms, including whether any dispute between us is subject to arbitration (i.e., the arbitrator will decide the arbitrability of any dispute) and whether all or any part of these Terms are void or voidable." *See, e.g.*, ECF No. 8-1 § 14.1.

1   it.'") (citing *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1011 (9th Cir. 2023) (plaintiff adequately

2   challenged unconscionability of delegation provision where "he not only mentioned it, but crafted

3   arguments directly addressing its unconscionability")).

4           The Court should reject Plaintiffs' unconscionability arguments on this basis alone, and

5   need not otherwise consider Plaintiffs' unconscionability arguments.

6                   **2.      In Any Event, The TOU Are Not Procedurally Unconscionable**

7           To the extent the Court does consider Plaintiffs' challenges to other provisions of the

8   TOU as unconscionable, those arguments fail.  Plaintiffs first argue the TOU are procedurally

9   unconscionable because they were "purposeful[ly] obfuscat[ed]" and presented in an adhesion

10  contract.  Opp. at 10-11.  Both are wrong, and even if they were not, these assertions come

11  nowhere near meeting the threshold required for invalidating a consumer contract when the

12  consumer is perfectly free to select a different vendor if they object to the terms offered or

13  otherwise opt out of specific provisions.

14          *First*, Plaintiffs' obfuscation argument mirrors the one expressly rejected by the court in

15  *Singh*, 2025 WL 2197142, at *3-5, which involved the exact same enrollment process and TOU.

16  Plaintiffs here argue the TOU are obfuscated because they "[are] presented and accessible only

17  through a hyperlink presented in small typeface and buried in an inconspicuous paragraph at the

18  end of the process."  Opp. at 11.  In *Singh*, the plaintiffs likewise "insist[ed] they did not receive

19  reasonably conspicuous notice [of the TOU] because the paragraph containing the hyperlink is the

20  smallest font size on the entire page" and is "at the very bottom of the page."  *Singh*, 2025 WL

21  2197142, at *4 (cleaned up).  The *Singh* court rejected these arguments, holding that "a reasonable

22  user would have seen the advisal and been able to locate the Terms of Use via the hyperlink"

23  because: (1) "the advisal regarding acceptance of the [TOU] is conspicuously displayed directly

24  above the action button that a user must accept before subscribing"; (2) "the text directly above

25  the 'Agree and subscribe' button is bolded and states 'By clicking "Agree and subscribe," . . . you

26  also agree to the [TOU]' . . . which 'clearly denotes "that continued use will act as a manifestation

27  of the user's intent to be bound"'"; and (3) "the [TOU] hyperlink is conspicuously distinguished

28

from the surrounding text in bright blue font, making its presence readily apparent." *Id.* (cleaned

up) (citing *Oberstein v. Live Nation Ent., Inc*., 60 F.4th 505, 516 (9th Cir. 2023)).  The same

reasoning and conclusion apply here.

A ruling that Adobe's disclosures provided reasonably conspicuous notice of the TOU

would align not only with *Singh*, but also with the long line of Ninth Circuit precedent cited in the

Motion endorsing similar disclosures.  *See* MPA at 9-10.  Plaintiffs ignore these cases, *see* Opp. at

11, and instead rely solely on *Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084 (2021), to

argue that critical terms are "hidden."  Opp. at 11.  However, the facts of *Fisher* are miles apart

from those here.  *Fisher* involved a physical order form—not an online form with hyperlinked

disclosures—where the arbitration provision was "hidden on the back side of [the] money transfer

order form, in tiny six-point print that we deem virtually illegible."  66 Cal. App. 5th at 1090-91.

*Second*, even if the TOU were an adhesion contract (*but see infra*), because Plaintiffs had

meaningful alternative choices other than doing business with Adobe, "the level of procedural

unconscionability" would be only "slight."  *Darnaa, LLC v. Google, Inc.*, 2015 WL 7753406, at

*2 (N.D. Cal. Dec. 2, 2015) (finding only a "marginal" degree of procedural unconscionability in

YouTube terms even though YouTube was the "dominant" video-sharing website).  In case after

case with standard consumer contracts of adhesion where such alternatives were available, courts

in this District have found only a "slight" or "marginal" degree of  procedural unconscionability.

