1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COULSON P.C.**

Nicholas A. Coulson (SBN 358903)
**COULSON P.C.**
300 River Place Drive
Suite 1700
Detroit, Michigan 48207
T: (313) 644-2685
Nick@CoulsonPC.com

*Attorney for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE WOHLFIEL and VIANCA MARQUEZ, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>ADOBE INC.,<br><br>                    Defendant. | Case No. 5:25-cv-06562-NC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CORRECTIVE ACTION UNDER RULE 23(d); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon. Nathanael M. Cousins<br><br>Courtroom:  5 – 4th Floor (San Jose)<br>Date:          December 3, 2025<br>Time:         11:00 a.m. |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 3, 2025 at 11:00 a.m., before the Honorable Nathanael M. Cousins, at the United States District Court, Northern District of California, Robert F. Peckham Federal Building & United States Courthouse, Courtroom 5 – 4th Floor, 280 South 1st Street, San Jose, CA 95113, Plaintiffs Stephanie Wohlfiel and Vianca Marquez will and hereby do move for an Order pursuant to Federal Rule of Civil Procedure ("Rule") 23(d):

1.  Finding the Post-filing TOU (dated Oct. 3, 2025) promulgated by Adobe to be null and void and unenforceable as to Plaintiffs and the putative class members; and

2.  Requiring that, prior to promulgating any new communication that could impact putative class members' rights in this case (specifically including dispute resolution

---

**PLAINTIFFS' MOTION FOR CORRECTIVE ACTION UNDER RULE 23(d)**

1    and/or arbitration provisions), Adobe must obtain prior approval from the Court.

2    Such communication must, at a minimum, provide: (i) accurate and complete notice

3    of and information regarding the status, purposes, and effects of this class action

4    (ii) accurate and complete information about the legal impact of consenting to the

5    new provision on putative class members' rights in this suit, along with Plaintiffs'

6    counsel's contact information; and (iii) a reasonable and effective opt-out

7    provision.

8    This motion is based on this Notice of Motion and Motion for Corrective Action Under Fed. R.

9    Civ. P. 23(d), the following memorandum of points and authorities, the Declarations of Stephanie

10   Wohlfiel and Vianca Marquez (filed concurrently herewith), the pleadings and papers on file in

11   this action, and such other matters as the Court may consider.

12        A proposed order is attached as Exhibit 1.

14                                    Respectfully submitted,

15   Dated: October 29, 2025

16                                    **COULSON P.C.**

17                                    */s/ Nicholas A. Coulson*
                                     NICHOLAS A. COULSON, ESQ.
18                                    (SBN 358903)
                                     300 River Place Drive
19                                    Suite 1700
                                     Detroit, Michigan 48207
20                                    T: (313) 644-2685
21                                    Nick@CoulsonPC.com

22                                    *Attorney for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE WOHLFIEL and VIANCA MARQUEZ, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>v.<br><br>ADOBE INC.,<br><br>                              Defendant. | Case No. 5:25-cv-06562-NC<br><br>Assigned to: Hon. Nathanael M. Cousins<br><br>Judge: Hon. Nathanael M. Cousins<br><br>Courtroom:    5 – 4th Floor (San Jose)<br>Date:            December 3, 2025<br>Time:            11:00 a.m. |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR CORRECTIVE ACTION UNDER RULE 23(d)**

COULSON  P.C.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 3

I.    The Claims in This Case are Not Subject to Arbitration Under the Prior TOUs.......... 3

II.   After Benefiting from the Prior Arbitration Provision's Chilling Effect, Defendant
      Revised Its Online Terms of Use to Resuscitate the Arbitration Provision.................. 3

ARGUMENT ....................................................................................................... 5

I.    EITHER IN CONNECTION WITH THIS MOTION OR ADOBE'S MOTION TO
      DISMISS AND MOTION TO STRIKE, THE COURT SHOULD FIND THAT
      ADOBE'S LEGACY DISPUTE RESOLUTION PROVISIONS WERE AND
      ARE INVALID .............................................................................................. 5

      A.  Plaintiffs Requested That the Court Invalidate the Prior TOU's DRP in
          Connection With Defendant's MTD.................................................. 5

      B.  If the Court Does Not Invalidate Adobe's DRP or Arbitration Provision in
          the Context of the MTD, it Should Find That No Binding Agreement to
          Arbitrate the Claims in This Case Existed Before the Post-Filing TOU ............. 6

II.   THE COURT SHOULD INVALIDATE THE POST-FILING TOU PURSUANT
      TO RULE 23(d)........................................................................................... 7

      a.  Courts in the Ninth Circuit Invalidate New Arbitration Provisions Where They (1)
          Unilaterally (2) Threaten to Implicate Putative Class Members' Rights in the
          Litigation (3) Without Proper Notice................................................... 7

          1.  Adobe Promulgated the Post-Filing TOU Unilaterally During the Pendency of
              this Litigation. .................................................................... 9

          2.  The Post-Filing TOU (at Least Potentially) Implicates the Rights of the
              Putative Class Members in this Matter............................................. 9

          3.  Adobe Failed to Provide Notice of the Revisions, this Action, or
              The Effects of Class Members' Agreement to the Revised Terms..................... 10

          4.  The Post-filing TOU Tells Consumers to Agree to the Revised Terms or
              Terminate their Licenses ......................................................... 11

III.  THE REQUESTED RELIEF IS APPROPRIATE TO PROTECT THE RIGHTS OF
      THE PUTATIVE CLASS MEMBERS.................................................................. 12

**MEMORANDUM ISO PLAINTIFFS' MOTION FOR CORRECTIVE ACTION UNDER RULE 23(d)**

COULSON P.C.

