Nicholas A. Coulson (SBN 358903)
**COULSON P.C.**
300 River Place Drive, Ste 1700
Detroit, MI 48207
T: (313) 644-2685
E: Nick@CoulsonPC.com

*Attorney for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE WOHLFIEL and VIANCA MARQUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ADOBE INC.,<br><br>Defendant. | Case No. 5:25-cv-06562-NC<br><br>**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR CORRECTIVE ACTION UNDER RULE 23(d)**<br><br>Assigned to: Hon. Nathanael M. Cousins<br><br>Date: Dec. 3, 2025<br>Time: 11:00 a.m.<br>Place: Courtroom 5, 4th Floor |

## PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR CORRECTIVE ACTION UNDER RULE 23(d)

COULSON P.C.

1

**INTRODUCTION AND BACKGROUND**

2      Remarkably, Defendant does not contest—and therefore concedes[1]— (1) that the Post-

3   filing TOU were enacted specifically in response to this case; (2) that the email notice it promised

4   to send customers regarding updates to the TOU was not sent; (3) that the Post-filing TOU omit

5   any mention of their effect (or potential effect) on putative Class members' rights in this case;

6   and (4) that the new terms would coercively require putative Class members to accede to them

7   unless they terminate their subscriptions and incur the associated costs. *See* ECF No. 21

8   (Plaintiffs' Motion, "Mot.") at 11:12-23, 12:15-21, 20:21-21:19; ECF No. 28 (Defendant's

9   Opposition, "Opp."). [2] Instead, it isolates the text of the Post-filing TOU, suggesting that their

10   purported lack of standalone unconscionability somehow changes the fact that they constitute an

11   improper communication pursuant to clear authority applying Fed. R. Civ. P. 23(d).

12      When this case was filed there was no enforceable agreement to arbitrate Plaintiffs' or

13   putative class members' claims. ECF No. 18, Pl. Opp. to Mot. to Dismiss. Despite Adobe's

14   description of the versions as "substantially the same" and "materially identical" (Opp. at 6:12-

15   15), the changes implemented in the Post-filing TOU materially modify the arbitration provision

16   in a way Adobe anticipates will be enforceable, unlike its prior versions. Specifically, the Post-

17   filing TOU removed the prior requirement that customers in a "coordinated action" share equally

18   in the fees and costs of the proceedings, a heavy financial burden intended to be an unlawful

19   deterrent to consumer claims. Adobe replaced it with less facially unconscionable terms for

20   customers who share counsel, including adoption of the JAMS' Mass Arbitration Procedures and

21   Guidelines and altering the payment structure by providing that "[p]ayment of all filing,

22   administration, and arbitrator fees and costs of arbitration will be governed by the rules of the

23   arbitration provider." Mot. at 12:3-5. This change was driven by a single goal: to salvage the

24   unenforceable prior arbitration provision.

25      Adobe does not simply "periodically" update its TOU in the course of business, as it

26

27   ───────────────

[1] Issued raised in a motion that are not addressed in the opposing party's response are generally

28   deemed conceded. *See Ramirez v. Ghillotti Bros.*, 941 F. Supp. 2d 1197, 1210, FN8 (N.D. Cal.
Apr. 25, 2013) (collecting cases).
[2] For purposes of consistency, Plaintiffs' references to ECF entries using shorthand titles retain
their ECF pagination, rather than the page number reflected at the bottom of the document.

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR CORRECTIVE ACTION**
Case No. 5:25-cv-06562-NC

claims. Opp. at 6:11. In the three years since the TOU dated August 1, 2022 ("2022 TOU"), which Adobe submitted in support of its Motion to Dismiss, and the Post-filing TOU, Adobe updated its TOU only two other times. *See* ECF No. 18 at 18:5-19:17. This is not a mere business update; it is deliberate interference with class members' rights and the course of this litigation.

Plaintiffs' requested relief is both necessary and narrowly tailored. Under Fed. R. Civ. P. 23(d), this Court has broad discretion to protect absent class members from misleading or coercive communications. Granting the Motion will ensure that Adobe's unilateral actions do not compromise the fairness of these proceedings or strip putative Class members of their ability to participate in this litigation.

