Nicholas A. Coulson (SBN 358903)
Nick@CoulsonPC.com
Ellyn Gendler (SBN 305604)
EGendler@CoulsonPC.com
**COULSON P.C.**
300 River Place Drive
Suite 1700
Detroit, Michigan 48207
T: (313) 644-2685

*Attorneys for Plaintiffs and the Putative Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE WOHLFIEL and VIANCA MARQUEZ, individually and on behalf of all others similarly situated, | CASE NO. 5:25-cv-6562-NC |
| Plaintiffs, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| ADOBE INC., | Judge: Hon. Nathanael M. Cousins |
| Defendant. | |

Plaintiffs Stephanie Wohlfiel and Vianca Marquez ("Plaintiffs") bring this action individually and on behalf of all others similarly situated against Defendant Adobe Inc. ("Adobe" or "Defendant"). Upon personal knowledge as to their own actions and upon information and belief and investigation of counsel as to all other matters, Plaintiffs allege as follows:

## NATURE OF THE ACTION

1.      This action arises from Adobe's unlawful and deceptive practices related to its subscription services, which deploy misleading enrollment and automatic renewal schemes intended to induce consumers to unwittingly enroll in subscriptions. Consumers are routinely misled about key terms of subscriptions, including the duration of subscriptions, renewal conditions, and cancellation policies.

**FIRST AMENDED CLASS ACTION COMPLAINT**

COULSON P.C.

2. Adobe designed its enrollment process to hide and limit the accessibility of information on material terms of its subscriptions, obscuring the terms of the transactions to which it intends to bind consumers: annual commitments for subscriptions which appear to be monthly in nature, and hefty "Early Termination Fees" ("ETFs") for consumers who cancel those subscriptions.

3. Adobe's deception was no accident. According to the Federal Trade Commission, one Adobe executive referred to the hidden ETF as being "a bit like heroin for Adobe" and declared that "there is absolutely no way to kill off ETF or talk about it more obviously [without] taking a big business hit[.]"

4. Adobe's cancellation procedures are also intentionally burdensome, further trapping consumers into unwanted subscriptions.

5. Plaintiffs bring this class action individually and on behalf of all others similarly situated against Defendant for violation of California consumer protection laws, conversion, unjust enrichment/restitution, negligent misrepresentation, and fraud.

## PARTIES

6. Plaintiff Stephanie Wohlfiel is an individual residing in Vista, California, where she intends to remain, and is a citizen of California for jurisdictional purposes.

7. Plaintiff Vianca Marquez is an individual residing in Bellevue, Nebraska, where she intends to remain, and is a citizen of Nebraska for jurisdictional purposes.

8. Adobe Inc. is a Delaware corporation with its principal place of business at 345 Park Avenue, San Jose, California 95110. Defendant is a major international software corporation with signature products like Creative Cloud, Acrobat, Photoshop, Illustrator, and more.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), also known as the Class Action Fairness Act (CAFA). The parties are diverse in citizenship, there are 100 or more Class Members, and the amount in controversy is greater than five million dollars ($5,000,000), exclusive of interest and costs.

**FIRST AMENDED CLASS ACTION COMPLAINT**

COULSON P.C.

10.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in California, including having its principal place of business in California, and a significant portion of the acts alleged herein occurred in California.

11.     Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business is located in San Jose and a significant portion of the acts alleged herein occurred in this District.

## FACTUAL ALLEGATIONS

### I.     Rise of the Subscription Economy

#### a.   Growth of Subscription Services

12.     Subscription models have become increasingly common across industries, offering access to goods and services for a recurring fee.

13.     Historically, software providers operated under a "perpetual license" model, where a customer pays a one-time fee to access and use the provider's software indefinitely.

14.     With the digital age and rise of cloud-based software, software providers began shifting to subscription-based models, phasing out traditional perpetual licensing in favor of arrangements that would provide them with recurring revenue.

15.     In a subscription-based model, customers pay a recurring fee, typically weekly, monthly, or yearly, for continued access to products and services.

16.     Subscription models are highly lucrative for businesses, providing predictable recurring passive income, higher customer retention rates, scalability, and increased valuation and financial stability.[1]

17.     Companies have also increasingly adopted "automatic renewal" mechanisms for their subscriptions that continue billing customers unless they actively cancel, shifting away from models that required customers to actively renew as the end of each term.

---

[1] https://www.ey.com/en_us/insights/tech-sector/tech-companies-adopting-subscription-and-consumption-models
https://www.forbes.com/sites/danadunne/2021/12/03/the-origin-of-the-subscription-model/
https://www.forbes.com/councils/forbesbusinessdevelopmentcouncil/2022/09/12/the-evolution-of-the-subscription-model-and-whats-on-the-horizon/
https://www.forbes.com/councils/forbesbusinessdevelopmentcouncil/2022/10/18/9-reasons-to-offer-your-customers-a-subscription-service/

**FIRST AMENDED CLASS ACTION COMPLAINT**

18. Although often presented as a convenience for consumers, automatic renewal mechanisms significantly benefit businesses by helping them retain subscribers for longer periods of time and collect the corresponding income, relying on the likelihood that consumers will forget or otherwise fail to opt out of renewal.[2]

### b. Consumer Protection Issues and Deceptive Practices

19. Increasingly, subscription and auto-renewal models have raised concerns about transparency, consent, and ease of cancellation.

20. The Federal Trade Commission receives thousands of complaints about subscription practices and automatic renewals every year, with an average of seventy complaints per day in 2024. The number of complaints has been steadily increasing since 2020.[3]

21. Out of a desire to obtain and retain consumers to increase earnings, less scrupulous businesses, such as Defendant (the subject of related FTC enforcement proceedings), rely on unfair, deceptive, misleading, and fraudulent practices to funnel users into recurring subscriptions and/or dissuade or actively prevent them from cancelling.

