DOUGLAS A. WINTHROP (No. 183532)
douglas.winthrop@arnoldporter.com
JEREMY T. KAMRAS (No. 237377)
jeremy.kamras@arnoldporter.com
JOSEPH FARRIS (No. 263405)
joseph.farris@arnoldporter.com
TOMMY HUYNH (No. 306222)
tommy.huynh@arnoldporter.com
MARK E. RAFTREY (No. 352610)
mark.raftrey@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
Four Embarcadero Center, 14th Floor
San Francisco, CA 94111-4164
Telephone:   415-471-3100
Facsimile:   415-471-3400

*Counsel for Defendant*
*Adobe Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE WOHLFIEL and VIANCA MARQUEZ,<br><br>*Plaintiffs*,<br><br>v.<br><br>ADOBE INC.,<br><br>*Defendant*. | Case No. 5:25-cv-6562-NC<br><br>**DEFENDANT ADOBE INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION**<br><br>Assigned to: Hon. Nathanael M. Cousins<br><br>Date: May 13, 2026 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................... 1

II.   LEGAL STANDARD ................................................................................................ 2

III.  ARGUMENT ............................................................................................................. 3

    A.    The Court Did Not Commit Clear Error In Holding That Adobe Did Not
    Waive Its Right To Compel Arbitration Under TOU Subsection 14.1 ...................... 3

        1.    Plaintiffs' Failure To Allege Compliance With Pre-Litigation
        Requirements Is Not A Procedural "Question" Within The DRP. .................. 3

        2.    Regardless, Adobe Has Not Acted Inconsistently With Its Right To
        Compel Arbitration Of The Merits Of The Dispute. ..................................... 5

    B.    The Court Did Not Commit Clear Error In Finding The DRP Not
    Procedurally Unconscionable ................................................................................... 7

        1.    The Court Properly Found Lack Of Adhesion ............................................... 9

        2.    There Is No Evidence Of Oppression Or Surprise ...................................... 13

        3.    Plaintiffs Inconsistently Argue Which Sections Are Covered By
        The Opt-Out Provision ................................................................................ 17

IV.   CONCLUSION ........................................................................................................ 18

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Armstrong v. Michaels Stores, Inc.*,
   59 F.4th 1011 (9th Cir. 2023) ............................................................................................5, 6

*BG Grp., PLC v. Republic of Argentina*,
   572 U.S. 25 (2014)................................................................................................................4

*Circuit City Stores, Inc. v. Ahmed*,
   283 F.3d 1198 (9th Cir. 2002) ........................................................................................10, 12

*Cox v. Ocean View Hotel Corp.*,
   533 F.3d 1114 (9th Cir. 2008) ............................................................................................5

*Gentry v. Superior Court*,
   42 Cal. 4th 443 (2007) ........................................................................................................9

*Heckman v. Live Nation Ent., Inc.*,
   120 F.4th 670 (9th Cir. 2024) ............................................................................................13

*Hill v. Xerox Bus. Servs., LLC*,
   59 F.4th 457 (9th Cir. 2023) ..............................................................................................7

*Houghton v. Polychain Alchemy, LLC*,
   No. 24-7243, 2025 WL 2965204 (9th Cir. Oct. 21, 2025) (unpublished) ................................7

*Howsam v. Dean Witter Reynolds*,
   537 U.S. 79 (2002)..........................................................................................................4, 5

*In re Apple Inc. Device Performance Litig.*,
   386 F. Supp. 3d 1155 (N.D. Cal. 2019) ..............................................................................2, 8

*Johnson v. Stoneridge Creek Pleasanton CCRC LLC*,
   No. A165800, 2023 WL 7125117 (Cal. Ct. App. Oct. 30, 2023)...........................................12

*Lake Commc'ns, Inc. v. ICC Corp.*,
   738 F.2d 1473 (9th Cir. 1984), .............................................................................................6

*Lim v. TForce Logistics, LLC*,
   8 F.4th 992 (9th Cir. 2021) ......................................................................................10, 15, 16

*Luciano v. Epson Am. Inc.*,
   No. 25-cv-02257, 2026 WL 1048192 (C.D. Cal. Mar. 26, 2026)...........................................12

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma Gmbh & Co.*,
    571 F.3d 873 (9th Cir. 2009) ...................................................................................2

*Martin v. Yasuda*,
    829 F.3d 1118 (9th Cir. 2016) .................................................................................6

*McDowell v. Calderon*,
    197 F.3d 1253 (9th Cir. 1999) .................................................................................2

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016) .................................................................................9

*Prete v. Bradbury*,
    438 F.3d 949 (9th Cir. 2006) ...................................................................................2

*Rios v. HRB Digit. LLC*,
    807 F. Supp. 3d 975 (N.D. Cal. 2025) .............................................................. *passim*

*Roope v. Westlake Hardware Inc.*,
    No. 25-cv-07702, 2026 WL 98438 (N.D. Cal. Jan. 14, 2026).....................................8, 11, 12

*Rupert v. Bond*,
    No. 12-cv-05292, 2015 WL 78739 (N.D. Cal. Jan. 6, 2015).......................................2

*Samuels v. Lido DAO*,
    No. 23-cv-06492, 2025 WL 2529660 (N.D. Cal. Sept. 3, 2025)....................................7

*Sanchez v. Superior Court*,
    108 Cal. App. 5th 615 (2025) ...................................................................................9