*See, e.g.*, *Ray v. Google LLC*, 2023 WL 7305048, at *8 (N.D. Cal. Nov. 6, 2023) (same);

*Aggarwal v. Coinbase, Inc.*, 685 F. Supp. 3d 867, 881 (N.D. Cal. 2023) (finding only "a minimal

degree of procedural unconscionability arising from the adhesive nature of the [contract]" where

"nothing in the record suggests that Coinbase was [p]laintiffs' only option for cryptocurrency

services") (citation omitted); *Flores-Mendez v. Zoosk, Inc.*, 2022 WL 2967237, at *2 (N.D. Cal.

July 27, 2022) (holding plaintiff did "not ma[k]e an adequate showing of procedural

unconscionability" because he "had meaningful market alternatives to Zoosk" and could have

"simply opt[ed] out of [Zoosk's] dating service"); *Chou v. Charles Schwab & Co.*, 2022 WL

1127384, at *6 (N.D. Cal. Mar. 22, 2022) ("The Agreement has only slight procedural

1    unconscionability because the plaintiffs had a choice concerning which brokerage service to

2    use."); *see also Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 482 (2006) ("[P]otential customers

3    have a wide range of choices other than shipping their packages at Staples . . . . There can be no

4    oppression establishing procedural unconscionability, even assuming . . . an adhesion contract,

5    when the customer has meaningful choices."). Here too, Plaintiffs were free to not to enter the

6    TOU and look for creative tools elsewhere.

7          Moreover, Adobe's TOU had an "opt out" provision applying to the arbitration provision

8    and class waiver, and an "agreement is not adhesive if there is an opportunity to opt out of it." *See*

9    *Bonhomme v. Uber Techs., Inc.*, 2025 WL 1745729, at *3 (N.D. Cal. June 24, 2025) (quoting

10   *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016)). In *Bonhomme*, the court

11   agreed with defendant that "the arbitration clause is not [procedurally] unconscionable because [it]

12   provides a procedure to opt out of the arbitration clause by emailing [defendant] within 30 days."

13   *Id.* Here too, users may opt out of Adobe's arbitration and class action waiver provisions within

14   30 days of starting their subscriptions (or within 30 days of the last update to Section 14 of the

15   TOU) by sending a written notice via mail or an email address provided in the TOU. ECF No. 8-1

16   § 14.6**.**

17         Plaintiffs' claims of substantive unconscionability are addressed as relevant below. But

18   because there is little-to-no procedural unconscionability present here, Plaintiffs bear the burden

19   of demonstrating substantial substantive unconscionability. *Price v. Apple, Inc.*, 2022 WL

20   1032472, at *3 (N.D. Cal. Apr. 6, 2022) ("Procedural and substantive unconscionability . . . are

21   evaluated on a 'sliding scale,' which means that the more evidence of procedural

22   unconscionability there is, the less evidence of substantive unconscionability is needed to render

23   the agreement unenforceable, *and vice versa*.") (cleaned up). They cannot. The Dispute

24   Resolution Procedures are "commonplace" (Part II(B), *infra*), the one-year contractual limitations

25   period is bidirectional between Plaintiffs and Adobe (Part II(C)(1), *infra*), and the class action

26   waiver does not run afoul of *Discover Bank* (Part II(D), *infra*). Plaintiffs cannot escape the

27   requirements of the TOU. They apply and control here.