1

CONCLUSION...................................................................................................................... 13

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COULSON  P. C.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COULSON P.C.**

# TABLE OF AUTHORITIES

**CASES**                                                                                                          **Page(s)**

*Apple v. Ionpath, Inc.*, 2025 LX 198120 (N.D. Cal. June 13, 2025) ........................................ 5, 13

*Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011 (9th Cir. 2023) ................................................ 4

*Avery v. Teksystems, Inc.,* 2024 U.S. Dist. LEXIS 149850
 (N.D. Cal. Aug. 21, 2024).................................................................................................... 7

*Azod v. Robinson,* 2023 U.S. Dist. LEXIS 17992 (C.D. Cal. Jan. 30, 2023) ................................ 7

*Bentley v. Control Grp. Media Co.*, 2020 U.S. Dist. LEXIS 118076 (S.D. Cal. July 6, 2020)...... 7

*Dominguez v. Better Mortg. Corp.,*
      2022 U.S. Dist. LEXIS 91691(C.D. Cal. May 17, 2022) ................................................ 7-8

*F.G. v. Coopersurgical, Inc.*,
      2024 U.S. Dist. LEXIS 90329 (N.D. Cal. May 20, 2024) .................................................. 7

*Gulf Oil Co. v. Bernard,* 452 U.S. 89 (1981)......................................................................... 7, 13

*Hale v. Brinker Int'l, Inc.*, 2022 U.S. Dist. LEXIS 108488 (N.D. Cal. June 17, 2022).................. 5

*Jimenez v. Menzies Aviation Inc.*,
      2015 U.S. Dist. LEXIS 108223 (N.D. Cal. Aug. 17, 2015)......................................... 8-9, 11

*Kater v. Churchill Downs, Inc.*, 423 F. Supp. 3d 1055 (W.D. Wash. 2019) ................................ 7

*McKee v. Audible, Inc.,*2018 U.S. Dist. LEXIS 179978 (C.D. Cal. Apr. 6, 2018)...........7-8, 11-12

*O'Connor v. Uber Techs., Inc.,*
      2014 U.S. Dist. LEXIS 61066 (N.D. Cal. May 1, 2014) ................................................. 7-8

*Reed v. Sci. Games Corp.,* No. C18-0565RSL, 2021 U.S. Dist. LEXIS 113805
 (W.D. Wash. June 17, 2021)......................................................................................... 10, 13

*Salazar v. Driver Provider Phx. LLC,* 532 F. Supp. 3d 832 (D. Ariz. 2021) .......................... 9, 11

*Snarr v. HRB Tax Grp., Inc.*,
      2021 U.S. Dist. LEXIS 194077 (N.D. Cal. May 13, 2021).......................................... 8-13

*Westerfield v. Quizno's Franchise Co., LLC*,
      2007 U.S. Dist. LEXIS 25968 (E.D. Wis. Apr. 6, 2007)................................................... 13

**COULSON P. C.**

## RULES

Fed. R. Civ. Proc. 23(d). ........................................................................................... *passim*

**COULSON P.C.**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

In anticipation of Plaintiffs' challenge to, and a likely adverse ruling on, the enforceability of Adobe's longstanding Dispute Resolution Provision (including its arbitration clause), Adobe tried to get ahead of these proceedings by quietly imposing a revised arbitration agreement that would substantially impair the rights of putative class members in this case. Adobe unilaterally revised the terms of its online Terms of Use ("TOU") on October 3, 2025 (the "Post-filing TOU") in hopes of circumventing an anticipated adverse ruling by the Court on the enforceability of its prior arbitration provision, ostensibly so it could force putative class members into arbitration on the revised terms.[1]

Adobe responded to Plaintiffs' August 4, 2025 Complaint by filing a Motion to Dismiss and Motion to Strike (the class allegations) on October 6, 2025 (the "MTD").[2] Therein, Adobe relied on various aspects of the Dispute Resolution Provision ("DRP") in the February, 2024 version of its TOU.[3] Notably, however, Adobe declined to seek enforcement of that DRP's patently unconscionable arbitration provision. Adobe ostensibly believed that by foregoing any attempt to force arbitration, it could escape judicial scrutiny of the arbitration provision, a position further demonstrated in its Reply in support of the motion.[4]

In response to Adobe's MTD, Plaintiffs argued that Adobe's DRP (as a whole) and several of its subparts (independently) were unenforceable due to their unconscionability.[5] One of these subparts was the arbitration provision, which was relevant despite Adobe's decision not to invoke it because of its relationship to other at-issue provisions, such as the class action waiver.[6] This specifically included the arbitration provision's "delegation clause,"[7] (which would divest the

---

[1] *See* ECF No. 18 at 12:13-28.

[2] ECF No. 17.

[3] ECF No. 8-1.

[4] *See* ECF No. 20 at 7-10 (arguing that the delegation clause divests the Court of jurisdiction to invalidate the arbitration provision, despite Adobe's invocation of the Court's authority to interpret other aspects of the TOU that are also purportedly delegated to an arbitrator).

[5] ECF No. 18 at 15:16-24:4.

[6] *See id.* at 17-22.

[7] "The arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability or enforceability of the Terms or formation of the Terms, including whether any dispute between us is subject to arbitration

court of jurisdiction over threshold issues of arbitrability and DRP validity) because enforcement of that clause would require any consumer who shared representation to incur filing fees of at least $1,000, plus substantial additional costs, just to challenge the broader arbitration clause's enforceability (or that of any portion of the DRP).[8] The substantial costs imposed just to reach these preliminary delegated issues would vastly outstrip the value of most consumer claims, deterring almost all such claims irrespective of Adobe's offer to pay the costs in the limited situation where a consumer could prove indigence.[9]

In their response, Plaintiffs also discussed each potentially relevant version of Adobe's TOU, starting with the February 2024 version on which the MTD relies.[10] While Adobe's prior TOU (like the Post-filing TOU) claim that Adobe will notify users if it makes "important changes" to the TOU[11], Adobe provided no direct notice that it had revised the arbitration agreement, and no notice whatsoever of this pending action and the legal implications of putative class members' acceptance of the new terms. Instead, it misleadingly claimed "[w]e have updated our General Terms of Use to make the language easier to understand."[12] And despite all prior TOU (and the Post-filing TOU itself) stating that any future "changes will not apply to any dispute between you and Adobe arising prior to the date on which we posted the revised Terms incorporating such changes, or when the terms become effective[,]"[13] the Post-filing TOU's' arbitration provision states that it "shall apply, without limitation, to all claims that arose or were asserted before the effective date of the Terms."[14] Adobe purports to require all current and new customers to agree to the Post-filing TOU, and instructs current customers to "stop using Adobe's Services and

---

(i.e., the arbitrator will decide the arbitrability of any dispute) and whether all or any part of these Terms are void or voidable." ECF No. 19-3 at 24.