## ARGUMENT

Plaintiffs' Motion establishes that Adobe's Post-filing TOU is a "misleading, coercive, or improper" communication with the putative class that warrants the requested relief pursuant to Fed. R. Civ. P. 23(d). Adobe's Opposition fails to address the factors that render the communication improper.

### A. ADOBE IGNORES THE RELEVANT LEGAL STANDARD AND FAILS TO REBUT PLAINTIFFS' SUBSTANTIVE POINTS.

Adobe contends that its Post-filing TOU is not a misleading, coercive, or improper communication because it does not risk interfering with the rights of the putative class. Opp. at 10:19-13:25. Yet Adobe largely ignores and otherwise misconstrues the applicable legal standard for abusive, misleading, coercive, or otherwise improper class communications under Rule 23(d). Adobe attempts to defend the Post-filing TOU by noting that they do not reference this action and that the new arbitration terms are more consumer friendly. Opp. at 11:5-20. Not only do those arguments not help Adobe, they prove Plaintiffs' point. The Post-filing TOU are an offending communication precisely *because* of the lack of notice regarding this case and the attempt to salvage a patently unenforceable arbitration provision.

First, Adobe contends that there is no misleading statement because "Adobe did not issue any communication specifically applicable to this case at all." Opp. at 11:5-6. In other words, irrespective of its effect on putative class members, the case was never mentioned. That is a significant part of the problem. This lack of notice of the pending lawsuit, and the terms' potential

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR CORRECTIVE ACTION**
Case No. 5:25-cv-06562-NC

COULSON  P.C.

1  effect thereupon, is precisely what courts have found renders a communication misleading. *See*

2  *McKee v. Audible, Inc*., No. CV 17-1941-GW(Ex), 2018 U.S. Dist. LEXIS 179978, at *15-16

3  (C.D. Cal. Apr. 6, 2018) (collecting cases); *Snarr v. HRB Tax Grp., Inc*., No. 19-cv-03610-SK,

4  2021 U.S. Dist. LEXIS 194077, at *25-26 (N.D. Cal. May 13, 2021); *Jimenez v. Menzies Aviation*

5  *Inc.,* No. 15-cv-02392-WHO, 2015 U.S. Dist. LEXIS 108223, at *16 (N.D. Cal. Aug. 17, 2015)

6  (finding risk of interference supported by lack of notice of the pending action and its impact on

7  the putative class members' rights in the litigation). Moreover, "[o]ne purpose of the court's

8  control over class communication is to prevent improper contacts that could jeopardize the rights

9  of the class members—abdicating that responsibility simply because a defendant does not

10 specifically mention the litigation would defy common sense" and "create an incentive to engage

11 in misleading behavior." *Balasanyan v. Nordstrom, Inc.*, No. 11-cv-2609-JM-WMC, 2012 U.S.

12 Dist. LEXIS 30809, at *10 (S.D. Cal. Mar. 8, 2012) (rejecting defendant's argument that there

13 was no misleading communication because the lawsuit was never mentioned in the arbitration

14 agreement).

15      Second, Adobe contends that the focus should be the substance and effect of the new

16 JAMS Procedures provision, and that such a term cannot be misleading, improper, or coercive

17 because it is "lower priced" and more consumer friendly. Opp. at 11:17-20. Adobe fails to cite

18 any authority for its assertion that the Post-filing TOU are a proper communication so long as

19 they constitute an improvement compared to earlier, worse terms which were unenforceable.

20 This argument advances an incorrect understanding of the applicable legal standard, which

21 requires a *holistic* review of the circumstances of the imposition of the revision. *See Kutzman v.*

22 *Derrel's Mini Storage, Inc.*, 354 F. Supp. 3d 1149, 1158 (E.D. Cal. 2018) ("the standard is one

23 requiring the facts be examined in totality"). Adobe's insistence that the terms are more

24 "consumer-friendly" merely serves to reinforce Plaintiffs' point that Adobe recognized the

25 unenforceability of its prior terms and is attempting to implement a TOU more likely to be held

26 enforceable. That makes the new arbitration provision a truly new term.