22. Although there are several types of deceptive practices, common examples include:[4]

   a. Making subscribing appear simple and easy, but making cancelling extremely difficult or impossible;

   b. Advertising a low price to entice customers to begin the process, but tacking on hidden fees and charges at checkout;

   c. Enrolling users in a recurring subscription or payment plan without clear disclosure or explicit consent;

   d. Putting up barriers, obstacles, or hurdles that make it difficult for consumers to find information or complete a certain task (such as cancellation);

[2] https://www.gsb.stanford.edu/insights/auto-renew-snags-new-subscribers-its-not-good-way-keep-them
https://consumer.ftc.gov/articles/getting-and-out-free-trials-auto-renewals-and-negative-option-subscriptions
https://www.bankrate.com/credit-cards/advice/subscription-payment-renewed-without-consent/
[3] https://www.ftc.gov/news-events/news/press-releases/2024/10/federal-trade-commission-announces-final-click-cancel-rule-making-it-easier-consumers-end-recurring
[4] https://www.deceptive.design/

Page 5

**FIRST AMENDED CLASS ACTION COMPLAINT**

 e. Hiding or delaying presentation of pertinent or material information about a transaction to customers; and

 f. Using confusing or misleading language to get users to take certain action.

23. In response to such tactics, many states and the Federal Government have passed consumer protection laws aimed at combatting such practices, primarily by making certain practices unlawful and by instituting compliance requirements.

## II. Adobe's Subscription Practices

### a. Adobe's Subscription Offers

24. In 2012, Defendant become one of the first major software companies to transition to a subscription-based model.[5]

25. Adoption of the subscription model and auto-renewal mechanisms has resulted in significant financial gain for Defendant, who achieved record-setting revenue of $21.51 billion in 2024.[6]

26. Under its subscription model, Defendant provides access to its products and services through tiered subscription plans that automatically renew at the end of the subscription period.

27. Overall, Adobe offers three subscription plan options: (1) Monthly ("MO"), (2) Annual, billed monthly ("ABM"),[7] and (3) Annual, prepaid ("AP")

28. Consumers "choose" from the subscription plans that are available for the selected product. Not all products offer each type of subscription plan.

29. The MO subscription is a month-to-month subscription with no term commitment. The ABM subscription is an annual commitment that consumers pay for in monthly installments. The AP subscription is an annual commitment that consumers pay for in full upfront.

---

[5] https://www.adobe.com/about-adobe.html#:~:text=Adobe%20Creative%20Cloud&text=Driven%20by%20strong%20product%20innovation,cumulative%20number%20of%20creations%20made.

[6] chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.adobe.com/content/dam/cc/in/about-adobe/newsroom/pdfs/2025/Adobe%20-%20Q4%20and%20FY24%20Earnings.pdf

[7] The ABM plan has also been called the "Annual, paid monthly" plan.

**FIRST AMENDED CLASS ACTION COMPLAINT**

COULSON P.C.

**b. Free Trials and Promotional Pricing**

30.    Adobe draws in consumers with the lure of a free trial with no initial charges and as a hook to get consumer credit card information.

31.    However, to sign-up for the free trial, consumers must enter their payment information and agree to automatic enrollment in the paid subscription immediately at the end of the free trial.

32.    Consumers do not reconfirm their consent to enroll in the paid subscription at the end of the free trial; they are automatically enrolled and billed.

33.    There is no free trial option that allows consumers to separately choose whether to enroll in the paid subscription after the trial ends.

34.    Example A below shows the checkout page for starting a free trial.

<u>**Example A**</u>

**Summary**

Subscription

Annual, billed monthly  ∨

Creative Cloud Pro     14-day free trial

Licenses ⓘ

1 ∨                              US$99.99/mo per license

Subtotal                        US$99.99/mo
DUE NOW                         US$0.00/mo

After trial ends, on Jul 08, 2025    US$99.99/mo
                                      + tax

**Free trial terms**

✔ Up to 10 licenses can be added to your free tr
✔ Trial period begins and ends at the same tim
   all licenses
✔ Billing automatically starts after free trial ends
✔ Cancel before Jul 08 to avoid getting billed

**FIRST AMENDED CLASS ACTION COMPLAINT**

35. As shown in Example A, consumers must enter their payment information in exchange for the free trial.

36. The terms of the free trial and the subscription are presented after the consumers give their payment information.

37. Like the standard subscription enrollment process, the fine print of the terms and conditions is buried at the end of the page in small font and in separate hyperlinks that customers must affirmatively click on to view.

38. By accepting the free trial offer, consumers agree to automatic enrollment in the paid subscription at the expiration of the free period and to have their payment information automatically charged. Consumers do not have the ability to choose a free trial without automatic enrollment.

### III.    Adobe's Deceptive Enrollment Process

39. Adobe's enrollment process fails to clearly and conspicuously disclose and intentionally obscures material terms of the ABM plan, including but not limited to that the subscription is a one-year commitment and not a monthly plan, the existence of an early termination fee, the relationship of the early termination fee to the one-year contract, and the amount of the early termination fee.

40. The combined effect of this disclosure failure is that consumers are likely to agree to what they believe is only a monthly commitment, where they will actually become obligated to pay for a full year of the service or face a substantial penalty payment for cancelling.

   a. **ABM Terms and Conditions**

41. The ABM subscription includes the material terms:

   a. Subscribers who cancel within the first 14 days after the initial purchase receive a full refund;

   b. The subscription entails a year-long commitment;

   c. Subscribers are automatically charged each month until they cancel;

   d. Subscribers are charged an early termination fee if they cancel before the end of the contract year;

**FIRST AMENDED CLASS ACTION COMPLAINT**

e. The early termination fee is 50% of the total charges for the months remaining in the year contract; and

f. If subscribers cancel, Adobe terminates the service at the end of the monthly billing period in which the cancellation occurred.

42. In totality, the terms of the ABM plan lock unwitting consumers into year-long contracts that strongly deter consumers from cancelling and automatically renew each year.

b. **Subscription Selection**

43. Consumers can purchase Adobe products online at Adobe.com by selecting the desired product and completing a series of enrollment steps ("enrollment process").

44. At the beginning of the enrollment process, consumers are typically first shown the subscription options available for that product. Example B below illustrates a subscription selection page.

**Example B**



45. The subscription options are displayed next to one another for comparison, with the

**FIRST AMENDED CLASS ACTION COMPLAINT**

cost of the subscription displayed in large, bold type.

46. The ABM is frequently pre-selected as the default selection in the enrollment process, even if it is not listed first. It displays only a monthly price.

47. For certain products, the ABM plan is the only subscription plan offered.

48. The ABM subscription cost identifies only the monthly installment amount and does not identify the total annual cost.

49. As shown in Example A, each subscription has faint, gray text below the listed price with an  icon next to the text.

50. For the ABM subscription, the text reads "Fee applies if you cancel after [DATE]."

51. To get more information, consumers must click or hover over the ⓘ icon. If consumers do not do so, they do not see the information connected to the icon.