*Synopsys, Inc. v. Siemens Indus. Software Inc.*,
    No. 20-cv-04151, 2021 WL 1238309 (N.D. Cal. Apr. 2, 2021)....................................4

*United Comput. Sys. v. AT&T Corp.*,
    298 F.3d 756 (9th Cir. 2002) ...................................................................................6

*United States v. Rodriguez-Vasquez*,
    4 F. Supp. 3d 1146 (N.D. Cal. 2013) .......................................................................2

*Van Ness Townhouses v. Mar Indus. Corp.*,
    862 F.2d 754 (9th Cir. 1988) ...................................................................................6

*Zuckerman v. Charter Commc'ns, LLC*,
    No. 24-cv-128, 2024 WL 4871739 (S.D. Cal. Nov. 22, 2024)....................................9

**ADOBE'S OPPOSITION TO MOTION FOR RECONSIDERATION**
Case No. 5:25-cv-6562

**Other Authorities**

L.R. 7-9 .................................................................................................................................1, 2, 7

**ADOBE'S OPPOSITION TO MOTION FOR RECONSIDERATION**
Case No. 5:25-cv-6562

## I.    INTRODUCTION

Plaintiffs' Motion for Reconsideration fails to satisfy the demanding standard for reconsideration.  *See* N.D. Cal. L.R. 7-9(b).  Plaintiffs advance only arguments that they could have made in their earlier briefing.  They identify ***no*** new evidence, ***no*** changes in controlling law, and ***no*** manifest failure by the Court to consider facts or legal arguments presented by the parties.  Simply put:  Plaintiffs just disagree with the Court.  That is not a basis for reconsideration, and in any event, Plaintiffs are wrong on the law.

Plaintiffs challenge two holdings:  (1) that Adobe did not waive its right to compel arbitration because, as Adobe asserted, "Plaintiffs did not go through the pre-litigation requirements and thus [Adobe] believed that this dispute was not yet ripe for arbitration" (ECF No. 48 at 9 n.2); and (2) that the Dispute Resolution Provision ("DRP") was not unconscionable, and therefore is enforceable, because it contained an opt-out right (*id.* at 10-11).  The Court did not err at all, much less commit clear error, in either regard.

The relevant question when assessing waiver is whether a party has knowingly and intentionally acted inconsistently with its right to arbitrate by actively litigating the merits of a dispute in court for a prolonged period of time.  Adobe has not.  Plaintiffs did not allege in the Complaint that they complied with the conditions precedent for legal action.  As even Plaintiffs' authority reflects, that does not present procedural questions for an arbitrator to decide, but rather threshold questions for the Court.  Plaintiffs brought a Complaint in federal court; they had not complied with the requirements entitling them to do so; and it was therefore appropriate for Adobe to challenge that threshold deficiency in the forum in which Plaintiffs brought their claim.  Nor did Adobe's alternative arguments in its motion to dismiss constitute the type of prolonged litigation that the Ninth Circuit has found to constitute a waiver.

As to the DRP, binding Ninth Circuit precedent provides that the Court applied the correct legal standard in assessing the DRP's procedural unconscionability.  The Court correctly found that the TOU do not constitute a contract of adhesion given the opt-out provision, and that there is otherwise no oppression or surprise that would make the TOU procedurally unconscionable.

- 1 -

Both because Plaintiffs have failed to satisfy the requirement for a motion for reconsideration, and because they are wrong as a matter of law, the Court should deny Plaintiffs' Motion.

## II.    LEGAL STANDARD

"A motion for reconsideration may be made on three grounds: (1) a material difference in fact or law exists from that which was presented to the court, which, in the exercise of reasonable diligence, the moving party did not know at the time of the order for which reconsideration is sought; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the court to consider material facts or dispositive legal arguments.  The moving party may not repeat any oral or written argument previously made." *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1163-64 (N.D. Cal. 2019) (citing N.D. Cal. L.R. 7-9).

Reconsideration is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *United States v. Rodriguez-Vasquez*, 4 F. Supp. 3d 1146, 1156 (N.D. Cal. 2013).  Motions for reconsideration "are disfavored and 'should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed *clear error*, or if there is an intervening change in the controlling law.'  Furthermore, '[a] motion for reconsideration "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation."'" *In re Apple Inc.*, 386 F. Supp. 3d at 1163 (emphases in original) (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) and *Marlyn Nutraceuticals, Inc. v. Mucos Pharma Gmbh & Co.*, 571 F.3d 873, 880 (9th Cir. 2009)).

Clear error is an extremely high bar:  "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Prete v. Bradbury*, 438 F.3d 949, 968 n.23 (9th Cir. 2006) (quotation marks omitted).  Accordingly, where a question is a "debatable one," a court does not commit clear error. *McDowell v. Calderon*, 197 F.3d at 1256; *see also Rupert v. Bond*, No. 12-cv-05292, 2015 WL 78739, at *2 (N.D. Cal. Jan. 6, 2015) ("A manifest error of law is not merely one

- 2 -

in which the party disagrees with the Court, but instead is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent on the part of the court.'"), *aff'd,* 771 F. App'x 777 (9th Cir. 2019).