28

**B.    Plaintiffs Failed To Fulfill The Conditions Precedent To Filing Suit Set Forth In The TOU's Dispute Resolution Provisions**

Plaintiffs' claims should be dismissed because the Complaint fails to allege compliance with the TOU's conditions precedent to filing a lawsuit, including that Plaintiffs try to resolve the dispute through Customer Care, provide "an individual written Notice of Claim [to Adobe] that includes notice of the claimant's identity, a description of the nature and basis of the claim, and . . . the specific amount of any monetary relief," and file in an appropriate forum.  MPA at 10-11 (citing *Lipeles v. United Airlines, Inc.*, 2024 WL 891792 (C.D. Cal. Jan. 9, 2024)).  Plaintiffs do not dispute that the Complaint lacks such allegations.  *See* Opp. at 7.  Instead, Plaintiffs improperly try to cure this pleading deficiency by referencing statements outside the Complaint— specifically, their counsel's Declaration attaching a partial exchange of letters between counsel for the parties.  But "a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss" that add "further factual allegations" to decide a Rule 12(b)(6) motion.  *Young v. Meta Platforms Inc.*, 2025 WL 754064, at *2 (N.D. Cal. Mar. 10, 2025) (cleaned up); *see also Monzon v. S. Wine & Spirits of Cal.*, 834 F. Supp. 2d 934, 941 (N.D. Cal. 2011) (accord).  Considering only the allegations in the Complaint, Plaintiffs' claims must be dismissed.

Even if the Court were to consider the Declaration and attachments, they do not establish compliance with the Dispute Resolution Procedures.  *First*, they do not attest that either Plaintiff contacted Customer Care.  *Second*, the Declaration describes—without attaching—the alleged Notices of Claim which Plaintiffs contend satisfy their obligations.  But as Plaintiffs admit, these Notices were submitted as part of a "set" of Notices for "more than 10,000 clients," which included the same boilerplate demand, which is partially pasted into the Declaration.  ECF No. 19 ¶¶ 3-4.  As noted in the Adobe letters in response, this notice-via-assembly line did not comply with the Dispute Resolution Procedures for multiple reasons, including because the alleged Notices were "combined" with other notices, did not describe each individual's claim, all demanded the same amount of monetary relief (which inherently could not be accurate), and, based on even a limited sampling, appeared to be rife with frivolous and/or unvalidated claims

- 6 -

1  (such as claims from non-existent customers or customers who were not charged ETFs).  *Id.* Ex. A

2  (Adobe Letter of May 2, 2025).  Plaintiffs also refused to provide further information after Adobe

3  responded and never took any other steps required by the Dispute Resolution Procedures.[2]  Far

4  from curing their failure to plead compliance with the Dispute Resolution Procedures, Plaintiffs'

5  submission with their Opposition *confirms* that they did not and that Adobe has not had a

6  meaningful opportunity to resolve Plaintiffs' claims in the manner Plaintiffs agreed.

7  Plaintiffs' fallback argument that the Dispute Resolution Procedures in the TOU are

8  unconscionable also fails.  Plaintiffs argue that these procedures are unconscionable because they

9  are "onerous" and "one-sided."  Opp. at 17.  In rejecting the same arguments in *Bielski v.*

10  *Coinbase*, the Ninth Circuit observed that such procedures "are commonplace and can be both

11  reasonable and laudable."  87 F.4th at 1014 (cleaned up).  Coinbase's pre-arbitration dispute

12  procedures, just like Adobe's procedures, required users to first "try resolving any dispute with

13  Coinbase informally, and if that fails, . . . [to] file a formal complaint with Coinbase before

14  initiating arbitration."  *Id.*  Reversing the district court, the Ninth Circuit held that there was only a

15  "low level of substantive unconscionability"—even though Coinbase's procedures imposed one-

16  sided obligations on users—because the procedures were not "overly harsh."  *Id.*  The same

17  reasoning and conclusion hold true here.

18  **C.    Plaintiffs' Claims Fail As A Matter Of Law**

19  **1.    Plaintiffs' Claims Are Barred By The One-Year Contractual Limitations Period**

20  Plaintiffs concede the TOU "imposes a one-year limitations period" for their claims and do

21  not dispute that they failed to file them within that period.  Opp. at 16-18.  Therefore, assuming

22  this term is enforceable, Plaintiffs' claims are time-barred on their face.  *See* MPA at 12-13.