[8] ECF No. 18 at 18:5-19:17.

[9] *See* ECF No. 19-3 ("Notwithstanding the above, if you are unable to afford fees or costs of arbitration, Adobe will pay them.").

[10] ECF No. 18 at 9:23-12:28.

[11] ECF No. 19-4 (June 18, 2024, TOU) at 9 ("We may make changes to the Terms from time to time ranging from cleaning up typos to changes in policy. If we make any important changes, we will notify you.") ECF No. 19-4 at 9; ECF No. 19-5 (Post-filing TOU) at 8 (same).

[12] ECF No. 19-5 at 2.

[13] ECF No. 19-3 at 7; ECF No. 19-4 at 9; ECF No. 19-5 at 8

[14] ECF No. 19-5 at 36.

---

COULSON P.C.

Software" and "cancel [their] subscription[]" (both costly measures) if they do not agree to the revised terms. [15]

The intended impact of this revision to Adobe's arbitration provision is clear. Adobe seeks to replace the oppressive arbitration provision to which it has subjected its customers for years with a new arbitration provision that might better withstand judicial scrutiny. In other words, Adobe is attempting to add an enforceable arbitration provision where none previously existed. But it is well-established that a defendant cannot attempt to resuscitate an unenforceable arbitration provision without explicitly notifying putative class members of the effect it could have on their ability to participate in pending class litigation. The Court should take action to prevent Adobe's attempt to undermine these proceedings to the detriment of the putative Class.

## **BACKGROUND**

### I.    **The Claims in This Case Are Not Subject to Arbitration Under the Prior TOUs.**

Plaintiffs initiated this matter on August 4, 2025, alleging that Adobe violated California's consumer protection laws by engaging in widespread deceptive and misleading business practices through its Annual, Billed Monthly ("ABM") licensing plan. ECF No. 1 ("Complaint").

In response to Plaintiffs' Complaint, Adobe filed the MTD on October 6, 2025. ECF No. 17. Therein, Adobe relied on the September 19, 2022 version of its TOU ("September 2022 TOU"), which it claims applies to Plaintiffs' claims. *See generally id.;* ECF No. 8-1. Adobe's MTD argued, *inter alia*, that the Dispute Resolution Provisions ("DRP") of the September 2022 TOU required the Court to dismiss this matter (based on their informal dispute resolution clause, including its contractual limitations period) and strike the class allegations (based on their class action waiver). ECF No. 7 at 18:3-21:17, 29:3-30:6. Plaintiffs filed their Opposition to the MTD on October 21, 2025 (ECF No. 18), challenging the enforceability of the September 2022 TOUs' DRP generally, and with respect to its specific subparts (including the arbitration provision and its delegation clause). *Id*. at 15:16-24:4. The Court has not yet ruled on Adobe's MTD; the motion

---

[15] ECF No. 19-5 at 8.

1    hearing is set for November 12, 2025. To date, Adobe has not moved to compel Plaintiffs to

2    arbitration, and by seeking adjudication on the merits it has likely waived the right to do so.[16]

3        When this case was filed (and for some two months thereafter), there was no enforceable

4    agreement to arbitrate Plaintiffs' or putative class members' claims. As discussed in detail in

5    Plaintiffs' Opposition to Adobe's MTD (ECF No. 18), the DRP and its arbitration provision within

6    Adobe's September 2022 TOU (which are properly reached by the Court due to the

7    unconscionability of their delegation clause) are unenforceable in their entirety. The same is true

8    for the other versions of the TOU that predate the filing of this case. *See id.* at 11:26-12:12

9    (identifying substantial similarity).

10   **II.    After Benefiting from the Prior Arbitration Provision's Chilling Effect,
         Defendant Revised Its Online Terms of Use to Resuscitate the Arbitration
11        Provision.**

12       While this case was pending, and three days before Adobe filed its MTD, Adobe

13   unilaterally updated its Terms of Use ("Post-filing TOU") by posting them online. *See* ECF No.

14   19-5. Notably, the revised arbitration provision provides: "This agreement to arbitrate shall apply,

15   without limitation, to all claims that **arose or were asserted before** the effective date of the

16   Terms." ECF No. 19-5 at 36 (emphasis added).  As an initial matter, this language contradicts

17   Adobe's prior promises (which are repeated in the Post-filing TOU) that future changes to the

18   TOU would not apply to previously arisen disputes. *See* ECF No. 19-3 at 7; ECF No. 19-4 at 9;

19   ECF No. 19-5 at 8. This obviously calls into question how the new terms could be enforceable.

20   But more importantly, based on the timing and circumstances of the revisions, it appears that

21   Adobe promulgated them to circumvent an adverse ruling on enforceability of the prior arbitration

22   revision and to set up an opportunity to try to apply the revised arbitration terms to inhibit the

23   putative class.

24

25

26   [16] "Obviously, seeking a decision on the merits of a key issue in a case indicates an intentional and
     strategic decision to take advantage of the judicial forum." *Armstrong v. Michaels Stores, Inc.*, 59
27   F.4th 1011, 1015 (9th Cir. 2023) (citation and internal quotation marks omitted) (cleaned up). Such
     a "conscious decision to continue to seek judicial judgment on the merits of the arbitrable claims"
28   counsels strongly in favor of finding any right to seek arbitration has been waived. *See id.* (citation
     and internal quotation marks omitted) (cleaned up).