27      Applying the correct legal standard, Adobe fails to rebut any of the substantive facts or

28 arguments raised in Plaintiffs' Motion. Plaintiffs argue that Adobe's imposition of the revised

Post-filing TOU constitutes an improper, coercive, or misleading communication because it was

*COULSON P.C.*

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR CORRECTIVE ACTION**
Case No. 5:25-cv-06562-NC

COULSON P.C.

1    (1) unilaterally (2) introduced during the pendency of this litigation, (3) Adobe did not alert

2    putative class members of the litigation or the agreement's impact on their rights, (4) the Post-

3    filing TOU's Dispute Resolution Procedures ("DRP") constitutes an all-new agreement given the

4    unenforceability of the prior DRP, and (5) the Post-filing TOU coercively instructs users to

5    terminate their licenses (at significant cost) if they do not agree to new terms. Mot. at 18-22.

6    Adobe concedes all but one of these points. Even as to the remaining one, it recognizes that if

7    the prior TOU's DRP or arbitration provision were deemed unenforceable, "the updated TOU

8    are essentially an all-new arbitration agreement." Opp. at 13:17-18.

9        Adobe's sole attempt to distinguish its actions from those at issue in *McKee* and *Snarr*[3]

10   is its emphasis that Adobe's prior terms were not invalidated *before* it issued the revised terms.

11   Opp. at 12:23-13:10. However, a prior finding of unenforceability is not a threshold requirement

12   for finding a new arbitration provision to be misleading, coercive, or improper. No case has ever

13   so held, and imposing a such a requirement would incentivize companies to use and benefit from

14   oppressive, unenforceable terms without consequence, so long as they revise them before a court

15   can rule on their unconscionability.

16       Adobe's preemptive maneuver works against, not for, Defendant as it underscores its

17   knowledge of the prior TOU's unenforceability and intention to introduce an enforceable

18   provision for the first time. Unlike *McKee* and *Snarr*, where defendants at least attempted to

19   compel arbitration under prior terms, Adobe tried to "beat the Court to the punch" by

20   preemptively supplanting arbitration and class waiver terms that it knew to be so unconscionable

21   that it elected not to seek their enforcement (and likely waiving its right to do so in the process).

22   *See* Mot. at 11:1-2 ("To date, Adobe has not moved to compel Plaintiffs to arbitration, and by

23   seeking adjudication on the merits it has likely waived the right to do so") (citing *Armstrong v.*

24   *Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023)). This conduct demonstrates that

25   Adobe knows it is seeking to implement an enforceable arbitration provision *for the first time*

26   after benefitting from the deterrent effect in its prior unenforceable terms. Courts in this District

27   have observed that allowing a defendant to benefit from an arbitration provision after they have

28

---

[3] In *McKee* and *Snarr*, the defendants issued revised terms in response to the court's ruling on unenforceability, attempting to cure the identified deficiencies and introduce an enforceable provision.

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR CORRECTIVE ACTION**
Case No. 5:25-cv-06562-NC

deployed arbitration terms designed to generate a "chilling effect" would "at worst, permit[] [the defendant] and other similarly situated companies to continue to chill users' otherwise arbitrable claims." *Rios v. HRB Digit. LLC*, No. 25-cv-03530-EMC, 2025 LX 488386, at *40 (N.D. Cal. Oct. 27, 2025) (citing *Pandolfi v. Aviagames, Inc.*, No. 23-cv-05971-EMC, 2024 LX 180500, at *13 (N.D. Cal. Sep. 4, 2024) (refusing to sever terms that created a chilling effect to save an arbitration provision).

Both *McKee* and *Snarr* counsel in favor of granting Plaintiffs' Motion. The same concerns identified in those cases are present here: the defendant's post-filing revision of arbitration provisions is an attempt to circumvent class proceedings, interfering with the litigation for the defendant's benefit. *See Snarr*, 2021 U.S. Dist. LEXIS 194077, at *29; *McKee*, 2018 U.S. Dist. LEXIS 179978, at *14-17. One of the core concerns of Rule 23(d) is preventing interference with the fair administration of a class action lawsuit. *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2013 U.S. Dist. LEXIS 172477, at *17 (N.D. Cal. Dec. 6, 2013). Adobe's preemptive maneuver is arguably even more troubling than seeking to sidestep a prior unfavorable order, as it signals knowledge of prior unconscionability and constitutes an effort to avoid scrutiny altogether.