**Example C**



**FIRST AMENDED CLASS ACTION COMPLAINT**

COULSON P.C.

52. Example C above illustrates the pop-up box that appears when a consumer clicks or hovers over the ⓘ icon.

53. As shown in Example C, the pop-up box for the ABM subscription reads: "If you cancel after 14 days, your service will continue until the end of that month's billing period, and you will be charged an early termination fee."

54. Nowhere on the Subscription Selection page does Adobe provide information as to the amount of the early termination fee, how it is calculated, or its relationship to the total price of the subscription.

55. Moreover, the phrasing of the pop-up box text is suggestive of a simple end-of-the month cutoff for a cancelled subscription and provides no indication to the consumer of a potentially substantial termination fee tied to the full remaining contract obligation.

56. There is also no clear statement on the Subscription Selection page that the subscription entails a year-long commitment.

c. **Additional Offers and Account Creation Pages**

57. After consumers select a subscription, they must navigate additional pages to continue enrollment, including a page with additional offers to add-on products or services, often with a free trial, and a page where the consumer must enter their email address to either create an Adobe account or sign-in to an existing one.

58. There is no information on these pages about the subscription terms, such as the length or early termination fee.

d. **Checkout Page**

59. After these pages, consumers then are directed to a final checkout page, where they are prompted to enter their payment information as shown below in Example D.

Page 11

**FIRST AMENDED CLASS ACTION COMPLAINT**

**Example D**

60.     The page heavily emphasizes the "monthly" aspect of the ABM subscription as the cost of the subscription is repeatedly displayed only as the monthly installment price.

61.     The total annual cost of the plan is not displayed anywhere on the page.

62.     The annual nature of the subscription is again not explicitly disclosed; the paragraph only indirectly alludes to the one-year subscription commitment, mentioning automatic renewal after a year and the absence of a commitment thereafter.

63.     Further, the annual subscription inexplicably converts to a month-to-month subscription after the first year, furthering the impression that it was always a flexible monthly agreement.

64.     Moreover, the paragraph only tells consumers "Cancel before [DATE] to get a full refund and avoid a fee," but does not clarify that it is an early termination fee, nor provide any information as to the amount of the fee or its relationship with the full cost of the contract.

65.     Further, the sentence is confusingly followed by the assurance that consumers "Cancel anytime via Adobe Account or Customer Support," conveying a level of ease and flexibility that is incongruous with the financial penalties associated with early cancellation.

Page 12

**FIRST AMENDED CLASS ACTION COMPLAINT**

66.     Consumers can only see the subscription and cancellation terms by clicking on the "Subscription and Cancellation Terms" hyperlink, cluttered among other links at the very end of the paragraph to bring up a pop-up window as shown in Example E below. This is the first time the subscription terms are made available to the consumer.

**Example E**



67.     Once the window is open, consumers must scroll all the way to the bottom to see the cancellation terms, which is the first and only opportunity for consumers to receive any specific information about cancellation and an early termination fee during the enrollment process.

68.     As shown in Example E, the cancellation terms read "If you cancel within 14 days of your initial order, you'll be fully refunded. Should you cancel after 14 days, you'll be charged a lump sum amount of 50% of your remaining contract obligation and your service will continue until the end of that month's billing period."

69.     Notably, the cancellation terms introduce the cost as a "lump-sum" charge, deviating from the term "fee" used consistently throughout the enrollment process, making it harder for consumers to make the connection.

70.     Moreover, this is the first and only instance where the early termination fee is explicitly linked to the total contract value, a critical detail that is never clearly disclosed during enrollment.

Page 13

FIRST AMENDED CLASS ACTION COMPLAINT

71.     The paragraph also does not clarify what is meant by "remaining contract obligation" and does not explicitly reference the year length of the subscription term.

## IV.    Difficult Cancellations

### a.  Early Termination Fee

72.     As noted above, consumers who subscribed to an ABM plan face a substantial early termination fee of 50% of the remaining contract obligation if they wish to cancel the subscription prior to the year-end.

73.     Due to the misleading nature of the enrollment process, consumers often learn about the early termination fee for the first time when they investigate or start the cancellation process.

74.     In learning of the cancellation fee, consumers are dissuaded from attempting cancellation or choose to abandon the cancellation process initiated to avoid the substantial early termination fee.

75.     The combination of the substantial early termination fee and the immediate loss of access to products or services creates a strong deterrent to cancellation, effectively forcing consumers to pay for the remainder of the contract without receiving its benefits.

76.     Notably, the immediate loss of access of services upon cancellation is specific to the ABM subscription plan. In contrast, customers on the AP plan who cancel after 14 days retain access to the services for the full one-year term, underscoring the uniquely punitive nature of the ABM plan.

### b.  Cancellation Process

77.     Adobe fails to provide simple, accessible ways to cancel, and instead purposefully designed its cancellation process to be confusing and frustrating to consumers to encourage them to give up on the process and stay enrolled.

78.     Adobe indicates to customers that they can cancel their subscriptions at any time online at their Adobe Account page or by contacting Adobe's Customer Service.

79.     However, for many consumers, the cancellation process is rarely that simple.

80.     In many cases, consumers must make repeated efforts through multiple channels to cancel subscriptions.

**FIRST AMENDED CLASS ACTION COMPLAINT**

81.    During the cancellation process, Adobe also frequently attempts to convince consumers to terminate the cancellation process by offering add-ons, free trials, discounts, and other promotions.

82.    In certain cases, consumers who successfully completed the cancellation process continued to be charged for the cancelled subscriptions and had to contact Adobe again to try to stop the payments and receive a refund.

## V.    Adobe's Subscription Practices Harm Consumers

83.    Adobe's unlawful practices have harmed and continue to harm consumers while allowing Adobe to enrich itself.

### a.    Consumer Complaints

84.    Numerous consumers reported deceptive billing, enrollment, and cancellation experiences on public review platforms, such as the Better Business Bureau, Trustpilot, and Adobe's own forums.

**Adobe Community 1**



**FIRST AMENDED CLASS ACTION COMPLAINT**

**Adobe Community 2**



Search this community

**default9sxatvbnqb5y**
New Here, Nov 13, 2021

Here's the rundown:

Last month I needed to use lightroom to edit a few photos. I don't use lightroom often, I haven't touched it in a few years. But, I needed it for these photos so I ended up purchasing what I thought was a monthly subscription with the intention of cancelling later. It's marketted on their website as a "monthly payment," right beside the annual payment option. "Perfect!" I thought, "I don't need a full year, I only need the software for these photos I'll buy it for a month and cancel once I'm done, I won't be using it past that."