## III.    ARGUMENT

### A.    The Court Did Not Commit Clear Error In Holding That Adobe Did Not Waive Its Right To Compel Arbitration Under TOU Subsection 14.1[1]

Plaintiffs concede that they identify no new facts on the question of waiver—nor could there be, as any evidence about whether Adobe acted inconsistently with the right to arbitrate definitionally would be before the Court.  Plaintiffs concede also that there has been no intervening change of law.  There also patently was no failure by the Court to consider material facts or dispositive legal arguments presented to it, as the Court considered and addressed this question.

Instead, Plaintiffs simply disagree with the Court's decision.  This is not an appropriate ground for reconsideration.  Nor did the Court commit clear error; indeed, the Court did not err at all in finding that Adobe has not waived its right to compel arbitration.  Adobe did not act inconsistently with a right to arbitrate by moving to dismiss Plaintiffs' Complaint for having failed to fulfill the conditions precedent permitting any litigation, nor by seeking in the alternative to move to dismiss the Complaint on the basis of other pleading deficiencies.

### 1.    Plaintiffs' Failure To Allege Compliance With Pre-Litigation Requirements Is Not A Procedural "Question" Within The DRP

Plaintiffs spill much ink arguing that questions concerning compliance with the pre-litigation requirements are within the scope of the "general arbitration provision" and thus Adobe has entirely waived its right to compel arbitration.  Mot. at 6-10.  This is a red herring: Adobe's election to have the Court dismiss the Complaint where Plaintiffs had failed even to allege compliance with a prerequisite to litigation is not within the questions delegated to the arbitrator

---

[1] Plaintiffs do not define, and inconsistently use, the terms "base arbitration provision," "Legacy DRP," "primary arbitration provision," and "general arbitration provision."

- 3 -

by Adobe's TOU.  Accordingly, the Court did not err, much less commit clear error, in holding that Adobe has not acted inconsistently with the "general arbitration provision."

Plaintiffs' cited cases do not change this analysis.  To the contrary, in *Synopsys, Inc. v. Siemens Industry Software Inc.*, No. 20-cv-04151, 2021 WL 1238309 (N.D. Cal. Apr. 2, 2021), the court emphasized the distinction between "*questions* as to whether the conditions precedent for arbitration are met[, which] should be resolved by an arbitrator," and cases in which "there is no dispute over whether the conditions precedent to arbitration have been met."  *Id.* at *4 (emphasis in original).  The court explained that the cases on which the *Synopsys* plaintiff relied—all of which are cited also by Plaintiffs here—"are not directly on point" because in those cases there was no such dispute and thus no "procedural issue" for either the Court or the arbitrator to decide. *Id.*  This is akin to the situation here:  Plaintiffs did not even plead in the Complaint that the conditions precedent were met and thus there is no dispute over whether they are met.  This is precisely the sort of threshold inquiry that falls outside an arbitration provision.

Plaintiffs do not cite any cases involving the procedural posture here, where a defendant moved to dismiss for failure to allege compliance with conditions precedent to legal action, and the court held that these arguments were within the arbitration provision.  Instead, in *BG Group, PLC v. Republic of Argentina*, 572 U.S. 25 (2014), the Supreme Court held that arbitrators should "decide disputes about the ***meaning and application*** of particular procedural preconditions for the use of arbitration."  *Id.* at 34 (emphasis added).  Here, Adobe did not challenge the meaning or application of its requirement that customers fulfill the listed conditions precedent, but instead that Plaintiffs did not allege that they had satisfied them.  Finally, in *Howsam v. Dean Witter Reynolds*, 537 U.S. 79 (2002), the defendant requested that the court declare the dispute was ineligible for arbitration under the National Association of Securities Dealers arbitration rules and issue an injunction that would prohibit the plaintiff from proceeding in arbitration.  *Id.* at 82.  The Supreme Court held that this sort of "procedural question" was for the arbitrator, not the court, as the arbitrator should decide whether its own requirements had been met.  *Id.* at 84-85.  Again,

*Howsam* involved a dispute about the sufficiency of allegations that a condition precedent had been fulfilled, not a complete lack of allegations that the conditions had been satisfied.

Thus, the Court did not err in holding that Adobe had not invoked the general arbitration provision by challenging Plaintiffs' failure to allege compliance with the conditions precedent.

### 2.    Regardless, Adobe Has Not Acted Inconsistently With Its Right To Compel Arbitration Of The Merits Of The Dispute

The Court correctly relied on *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114 (9th Cir. 2008), in holding that Adobe did not act inconsistently with its right to compel Plaintiffs to arbitration on the merits of the dispute. In *Cox*, the Ninth Circuit held that the district court erred in finding that the defendant had waived its right to arbitrate its dispute. The Ninth Circuit explained that the defendant's actions were not clearly inconsistent with the right to arbitrate given its understanding that the dispute was not ripe for arbitration. *Id.* at 1125. Adobe's TOU provide that a customer must first try to resolve any dispute with Adobe Customer Care, then provide a written Notice of Claim, and that "[n]either party shall initiate legal action until 60 days after the Notice of Claim is received," TOU (ECF No. 8-1) § 14.1. Because Adobe reasonably (and correctly) believed that Plaintiffs had not complied with these steps, Adobe did not knowingly and intentionally act inconsistently with its right to arbitrate Plaintiffs' disputes if and when they are ripe for arbitration.