23  Plaintiffs also do not contest the authority cited in the Motion confirming that courts regularly

24  affirm such contractual limitations periods, including as they apply to consumer protection

---

[2] Plaintiffs acknowledge that the exchange of letters attached to counsel's Declaration is incomplete, as Plaintiffs note that one letter was "not attached" on the claimed basis that "portions of it discuss settlement, and it reflects having been written pursuant to [Fed. R. Evid.] 408."  ECF No. 19 ¶ 8.  However, that letter did not provide any substantive additional details about Plaintiffs' claims.

1   statutes.  Plaintiffs instead argue the Court should deem the "shortened" limitations period here to

2   be substantively unconscionable because it is purportedly "unidirectional."  Opp. at 16-17.

3   Plaintiffs assert without support that the TOU "would significantly shorten the limitations period

4   for consumers without any corresponding limitation or obligation on Adobe."  *Id.* at 17.

5       But under its plain terms, the limitations period in the TOU applies to claims brought

6   pursuant to the TOU ***both*** by individuals subscribing to the TOU like Plaintiffs as against Adobe

7   ***and also*** by Adobe as against such individuals.  The TOU makes no distinction between the two:

8       **Neither party** shall initiate legal action until 60 days after the Notice of Claim is
        received. . . . *Claims related to the Terms, Services, or Software are permanently*
9       *barred if not brought within one year of the event resulting in the Claim.*
        . . .
10      If **either party** files a Claim in arbitration that could have been brought in small
        claims court, the other party may provide notice that it wants the case decided in
11      small claims court . . . Additionally, **either party** shall be entitled to apply for
        preliminary injunctive remedies (or an equivalent type of urgent legal relief) in any
12      jurisdiction . . . .

13  ECF No. 8-1 §§ 14.1, 14.5 (emphases added).  In other words, the TOU's limitations period is

14  bidirectional between Plaintiffs and Adobe rather than unidirectional.

15      All four cases on which Plaintiffs rely (Opp. at 16) are thus inapposite because they

16  involved unidirectional, shortened limitations periods.  *See Fisher*, 66 Cal. App. 5th at 1105 ("the

17  one-year statute of limitation . . . is inherently one-sided against complaining consumers");

18  *Pandolfi v. AviaGames, Inc.*, 2024 WL 4051754, at *11 (N.D. Cal. Sept. 4, 2024) (finding that the

19  "agreement's shortened limitations period appears to apply only to players, and not Avia");

20  *Dennison v. Rosland Cap. LLC*, 47 Cal. App. 5th 204, 212 (2020) ("The one-year statute of

21  limitations to bring claims in paragraph 15.9 applies only to Mr. Dennison."); *Nyulassy v.*

22  *Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1283 (2004) (finding that the employment

23  agreement limited "plaintiff's time for bringing a claim" but "none of the employer's rights

24  against the employee (including the statutory time for bringing suit against him)").

25      Where contractual limitations periods are bidirectional, the Ninth Circuit and courts therein

26  have routinely found no unconscionability and enforced them.  *Tompkins v. 23andMe, Inc.*, 840

27  F.3d 1016 (9th Cir. 2016) and *Darnaa, LLC v. Google, Inc.*, 2015 WL 7753406 (N.D. Cal. Dec. 2,

28

- 8 -

1   2015) are directly on point.  In *Tompkins*, the plaintiff—just as here—asserted claims under the

2   FAL, UCL, CLRA (Compl., 2013 WL 6497912 (N.D. Cal.)), and the terms of service included the

3   following bidirectional, one-year limitations period:  "You agree that regardless of any statute or

4   law to the contrary, any claim or cause of action arising out of or related to use of the Services or

5   the TOS must be filed within one (1) year after such claim or cause of action arose or be forever

6   barred."  840 F.3d at 1031-32 & n.8.  The Ninth Circuit held that this contractual limitations

7   period was not unconscionable because it was not "unfairly one-sided; the provision by its terms,

8   applies to claims brought by both parties."  *Id.* at 1033.  In so holding, the Ninth Circuit

9   distinguished a case that found "a *unilateral* clause shortening the limitations period added to the

10  unconscionability of the contract."  *Id.* (emphasis in original).