COULSON P.C.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Post-filing TOU's DRP abandons Adobe's longstanding demand that consumers who share counsel share evenly in the costs of arbitration, a primary reason for the unenforceability of earlier iterations of the DRP. *See* ECF No. 18 at 18:5-19:17. Instead, it provides that "[p]ayment of all filing, administration, and arbitrator fees and costs of arbitration will be governed by the rules of the arbitration provider." ECF No. 19-5 at 37. Those rules now include JAMS' "Mass Arbitration Procedures and Guidelines for any action in which you are represented by a law firm or collection of law firms that has filed at least 25 arbitration demands of a similar nature against Adobe within a year." *Id.* at 36. JAMS' Mass Arbitration Procedures and Guidelines limit the total filing fees, no matter the number of consumers involved (so long as it exceeds 25) to $2,500, no more than $100 per consumer.[17] "The company must bear the remainder of the consumers' share of the Filing Fee and all Case Management Fees." *Id.* Therefore, the consumers' filing fees are reduced to no more than 10% of what is demanded by each of the prior TOU's DRPs. *See* ECF No. 18 at 18:5-19:17 (demonstrating that each consumer would be required to pay at least $1,000 in order to reach even threshold interpretation issues).

Despite the obvious relevance to and potential impact on this case, Defendant failed to notify putative class members about the case, the specific changes made to the arbitration provision, or the effect that agreeing to the new terms could have on their right to participate in this case. See ECF No. 19-5. Defendant apparently did not even provide a direct notification to consumers that the TOU had been updated. Neither Plaintiff has a record of receiving any email notification from Adobe that the TOU had been updated. *See* Declaration of Stephanie Wohlfiel ¶¶3-4, Declaration of Vianca Marquez ¶3-4.

---

[17]    https://www.jamsadr.com/files/uploads/documents/massarbitrationprocedures-fs_4.29.24.pdf (last visited Oct. 28, 2025). As noted in Plaintiffs' Opposition to the MTD, the Court can take judicial notice of JAMS' rules and fee schedules. *See* ECF No. 18 at 18, FN 6 (citing Fed. R. Evid. 201(b).

## ARGUMENT

I. **EITHER IN CONNECTION WITH THIS MOTION OR ADOBE'S MOTION TO DISMISS AND MOTION TO STRIKE, THE COURT SHOULD FIND THAT ADOBE'S LEGACY DISPUTE RESOLUTION PROVISIONS WERE AND ARE INVALID.**

The pernicious effects of Adobe's Post-filing TOU arise from their attempt to revive patently unconscionable portions of the prior TOUs' Dispute Resolution Provision— namely the arbitration clause. What makes Adobe's imposition of the new TOU so improper is that it marks the first time relevant to this case that the TOU contained an arguably enforceable arbitration clause. Adobe was content to benefit from the chilling effect[18] of its prior arbitration clauses, which purported to punish any claimants who shared counsel (thereby deterring any financially significant number of claims) for several years. Only when faced with the prospect that this aspect of the arbitration clause would be invalidated did Adobe decide to supplant it. The Court should explicitly find that Adobe's prior arbitration clause was unenforceable based on its attempts at deterrence, so that its actions in replacing that clause can be evaluated against the proper backdrop.

### A. Plaintiffs Requested That the Court Invalidate the Prior TOU's DRP in Connection With Defendant's MTD.

As Plaintiffs noted in their Opposition to Adobe's MTD, the substantially similar DRPs in Adobe's "Legacy" (pre-October 3, 2025) TOUs should be invalidated because they are so permeated with unconscionability that no portion should be severed. *See* ECF No. 18 at 15:16-24:4. Courts have repeatedly invalidated dispute resolution provisions that (1) contain terms that serve only to benefit one side; (2) seek to discourage claimants from bringing claims, including by punishing those who share counsel; and (3) make arbitration prohibitively expensive in relation to the value of likely claims. *See id.* Adobe's Legacy DRP does all three. *Id.* The DRP as a whole, and Legacy arbitration clause specifically, should be invalidated for purposes of Adobe's Motion to Dismiss and Motion to Strike. This is necessary because Adobe put the DRP's validity at issue

---

[18] *See Apple v. Ionpath, Inc.*, No. 25-cv-01472-SVK, 2025 LX 198120, at *9 (N.D. Cal. June 13, 2025) ("Cost-and fee-shifting provisions can create a chilling effect, discouraging employees from vindicating their rights for fear that failure will prove cripplingly expensive. If [potential claimants] think they must split the costs of arbitration, which can easily run in the thousands of dollars, they may (and often will) simply decline to bring claims in the first place.") (quoting *Hale v. Brinker Int'l, Inc.*, No. 21-cv-09978-VC, 2022 U.S. Dist. LEXIS 108488, 2022 WL 2187397, at *1 (N.D. Cal. June 17, 2022)).

**MEMORANDUM ISO PLAINTIFFS' MOTION FOR CORRECTIVE ACTION UNDER RULE 23(d)**

COULSON P.C.

*in court* by invoking the DRP's informal resolution procedure (including the contractual limitations period) and class action waiver. *See* ECF No. 7 at 15:21- 18:2 (application and formation of terms); 18:3-19:23 (invocation of DRP's informal dispute resolution requirements); 20:1-21:17 (seeking dismissal based on DRP's contractual limitations period); 29:3-30:6 (seeking to have class claims struck or dismissed pursuant to DRP's class action waiver).