Adobe's attempts to contest the applicability of cases outside *McKee* and *Snarr* are similarly unpersuasive. *See* Opp. at 12:1-22. These cases were cited by Plaintiffs for the general principles underlying a Rule 23(d) analysis, not as illustrative examples of factually identical cases. The facts at issue here are remarkably similar to, and arguably more egregious than, *McKee* and *Snarr*. The other cases establish the principles that require a similar outcome here, demonstrating their application in a variety of scenarios. By selectively highlighting isolated aspects of those cases, Adobe discounts broadly applicable rules of law and ignores the governing principle: Rule 23(d) requires a holistic assessment that cannot be reduced to the presence or absence of any single fact. That other cases involved different acts or indicia of impropriety (many of which were less significant than those at issue here) does not insulate Adobe from a finding that its communications were misleading or coercive. *See Kutzman*, 354 F. Supp. 3d at 1158 (rejecting defendant's argument that Plaintiffs' cited cases "revolved around one or two key acts that are much more

COULSON  P.C.

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR CORRECTIVE ACTION**
Case No. 5:25-cv-06562-NC

1    egregious" than the defendant's, as the proper analysis requires consideration of the totality of
2    circumstances).

3    **B.  PLAINTIFFS' REQUESTED RELIEF IS APPROPRIATELY TAILORED.**

4         Adobe further contends that the relief requested by Plaintiffs should be denied as
5    overbroad. Opp. at 14:1-15:14. However, Plaintiffs' requested relief is significantly limited and
6    tailored to the concerns raised in the Motion. Even were it otherwise, altering the relief, rather than
7    denying the Motion would be the appropriate result.

8         Plaintiffs opened by recognizing that any limitation on communication should "limit[]
9    speech as little as possible, consistent with the rights of the parties under the circumstances" and
10   give "explicit consideration to the narrowest possible relief which would protect the respective
11   parties," *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 (1981). Plaintiffs' requested relief does exactly
12   that. It: (1) applies only to the putative Class; (2) allows Adobe to communicate freely with
13   putative Class members so long as the communication does not affect their rights in this case; and
14   (3) allows Adobe to issue communications that *do* affect putative Class members' rights in the
15   case—including revised terms—subject to proper notice and court approval. Mot. at 22:3-9, 25:21-
16   26:6. While Court approval imposes a slight burden, it is necessitated by Adobe's surreptitious
17   attempt to impose new terms, to prevent prejudice and to ensure class members receive notice of
18   this case and the potential impact on their rights. These are hallmarks of the protections Rule 23(d)
19   enacts regarding putative Class communications.

20        Plaintiffs further limited their requested relief by declining to seek an order requiring
21   corrective notice, which is harsher in that it would impose an *affirmative* obligation on Adobe.
22   Curiously, Adobe requests just such an order in lieu of the ongoing oversight its conduct
23   necessitates. It asks to be ordered to send a court-ordered and -approved corrective notice instead
24   of being required to seek Court approval for future communications that could impact Class
25   members' rights. The only real difference between the two is that Adobe's proposal would preserve
26   its right to issue additional, future communications that impact putative Class members' rights.  In
27   that way, Adobe's proposal is evidence of its own insufficiency. In contrast, Plaintiffs' request is
28   consistent with (if not narrower than) relief granted by courts in similar circumstances. *See* Mot.
     at 23:1-11.