Boy was I suprised when I realized it wasn't a monthly subscription at all. Hiden inside pages of fine print is a $25.98 cancelation fee for ending a yearly subscription. WHAT??
I didn't want a yearly subscription! I never did! I only wanted this product for a few photos thats why I selected a monthly payment. This intentionally misleading and a total scam.

What's even more ridiculous is that there is no was to contact customer support!
There's literally a button on their support page that says:
"Contact us. Real Help from Real People"
When you press the button it just takes you back to the default support page. No phone number, no email, even when you try doing the online chat it just bounces you back to the default page. They've now billed me for another month of a plan I don't want and are trying to charge me even more money to get out.

I can't believe a company like adobe would rely on hidden fees and misleading advertising to try and milk it's customers for an extra few dollars. **I am truly disgusted.**

I want my money back and I want out of this ridiculous plan!

👁 8.7K  🗛 Translate  |🏳 Report  + Follow                                    Reply

**Better Business Bureau 1**

👤 **Initial Complaint**                          **Type:** 🅰 Sales and Advertising Issues
**Date:** 10/28/2024                              **Status:** 💬 Answered

This has been a recurring issue with Adobe (for me) when cancelling my subscription service with them. I have had to use some of their products periodically and attempted to use their "free trial" services and have attempted to cancel (in some cases) the same day and been unable to locate where to cancel. I have also had the experience of having had to pay for months because I couldn't cancel services and would email customer support and wait for sometimes weeks for a response. I have also had the experience of cancelling service that falls below the free trial period and then been charged for the full year of services that I was trying to cancel. I believe it is very misleading to offer a free trial and then make cancelling impossible or charge you a cancellation fee that is the same amount as service. I also tried to change the subscription and then would get an error that prevented me from doing so. I would request refunds and not received any from Adobe and my bank. This has been going on for 5 years now and needs to stop! I have had my bank account overdrawn due to their practices of continuing charges.

Page 16

**FIRST AMENDED CLASS ACTION COMPLAINT**

COULSON  P.C.

**Better Business Bureau 2**

> 👤 **Initial Complaint**                    **Type:** 📢 Sales and Advertising Issues
>
> **Date:** 10/22/2024                    **Status:** 💬 Answered
>
> Purchased a student membership for the Adobe Creative Cloud through my school with ZERO indication from Adobe that it was in any way a commitment that lasted further than month-to-month billing. When I went to cancel, they stated that they were going to try to charge me an early cancellation fee. Further, they make it practically impossible to reach any form of customer support. The only contact available online was a terribly written AI that asked circular questions and refused to put me in contact with any live person.The so-called early-cancellation fees either need to be removed entirely or be advertised in a place that actually appropriately advertises the "commitment" a buyer is getting into. Not mentioning anything about a supposed "commitment" in any place that is easily seen until a customer is requesting a cancellation is not okay, and frankly, the company should face litigation over it.

**Better Business Bureau 3**

> 👤 **Initial Complaint**                    **Type:** 📢 Sales and Advertising Issues
>
> **Date:** 08/29/2024                    **Status:** 💬 Answered
>
> February of 2023 I entered into a trial period for adobe creative cloud services where I would be able to cancel said services at no charge prior to March 30th of 2023. I was not aware that Adobe would make it impossible to cancel services and begin a reoccurring charge to my account as it had created a "contract" that I had never agreed to and made it impossible to cancel the account. Since the initial use of the account during the "free" trial period, I have not utilized the account once. I have repeatedly attempted to cancel only to be met with demands of a large cancelation fee to do so, a contract I had never agreed to. I had actually attempted to remove my payment information in order to stop the fees and when that didn't work, I made the funds unavailable in the account in the hopes they would let me cancel. My only option was to allow them to withdraw from my account to even manage it. I wasn't allowed to access my billing information and there is no option for customer service outside of an ai support bot that provides no assistance. The only reason I was able to cancel my account now is because the *** has found them guilty of scamming many people such as myself and adobe has only within the last few weeks, allowed people to cancel without penalty. I have yet again attempted to seek refund for the 17 months of $21.19 they have illegally charged me, but they are only allowing refunds for payments made within 14 days. Conveniently freeing themselves from all of the fraudulent contracts they have accepted payments from. They are in multiple lawsuits now for scamming many others such as myself for the same illegal activity.

Page 17

**FIRST AMENDED CLASS ACTION COMPLAINT**

**Trustpilot 1**



**Harry**
GB • 3 reviews

Jul 1, 2025

★☆☆☆☆

**Scam company**

Scam company, leave small print rules to their subscriptions to get you caught in a commitment. Not the best way to conduct business, especially for design software. Do not buy.

**Date of experience:** June 30, 2025

👍 Useful    ⤳ Share    ⚐

**Trustpilot 2**



**Sophie Vm**
NL • 4 reviews

Apr 15, 2025

★☆☆☆☆

**Shady cancelation policy where you have…**

Shady cancelation policy where you have to pay a fee if you cancel before the year, EVEN when you have a 'monthly' membership. They sell it as monthly but the small letters say differently. Watch out for Adobe. If they were not a monopoly I would NEVER pay for their memberships

**Date of experience:** April 01, 2025

👍 Useful 3    ⤳ Share    ⚐

**Trustpilot 3**

**FIRST AMENDED CLASS ACTION COMPLAINT**



**Cosmin ionut Visan**
GB • 4 reviews

Oct 24, 2024

★☆☆☆☆

**Deceptive and Predatory Cancellation Policy – Adobe is Taking Advantage of Customers**

Adobe's cancellation policy is outrageous and exploitative. I signed up for their Annual Plan, paid monthly, thinking I had flexibility. However, they completely fail to inform you upfront that cancelling after 14 days means you're hit with a 50% termination fee on the remainder of your contract. This critical information is hidden in fine print, with only a vague mention of a "fee" at sign-up — nothing about it being half of your remaining balance.

Here's the real kicker: when you cancel, you still only get to use the service for one more month but are charged 50% of the entire contract! So, I pay half of the remaining year, but I only get access for one more month? This is absurd! It's essentially locking customers into paying for services they won't even use, and they make sure you don't realise this until it's too late.