"Under [Ninth Circuit] precedent, a party generally acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023) (quotation marks omitted). In making this determination, the court must consider "the totality of the parties' actions." *Id.* Adobe's single motion to dismiss does not constitute "active[] litigat[ion]" of "the merits" "for a prolonged period of time"; nor do its alternative arguments in that motion reflect an intent "to take advantage of being in court." Adobe was quite clear—indeed explicit—that its primary and "threshold" argument was that "Plaintiffs lack standing because they did not comply with the contractual pre-litigation dispute resolution requirements that are a

- 5 -

condition precedent to their ability to bring claims against Adobe in any forum," ECF No. 7 at 1, and that the case should be dismissed on that basis alone. *Id.* More, Adobe repeatedly alluded to its right to compel arbitration, *id.* at 1, 10, 11; *see also* ECF No. 20 at 15. Nor has Adobe engaged in any discovery nor any other actions that indicate an intention to remain in federal court. Adobe did not "take advantage of being in court"; it was haled there.

The Ninth Circuit has held that litigants that have availed themselves of far more judicial process than here have still maintained their right to compel arbitration. In *Armstrong*, the defendant moved to compel arbitration nearly a year after plaintiff filed the complaint, and after having propounded limited discovery requests "related at least in part" to the non-arbitrable claims. 59 F.4th at 1016. Yet the defendant still was held not to have made an intentional decision not to compel arbitration or actively litigate for a prolonged period. *Id.* In so holding, the Ninth Circuit distinguished cases where a party "spent seventeen months litigating the case," including by filing a dispositive motion that was denied in part, submitting discovery filings, and conducting a deposition, *Martin v. Yasuda*, 829 F.3d 1118, 1126 (9th Cir. 2016); and where a defendant "waived the right to arbitrate after litigating in federal court for two years and then filing a motion to dismiss on the merits." *Armstrong*, 59 F.4th at 1015-16 (citing *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988)). Those are not the circumstances here.

Similarly, Ninth Circuit precedent establishes that filing a motion to dismiss on a threshold jurisdictional question does not constitute active litigation of the merits of the case. *See Lake Commc'ns, Inc. v. ICC Corp.*, 738 F.2d 1473, 1476-77 (9th Cir. 1984) (holding that defendant did not act inconsistently with right to arbitrate by filing a motion to dismiss for lack of personal jurisdiction and alluded to its intention to rely on its right to arbitrate), *overruled on other grounds by Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 632-35 (1985); *United Comput. Sys. v. AT&T Corp.*, 298 F.3d 756, 765 (9th Cir. 2002) (holding that defendant did not waive right to arbitrate by filing motion to dismiss based on res judicata). That is exactly what Adobe has done here.

Plaintiffs acknowledge that whether a party has waived its right to compel arbitration is a "holistic inquiry." Mot. at 11 (quoting *Houghton v. Polychain Alchemy, LLC*, No. 24-7243, 2025 WL 2965204 (9th Cir. Oct. 21, 2025) (unpublished)). Under this standard, Plaintiffs' cited cases are inapposite. In *Hill v. Xerox Business Services, LLC*, 59 F.4th 457 (9th Cir. 2023), the defendant waited ***more than six years*** after referencing the dispute resolution procedure to express its intent to compel arbitration. *Id.* at 466. The defendant challenged the merits of the plaintiff's legal theories "in three different courtrooms (the district court, this Court, and the Washington Supreme Court)," "sought to take advantage of litigation in federal court by requesting extensive discovery on unnamed parties to the case," and filed a motion for partial summary judgment. *Id.* at 473-75. In *Houghton*, the defendant "filed a motion to dismiss and a motion for reconsideration of the order denying the motion to dismiss" and an "opposition to the motion to appoint lead counsel," "answered the amended complaint and filed counterclaims against Houghton and other plaintiffs." 2025 WL 2965204, at *2. "The case proceeded through the judicial system with two case management conferences and [defendant] serving and responding to discovery requests. The parties engaged in multiple meet and confers. . . . Taken together, these actions are inconsistent with exercising a right to arbitrate." *Id.* And in *Samuels v. Lido DAO*, No. 23-cv-06492, 2025 WL 2529660 (N.D. Cal. Sept. 3, 2025), the defendants "filed motions to dismiss in which they sought favorable rulings on the substantive legal issues presented in the case. They sought discovery that focused primarily on the merits. And they sought interlocutory appeal of the denial of their motion to dismiss." *Id.* at *1.

Adobe has not taken such inconsistent actions by filing a single motion to dismiss, primarily on a threshold jurisdictional issue. Considering the totality of Adobe's actions, Adobe has not waived its right to compel arbitration, and the Court did not clearly err in so finding.

**B.      The Court Did Not Commit Clear Error In Finding The DRP Not Procedurally Unconscionable**

The entirety of Plaintiffs' argument about the opt-out provision is improper new argument that should be disregarded. *See* N.D. Cal. L.R. 7-9(b)(3) (providing for reconsideration where

- 7 -

there is "[a] manifest failure by the Court to consider material facts or dispositive legal arguments *which were presented to the Court* before such interlocutory order") (emphasis added); *see also In re Apple*, 386 F. Supp. 3d at 1163 ("A motion for reconsideration may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." (cleaned up)).  Plaintiffs did not reference the opt-out provision *a single time* in their Opposition to Adobe's Motion to Dismiss.  *See* ECF No. 18.  There could not, therefore, have been any "manifest failure" by the Court to consider such arguments.  Nor do Plaintiffs identify any change in fact or law that emerged since the Court's Order granting Adobe's Motion to Dismiss.  As they conceded in their Motion for Leave, even the cases from this District that issued after Plaintiffs filed their Opposition "*merely apply an established consensus of California appellate decisions*."  ECF No. 50 at 4 (emphasis added).  Plaintiffs could easily have cited any of the "consensus" of existing California appellate decisions.  And both *Rios* and *Roope*, on which Plaintiffs primarily rely, were issued well before the Court's Order, yet Plaintiffs did not file a Statement of Recent Decision.  The Court should reject Plaintiffs' improper attempt to change and augment the arguments that they presented.