11       Likewise, in *Darnaa*, the terms of service included the following bidirectional, one-year

12  limitations period:  "any cause of action arising out of or related to the service must commence

13  within one (1) year after the cause of action accrues."  2015 WL 7753406, at *3.  The plaintiff's

14  action "commenced more than one year after the last wrongful act alleged in the complaint."  *Id.*

15  The defendants moved to dismiss the plaintiff's claims as time-barred.  *Id.*  The court granted the

16  motion, "find[ing] that the terms are not unconscionable" because "shortening the period to one

17  year in this case is not unreasonable."  *Id.* at *3-4; *see also, e.g.*, *Teyco Int'l v. Bosch Packaging

18  Tech.*, 2017 WL 7171718, at *1 (C.D. Cal. Aug. 15, 2017) (dismissing breach of contract claim

19  "as untimely under the limitations period" because the "Agreement includes a provision limiting

20  the time in which an action 'based on the terms and provisions of this Agreement' can be brought

21  to 'one (1) year following the date such claim first arose'").  This Court should therefore dismiss

22  all of Plaintiffs' claims as untimely.

23                    **2.     Plaintiffs Fail To Allege Reliance Sufficiently**

24       In response to Adobe's assertion that they have failed to allege reliance with specificity,

25  Plaintiffs double down on the vagueness of their Complaint by rehashing general allegations about

26  alleged misrepresentations or omissions without specifying what, if anything, Plaintiffs relied on.

27

28

- 9 -

1      Plaintiffs attempt to absolve themselves by arguing "all that is required to sufficiently

2 plead reliance" is to allege (a) that Adobe's enrollment process "intentionally misrepresents and/or

3 omits material terms of the ABM subscription, including specifically the annual commitment and

4 the existence and calculation of the ETF," (b) "that Plaintiffs were unaware during enrollment that

5 they were purchasing a year-long subscription with a hefty early termination fee," and (c) "that

6 Plaintiffs would not have purchased the subscriptions or they would have cancelled their

7 subscriptions earlier had they known of the true terms of the subscriptions." Opp. at 19. But the

8 missing piece of this litany is reliance. A laundry list of alleged misrepresentations and omissions

9 does not satisfy Rule 9(b). It makes the problem of their shotgun pleading more acute. Because

10 Plaintiffs fail to allege that they purchased their subscriptions ***because they relied on any specific***

11 ***alleged misrepresentation or omission***, their claims must be dismissed.

12      Plaintiff ignore the authority cited in Adobe's motion. MPA at 13-15. They instead rely

13 primarily on *In re Apple Processor Litigation (Bartling v. Apple Inc.)*, 2023 WL 5950622 (9th Cir.

14 Sept. 13, 2023). But *Bartling* supports Adobe's position. There, the Ninth Circuit ***affirmed***

15 ***dismissal*** of the plaintiffs' claims against Apple regarding statements or omissions about the

16 security of its devices. *Id.* at *1. The court explained that "to demonstrate reliance on the alleged

17 omission," plaintiffs needed to "prov[e] 'that, had the omitted information been disclosed, [they]

18 would have been aware of it and behaved differently.'" *Id.* at *2. That is, *Bartling* confirms

19 Adobe's position that Plaintiffs must specifically allege "reliance on [an] alleged omission." *Id.*

20 Plaintiffs do not. Rather, the Opposition points to alleged "real world examples of complaints by

21 consumers related to those misrepresentations and omissions." Opp. at 19. But Plaintiffs

22 Wohlfiel and Marquez do not allege that *they* relied on any of these alleged misrepresentations

23 and omissions. For example, while Ms. Wohlfiel alleges that she "believed she was buying

24 month-to-month subscriptions, and she was unaware of the early termination fee" (Compl. ¶ 94),

25 she not allege that she held that belief *because she relied on* a specific misrepresentation by Adobe

and would not have otherwise subscribed.  The same is true of Ms. Marquez.  Compl. ¶ 102.[3]

In sum, the Complaint does not specify the statements or omissions that Plaintiffs relied on.  The Opposition provides no further clarity.  The claims fail to satisfy Rule 9(b).