Curiously, Adobe now claims that the Court cannot even reach the validity of the DRP or the arbitration provision because they include a clause delegating jurisdiction over such challenges to an arbitrator. ECF No. 20 at 7:12-8:5. This claim is untenable both because (1) as Plaintiffs' explained, the delegation provision itself is unenforceable as unconscionable;[19] and (2) Adobe has expressly asked this Court to enforce the DRP (at least the parts that it likes), waiving any argument to the contrary. Adobe seeks to simultaneously use the DRP as a sword and a shield, pursuing judicial enforcement of the terms it likes while claiming that other terms are beyond the Court's reach. *See Azod v. Robinson,* No. 2:22-CV-05214-CAS (MRW), 2023 U.S. Dist. LEXIS 17992, at *30-31 (C.D. Cal. Jan. 30, 2023) (sword and shield "doctrine seeks to prevent a party from claiming a right under a provision while relying on the same provision to shield itself from liability") (citation omitted). This contradicts both the DRP itself (delegating to arbitrator "exclusive authority to resolve any dispute relating to the interpretation, applicability or enforceability of the Terms or formation of the Terms… and whether all or any part of these Terms are void or voidable." (ECF No. 8-1 at 10)) and the governing law. *See, e.g., Bentley v. Control Grp. Media Co*., No. 19-CV-2437-DMS-RBB, 2020 U.S. Dist. LEXIS 118076, at *9 (S.D. Cal. July 6, 2020) (where a party seeks to benefit from only the provisions in "Terms of Use" that it deems beneficial, "[e]quity precludes such selective enforcement of a contract.").

---

[19] ECF No. 18 at 19:12-16 ("Section 14.2, which dictates the division of arbitration fees and costs, effectively strips consumers of a meaningful mechanism for redress in arbitration by making it prohibitively expensive to challenge Adobe's conduct in a collective manner. It does so before a consumer can even receive a determination regarding the threshold matters of arbitrability Adobe purports to delegate to the arbitrator.").

**MEMORANDUM ISO PLAINTIFFS' MOTION FOR CORRECTIVE ACTION UNDER RULE 23(d)**

**C. If the Court Does Not Invalidate Adobe's DRP or Arbitration Provision in the Context of the MTD, it Should Find That No Binding Agreement to Arbitrate the Claims in This Case Existed Before the Post-Filing TOU.**

The unavoidable conclusion here—that the Post-filing TOU impermissibly interferes with the rights of putative class members—is tied to the fact that there was no valid prior agreement to arbitrate putative class members' claims. Therefore, even if the Court does not invalidate Adobe's Legacy arbitration provision (either as part of the DRP or independently) in the context of the MTD, it should make a similar finding here so the effect of the Post-filing TOU can be measured against the existing state of affairs.

However, the Court need not actually invalidate the Legacy DRP to award the relief requested herein. As explained below, Rule 23(d) supports invalidating a new arbitration requirement where it has the *potential* to interfere with putative class members' rights. *See Dominguez v. Better Mortg. Corp.*, No. 8:20-cv-01784-JLS-KES, 2022 U.S. Dist. LEXIS 91691, at *9 (C.D. Cal. May 17, 2022). Therefore, so long as the Court finds that the validity of the Legacy DRP is *sufficiently questionable* that the Post-filing TOU's revised arbitration provision *potentially* interferes with putative class members' ability to participate in this case, the Post-filing TOU should be invalidated. *See* Section II(A)(2).

## II.   THE COURT SHOULD INVALIDATE THE POST-FILING TOU PURSUANT TO RULE 23(d).

The issue presented by Adobe's imposition of the Post-filing TOU is not novel: "[c]ourts routinely exercise their discretion to invalidate or refuse to enforce arbitration agreements implemented while a putative class action is pending if the agreement might interfere with members' rights." *Avery v. Teksystems, Inc.,* No. 3:22-cv-02733-JSC, 2024 U.S. Dist. LEXIS 149850, at *15-17 (N.D. Cal. Aug. 21, 2024). Indeed "[m]any courts have found that a defendant's attempt to foist a new arbitration provision on putative class members is an improper communication." *Kater v. Churchill Downs, Inc.*, 423 F. Supp. 3d 1055, 1062 (W.D. Wash. 2019). Courts consistently "exercise[] their discretionary power under Fed. R. Civ. Proc. 23(d) to invalidate or refuse to enforce arbitration agreements implemented while a putative class action is

pending if the agreement might interfere with members' rights." *McKee v. Audible, Inc.,* No. CV 17-1941-GW(Ex), 2018 U.S. Dist. LEXIS 179978, at *12 (C.D. Cal. Apr. 6, 2018).

"The prophylactic power accorded to the court presiding over a putative class action under Rule 23(d) is broad; the purpose of Rule 23(d)'s conferral of authority is not only to protect class members in particular but to safeguard generally the administering of justice and the integrity of the class certification process." *F.G. v. Coopersurgical, Inc.,* No. 24-cv-01261-JST, 2024 U.S. Dist. LEXIS 90329, at *6 (N.D. Cal. May 20, 2024) (citation omitted). In particular, a district court has the power to "limit[] communications between parties and potential class members." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981). "[T]he touchstone under Rule 23(d) is…whether the communication is abusive, misleading, coercive, or otherwise affects the administration of justice in the context of a putative class action lawsuit." *O'Connor v. Uber Techs., Inc.,* No. C-13-3826 EMC, 2013 U.S. Dist. LEXIS 172477, at *11-12 (N.D. Cal. Dec. 6, 2013).

Adobe's changes to its TOU on October 3, 2025 constitute misleading and/or coercive communications to putative class members that interfere with putative class members' rights to participate in this lawsuit.[20] "At best, [the defendant's] implementation of its new arbitration policy raises the specter of interference with the rights of [plaintiffs and putative class members]; at worst, it was a deliberate effort to undermine pending class litigation." *Jimenez,* 2015 U.S. Dist. LEXIS 108223 at *16. Accordingly, the Court should invalidate the Post-filing TOU as null and void, and unenforceable as to Plaintiffs and the putative Class.