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR CORRECTIVE ACTION**
Case No. 5:25-cv-06562-NC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COULSON P.C.**

Adobe questions the Court's authority to nullify the prior TOU as to the putative class, asserting the more appropriate relief would be corrective notice, primarily relying on *Dominguez v. Better Mortgage Corp*, 88 F.4th 782 (9th Cir. 2023). Opp. at 14:7-23. Contrary to Adobe's contention, that case does not stand for the proposition that there are "uncertain bounds of the Court's authority to issue a nullification order." *See id.* at 14:29-20. Setting aside that the Ninth Circuit did not even reach the nullification issue because it determined it lacked jurisdiction to do so, it did not question *whether* district courts can nullify misleading communications or their effects under Rule 23(d)(1). Indeed, the court noted that it has previously "approved a similar order nullifying class opt-outs obtained by coercion. *Dominguez*, 88 F.4th at 793 (citing *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 757 (9th Cir. 2010), vacated on other grounds, 565 U.S. 801, 132 S. Ct. 74, 181 L. Ed. 2d 1 (2011)). It also recognized that other "circuits have reasoned, consistent with the relevant portion of *Wang*, that district courts have the power to remedy misleading and coercive communications used to obtain agreements from prospective plaintiffs that affect their participation in the pending lawsuit." *Id.* Further recognizing established district court cases like *McKee*, *Balasanyan,* and others, the court simply recognized that district courts have been called to consider "*when* can a district court void a settlement or opt-out agreement obtained through misleading or coercive communications?" *Id.*

Defendant attempts to misuse the Ninth Circuit's reference to a question that it raised at oral argument that it did not reach, much less address in a way that would overrule the precedent it expressly recognized in *Wang*. Opp. at 10:12-18 (citing *id*. ("At oral argument we questioned whether the district court had the power to issue the nullification order…")). *Wang* and the numerous cases offered by Plaintiffs unquestionably remain good law. Regardless, to the extent the Court has any concerns regarding its authority to issue this relief as to the putative class, such concerns would be fully and easily resolved (as in *Snarr*) by taking the additional procedural step of provisionally certifying the putative class for the limited purpose of this corrective relief. *See* Mot. at 22, n.23.

Adobe further claims that nullifying the prior TOU "would undermine the interests of customers" and deprive them of "their entitlement to those procedures." Opp. at 14:22-25. Adobe again ignores the fundamental issue with the new terms in a hollow attempt to reposition itself as

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR CORRECTIVE ACTION**
Case No. 5:25-cv-06562-NC

a champion of its customers. Adobe is free to issue revised—even nearly identical—terms, but it must do so in a way that fairly advises putative class members of the impact those terms would have on their rights, specifically as it relates to this case.

Next, Adobe contends that Plaintiffs' request for court approval of any future communication impacting the putative class rights is vague and overbroad, asserting that "any restriction on future communications should be limited to future TOU updates or communications specifically about this lawsuit." Opp. at 15:1-14. It is unclear what communications Adobe could be seeking to carve out from Plaintiffs' limited request regarding communications "that could impact putative class members' rights in this case" Mot. at 23:26-28. Adobe also challenges, without explanation, the substance of the requested notice, claiming only that it is "unspecified." Opp. at 15:7-11. To the contrary, Plaintiffs set forth a detailed list of the information that would be required to obtain the court's approval. Mot. at 24:1-6. To the extent more specificity could even be set out, that is what the approval process is for.

Finally, Adobe fails to provide any explanation for why a corrective notice is more appropriate, nor does Adobe detail any proposed substance of such a notice. Rather than be bound to clear criteria courts have required in such communications, Adobe seeks a delay to negotiate the terms of its own punishment. This would leave Plaintiffs and the Court in the position of evaluating its proposal without any defined requirements. Plaintiffs' proposal is far more workable.

## CONCLUSION

For the reasons in Plaintiffs' Motion and the foregoing reasons, Plaintiffs are entitled to relief under Fed. R. Civ. P. 23(d) and their Motion should be granted.

Date: November 19, 2025

Respectfully submitted,

**COULSON, P.C.**

*/s/ Nicholas A. Coulson*
NICHOLAS A. COULSON, ESQ.
SBN 358903
300 River Place Dr., Ste 1700
Detroit, MI 48207
T: (313) 644-2685

E: Nick@CoulsonPC.com

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR CORRECTIVE ACTION**
Case No. 5:25-cv-06562-NC