Adobe's practices are deceptive and predatory, trapping customers in unfair contracts. They make their cancellation terms deliberately confusing, so by the time you realise the financial hit, you're already locked in.

I strongly recommend avoiding Adobe's annual plans. They are not transparent, and their cancellation terms are designed to exploit customers. This is hands down the worst experience I've had with a subscription service.

**Date of experience:** October 24, 2024

85. Despite knowing of these common consumer misunderstandings about the ABM Subscription and a long history of accompanying complaints, Adobe has not changed the enrollment process to address any of the identified issues.

86. Adobe profits immensely from a misleading subscription process that locks unwitting consumers into a year-long commitment, cancellation terms that incentivize subscribers to pay the full annual cost, and an auto-renewal set-up that capitalizes on the likelihood of consumers not taking affirmative action to cancel.

b. **FTC Complaint and Settlement**

87. The Federal Trade Commission (FTC) filed a complaint against Adobe for similar practices, highlighting that Adobe's subscription practices, in particular as related to the ABM subscription, violate the Restore Online Shoppers' Confidence Act (ROSCA), 15 U.S.C. § 8401,

**FIRST AMENDED CLASS ACTION COMPLAINT**

*et seq*., in several respects, including failing to clearly and conspicuously disclose all material terms of the subscription transactions, failing to get express informed consent for transaction charges, and failing to provide a simple cancellation process.[8] Pl's Compl., *FTC v. Adobe, Inc.*, *et al.*, No. 5:24-cv-03630-NW.

88.    Among other things, the FTC found that Adobe intentionally structured its ABM subscription enrollment process to be opaque and confusing to obscure its material terms, in particular the year-long commitment and the existence and substantial amount of the early termination fee. *See generally*, Pl's Compl., *FTC v. Adobe, Inc.*, *et al.*, No. 5:24-cv-03630-NW.

89.    In its complaint, the FTC stated that Defendant is aware about the numerous ABM subscriber complaints and confusion about the ABM terms and cancellation fee but refuses to alter its practices because such practices are extremely financially lucrative. Pl's Compl. 11-12, *FTC v. Adobe, Inc.*, *et al.*, No. 5:24-cv-03630-NW.

90.    According to the FTC, Adobe's ABM subscriptions account for "most of Adobe's subscription revenues." Pl's Compl. 6, *FTC v. Adobe, Inc.*, *et al.*, No. 5:24-cv-03630-NW.

91.    On March 13, 2026, Adobe and the United States filed a "Stipulation for Entry of a Stipulated Order for Permanent Injunction, Civil Penalty Judgment, and Other Relief" in which Adobe stipulated to a judgment against it "in connection with its marketing and sale of subscriptions for its design and productivity software application." ECF No. 122 and 122-1.

92.    Among other things, Adobe agreed to pay $75 million ($75,000,000) in civil penalties and to provide $75 million ($75,000,000) in free services to customers. ECF No. 122-1 at 7.

93.    Adobe's agreement with the United States for free services is expressly "not compensation for actual pecuniary loss" and does not settle the consumer claims in this action. ECF No. 122-1 at 7.

94.    The Stipulated Order also: (a) permanently enjoins Adobe from failing to clearly and conspicuously disclose all material terms of a covered good or service with a negative option feature before obtaining a consumer's billing information; (b) prohibits such disclosures from

---

[8] https://www.bbb.org/us/ca/san-jose/profile/computer-services/adobe-systems-inc-1216-204797/more-info#alert-0_-50721

**FIRST AMENDED CLASS ACTION COMPLAINT**

COULSON P.C.

being made "only in a way that requires navigating to a separate window or page, such as by clicking a hyperlink, link, tooltip, or other similar mechanism"; and (c) permanently enjoins Adobe from failing to provide simple mechanisms for consumers to cancel.

95.   The Court approved and entered the parties' stipulated order on April 10, 2026. ECF No. 126.

### c.   Impact on Plaintiffs and Class

96.   Plaintiffs and the Class incurred financial harm, including but not limited to, unauthorized charges, payment for unintended subscriptions, early termination fees, and inability to cancel subscriptions.

97.   The above-described acts and practices violate California's Automatic Renewal Law, Unfair Competition Law, False Advertising Law, and Consumers Legal Remedies Act. Such acts and practices alleged herein also constitute conversion, unjust enrichment, fraud, and negligent misrepresentation.

### VI.   Plaintiffs' Subscriptions and Experience

### a.   Plaintiff Stephanie Wohlfiel

98.   Between July 2023-September 2023, Plaintiff Stephanie Wohlfiel purchased approximately ten ABM subscriptions for Lightroom for a photography job scheduled for November 2023.

99.   At the time of purchase, Plaintiff Wohlfiel believed she was buying month-to-month subscriptions, and she was unaware of the early termination fee.

100.   Plaintiff Wohlfiel intended to purchase only monthly subscriptions as she would no longer need the subscriptions after the job was complete.

101.   After completing the photography job, in or around the end of November 2023, Plaintiff Wohlfiel began the process of cancelling the subscriptions.

102.   As part of the process, Plaintiff Wohlfiel learned that the subscriptions were annual, not monthly.

**FIRST AMENDED CLASS ACTION COMPLAINT**

103.   Plaintiff Wohlfiel also learned that Adobe would require her to pay an early termination fee to cancel each subscription, equivalent to 50% of the remaining contract obligation of each subscription.

104.   As Plaintiff Wohlfiel no longer needed the products, she decided to move forward with cancelling the subscriptions.

105.   From November 2023-January 2024, Plaintiff Wohlfiel began progressively cancelling subscriptions, paying the early termination fee for each cancelled product.

b. **Plaintiff Vianca Marquez**

106.   In or around mid-June 2023, Plaintiff Vianca Marquez purchased an ABM subscription for Adobe Acrobat for her personal, household, and/or family purposes, as opposed to any commercial use.

107.   At the time of purchase, Plaintiff Marquez believed she was buying a month-to-month subscription that she could easily cancel, and she was unaware of the early termination fee.

108.   In or around mid-July 2023, approximately one month after the initial purchase, Plaintiff Marquez decided that she wanted to cancel the subscription, and she subsequently initiated the process.

109.   During the cancellation process, Plaintiff Marquez learned that the subscription was annual, not monthly, and that Adobe would require her to pay an early termination fee totaling 50% of the remainder of the contract.