Even if the Court does consider Plaintiffs' new arguments and cases, they do not come close to demonstrating that the Court committed clear error.  The cases merely stand for the proposition that, in certain circumstances, hallmarks of procedural unconscionability may overcome the salutary effect of an opt-out provision.  But the Court found no such indications of procedural unconscionability associated with Adobe's opt-out provision, and therefore Plaintiffs' cases are inapt.  The Court never held, as Plaintiffs imply, that an opt-out provision "inexorably cure[s]" procedural unconscionability.  Mot. at 16-17.  Rather, the Court assessed Plaintiffs' arguments that the DRP was a "contract of adhesion," that Defendant had "superior bargaining power over its legally unsophisticated consumers," and that "there was purposeful obfuscation of the TOU," and also assessed the "checkout page," the "advisal regarding acceptance of the TOU," the "bolded" text "clearly stating" that customers were agreeing to the TOU, and the hyperlink that was "conspicuously distinguished" "from the surrounding text in bright blue font."  ECF 48 at

- 8 -

7, 10. Based on these assessments, the Court found "that there was reasonably conspicuous notice of the TOU." *Id.* at 10. The cases confirm this Court's approach of evaluating the opt-out provision as part of the procedural unconscionability analysis.

### 1.   The Court Properly Found Lack Of Adhesion

As the Court found, the Adobe TOU does not constitute a contract of adhesion because it contains an opt-out clause. The Court followed binding Ninth Circuit precedent in *Mohamed v. Uber Technologies, Inc.*, which says just that: "an arbitration agreement is not adhesive if there is an opportunity to opt out." 848 F.3d 1201, 1210 (9th Cir. 2016).

Plaintiffs criticize the Court for having "applied the wrong legal standard" by relying on *Mohamed*. Mot. at 15. But *Mohamed* is on-point and binding. There, the Ninth Circuit explained that the threshold question in the unconscionability analysis is whether an arbitration provision is adhesive, and that an arbitration provision is not adhesive if it allows a consumer to opt out. The Ninth Circuit reversed the district court for using the same reasoning that Plaintiffs now ask this Court to follow—that it "cannot follow the Ninth Circuit cases cited by Uber in the face of directly contradicting California Supreme Court authority." 848 F.3d at 1211 n.5. The Ninth Circuit explained that "[t]he district court does not have the authority to ignore circuit court precedent, and neither do we. 'Binding authority must be followed unless and until overruled by a body competent to do so.'" *Id.* at 1211 (citation omitted). *Mohamed* has not been overruled—including by any of the cases cited by Plaintiffs—and remains binding on this Court.

In any event, Plaintiffs' new authority is consistent with the Court's conclusion. They suggest that an opt-out provision might not be sufficient ***where there are indications that the opt-out provision was defective***. Plaintiffs did not argue, and the Court did not find, any such defects in Adobe's opt-out provision.

In *Gentry v. Superior Court*, the court found that while an opt-out clause "is a factor weighing against a finding of procedural unconscionability," the defendant Circuit City's opt-out clause was defective due to "several indications that [plaintiff's] failure to opt out of the arbitration agreement did not represent an authentic informed choice." 42 Cal. 4th 443, 470

- 9 -

(2007).  Those "several indications" included that Circuit City told employees about the advantages of choosing arbitration, while omitting certain clear disadvantages, thereby giving employees "a highly distorted picture of the arbitration Circuit City was offering."  *Id.* at 471. Circuit City also gave employees a handbook with the heading "WHY ARBITRATION IS RIGHT FOR YOU AND CIRCUIT CITY."  *Id.* at 472.  The court concluded that "[t]he lack of material information about the disadvantageous terms of the arbitration agreement, combined with the likelihood that employees felt at least some pressure not to opt out of the arbitration agreement, leads to the conclusion that the present agreement was, at the very least, not entirely free from procedural unconscionability."  *Id.*  Additionally, the *Gentry* court explained that these additional factors led it to split from *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198 (9th Cir. 2002), on which *Mohamed* later relied; it thought *Ahmed* "did not consider the concealment of disadvantageous terms nor the reality that Circuit City clearly favored arbitration and was in a position to pressure employees to choose its favored position." *Id.* at 472 n.10.

Here, the TOU are not adhesive because they contain an opt-out clause without any similar indication that any Plaintiff's failure to opt out did not represent an "authentic informed choice." Plaintiffs identify no indication in the TOU that Adobe prefers users to choose to opt out or not. Adobe did not selectively list advantages and disadvantages of arbitration.  It did not try to convince users that "ARBITRATION IS RIGHT" for them.  And subscribing to Adobe's products does not present the same pressures to agree with the arbitration provision that a potential employee would feel when pressured by his employer to sign onboarding papers, as in *Ahmed* and *Gentry*.  *See Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1001 (9th Cir. 2021) (finding lack of negotiation especially problematic in the employment context).