### 3.    Plaintiffs' Claims Alleging That The "Annual, Billed Monthly" Plan Is Misleading Fail To State A Claim As A Matter Of Law

As pointed out in the MPA, Judge Wise recently held that the nature of the annual term commitment of the ABM plan was not misleading.  *United States v. Adobe*, 2025 WL 1303419, at *10 (N.D. Cal. May 2, 2025).  Plaintiffs argue that the holding in that case should be limited to the facts of that case, but they do not explain why those facts are different in any relevant way.  Opp. at 20.  There is no relevant difference:  The subscription terms and disclosures are the same in both cases.  *Compare United States v. Adobe*, 2025 WL 1303419, at *10, *with* Compl. at 9.  Based on that record, Judge Wise concluded that "no reasonable consumer" would think the plan "term was more or less than one year."  *United States v. Adobe*, 2025 WL 1303419, at *10.  That reasoning applies here with equal force, as a plan that is called "annual" cannot be reasonably construed as anything else.  Plaintiffs also attempt to distract from Judge Wise's holding regarding the annual commitment by referring to the court's findings regarding the sufficiency of the pleading concerning the ETF or cancellation methodology (which were not in Adobe's favor).  Opp. at 20.  While Adobe disagrees with those holdings, they have no bearing on the court's conclusion regarding the *annual commitment*, which the court clearly held was not misleading.  Therefore, Plaintiffs' claims premised on a misleading annual commitment should be barred as a matter of law, even if that court found that other theories were not.

### 4.    Plaintiffs May Not Contest Compliance With CARL Or Allege Harm From Renewal Because They Did Not Renew Their Subscriptions

Plaintiffs do not (and cannot) allege that they renewed their subscriptions at the end of the one-year commitment, and they concede as much.  Accordingly, any claim predicated upon

---

[3] Plaintiffs also rely on *Pereda v. GM LLC*, 2022 U.S. Dist. LEXIS 242771 (N.D. Cal. Dec. 9, 2022), but it is inapposite.  *Pereda* involved claims that an automaker failed to disclose safety defects.  *Id*. at *30.  Following a line of cases specifically about auto safety defects, the court inferred reliance given the grave materiality of the omission:  the "alleged defect create[d] an 'unreasonable safety risk,'" which could "result in injuries or death."  *Id.* at 30-31.

compliance with CARL or that otherwise alleges harm from renewal fails.[4]

Plaintiffs argue that the annual, billed monthly plan should be considered one that automatically renews every *month*. Opp. at 21. But Plaintiffs do not even try to square this position with Judge Corley's holding to the contrary in *Singh*. MPA at 17-19. Plaintiffs' only support for their position is *Davis v. Shutterstock, Inc.*, 2024 WL 3618382 (E.D. Cal. July 31, 2024). But the *Shutterstock* court did not hold that an annual commitment that was billed monthly constitutes a monthly automatic renewal. In fact, the court did not address that question at all. Plaintiffs also argue that they "believe[d] they were enrolling in a plan with monthly automatic renewals." Opp. at 21. But they provide no authority for their apparent contention that a plaintiff's belief that she is signing up for a plan with monthly automatic renewals somehow makes it so. Plainly it was not a monthly renewal, for as even Plaintiffs allege, they were unable to terminate those so-called "renewals" without paying the ETF.

Last, Plaintiffs argue that even if they did not suffer injury via automatic renewal, the ABM plan should be considered a "continuous service." Opp. at 21-22. But that theory also fails because Plaintiffs still have to allege that they were *injured* by a feature of the "continuous service." For the same reason Plaintiffs do not have standing to assert a claim based on an automatic renewal, they do not have standing to assert a claim based on a continuation of their subscriptions—neither Plaintiff alleges that a continuation term took effect on their subscriptions, and therefore neither can allege that she was injured by that provision.