## A. Courts in the Ninth Circuit Invalidate New Arbitration Provisions Where They (1) Unilaterally (2) Threaten to Implicate Putative Class Members' Rights in the Litigation (3) Without Proper Notice.

Adobe's imposition of the Post-filing TOUs is "misleading, coercive, [and] otherwise affects the administration of justice in the context of [this case]." *See O'Connor,* 2013 U.S. Dist. LEXIS 172477 at *11-12. "[M]ultiple courts have found that a party's attempt to introduce new arbitration provisions while a class action is pending is inappropriate where the new arbitration agreement might implicate potential class members' rights or where notice of the potential effects

---

[20] This goes beyond the necessary requirements, which necessitate only that the communications have the *potential* to so interfere. *See* Section II(A)(2).

COULSON P.C.

of the new arbitration provisions is insufficient." *Snarr v. HRB Tax Grp., Inc*., No. 19-cv-03610-SK, 2021 U.S. Dist. LEXIS 194077, at * 21 (N.D. Cal. May 13, 2021) (collecting cases). A court need not make a specific finding of misconduct or actual interference with putative class members' rights; "rather the key is whether there is *potential* interference[.]" *Dominguez*, 2022 U.S. Dist. LEXIS 91691 at *9 (emphasis added).

In evaluating whether a new or modified arbitration provision is improper and unenforceable under Rule 23(d), courts uniformly reject arbitration provisions issued mid-litigation in which (1) the defendant acted unilaterally, (2) the provision implicated the rights of putative class members, and (3) the defendant provided no (or insufficient) notice of the pending class action and/or of the legal impact of agreeing to the new terms. *See, e.g., McKee,* 2018 U.S. Dist. LEXIS 179978 at *18 (finding the defendant's actions to be coercive and misleading communications that interfered with the pending litigation where the revised agreement was unilateral, directed at putative class members following the initiation of the lawsuit and subsequent denial of the defendant's motion to compel, did not include notice of the current action, and forced putative class members to waive their rights or give up benefits); *Jimenez v. Menzies Aviation Inc*., No. 15-cv-02392-WHO, 2015 U.S. Dist. LEXIS 108223, at *17 (N.D. Cal. Aug. 17, 2015) (finding revised ADR policy unenforceable because the policy limited class members' rights, the defendant failed to provide notice of the pending litigation or explain the consequences of agreeing to the new terms, and did not provide an opt-out procedure); *Snarr,* 2021 U.S. Dist. LEXIS 194077  at *29-30 (finding the revised arbitration unenforceable where defendant (1) did not inform plaintiff or the putative class members of the lawsuit or the impact on their rights of agreeing to the new terms, (2) attempted to end run around the court's prior ruling on the arbitration provision, (3) provided no notice of the pending action or the legal effect of signing the revised agreement, and (4) did not offer an opt out). Other factors that courts have found to support the finding of a misleading and/or coercive communication include: (1) requiring consumers to give up a paid-for benefit in order to refuse consent to the revised terms, (2) failing to provide an opt-out, and (3) whether the changes were implemented to "fix" deficiencies that impacted the enforceability of prior provisions. *Id.*

**MEMORANDUM ISO PLAINTIFFS' MOTION FOR CORRECTIVE ACTION UNDER RULE 23(d)**

### 1. Adobe Promulgated the Post-Filing TOU Unilaterally During the Pendency of this Litigation.

A defendant is deemed to have acted unilaterally in this respect where it writes and promulgates new terms of its own creation. *See, e.g., Snarr*, 2021 U.S. Dist. LEXIS 194077 at *29. Another hallmark of unilateral action is where the opposing party receives no new benefits, and acceptance of the terms is required merely for them to continue with the prior relationship. *See Salazar v. Driver Provider Phx. LLC,* 532 F. Supp. 3d 832, 838 (D. Ariz. 2021). Adobe independently revised its TOU on October 3, 2025, more than two months into this class action, and three days before filing its MTD that relied heavily on the prior arbitration terms. Adobe did so unilaterally by updating its website, without providing the promised notice (or any notice of the pending litigation), and in attempted contravention of its prior (and ongoing) promises that future changes would not apply retroactively. These actions were entirely unilateral.

### 2. The Post-Filing TOU (at Least Potentially) Implicates the Rights of the Putative Class Members in this Matter.

If effective, Adobe's revisions in the Post-filing TOU would directly impact the rights of the putative class members in this action. There is no presently enforceable arbitration agreement.[21] And the Post-filing TOU states that the arbitration provisions "apply, without limitation, to all claims that arose or were asserted before the effective date of the Terms[.]" ECF No. 19-5 at 36. Despite the contrary promises it includes both in the Post-filing TOU and in all relevant predecessors, Adobe is actively trying to get putative class members to agree to a retroactive change that could bar them from obtaining relief through this case. If the limitations imposed by Adobe's prior promises could *ever* allow this, the law would still foreclose it[22]—

---

[21] Alternatively, at a minimum the enforceability of Adobe's Legacy arbitration provisions is sufficiently questionable that the new TOU *potentially* impact putative class members' rights herein.

[22] "[W]hen the change would interfere with claims asserted on the class' behalf, retroactively invalidating the claims before the class is even aware that a lawsuit is pending and they may be entitled to relief, the Court has the discretion, if not the duty, to impose limitations under Rule 23(d)." *Reed v. Sci. Games Corp.*, No. C18-0565RSL, 2021 U.S. Dist. LEXIS 113805, at *11-12 (W.D. Wash. June 17, 2021) (citation omitted).

particularly in the absence of specific notice regarding the impact to putative class members' rights in this case.