110.   As Plaintiff Marquez had only recently purchased the subscription, the early termination fee amounted to an estimated $250, given that about 11 months were remaining in the subscription.

111.   After learning about the early termination fee, Plaintiff Marquez ceased the cancellation process.

c. **CLRA Notice**

112.   Plaintiffs each sent a demand letter to Defendant on April 2, 2025 via certified mail, return receipt requested, pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code

Page 22

**FIRST AMENDED CLASS ACTION COMPLAINT**

§ 1782, notifying Defendant of its violations of the Act and demanding that Defendant rectify the violations.

113. Defendant declined to remedy the issues raised in each Plaintiff's respective notice letter.

> **d. Plaintiffs Satisfied Any and All Conditions Precedent to Initiating Legal Action, or Alternatively Were Prevented from Doing So.**

114. Section 14.1 of Adobe's (unconscionable and unenforceable) TOU, in relevant part, states:

> If you have any concern or dispute that Adobe Customer Care is unable to resolve ("Claim"), you agree to first try to resolve the dispute informally and in good faith by contacting us and providing a written Notice of Claim to the address provided in section 18.2 (Notice to Adobe). The Notice of Claim must provide Adobe with fair notice of your identity, a description of the nature and basis of your Claim, and the relief you are seeking, including the specific amount of any monetary relief you are seeking, and cannot be combined with a Notice of Claim for other individuals. If any dispute related to your Claim is not resolved within 60 days of receipt, any resulting legal actions must be resolved through either small claims court or final and binding arbitration, including any dispute about whether arbitration is required for the dispute, subject to the exceptions set forth below. Neither party shall initiate legal action until 60 days after the Notice of Claim is received.

115. On April 2, 2025, undersigned counsel, on behalf of Plaintiffs (and 10,924 other clients) submitted individual written Notices of Claim to Adobe at 345 Park Avenue, San Jose, California, 95110-2704, USA, Attention: General Counsel.

116. Each of the Notices was a separate document containing the information listed in Section 14.1 of Adobe's TOU, including (a) Plaintiffs' first and last names, email address, and physical address; (b) a description that the dispute involved claims for violations of California law, including the Consumer Legal Remedies Act, the Unfair Competition Law, the False Advertising Law, and the Automatic Renewal Law, specifically arising from the imposition of deceptive cancellation or termination fees for products; and (c) the specific amount of monetary relief sought.

117. In connection with the Notices, Plaintiffs reserved all rights by informing Adobe that the DRP was invalid and unenforceable, but that notwithstanding that invalidity they were complying with its purported requirements in good faith.

118. Rather than engage in any good-faith effort to address or resolve Plaintiffs' Claims, Adobe raised various criticisms of the Notices (none of which were specific to either Plaintiff),

Page 23

**FIRST AMENDED CLASS ACTION COMPLAINT**

making the unilateral decision not to participate in any resolution process within the 60 days following receipt of the Notices.

119.    Therefore, while Plaintiffs satisfied any and all conditions precedent to initiating this action, in the alternative, they were prevented from doing so by Defendant.

120.    Plaintiffs' disputes were not resolved within 60 days of delivering the Notices.

121.    On August 4, 2025, Plaintiffs initiated this lawsuit.

## CLASS ALLEGATIONS

122.    Plaintiffs bring this action individually and on behalf of all persons similarly situated. Plaintiffs seek to represent three Nationwide Classes preliminarily defined as:

**The "Termination Fee" Class**: All persons in the United States who, within the four (4) years preceding the filing of this Complaint, incurred and/or paid fees for cancelling an ABM subscription.

**The "ABM" Class**: All persons in the United States who, within the four (4) years preceding the filing of this Complaint, paid the full year contract of the ABM subscription.

>    **The "ABM Cancellation Attempt" Subclass:** All persons in the United States who, within the four (4) years preceding the filing of this Complaint, initiated or contemplated canceling their ABM subscription but ultimately did not complete the cancellation process and thereafter paid the full year contract of the ABM subscription.

123.    The classes are collectively referred to as the "Class" or "Class Members."

124.    Excluded from the Class are Defendant, its officers, directors, employees, affiliates, legal representatives, successors, and assigns, as well as any judicial officer presiding over the matter and their immediate family members and staff.

125.    Plaintiffs reserve the right to amend or modify the Class definitions after having had an opportunity to conduct discovery.

FIRST AMENDED CLASS ACTION COMPLAINT

COULSON P.C.

**Numerosity**

126.    The members of this Class are so numerous that joinder of all Class Members in a single proceeding is impracticable. On information and belief, thousands of individuals purchased subscriptions from Adobe within the relevant period. The precise number of Class Members is presently unknown, as such information is in the exclusive control of Defendant.

**Commonality**

127.    Numerous common questions of law and fact are common to Plaintiffs and the Class and predominate over any questions affecting individual Class Members. Such common legal and factual questions include, but are not limited to:

    a.  Whether Defendant misrepresented and/or hid material terms of its subscription plans, including the length and early termination fee of its ABM subscription;

    b.  Whether Defendant's subscription enrollment process deceptively induces consumers to purchase its ABM subscription;

    c.  Whether Defendant provides clear and conspicuous notice of its automatic renewal terms;

    d.  Whether Defendant obtains explicit consent from consumers to charge their payment method for auto-renewing subscriptions; and

    e.  Whether Defendant intentionally obstructs consumers ability to cancel subscriptions; and

    f.  Whether Defendant's practices alleged herein violate California's consumer protection laws;

**Typicality**

128.    Plaintiffs' claims are typical of the claims of the Class.

129.    Plaintiffs have the same interests in this matter as all other members of the Class.

130.    Plaintiffs and the Class sustained damages because of Defendant's common deceptive subscription practices.

**Adequacy of Representation**

Page 25

**FIRST AMENDED CLASS ACTION COMPLAINT**

131. Plaintiffs will fairly and adequately represent the interests of the Class and ensure the claims are prosecuted with diligence and care.

132. Plaintiffs have no interests antagonistic to those of the Class and are subject to no unique defenses.

133. Plaintiffs have retained counsel who is experienced in complex class action litigation. Plaintiffs' counsel will vigorously prosecute this action and otherwise protect and fairly and adequately represent Plaintiffs and the absent Class Members.