Similarly, in *Rios v. HRB Digital LLC*, 807 F. Supp. 3d 975 (N.D. Cal. 2025), the court did not dispute *Mohamed*'s ruling that an opt-out provision can be dispositive of the adhesion prong. It merely stated that an opt-out provision is not dispositive of procedural unconscionability ***as a whole*** when there are "other indications of oppression or surprise" that indicate "the degree of procedural unconscionability is high."  *Id.* at 987.  The court found that, in that particular case, the

defendant's opt-out clause was defective and "does not cure adhesion" because "[t]he opt-out is buried within a lengthy, dense agreement and imposes ongoing burdens, including the requirement that consumers submit a new opt-out request each year." *Id.* at 986. The contract was presented "as a non-negotiable condition . . . with little practical ability to reject arbitration." *Id.* at 985.

In no way do Adobe's TOU and DRP "mirror[] the contract of adhesion in *Rios*." *See* Mot. at 20. Adobe's customers can opt out of the arbitration provision simply by sending an email once—there are no "ongoing burdens," including no requirement that Adobe customers submit a new opt-out request each year. Plaintiffs argue, ***for the first time***, that the opt-out provision is "illusory" because customers have to opt out after every revision to the arbitration provision. Not so. The TOU provide that "[w]ithin the first thirty (30) days of your use of the Services and Software *or* the date of the last update to section 14 (Dispute Resolution, Class Action Waiver, Arbitration Agreement) of the Terms, whichever is later, you have the right to opt out." TOU § 14.6 (emphasis added). A customer could easily opt out within 30 days of their use of the Services and Software and never need to opt out again. The "whichever is later" language expands the period of time during which a customer may opt out; it does not require them to opt out again if they have already. Because none of the defects in the opt-out provision from *Rios* are present here, it does not come close to showing that the Court committed clear error.

In *Roope*, the agreement was procedurally unconscionable because it was "a contract of adhesion presented to [plaintiff] as a take-it-or-leave-it condition of employment" and "certain provisions were especially problematic because of their confusing wording," in particular "the fee- and cost-shifting provision [that] is so opaquely phrased that it gives employees the impression that, if they do not prevail on their claims, they would have to pay their employer's fees and costs associated with arbitration." *Roope v. Westlake Hardware Inc.*, No. 25-cv-07702, 2026 WL 98438, at *1 (N.D. Cal. Jan. 14, 2026). The TOU are not a "condition of employment," but rather a condition of an optional software service to which there are competing services; and Plaintiffs do not identify any confusing wording in the fees arrangement or elsewhere.

- 11 -

The *Zuckerman* court made the same mistake as the *Mohamed* district court: it cited the *Mohamed* district court for the proposition that *Ahmed* was abrogated by state law, a point that was ***specifically reversed by the Ninth Circuit***. *See Zuckerman v. Charter Commc'ns, LLC*, No. 24-cv-128, 2024 WL 4871739, at *9 (S.D. Cal. Nov. 22, 2024); *Mohamed v. Uber Techs. Inc.*, 848 F.3d at 1211 & n.5. And again, the *Zuckerman* court found "other indications that Plaintiff's 'failure to opt out of the [Mutual Arbitration Agreement] did not represent an authentic informed choice.'" *Id.* at *9. The court analogized *Gentry* and its "failure to adequately explain the disadvantages of arbitration," finding "while Charter [likewise] explains multiple advantages of arbitration in the Solution Channel Guidelines, it does not highlight any of the disadvantages of this arbitration agreement." *Id.* As explained above regarding *Gentry*, Adobe did none of those things.

In *Luciano v. Epson America Inc.*, No. 25-cv-02257, 2026 WL 1048192 (C.D. Cal. Mar. 26, 2026), the court found ***no procedural unconscionability***. It explained that "a provision may not be procedurally unconscionable if the signee had an 'authentic informed choice' to make that decision to opt out." *Id.* at *4. An authentic informed choice exists unless "the presentation of the choice was confusing, where no one explained the clause or procedure, or where there was temporal or financial pressure." *Id.* As in *Luciano*, none of those factors are present here, and Plaintiffs do not argue otherwise.

Finally, in *Johnson v. Stoneridge Creek Pleasanton CCRC LLC*, No. A165800, 2023 WL 7125117 (Cal. Ct. App. Oct. 30, 2023), which was not certified for publication or citation, the court emphasized that the arbitration agreement lacked a ***meaningful opportunity*** to opt out. *Id.* at *2. The court noted that the senior citizens who were signing the agreement "may also feel pressure not to exercise a right to opt out, particularly given Stoneridge Creek's reservation of discretion in making later decisions that may impact residents' quality of life." *Id.* There is no such pressure here, where customers do not face any repercussions from opting out.

In sum, the opt-out provision of Adobe's TOU meant that it was not a contract of adhesion under binding precedent. Plaintiffs did not argue, and the Court did not find, any reason that the

opt-out provision was defective.  Accordingly, they have identified no clear error in the Court's finding the TOU not adhesive.

### 2.      There Is No Evidence Of Oppression Or Surprise

The Court properly found that there was no evidence of oppression or surprise, rejecting Plaintiffs' arguments that Adobe had superior bargaining power and that there was purposeful obfuscation.  ECF No. 48 at 10.