### 5.    Plaintiffs Do Not Allege They Are Consumers As Required Under The CLRA

Plaintiffs do not sufficiently allege they purchased their respective subscriptions for personal, family, or household purposes, as required for standing under the CLRA. In their Opposition, Plaintiffs attempt to cure this by arguing that their purchases could have been for "both personal and business purposes." Opp. at 22. But this was not pleaded; nor would it be sufficient—the law requires a "primary" personal purpose to qualify under the CLRA.

---

[4] Plaintiffs must also be "consumers" for CARL to apply, which they do not do for the same reasons discussed, *infra*, with respect to the CLRA.

1

2

3

4

5

6

7

8

9

Plaintiffs rely on *Davis v. Clients on Demand, LLC*, 2025 WL 2238724, at *4 (C.D. Cal. May 19, 2025), but in that case, the court found that the plaintiff sufficiently alleged he was a consumer where he purchased a "mentoring" program with a personal credit card for the purpose of "lifestyle and personal purposes." *Id.* Plaintiffs also rely on *In re Ford Tailgate Litig.*, 2015 WL 7571772, at *10 (N.D. Cal. Nov. 25, 2015), but, there, the plaintiff testified that a car he used for his job as a property manager was also a "family car," and the court therefore held it would be reasonable for a factfinder to potentially conclude that he used it "***primarily*** for personal, family, or household purposes." *Id.* (emphasis added). Here, in contrast, there is no factual allegation that either Plaintiff used her subscription for ***any*** personal, family, or household purposes.

10

11

12

13

14

15

16

17

18

19

20

21

22

Plaintiffs' arguments in response to this are unavailing. *First*, Plaintiffs cannot cure their failure to plead facts supporting a primary personal purpose by pointing to the boilerplate and conclusory recitation that "Plaintiffs and the members of the Class are 'consumers' within the meaning of the § 1761(d) as the Plaintiffs and the Class sought or acquired Defendant's goods and/or services for personal, family, or household purposes." Opp. at 23 (citing Compl. ¶ 149). *Second*, Plaintiffs attempt to walk back Plaintiff Wohlfiel's pleading that she subscribed to Lightroom for a "job" (Compl. ¶ 93) by arguing that her motivations may have merely "included" a photography job. Opp. at 23. But Plaintiffs' attempt to retroactively soften the clear language in the Complaint only highlights the weakness of their argument. *Third*, Plaintiffs argue that the fact Ms. Wohlfiel had her Lightroom subscriptions before and after the November 2023 photography job supports an inference that she also used the product for personal use. *Id.* But, if anything, the allegations that Ms. Wohlfiel purchased *ten* subscriptions over the course of at most three months suggests the opposite inference. Personal use does not require 10 licenses.

23

24

None of Plaintiffs' factual allegations support a reasonable inference that either Plaintiff used the products for personal use, and their claims should be dismissed for lack of standing.

25

26

### 6.  Plaintiffs Fail To Allege Any Entitlement To Injunctive And Other Equitable Relief

27

28

Plaintiffs concede that the Complaint does not allege entitlement to injunctive and other equitable relief, and that renders the claims deficient. Opp. at 24. So they request leave to amend.

- 13 -

They say that they "can readily remedy these defects" without explaining why. *Id*. But amendment would be futile. Plaintiffs' alleged damages are payment of the ETF (Wohlfiel (Compl. ¶100)) or payment of additional monthly payments (Marquez (Compl. ¶106)); clearly, those losses could be remedied through money damages. Plaintiffs appear to argue that they could remedy the defect by adding allegations that they will generally be unable to rely on Adobe's advertising or labeling in the future, and therefore will not purchase Adobe products, though they would like to. Opp. at 24. This makes no sense. As reflected in their Complaint, Plaintiffs are now aware of the term of the ABM plan and the existence and calculation of the ETF.