It does not matter that there was a prior arbitration agreement in place before the new one was added. *See Snarr*, 2021 U.S. Dist. LEXIS 194077 at *29; *McKee*, 2018 U.S. Dist. LEXIS 179978 at *5. Nor is it material that in some of the cases cited herein, the prior arbitration provision had already been invalidated. The same result has issued where the prior arbitration clause was dubious but remained intact. *See e.g.*, *Krater*, 421 F. Supp. 3d at 1048-59. Both scenarios present the same problem: a defendant's attempt to impose enforceable arbitration obligations on class members where none previously existed, in order to undermine their ability to participate in the case. This case is the same. Adobe quietly effectuated the changes to its TOU a mere three days before filing its MTD, making changes that attempted to resurrect some of its most problematic provisions. These facts underscore Adobe's strategic intent. Absent intervention by the Court, Adobe will almost certainly attempt to enforce the revised arbitration terms against Plaintiffs and/or the putative class (as a barrier to certification).

### 3. *Adobe Failed to Provide Notice of the Revisions, this Action, or the Effects of Class Members' Agreement to the Revised Terms.*

Adobe's Post-filing TOU effectively require putative class members to waive their ability to participate in this (or any) litigation, and do so without providing notice of the revisions, this action, or the legal consequences of agreeing to the new terms. This is precisely the dynamic that courts have found required intervention. *See e.g., Snarr*, 2021 U.S. Dist. LEXIS 194077 at *29-30 (identifying the lack of notice of the pending class action or the legal effect of signing the revised agreement as one of the factors supporting order that the revised agreement is null and void and unenforceable); *McKee,* 2018 U.S. Dist. LEXIS 179978 at *15-16 (finding that the defendant failed to provide putative class members with any notice of the pending class action and noting that "[s]everal courts have found that a lack of notice of the present suit may render such communications misleading") (collecting cases); *Jimenez*, 2015 U.S. Dist. LEXIS 108223 at *13-15 (finding that the defendant's failure to inform the plaintiff and putative class members of the pending class litigation and failing to explain the consequences of agreeing to the revised policy

supported ruling that it was an improper class communication and unenforceable); *Salazar*, 532 F. Supp. 3d at 838 (communication misleading where it "contained a complete omission of the existence of [the pending] action").

Aside from simply updating the effective date on the TOU webpage, Adobe has apparently not provided Plaintiffs or the putative class with direct notice that the terms of its TOU have been revised *at all*. Despite the relevance to this current action and its potential impact on this case, the Post-filing TOU also conspicuously omit any mention of this litigation or the impact agreeing to the Post-filing TOU would have on putative class members' rights here. This despite Adobe's repeated promises that it will notify consumers "if [it] makes any important changes." *See* ECF No. 19-4 at 9; ECF No. 19-4 at 9; ECF No. 19-5 at 8.

Finally, contradictions within the Post-filing TOU further obscure the scope, application, and legal effect of Adobe's changes such that a putative class member would not understand the legal impact of agreeing to the new terms. For example, Section 1.5, titled "Updates to Terms," states that changes in the TOU "will not apply to any dispute between [a consumer] and Adobe arising prior to the date on which [Adobe] posted the revised Terms incorporating such changes, or when the Terms otherwise become effective." Yet, many sections later, Section 14.1 directly conflicts with that provision, asserting that the arbitration agreement "shall apply, without limitation, to all claims that arose or were asserted before the effective date of the Terms."

### 4. *The Post-filing TOU Tells Consumers to Agree to the Revised Terms or Terminate their Licenses.*

As an additional indication of their coerciveness, the Post-filing TOU require current users to agree to the revised terms in order to keep the products and services for which they have already paid and/or become obligated. Users are instructed that they must terminate their licenses if they do not agree with the new terms. It is no small irony that this case is centered on substantial hidden terms and fees on consumers who do just that. *See generally* ECF No. 1.

Section 1.5 of the Post-filing TOU instructs consumers that they "must stop using [Adobe's] Services and Software and, if applicable, cancel [their] subscription," if they do not agree to the amended terms. ECF No. 19-5 at 8. Adobe does not offer to waive termination fees

for any licenses pursuant to the ABM plan nor to reimburse consumers for any pre-paid annual or monthly licensing fees. Such a choice is "inherently coercive" as it "force[s] [consumers] to give up a paid-for benefit and end an ongoing business relationship in order to refuse to waive their … rights." *McKee*, 2018 U.S. Dist. LEXIS 179978 at *17. "[S]uch tactics [are] coercive because they required agreement and concomitant waiver of rights from putative class members in order to continue their business relationship with defendant and to access services for which they had already paid." *Snarr*, 2021 U.S. Dist. LEXIS 194077 at *27 (citing *McKee,* 2018 U.S. Dist. LEXIS 179978 at *17.

Although there is an arbitration "opt-out" provision, that alone is insufficient to render the Post-filing TOU's arbitration clause enforceable. The "opt-out" (which must be exercised within 30 days) is effectively useless in light of the absence of notice regarding this case. To avoid being misleading, communications involving opt-out rights should "'meaningfully inform users about their potential rights" including by referencing the pending litigation and "briefly explain[ing] the rights at issue in the lawsuit such that 'an average user would understand what they are giving up[.]'" *See Heathcote v. Spinx Games Ltd.,* No. C20-1310-RSM, 2021 U.S. Dist. LEXIS 81559, at *10 (W.D. Wash. Apr. 28, 2021) (quoting *Kater*, 423 F. Supp. 3d at 1063).

For the reasons identified herein, the Post-filing TOU threatens the rights of Plaintiffs and putative class members and should be invalidated as an improper class communication. The Court should declare the provision null and void and unenforceable as to Plaintiffs and the putative class.

### III.    THE REQUESTED RELIEF IS APPROPRIATE TO PROTECT THE RIGHTS OF THE PUTATIVE CLASS MEMBERS.

"While the mere existence of a class action lawsuit does not necessarily bar a defendant from changing its business practices or form agreements, when the change would interfere with claims asserted on the class' behalf, retroactively invalidating the claims before the class is even aware that a lawsuit is pending and they may be entitled to relief, the Court has the discretion, if not the duty, to impose limitations under Rule 23(d)." *Reed,* 2021 U.S. Dist. LEXIS 113805 at *11-12. Defendants should not be allowed to salvage arbitration agreements where they have

COULSON P.C.

previously induced a "chilling effect" by "overreach[ing]" with unenforceable terms. *See Apple*, 2025 LX 198120 at *12.