**Superiority**

134. A class action is superior to all other methods for fair and efficient adjudication of this controversy for at least the following reasons:

    a. Prosecution of individual actions is economically impracticable for individual Class Members;

    b. Absent class-wide relief, Defendant is likely to persist in the harmful conduct alleged herein and continue to derive benefits from such conduct;

    c. Prosecution as a class action will eliminate the risk of repetitious litigation and/or promote uniformity in adjudication;

    d. Individual claims would create a risk of adjudications which would be dispositive of the interests of other individuals, and/or substantially impair or impede their ability to protect and pursue their interests;

    e. Plaintiffs seek relief relating to the Defendant's common actions and the equitable relief sought would benefit the Class as a whole;

    f. A class action will be efficient and promote economy of time, effort, resources, and expenses; and

    g. The proposed class action is manageable.

**COUNT 1**
**Violations of California's Unfair Competition Law (UCL)**
Page 26

**FIRST AMENDED CLASS ACTION COMPLAINT**

COULSON P.C.

**Cal. Bus. & Prof. Code § 17200, *et seq.***
**On behalf of Plaintiffs and the putative Class**

135.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

136.    California Business & Professions Code § 17200, *et seq.*, also known as California's Unfair Competition Law (UCL), prohibits any unfair, unlawful, or fraudulent business acts or practices.

137.    By the acts and practices alleged herein, Defendant has engaged in unfair, unlawful, and/or fraudulent business acts and practices in violation of the UCL by:

   a. Misrepresenting and/or hiding material facts about its subscriptions, particularly the annual commitment and substantial early termination fee for its ABM subscription;

   b. Using misrepresentations and deception to induce consumers to purchase the ABM subscription, Adobe's most lucrative plan;

   c. Failing to clearly and conspicuously disclose material terms of its auto-renewing subscriptions prior to obtaining consumer's billing information;

   d. Failing to obtain customers' express informed consent to the automatic renewal feature before charging the customer;

   e. Failing to provide a simple mechanism to cancel its subscriptions and immediately halt charges.

138.    Defendant's acts and practices alleged herein are unfair because they offend public policy, and are immoral, unethical, unscrupulous, and/or substantially injurious to consumers.

139.    Any utility to Defendant's acts and practices is significantly outweighed by the gravity of the harm to its consumers. Defendant's legitimate business interests can be served by alternative, lawful means.

140.    Defendant's acts and practices alleged herein are unlawful because they violate California Civil Code § 1750, *et seq.*, as described herein.

141.    Defendant's acts and practices also violate the California's Automatic Renewal Law (ARL), Cal. Bus. & Prof. Code § 17600, *et seq.* by failing to: (a) clearly and conspicuously identify the auto-renewal terms of its subscriptions before the subscription is fulfilled and in visual

**FIRST AMENDED CLASS ACTION COMPLAINT**

proximity to the request for consent, § 17602(a)(1); (b) obtain affirmative consent of Plaintiffs and the Class Members to the auto-renewal terms prior to charging them, § 17602(a)(2); and (c) obtain the consumer's express affirmative consent to the automatic renewal or continuous service offer terms, § 17602(a)(4);

142. Defendant further violated by the ARL, by: (1) misrepresenting material facts related to the subscriptions, § 17602(a)(7), and (2) making it difficult for consumers to cancel their subscriptions, § 17602(b) and (d).

143. Defendant's acts and practices alleged herein deceived and are likely to deceive and/or mislead consumers, including Plaintiffs and the Class.

144. As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiffs and the Class suffered economic injury. Plaintiffs and the Class would not have purchased the subscriptions or they would have cancelled their subscriptions earlier had the terms associated with the subscription, including the early termination fee, been clearly disclosed.

145. Plaintiffs seek actual damages, restitution, disgorgement, punitive damages, attorneys' fees, costs and interest and all other relief available under the UCL.

## COUNT II
### Conversion
### On behalf of Plaintiffs and the putative Class

146. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

147. Due to the unauthorized charges imposed by Defendant on the payment methods of Plaintiffs and Class Members in violation of California law, Defendant has taken money that belongs to Plaintiffs and the Class.

148. The sum of money unlawfully obtained by Defendant is capable of identification.

149. Defendant engaged in this conduct knowingly, willfully, and with oppression, fraud, and/or malice within the meaning of California Civil Code § 3294(c).

150. As a direct and proximate result of Defendant's actions, Plaintiffs and the Class have suffered damages.

## COUNT III
### Violations of California's False Advertising Law (FAL)
Page 28

---

**FIRST AMENDED CLASS ACTION COMPLAINT**

**Cal. Bus. & Prof. Code § 17500, *et seq.***
**On behalf of Plaintiffs and the putative Class**

151.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

152.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, …in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

153.    Defendant engaged in false advertising, as defined by § 17500, by, at a minimum:

a.    Misrepresenting and/or omitting material information about its subscription plans in the enrollment process, particularly the annual commitment and early termination fee associated with the ABM subscription;

b.    Engaging in deceptive advertising practices to promote and sell the ABM subscription by misrepresenting key terms and features;

c.    Failing to clearly and prominently advertise essential terms of its auto-renewing subscriptions, including renewal conditions and costs, before collecting consumers' billing information;

d.    Failing to adequately disclose the automatic renewal feature of its subscriptions prior to charging consumers; and

e.    Failing to disclose the cancellation policy and process for its subscription, misleading consumers about their ability to stop charges.

154.    Defendant's acts and practices alleged herein deceived and were intended and/or likely to deceive or mislead consumers, including Plaintiffs and Class Members.

155.    Plaintiffs and Class Members did not learn about the early termination fee until after they had subscribed.

Page 29

**FIRST AMENDED CLASS ACTION COMPLAINT**

156.   As a direct and proximate result of Defendant's false advertising alleged herein, Plaintiffs and the Class have been economically injured. Plaintiffs and the Class would not have purchased the subscription had they know the true terms and conditions.

157.   Plaintiffs and Class Members seek an order awarding actual damages, restitution, disgorgement, punitive damages, attorneys' fees, costs and interest and all other relief available under the FAL.

**<u>COUNT IV</u>**
**Violations of California's Consumers Legal Remedies Act (CLRA)**
**Cal. Civ. Code § 1750, *et seq.***
**On behalf of Plaintiff Marquez and the putative Class**

158.   Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

159.   California Civil Code § 1750, *et seq.*, also known as California's Consumers Legal Remedies Act (CLRA), prohibits unfair and deceptive business acts and practices in transactions for goods and services. California Civil Code § 1770 sets out a list of unfair and deceptive acts and practices that violate the CLRA.