As an initial matter, it was entirely appropriate for the Court to evaluate the TOU's conspicuousness to determine whether Plaintiffs were oppressed or surprised.  Plaintiffs argue that the Court only assessed the TOU's conspicuousness as part of the contract *formation* analysis. Mot. at 21-22.  In fact, the Court found that the parties had formed a valid contract because Plaintiffs agreed to Adobe's TOU (ECF No. 48 at 6-7), **and separately** found that the TOU's conspicuousness weighed against finding surprise.  *Id.* at 10.  The Court did not "conflate[] the requirements for contract formation with the question of unconscionability."  Mot. at 22.  Rather, it assessed the TOU's conspicuousness as part of both analyses.  And it is clear that a party's agreement to the TOU is relevant to surprise.  In *Heckman v. Live Nation Entertainment, Inc.*, which Plaintiffs cited, the court found surprise in part because "[defendant's] website provides that a person merely browsing the website without purchasing a ticket agrees to [defendant's] changed Terms."  120 F.4th 670, 682 (9th Cir. 2024).  Consistent with that authority, this Court did not err in assessing the conspicuousness of the link to Adobe's TOU.

Surprise and oppression were present in *Rios* because, "most critically . . . , the [agreement] include[d] a mass arbitration and bellwether protocol that applies any time 25 or more claimants submit Notices or seek to file arbitrations 'raising similar claims,' or where the users 'are represented by the same or coordinated counsel.'"  807 F. Supp. 3d at 981.  During the bellwether process, no other claims could be filed, and the arbitrator could not proceed with arbitrations not selected for the bellwether process.  *Id.*  Surprise and oppression were also present because "[c]onsumers faced a dense 21-page agreement in the midst of tax season" and were misleadingly assured that their claims would be resolved in arbitration within 120 days.  *Id.* at

986. Moreover, "the opt-out itself [was] burdensome and potentially illusory" because of the aforementioned bellwether scheme and 120-day assurance, and because consumers had to submit a new opt-out request every year. *Id.* at 986, 989. These factors are not present here.

This Court's decision is entirely consistent with *Rios*. This Court did not say that the opt-out provision "categorically" means the TOU are not unconscionable. *See* Mot. at 17-18. It was one part of the analysis. The Court evaluated both oppression and surprise, and then concluded that Plaintiffs' "***two arguments*** do not support a finding of oppression or surprise resulting from unequal bargaining power." ECF No. 48 at 10 (emphasis added). The Court also did not find that the opt-out provision was burdensome or illusory.

**There is no evidence of oppression.** The Court found that the TOU are not adhesive because the opt-out clause gave customers a choice. *Id.* Specifically, the opt-out clause distinguishes Adobe's TOU from oppressive terms presented on a "take-it-or-leave-it" basis. Plaintiffs had a meaningful choice of whether to opt out. Plaintiffs ignore this and instead cite Adobe's revenues, without citing any authority explaining how that is relevant to this analysis. They also flatly state that "[t]here is 'no real negotiation' because Adobe's terms are presented on a take-it-or-leave-it basis," without addressing the opt-out provision and the fact that there are competing products. Mot. at 23.

Plaintiffs also argue that oppression exists because Adobe's TOU, like those in *Heckman*, allegedly "permitted unilateral, retroactive modification of the terms governing disputes." *Id.* at 21-22. They also say that the TOU are internally contradictory on this point, but do not cite any portion of the TOU in support. *Id.* at 21 & n.19. In fact, Adobe's TOU say ***the opposite***: "Any such changes will not apply to any dispute between you and Adobe arising prior to the date on which we posted the revised Terms incorporating such changes." TOU § 1.5. *Heckman*, and Plaintiffs' argument, are entirely off base.

There is no evidence that the opt-out provision is burdensome or illusory. Plaintiffs provide no support for the conclusory statement that the opt-out is burdensome, and it is not. *See* Mot. at 23. In *Mohamed*, the court found that an opt-out provision was not burdensome even

- 14 -

when it required consumers to submit opt-outs via overnight delivery service. *See* 848 F.3d at 1211. Adobe allows customers to opt out via email, which *Mohamed* expressly said was **less** burdensome. *Id.*

The opt-out is also not illusory. The only argument that Plaintiffs present on that point is in the Background section, where they say the opt-out is illusory because "to remain unbound consumers would be required to perpetually monitor updates to the DRP and repeat the opt-out process *seriatim*." Mot. at 2. As explained above, that is not the case. The opt-out provision's plain terms show that a customer may opt out within 30 days of using the Services and Software *or* the date of the last update to Section 14, whichever is later. There is no requirement that customers opt out more than once.

**There is also no evidence of surprise.** To start, the TOU provisions at issue here are not hidden. Adobe's TOU are presented in sections with bold headers that are linked in a table of contents. The relevant terms are presented in clear language, and plaintiffs do not identify any "legalese" or unclear language. In *Lim*, "[n]othing in the text of the agreement called Lim's attention to the delegation clause." 8 F.4th at 1001. In contrast, Adobe's TOU have headers before every section calling attention to, for example, the arbitration clause and delegation provision. Regardless, "[t]he party who drafts an agreement is 'under no obligation to highlight the arbitration clause of its contract, nor [i]s it required to specifically call that clause to [a counter-party]'s attention." *Id.* Plaintiffs complain that there are **too many** subsections—but under that faulty logic, the TOU would be more clear if it were combined into a single section without any subheaders. Plaintiffs provide no authority saying that 12 pages is too long for a TOU; and in any document, some terms are going to be closer to the bottom. And even if the arbitration clause **were** buried in the TOU, which it is not, "[t]he fact that [an] opt-out provision [is] 'buried in the agreement' does not change [the unconscionability] analysis. . . . '[O]ne who signs a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument." *Mohamed*, 848 F.3d at 1211.