Plaintiffs' cases are inapt because they were about disclosures about the nature of products not readily apparent. In *Little v. NatureStar N. Am., LLC*, 2024 WL 4151294 (E.D. Cal. Sept. 11, 2024), the plaintiff took issue with defendant's statement that its products were compostable, when they were not; they alleged that they desired to continue purchasing products, provided that, in the future, they would know which were and which were not compostable. *Id.* at *2. The facts in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) were similar, with the plaintiff alleging she would be unable to rely on the label "flushable" on defendant's wipes in the future.[5] *Id.* at 966. In contrast, in this case, Plaintiffs need only read the subscription terms (which they are now indisputably well aware of and how to access) to know whether they will be charged an ETF in the future, should they buy another Adobe annual, billed monthly subscription.

### D.    Plaintiffs Cannot Pursue Class Claims Because The TOU Includes An Enforceable Class Waiver

Finally, Plaintiffs do not dispute that there is a class action waiver in the TOU, but argue that it is unconscionable when not "coupled with a valid arbitration provision" under *Discover Bank v. Superior Court of Los Angeles*, 36 Cal. 4th 148, 162 (2005) (finding a class action waiver may be unconscionable when an adhesion contract is entered in a setting in which disputes between the contracting parties predictably involves small amounts of damages, and "when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately

---

[5] *Johnson v. Trumpet Behavioral Health, LLC*, 2022 WL 74163 (N.D. Cal. Jan. 7, 2022) did not involve a consumer complaint seeking injunctive relief, but rather a wage-and-hour dispute seeking restitution.

cheat large numbers of consumers out of individually small sums of money"). Opp. at 13. But the class waiver *is* coupled with an arbitration provision, which means any argument that it is unconscionable is directly preempted by *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). **Plaintiffs** have strategically chosen not to file an arbitration demand to attempt to bring a class action, but that choice does not negate the existence of the arbitration agreement in the TOU.

Plaintiffs cite no authority to the contrary. They rely on *Jeong v. Nexo Capital Inc.*, 2023 WL 2717255 (N.D. Cal. Mar. 29, 2023) for the proposition that "the [*Discover Bank*] rule remains in force when a class waiver is not coupled with an arbitration provision" (Opp. at 13-14), but in that case there was *no arbitration provision* cited at all; it was not a case where an arbitration provision existed but was challenged as unconscionable. They also rely on *Suski v. Marden-Kane, Inc.*, 2022 WL 3974259 (N.D. Cal. Aug. 31, 2022), but in that case, the defendant was *not a party* to the arbitration agreement with a class action waiver and therefore did not have "standing to enforce an arbitration provision in an agreement to which it is not a party." *Id.* at *4.[6]

Even assuming there were no arbitration agreement in the TOU and the *Discover Bank* rule applied (which is not the case), the class action waiver here was also coupled with an "opt out" right and would not run afoul of "*Discover Bank*" for that reason alone. *Bonhomme*, 2025 WL 1745729, at *4 ("opt-out provision renders the class action waiver enforceable" notwithstanding *Discover Bank*). Because Plaintiffs have not shown that the class waiver is both procedurally and substantively unconscionable or that it satisfies *Discover Bank*, the Court should enforce it.

## III.    CONCLUSION

For the reasons stated above, Adobe respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety and/or strike Plaintiffs' class claims.

---

[6] Plaintiffs also argue that the TOU made it "prohibitively expensive" to file arbitrations for "Coordinated Actions" in pre-2025 versions of the TOU. Opp. at 5. But they ignore that those versions of the TOU also provided that, "[n]otwithstanding the above, if you are unable to afford fees or costs of arbitration, Adobe will pay them." Further, they do not argue that the current version of the TOU, which adopt the JAMS rules for fees (Opp. at 6), makes arbitration prohibitively expensive.

1

2

Dated:  October 27, 2025                    ARNOLD & PORTER KAYE SCHOLER LLP

3                                            By:   /s/  Jeremy T. Kamras

4                                            Douglas A. Winthrop
                                             Jeremy T. Kamras
5                                            Joseph Farris
                                             Tommy Huynh
6                                            Mark E. Raftrey

7                                            *Counsel for Defendant Adobe Inc.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28