Plaintiffs recognize that Rule 23(d) limitations on putative class member communications must be "carefully drawn" to "limit[] speech as little as possible, consistent with the rights of the parties under the circumstances." *McKee*, 2018 U.S. Dist. LEXIS 179978 at *10 (quoting *Gulf Oil*, 542 U.S. at 102). Plaintiffs request that (1) the Post-filing TOU be invalidated and that (2) Defendant be required to obtain Court approval before imposing further terms (subject to proper notice and protections) on putative class members. These are precisely the sort of carefully drawn remedies courts routinely order in similar circumstances.

For example, in *Snarr*.[23] the court ordered that "the Revised Agreement promulgated by Defendants is null and void and unenforceable as to all putative class members in this suit." *Snarr*, 2021 U.S. Dist. LEXIS 194077 at *31. Further, that any new arbitration provision "must include clear notice of [the] lawsuit and an opt-out provision. Any such communication must be submitted to the Court for prior approval." *Id.* Similarly in *McKee*, the court invalidated the defendant's revised agreement to arbitrate "to the extent that it would limit a class member's participation or recovery in [that] action." *McKee*, 2018 U.S. Dist. LEXIS 179978 at *24. It also required that any future arbitration agreements pertaining to putative class members contain "proper notice of the current action and opt out opportunities." *Id.* Courts require such future communications to include specific reference to the case, the rights at issue therein, and contact information for putative class counsel. *See Kater*, 423 F. Supp. 3d at 1065.

---

[23] While citing Rule 23(d) as the basis for the relief it ordered, the court in *Snarr* also certified a provisional injunctive relief class pursuant to Rule 23 for purposes of effectuating its order. *See Snarr*, 2021 U.S. Dist. LEXIS 194077 at *23. This appears to be an outlying approach. *See, e.g., McKee*, 2018 U.S. Dist. LEXIS 179978 at *23 ("under Rule 23(d) a court may prohibit a party from doing what it could otherwise do legally were no case pending, within reason"); *Kirby v. Kindred Healthcare Operating*, No. 5:19-cv-00833-JLS-DFM, 2020 U.S. Dist. LEXIS 146449, at *18 (C.D. Cal. May 1, 2020) (limiting future communications without provisional certification or an injunction). Should the Court determine that the additional procedural step is necessary, it would be appropriate here for the same reasons stated in *Snarr*, and Plaintiffs request it on that basis.

**MEMORANDUM ISO PLAINTIFFS' MOTION FOR CORRECTIVE ACTION UNDER RULE 23(d)**

Indeed, Courts often go further than requiring supervision of any similar future communication, by ordering a court-approved corrective notice. *See, e.g, Salazar v. Driver Provider Phx. LLC*, 532 F. Supp. 3d 832, 840 (D. Ariz. 2021) ("Defendants are ordered to submit a proposed curative notice or a notice of no objection to Plaintiffs' proposed curative notice to the Court within seven days of the date of this order."); *O'Connor*, 2014 U.S. Dist. LEXIS 61066 at *30-31 ("The parties shall meet and confer within seven days of this order to discuss and stipulate to the appropriate form, content, and procedures of the corrective notices consistent with this order…Until revised notices and procedures are approved by the Court…Uber shall not issue to Uber drivers or prospective drivers the Licensing Agreement or any other agreement containing an arbitration provision which waives potential class members' rights herein."). Plaintiffs do not presently request such relief.

Invalidating the Post-filing terms is necessary to prevent significant prejudice to putative class members' rights in this case. To prevent further prejudice, based on its conduct to date, requires that Adobe be ordered obtain the Court's approval prior to sending other communications to putative class members that could impact their rights in this case. This would ensure that any such communications include notice of this case and of potential impacts to putative class members' rights herein. Such a restriction is both necessary and "carefully drawn" to the concerns identified in this Motion. *McKee*, 2018 U.S. Dist. LEXIS 179978 at *10 (quoting *Gulf Oil,* 542 U.S. at 102).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs are entitled to relief under Fed. R. Civ. Proc. 23(d). Plaintiffs request that the Court enter an Order:

1. Finds the Post-filing TOU (dated Oct. 3, 2025) promulgated by Adobe to be null and void and unenforceable as to Plaintiffs and the putative class members; and

2. Requiring that, prior to promulgating any new communication that could impact putative class members' rights in this case (specifically including dispute resolution and/or arbitration provisions), Adobe must obtain prior

**MEMORANDUM ISO PLAINTIFFS' MOTION FOR CORRECTIVE ACTION UNDER RULE 23(d)**

1   approval from the Court. Such communication must, at a minimum, provide:

2   (i) accurate and complete notice of and information regarding the status,

3   purposes, and effects of this class action (ii) accurate and complete information

4   about the legal impact of consenting to the new provision on putative class

5   members' rights in this suit, along with Plaintiffs' counsel's contact

6   information; and (iii) a reasonable and effective opt-out provision.

7   A proposed order is attached as Exhibit 1.

8                                    Respectfully submitted,

9   Dated: October 29, 2025

10                                **COULSON P.C.**

11                                */s/ Nicholas A. Coulson*
                                  NICHOLAS A. COULSON, ESQ.
12                                (SBN 358903)
                                  300 River Place Drive
13                                Suite 1700
                                  Detroit, Michigan 48207
14                                T: (313) 644-2685
                                  Nick@CoulsonPC.com
15

16                                *Attorney for Plaintiffs and the Putative Class*

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM ISO PLAINTIFFS' MOTION FOR CORRECTIVE ACTION UNDER RULE 23(d)**