160.   Plaintiff Marquez and the members of the Class are "consumers" within the meaning of the § 1761(d) as Plaintiff and the Class sought or acquired Defendant's goods and/or services for personal, family, or household purposes.

161.   Defendant's subscription offers and other products pertaining to such are goods and or services within the meaning of Cal. Civ. Code §§ 1761(a) and (b).

162.   The purchases by Plaintiff and the Class are "transactions" within the meaning of Cal. Civ. Code § 1761(e).

163.   By its acts and practices alleged herein, Defendant has violated, and continues to violate, the CLRA in at least the following ways:

   a.   Representing that its subscriptions have characteristics or qualities that they do not have, in violation of Cal. Civ. Code § 1770(a)(5);

   b.   Advertising its subscriptions with intent not to sell them as advertised, in violation of Cal. Civ. Code § 1770(a)(9); and

Page 30

**FIRST AMENDED CLASS ACTION COMPLAINT**

c. Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law, in violation of Cal. Civ. Code § 1770(a)(14).

164. In violation of the CLRA, Defendant, at a minimum:

a. Concealed and/or misrepresented material terms of its subscription plans, particularly regarding the annual commitment and substantial early termination fee associated with the ABM plan;

b. Using misrepresentations and omissions about subscription terms and conditions to induce consumers to purchase the ABM subscription, Adobe's most profitable offering;

c. Failed to clearly disclose essential terms of its automatically renewing subscriptions before collecting consumers' payment information;

d. Charged customers without first obtaining their explicit and informed consent to the automatic renewal feature; and

e. Failed to provide a straightforward method for customers to cancel their subscriptions and stop further charges.

165. Defendant's acts and practices alleged herein deceived and were intended and/or likely to deceive or mislead consumers, including Plaintiff and Class Members.

166. As a direct and proximate result of Defendant's unfair and deceptive practices alleged herein, Plaintiff and the Class have been economically injured. Plaintiff and the Class would not have purchased the subscription or they would have cancelled their subscriptions earlier had the terms associated with the subscription been clearly disclosed.

167. In compliance with § 1782, Plaintiff sent written notice to Defendant on April 2, 2025, informing Defendant it was in violation of the CLRA and demanding rectification of the violations.

168. Defendant declined to remedy the issues raised in Plaintiff's respective notice letter.

**FIRST AMENDED CLASS ACTION COMPLAINT**

169.   Under Cal. Civ. Code §1780, Plaintiff and Class Members seek an order awarding actual damages, restitution, disgorgement, punitive damages, attorneys' fees, costs and interest and all other relief available under the CLRA.

## COUNT V
### Unjust Enrichment/Restitution
### On behalf of Plaintiffs and the putative Class

170.   Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

171.   Plaintiffs and Class Members conferred a benefit upon Defendant by making subscription payments beyond those they understood or intended to undertake, and/or by paying an early termination fee.

172.   Defendant has been unjustly enriched in retaining revenues from the subscriptions and early termination fees derived from Plaintiffs and Class Members.

173.   Retention of the benefit is unjust and inequitable because Defendant's misrepresentations and omissions in violation of California law induced Plaintiffs and the Class to purchase the subscriptions and caused them injury.

174.   Plaintiffs and the Class would not have purchased the subscriptions had they knew the full terms and conditions.

175.   Restitution or disgorgement of the amount of Defendant's unjust enrichment is appropriate and necessary as it is against equity to permit Defendant to retain the benefits it derived from Plaintiffs and Class Members through unjust and unlawful acts.

## COUNT VI
### Negligent Misrepresentation
### On behalf of Plaintiffs and the putative Class

176.   Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

177.   Defendant misrepresented, omitted, and/or hid materials facts regarding its subscription plans, including but not limited to subscription lengths, billing practices, cancellation procedures, and automatic payment terms.

178.   At the time these representations were made, Defendant either knew or should have known they were false, inaccurate, or misleading.

**FIRST AMENDED CLASS ACTION COMPLAINT**

179.    Defendant negligently misrepresented and/or failed to disclose material facts about the subscriptions and their accompanying terms and conditions.

180.    These negligent misrepresentations and omissions, upon which Plaintiffs and Class Members reasonably relied, were intended to, and did, induce them to enroll in the subscriptions.

181.    Plaintiffs and the Class would not have purchased the subscriptions had they knew the full terms and conditions.

182.    As a direct and proximate result of Defendant's actions, Plaintiffs and Class Members suffered harm and are entitled to recover damages and seek legal and equitable relief.

## COUNT VII
### Fraud
### On behalf of Plaintiffs and the putative Class

183.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

184.    Defendant knowingly provided Plaintiffs and Class Members with false and/or misleading information about, and failed to disclose, material terms of its subscriptions.

185.    Plaintiffs and Class Members reasonably relied on these misrepresentations and omissions, which were intended to, and did, induce them to purchase subscriptions.

186.    As a direct and proximate result of Defendant's actions, Plaintiffs and Class Members suffered harm and are entitled to recover damages and seek legal and equitable relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, request that the Court:

A. Certify the Class, name Plaintiffs as representatives of the Class, and appoint Plaintiffs' counsel as Class Counsel;

B. Enter a judgment in favor of the Plaintiffs and the Class;

C. Award Plaintiffs and the Class actual, compensatory, statutory, and/or punitive damages as allowable by law and in an amount to be determined at trial;

D. Award Plaintiffs and the Class restitution and/or all other forms of equitable monetary relief as may be appropriate;

E. Order injunctive relief as pleaded or as the Court may deem proper;

**FIRST AMENDED CLASS ACTION COMPLAINT**

F.  Enter an award of pre- and post-judgment interest;

G.  Award reasonable attorneys' fees, expenses, and costs; and

H.  Award such further relief as may be just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: April 21, 2026

Respectfully submitted,

**COULSON P.C.**

*/s/ Nicholas A. Coulson*
Nicholas A. Coulson (SBN 358903)
Nick@CoulsonPC.com
Ellyn Gendler (SBN 305604)
EGendler@CoulsonPC.com
**COULSON P.C.**
300 River Place Drive
Suite 1700
Detroit, Michigan 48207
T: (313) 644-2685

*Attorneys for Plaintiffs and the Putative Class*

**FIRST AMENDED CLASS ACTION COMPLAINT**