*Heckman* also does not support a finding of surprise.  In *Heckman*, the contract at issue was adhesive where ***there was no opt-out provision whatsoever***.  The terms were presented in a take-it-or-leave-it basis that resulted in "no real negotiation and an absence of meaningful choice." 120 F.4th at 682.  Moreover, the terms stated that a person merely ***browsing*** the Ticketmaster website becomes bound to the terms of use.  *Id.*  Here, by contrast, Plaintiffs had the choice of whether to opt out.  And they concede that they did agree to the Adobe TOU.  Mot. at 21.

Plaintiffs' argument about cost-shifting is also unavailing.  The fees agreement states that "the parties will equally share all of the fees and costs of arbitration" ***unless*** "you are unable to afford fees or costs of arbitration, [in which case] Adobe will pay them."  TOU § 14.4.

Adobe's fees arrangement also does not resemble those that other courts have found objectionable.  In *Rios*, the defendant's arbitration clause contained a "complex bellwether and batching scheme, which prevents claimants from even *filing* their claims if '25 or more' similar claims are submitted by coordinated counsel."  807 F. Supp. 3d at 986 (emphasis in original).  The defendant also "assures users that arbitrators are 'encouraged' to resolve cases within 120 days. In practice, however, claims are likely to languish for years under [Defendant's] mass arbitration protocol. The reference to a 120-day timeline therefore instills a false sense of efficiency, masking the real possibility of protracted delay. These hidden disadvantages, unapparent from the contract's fact, amplify surprise."  *Id.*

Meanwhile, in *Sanchez v. Superior Court*, a contract for legal services was negotiated in Spanish, but then provided in writing only in English.  108 Cal. App. 5th 615, 627 (2025).  The contract provided that disputes would be resolved via arbitration through "JAMS, Judicate West, or equivalent," making it "virtually impossible for [the plaintiff] to knowingly agree to the rules, as … he would have to guess which additional unnamed providers were deemed 'equivalent' in the drafter's mind and research them as well.  No reasonable consumer, much less a non-attorney, non-English speaker, could have made this determination with any degree of certainty prior to signing the agreement."  *Id.* at 620, 627.  Finally, the plaintiff was on the hook for the entire

- 16 -

$2,000 JAMS filing fee, and the defendant refused to pay the fee or allow the plaintiff to proceed in federal court where he could take advantage of the filing fee waiver. *Id.* at 628.

In this case, by contrast, the fee arrangement in the TOU is straightforward and fair. It states that fees will be split, unless a party cannot pay, in which case Adobe will pay them. *Sanchez* cited this type of arrangement with approval. *Id.* at 624 ("If a party is unable to pay the fees and costs, the other party 'can elect to . . . pay that [party's] share of the arbitration cost and remain in arbitration.'"). Adobe has no convoluted "bellwether" mechanism like in *Rios*, has no deceptive promises about when cases will be resolved, provides the terms in the same language they were agreed to, and clearly assigns any arbitrations to JAMS. In the end, if a customer cannot pay arbitration fees and costs, the TOU state that Adobe will pay them. This does not constitute surprise.

### 3.   Plaintiffs Inconsistently Argue Which Sections Are Covered By The Opt-Out Provision

Plaintiffs argue that the opt-out provision "does not apply to the remaining dispute resolution terms, including the notice and informal dispute resolution process, the one-year limitations period, or the limitation to small claims court." Mot. at 25. Not so. The opt-out provision applies to the "arbitration and class action waiver provisions of section 14 (Dispute Resolution, Class Action Waiver, Arbitration Agreement)." TOU § 14.6. Section 14.1 is one of the provisions concerning arbitration, and where the conditions precedent are also set forth.

Notably, also, Plaintiffs' position here is directly contrary to their position in arguing that Adobe waived its right to compel arbitration when it sought to enforce the conditions precedent. There, Plaintiffs stated: "Binding Authority Places Conditions Precedent Squarely Within the Scope of the General Arbitration Provision." Mot. at 7. They continue that "whether pre-dispute processes are required or exhausted . . . fall within the ordinary grant of arbitrator jurisdiction conferred by ***an arbitration provision***." *Id.* at 8 (emphasis added). Plaintiffs cannot have it both ways.

In sum, none of Plaintiffs' arguments show clear error in the Court's unconscionability analysis, and it should not be reconsidered.

- 17 -

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Reconsideration should be denied.


Dated:  May 1, 2026                                          ARNOLD & PORTER KAYE SCHOLER LLP

By:    */s/  Jeremy T. Kamras*

Douglas A. Winthrop
Jeremy T. Kamras
Joseph Farris
Tommy Huynh
Mark E. Raftrey

*Counsel for Defendant Adobe Inc.*

ADOBE'S OPPOSITION TO MOTION FOR RECONSIDERATION
Case No. 5:25-cv-6562