UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VIANCA MARQUEZ, et al.,

Plaintiffs,

v.

ADOBE, INC.,

Defendant.

Case No. 25-cv-06562-NC

**ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**

Re: ECF 50-1, ECF 7

This class action case against Defendant Adobe Inc. brought by Plaintiffs Stephanie Wohlfiel and Vianca Marquez arises from Defendant's alleged unlawful and deceptive practices related to its subscription services. These subscription services are governed in part by Defendant's Terms of Use (TOU), which includes a dispute resolution provision (DRP) with an arbitration agreement, pre-litigation notice requirements, a class action waiver, and a one-year limitations period.

After the Court dismissed Plaintiffs' Complaint with leave to amend, Plaintiffs moved for the Court to reconsider its Motion to Dismiss Order at ECF 48 (the Order). Specifically, Plaintiffs request the Court to reconsider its finding that (1) Defendant only waived the right to compel arbitrate under the delegation clause and not its primary arbitration provision, and (2) the opt-out provision in the DRP is sufficient to prevent a

United States District Court
Northern District of California

finding of adhesiveness and procedural unconscionability. The Court GRANTS Plaintiffs' motion for reconsideration and reassesses its Motion to Dismiss Order. After reconsideration, the Court FINDS that Defendant waived its right to compel arbitration as a whole and the opt-out provision did not prevent procedural unconscionability. The Court further GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss with leave to amend.

## I. BACKGROUND

### A. Factual Background

Plaintiffs' Complaint alleges the following:

Defendant, under its subscription models, provides access to its products and services through tiered subscription plans that automatically renew at the end of the subscription period. ECF 1 (Compl.) ¶ 26. One of these subscription plan options is called "Annual, billed monthly ('ABM')," which is an annual commitment that consumers pay for in monthly installments. *Id.* ¶¶ 27–28.

Consumers can purchase Defendant's products online by selecting the desired product and completing a series of enrollment steps. *Id.* ¶ 43. At the beginning of the enrollment process, consumers are typically first shown the subscription options available for that product. *Id.* ¶ 44. The enrollment process intentionally obscures material terms of the ABM plan, including that the subscription is a one-year commitment and not a monthly plan, the existence of an early termination fee, the relationship of the early termination fee to the one-year contract, and the amount of the early termination fee. *Id.* ¶ 39.

Example B in the Complaint shows the subscription selection page at the beginning of the enrollment process. *Id.* ¶ 44.

United States District Court
Northern District of California

**<u>Example B</u>**




A consumer must click or hover on the ⓘ icon for more information. Example C shows what appears when a consumer does so.

**Example C**




After a consumer selects a subscription, they navigate to additional pages to continue enrollment. *Id.* ¶ 57. There is no information on these pages about subscription terms. *Id.*

Consumers are then directed to a final checkout page, where they are prompted to enter their payment information. *Id.* ¶ 59. Example D in the Complaint shows the final checkout page. *Id.*

**Example D**




The final checkout page includes a link to the TOU and Subscription and Cancellation Terms that consumers agree to by clicking "Agree and subscribe." *Id.*, Ex. D.

The Subscription and Cancellation Terms stated in part, "If you cancel within 14 days of your initial order, you'll be fully refunded. Should you cancel after 14 days, you'll be charged a lump sum amount of 50% of your remaining contract obligation and your service will continue until the end of that month's billing period." *Id.* ¶ 68. This is the first and only instance where the early termination fee is explicitly linked to the total contract value. *Id.* ¶ 70. The process for cancellation is designed to be confusing and frustration. *Id.* ¶ 77.

The August 1, 2022, TOU is found at ECF 8-1.[1]

Subsection 1.5 of the TOU, entitled "Updates to Terms," states:

> We may make changes to the Terms from time to time, and if we do, we will notify you by revising the date at the top of the Terms and, in

[1] The Court previously took judicial notice of the TOU. ECF 48. The parties did not object.

United States District Court
Northern District of California

> some cases, we may provide you with additional notice. Any such changes will not apply to any dispute between you and Adobe arising prior to the date on which we posted the revised Terms incorporating such changes, or when the Terms otherwise become effective. You should look at the Terms regularly. Unless otherwise noted, the amended Terms will be effective immediately, and your continued use of our Services and Software confirm your acceptance of the changes. If you do not agree to the amended Terms, you must stop using our Services and Software and, if applicable, cancel your subscription.

Section 14 of the TOU is titled "Dispute Resolution, Class Action Waiver, Arbitration Agreement" (DRP) and contains six subsections. ECF 8-1 (TOU).

Subsection 14.1, titled "Notice of Claim and Required Information Dispute Resolution Process," states:

> If you have any concern or dispute that Adobe Customer Care is unable to resolve ("Claim"), you agree to first try to resolve the dispute informally and in good faith by contacting us and providing a written Notice of Claim to the address you provided in section 18.2 (Notice to Adobe). The Notice of Claim must provide Adobe with fair notice of your identity, a description of the nature and basis of your claim, and the relief you are seeking, including the specific amount of any monetary relief you are seeking, and cannot be combined with a Notice of Claim for other individuals. If any dispute related to your Claim is not resolved within 60 days of receipt, any resulting legal actions must be resolved through either small claims court or final and binding arbitration, including any dispute about whether arbitration is required for the dispute, subject to the exceptions set forth below. Neither party shall initiate legal action until 60 days after the Notice of Claim is received. This agreement to arbitrate shall apply, without limitation, to all claims that arose or were asserted before the effective date of the Terms. The arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability or enforceability of the Terms or formation of the Terms, including whether any dispute between us is subject to arbitration (i.e., the arbitrator will decide the arbitrability of any dispute) and whether all or any part of these Terms are void or voidable. Claims related to the Terms, Services, or Software are permanently barred if not brought within one year of the event resulting in the Claim.

Subsection 14.2 of the TOU, titled "No Class Actions," states:

> You may only resolve disputes with us on an individual basis, and you may not bring a claim as a plaintiff or a class member in a class, consolidated, or representative action. Nonetheless, if any portion of this class action waiver is deemed unenforceable or invalid as to a particular remedy, then that remedy (and only that remedy) must be severed from the arbitration and may be sought in court. The parties agree, however, that any adjudication of remedies not subject to arbitration shall be stayed pending the outcome of any arbitrable claims and remedies.

Subsection 14.3 of the TOU goes over the arbitration rules.

Subsection 14.4 of the TOU, titled "Arbitration Fees and Costs," states:

> Payment of all filing, administration, and arbitrator fees and costs of arbitration will be governed by the rules of the arbitration provider, except that to the extent that you bring a Claim as part of a Coordinated Action, we agree that the parties will equally share all of the fees and costs of arbitration (to the extent that allocation is not already required under applicable rules). For the purposes of this section, a "Coordinated Action" is any action in which you are represented by a law firm or collection of law firms that has filed numerous coordinated individual arbitration demands of the same or similar nature against Adobe within a short time. Notwithstanding the above, if you are unable to afford fees or costs of arbitration, Adobe will pay them. If the arbitrator finds that either the substance of a Claim or the relief sought in arbitration was frivolous, or a Claim was brought for an improper purpose, the parties may seek to re-allocate the fees and costs of arbitration, according to the rules of the arbitration provider.

Subsection 14.5 of the TOU outlines the exceptions to arbitration, which includes small claims and injunctive relief.

Subsection 14.6 of the TOU, titled "Acceptance of Arbitration and Right to Opt Out," states:

> Within the first thirty (30) days of your use of the Services and Software or the date of the last update to section 14 (Dispute Resolution, Class Action Waiver, Arbitration Agreement) of the Terms, whichever is later, you have the right to opt out of the arbitration and class action waiver provisions of section 14 (Dispute Resolution, Class Action Waiver, Arbitration Agreement) by sending us written notice of your decision at the address set forth in section 18.2 (Notice to Adobe). If you opt out of these provisions, Adobe will also not be bound by them.

Named Plaintiffs and the Class incurred financial harm from, including but not limited to, unauthorized charges, payment for unintended subscriptions, early termination fees, and inability to cancel subscriptions. *Id.* ¶ 91.

Plaintiff Wohlfiel purchased approximately ten ABM subscriptions for Lightroom between July 2023 and September 2023for a photography job scheduled in November 2023. *Id.* ¶ 93. After completing the photography job, from November 2023 to January 2024, Wohlfiel began cancelling her subscriptions. *Id.* ¶¶ 96, 100. During this process, Wohlfiel learned that the subscriptions were annual, not monthly, and would require her to pay an early termination fee to cancel each subscription. *Id.* ¶ 98. Wohlfiel moved



United States District Court
Northern District of California

forward with cancelling the subscriptions and paid the early termination fee for each cancelled product. *Id.* ¶ 100.

Plaintiff Marquez purchased an ABM subscription for Adobe Acrobat in or around mid-June 2023. *Id.* ¶ 101. She was unaware of the early termination fee and only learned about the fee and the annual, not monthly, subscription after initiating the cancellation process in or around mid-July 2023. *Id.* ¶¶ 102–104. Marquez ceased the cancellation process after learning about the early termination fee. *Id.* ¶ 106.

**B. Procedural Background**

Plaintiffs Wohlfiel and Marquez brought their Complaint individually and on behalf of all others similarly situated against Defendant. Compl. Plaintiffs alleged six causes of action: (1) violation of California's Unfair Competition Law (UCL), including a violation of California's Automatic Renewal Law (ARL), (2) conversion, (3) violation of California's False Advertising Law (FAL), (4) violation of California's Consumer Legal Remedies Act (CLRA), (5) unjust enrichment/restitution, and (6) negligent misrepresentation.

Defendant moved to dismiss the entirety of Plaintiffs' Complaint under Rule 12(b)(1) and/or Rule 12(b)(6), and in the alternative, moved to strike all class claims under Rule 12(f). ECF 7. Plaintiffs opposed at ECF 18, and Defendant replied at ECF 20. Plaintiffs then moved the Court to order corrective action for the class under Federal Rule of Civil Procedure 23(d). ECF 21. The Court granted Defendant's motion to dismiss under Rule 12(b)(6) with leave to amend, denied Defendant's motion to strike without prejudice, and denied Plaintiff's motion for corrective action without prejudice. ECF 48 (Order). In doing so, the Court found that Defendant waived its right to compel arbitration under the delegation clause, but not its right to compel arbitration under the general arbitration clause that stated that "if any dispute related to our claim is not resolved within 60 days of receipt, any resulting legal actions must be resolved through either small claims court or final and binding arbitration." *Id.* at 9. It also found that the DRP is not unconscionable because there was an opt-out provision. *Id.* at 10.

Plaintiffs requested leave to file a motion for partial reconsideration of the Court's Motion to Dismiss Order, and attached its motion at ECF 50-1. ECF 50; ECF 50-1. The Court granted Plaintiffs' request for leave. ECF 51. Defendant opposed at ECF 55. Plaintiffs replied at ECF 57. During this time, Plaintiffs filed an Amended Complaint and the Court granted Defendant's motion for extension of time to respond to Plaintiffs' Amended Complaint. ECF 52; ECF 57.

All parties have consented to magistrate judge jurisdiction. ECF 5; ECF 13.

## II. LEGAL STANDARD

### A. Motion for Reconsideration

Trial courts have inherent power to reconsider, set aside, or amend interlocutory orders at any time prior to entry of a final judgment. Fed. R. Civ. P. 54(b). The substantive standard governing reconsideration of an interlocutory order is the same as that which governs motions to alter or amend judgment under Federal Rule of Civil Procedure 59(e). Motions for reconsideration are disfavored and "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *McDowell v. Calderon*, 197 F.3d 1253, 1254 (9th Cir. 1999) (per curiam) (internal quotation and citation omitted). Furthermore, "[a] motion for reconsideration 'may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

The Northern District of California also has local rules governing motions for reconsideration. A motion for reconsideration may be made on three grounds: (1) a material difference in fact or law exists from that which was presented to the court, which, in the exercise of reasonable diligence, the moving party did not know at the time of the order for which reconsideration is sought; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the court to consider material facts or

dispositive legal arguments. Civ. L.R. 7-9(b). The moving party may not reargue any written or oral argument previously asserted to the court. Civ. L.R. 7-9(c).

### B. Motion to Dismiss

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). A court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III. ANALYSIS

Plaintiffs request reconsideration of two issues in the Court's Order: (1) the Court's finding that Adobe only waived its right to compel arbitration under the DRP's delegation clause, and not under its general arbitration clause; and (2) the Court's finding that the partial "opt-out" provision is sufficient to prevent a finding of the DRP's adhesiveness and procedural unconscionability. ECF 50-1 at 1. As further explained below, the Court GRANTS Plaintiffs' motion for reconsideration and FINDS that (1) Adobe waived its right to compel arbitration under the DRP's general arbitration clause, and (2) that the "opt-out" provision did not prevent a finding of the DRP's adhesiveness and procedural

unconscionability. Accordingly, the Court VACATES its Order and as laid out below, GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss.

### A. The Court Finds that Defendant Waived Its Right to Compel Arbitration Under the DRP's General Arbitration Clause

Plaintiffs request the Court to reconsider the Court's finding that Defendant did not waive their right to compel under the general arbitration clause because Defendant's actions were not inconsistent with the right to compel arbitration given its belief that this dispute was not yet ripe for arbitration. Order at 9 n.2.

#### 1. The Court Grants Reconsideration

Plaintiffs argue that the Court should grant reconsideration on the Court's finding because "material differences in fact and law exist from that which was presented to the Court before entry of the Order, which Plaintiffs could not, in the exercise of reasonable diligence have known would be relevant to the Order," and that the Court's determination was "clear error and manifestly unjust." ECF 50 at 2; ECF 50-1 at 5. Defendant argues that this is there is no "appropriate ground for reconsideration" because Plaintiffs identify no new facts, intervening change of law, or failure by the court to consider material facts or dispositive legal arguments presented to it. ECF 55 at 3.

The Court grants reconsideration because Plaintiffs properly alleged Local Rule 7-9(b)(1) and showed that at the time of the motion for leave, a material difference in law exists from that which was presented to the Court before entry of the interlocutory order. Specifically, Plaintiffs argue that the Court was not presented with and did not consider that "condition precedent" arguments are for an arbitrator under the arbitration provision generally, irrespective of any delegation clause. ECF 50-1 at 9. Plaintiffs further state that they "could not have known of the potential relevance of these facts and law because no party requested that the Court separately consider the arbitration provision and the delegation clause with respect to waiver." ECF 50 at 2.

United States District Court
Northern District of California

**2. The Court Assesses Actions That Occurred *After* Defendant Knew There was a Dispute Concerning Conditions Precedent and Finds that Its Actions Were Inconsistent with Arbitration**

Plaintiffs argue that if the Court considered that "condition precedent" arguments are for an arbitrator under the arbitration provision generally, irrespective of any delegation clause, it would find that Defendant waived the general arbitration provision because there could be no barrier to Adobe's invocation of that provision. Mot. at 9. The Court finds that regardless of whether conditions precedent arguments are for an arbitrator, the Court can only assess actions that occurred *after* Defendant knew there was a dispute concerning the conditions precedent. And in doing so, the Court finds that Defendant waived it right to compel arbitration under the general arbitration clause.

Plaintiffs state, and Defendant does not dispute, "[a]n arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled." *BG Grp., PLC v. Republic of Argentina,* 572 U.S. 25, 35 (2014) (citations omitted). The Court notes that logically speaking, a party cannot present an issue before the arbitrator that it does not yet know there is a dispute about. *See Synopsys, Inc. v. Siemens Indus. Software Inc.,* No. 20-cv-04151-WHO, 2021 WL 1238309, at *4 (N.D. Cal. Apr. 2, 2021) (finding that there is no procedural issue for an arbitrator to decide if there is no dispute over whether conditions precedent to arbitration have been met). As such, Defendant can only waive its right to compel arbitration to the extent that there was a dispute about whether Plaintiffs met the conditions precedent that Defendant knew about and Defendant subsequently acted inconsistently with their right to compel arbitration.

Here, Plaintiffs did not allege their compliance with the conditions precedent in their Complaint. *See generally* Compl. Plaintiffs do not allege when Defendant first had knowledge of the dispute but first alleged compliance in their Opposition to the Motion to Dismiss. ECF 18 at 7. It follows that Defendant could not have known that Plaintiffs disputed their compliance until the filing of Plaintiffs' Opposition. The Court therefore does not find Plaintiffs' arguments that Defendant's actions *prior* to the filing of the

Opposition were inconsistent with the right to compel arbitration to be persuasive. *See Synopsys, Inc.*, 2021 WL 1238309, at *4; *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1225 (9th Cir. 2008) (finding that it was a "debatable proposition" whether the party's actions were inconsistent with the right to compel arbitrate when it was the party's understanding that the dispute was not yet ripe for arbitration).

While Plaintiffs challenge the Court's interpretation and applicability of *Cox*, several other courts have interpreted *Cox* similarly. ECF 50-1 at 14; *see, e.g., Samson v. NAMA Holdings, LLC,* 637 F.3d 915, 934 n.91 (9th Cir. 2011) (finding that *Cox* held that "a party who responded to an informal arbitration demand by asserting that the dispute was not ripe for arbitration did not waive its right to seek arbitration at a subsequent time"); *Am. Cardio, LLC v. Itamar-Med., Inc.*, No. 12-cv-00457-AA, 2012 WL 2889047, at *6 (D. Or. July 13, 2012) (citing *Cox* to find that it could not conclude that the defendant's actions were inconsistent with the right to compel arbitration given its belief that the dispute was not yet ripe for arbitration). And while *Cox* is not binding because it interprets state, not federal, law, it still guides the Court in determining whether the acts were inconsistent with arbitration. *See Sequoia Benefits & Ins. Servs., LLC v. Costantini,* 553 F. Supp. 3d 752, 758 (N.D. Cal. 2021) ("California's *St. Agnes* test . . . provides general guidance on how to weigh these factors.").

Regardless, the Court finds that Defendant's actions *after* Plaintiffs' Opposition are sufficient to find inconsistency with its right to compel arbitration.[2] Even after Defendant discovered there was a dispute, Defendant continued to actively litigate the case in Court. ECF 50-1 at 12. While Defendant argues that it was "haled" to federal court, Defendant held the power and knowledge to compel arbitration after the Opposition was filed. ECF 55 at 6. Defendant instead, in its Reply in response to Plaintiffs' Opposition, explicitly asked the Court to substantively determine whether Plaintiffs have fulfilled their pre-litigation requirements, which is an issue that Defendant does not dispute is within the

[2] The Court agrees, and the parties do not dispute, that Defendant had knowledge of its right to arbitrate after it was aware of the dispute of the conditions precedent

United States District Court
Northern District of California

purview of an arbitrator. ECF 20 at 6. The Court finds that this "indicate[s] a conscious decision . . . to seek judicial judgment on the merits of the arbitrable claims, which would be inconsistent with a right to arbitrate." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023). The Court is not convinced that Defendant's arguments in its Motion to Dismiss briefing "do not reflect an intent to take advantage of being in court." ECF 55 at 5.

Further, Defendant did not seek to compel arbitration or indicate its intent to do so in the parties' Joint Case Management Statements. ECF 50-1 at 12; ECF 32; ECF 41. Despite the known pre-litigation requirements dispute, Defendant stated that "[a]t this time, the parties do not believe that this case is suitable for reference to binding arbitration." ECF 32 at 10. *Sequoia Benefits & Ins. Servs., LLC*, 553 F. Supp. 3d at 759 (finding that the case management statement strongly indicates that defendants have acted inconsistently for the purposes of finding waiver when the statement stated that the case was not suitable for binding arbitration). It is not enough to "reserve[] its right to compel arbitration." ECF 32 at 2; *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 471 ("A statement by a party that it has a right to arbitration in pleadings or motion is not enough to defeat a claim of waiver."). This is especially so in light of Defendant's knowledge of a pre-litigation requirement dispute that they do not dispute is for an arbitrator. *See In Re Mirant Corp. v. Castex Energy, Inc.*, 613 F.3d 584, 591 (5th Cir. 2010) ("A party cannot keep its right to demand arbitration in reserve indefinitely while it pursues a decision on the merits before the district court.").

After a holistic inquiry, the Court finds that Defendant acted inconsistently with its arbitration rights under the general arbitration provision, and thus, Defendant waived its right to compel arbitration under the general arbitration clause.

**B. The Court Finds that the TOU is Unconscionable**

Plaintiffs request the Court to reconsider its finding that the presence of an "opt-out" clause resolved the procedural unconscionability analysis, and thus, it did not need to continue its unconscionability analysis of the DRP. Order at 11.

**1. The Court Grants Reconsideration**

Defendant argues that the entirety of Plaintiffs' argument about the opt-out provision is improper new argument that should be disregarded because they were not presented to the Court in their Opposition. ECF 55 at 7–8. Plaintiffs contend that only new arguments that "could reasonably have been raised earlier in the litigation[]" are precluded. ECF 57 at 8. They further contend that because Defendant first introduced the opt-out argument in its Reply, Plaintiffs had no opportunity to respond. *Id.* While the Court notes that Plaintiffs brought up the issue of adhesion, and could have, but did not, request the Court to file a sur-reply, it notes that "[w]hether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003). Out of an abundance of caution, the Court grants reconsideration.

**2. The Court Finds That the Opt-Out Provision Does Not Bar Procedural Unconscionability**

The Court previously found, using *Mohamed v. Uber Techs., Inc.,* that the DRP's opt-out provision barred the contract from being adhesive, and therefore, unconscionable. Order at 10 (citing 848 F.3d 1201, 1210 (9th Cir. 2010)). It also found there was no oppression and surprise from Defendant's superior bargaining power and alleged obfuscation. *Id.* Plaintiffs argue that the Court relied on a portion of *Mohamed* that is no longer viable, failed to consider the illusory nature of the opt-out provision, incorrectly assessed the DRP's obfuscation, and erred in treating the opt-out provision as applicable to the DRP as a whole. ECF 50-1 at 1. The Court assesses each and finds that the opt-out provision does not bar procedural unconscionability but that there is only minimal procedural unconscionability.

**a. *Mohamed* is Viable Law and Requires the Court to Determine if there is an Authentic Choice to Opt Out**

The Court originally used *Mohamed* to find that the DRP's opt-out provision barred the contract from being adhesive, and therefore, unconscionable. Order at 10 (citing 848

F.3d 1201, 1210 (9th Cir. 2010)). Plaintiffs argue that the Court incorrectly used *Mohamed* because the case, in finding that an arbitration agreement is not adhesive if there is an opportunity to opt out of it, (1) cited to *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198 (9th Cir. 2002), and (2) did not address *Gentry v. Superior Ct.*, 42 Cal. 4th 443 (2007), a Supreme Court of California case that "reached the contrary result" to *Ahmed*. ECF 50-1 at 15–16. The Court finds that *Mohamed* is viable law and complements *Gentry* in finding that an opt-out provision prevents adhesion if it is a meaningful choice.

*Mohamed* addressed *Gentry* when it found that neither the Ninth Circuit nor the district court could ignore circuit court precedent. 848 F.3d at 1211. In doing so, *Mohamed* referenced the district court's statement that Ninth Circuit precedent "failed to apply California law as announced by the California Supreme Court," which referred to *Gentry*. *Id.* (citing *Mohamed v. Uber Technologies*, 109 F. Supp. 3d 1185, 1212 (N.D. Cal. 2015) (citing *Gentry*, 42 Cal. 4th at 471–72 n.10)). Following circuit court precedent does not mean contradicting *Gentry*—*Gentry* found that a contract can be procedurally unconscionable if the opt-out agreement "did not represent an authentic informed choice," and *Mohamed* assessed whether the right to opt out was illusory. 42 Cal.4th at 470; 848 F.3d at 1211. Indeed, *Gentry* only found *Ahmed* to be unpersuasive because it did not consider the factors that made the opt-out provision illusory. 42 Cal.4th at 472 n.10. Both courts appear united in finding that an opt-out provision bars unconscionability as long as that provision was not illusory or did not represent an authentic informed choice.

**b. There Was No Authentic Choice to Opt Out, Resulting in an Adhesive Contract**

The Court previously did not assess whether the opt-out provision was illusory because it was not presented with any such argument. Plaintiffs now argue that the opt-out provision fails to provide consumers with an "authentic informed choice" because it is "buried within a lengthy, dense agreement an[d] imposes ongoing burdens." ECF 50-1 at

21. The Court finds that there is no authentic choice because the opt-out provision imposes ongoing burdens.

Plaintiffs first argue that the opt-out provision is buried within a lengthy, dense agreement. ECF 50-1 at 21. The Court disagrees. The opt-out provision, although stated in full on the eleventh page of the TOU, is first referenced in bold, capitalized letters in the first paragraph of the first page. TOU at 1 ("IF YOU DO NOT AGREE WITH THESE TERMS (AS DEFINED BELOW), INCLUDING THE MANDATORY ARBITRAITON PROVISION (IF YOU HAVE NOT OPTED OUT AS ALLOWED HEREIN) AND CLASS ACTION WAIVER, PLEASE DO NOT USE THE SERVICES OR SOFTWARE."). Further, the opt-out provision is the same font size as the rest of the agreement and is identified by a numbered, bolded subheading. *Id.* at 11 ("14.6 Acceptance of Arbitration and Right to Opt Out"); *see Costa v. Apple, Inc.*, No. 23-cv-01353-WHO, 2024 WL 6905721, at *5 (N.D. Cal. Jan. 19, 2024) (finding that the opt-out provision is not illusory because it was identified by a numbered, bolded subheading and is in the same font size as the rest of the agreement). Regardless, the Ninth Circuit has stated that the fact that the opt-out provision was buried in the agreement does not change whether a promise was illusory or not, because one who signs a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument. *Mohamed*, 848 F.3d at 1211. Plaintiffs have not shown the Court why it should not follow *Mohamed* for this proposition.

Plaintiffs then argue that the opt-out provision imposes ongoing burdens because the DRP purports to apply retroactively and Defendant purports to reserve the right to update the TOU as it pleases. ECF 50-1 at 21. As such, Plaintiffs argue, even if a consumer exercised the opt-out option within 30 days of their initial use of Adobe's services, they would need to opt out after *every* revision to Section 14.6 to make it stick. *Id.* Defendant argues that a "customer could easily opt out within 30 days of their use of the Services and Software and never need to opt out again." ECF 55 at 11. The Court finds that because it is ambiguous as to whether consumers need to continuously opt out of

the arbitration agreement, the right to opt out is not meaningful.

Defendant is correct that the opt-out provision does not explicitly require consumers to opt out again if they already did before the TOU is modified. ECF 55 at 11; TOU at 11. But it also does not explicitly state that they do not have to opt out again. *Id.* As such, there is ambiguity in how the opt-out provision fares when the arbitration agreement is modified. It is unclear if an existing opt out would carry over if the subsection governing the opt out (or the subsection governing the arbitration the consumer is opting out of) is amended under Subsection 1.5 and effective immediately. It is also unclear which version of the TOU would control the opt out, as Subsection 1.5 states that "[a]ny such changes will not apply to any dispute between you and Adobe arising prior to the date on which . . . the Terms . . . become effective," but Subsection 14.1 states that "[t]his agreement to arbitrate shall apply, without limitation, to all claims that arose or were asserted before the effective date of the Terms." TOU at 10–11. Because the Court should construe ambiguous language against the interest of the party the drafted it, the Court assumes that consumers must continuously opt out of the arbitration agreement. Therefore, the right to opt out was not meaningful.[3] *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 62 (1995); *see Rios v. HRB Digital LLC*, 807 F. Supp. 3d 975, 986 (N.D. Cal. 2025) (finding that the opt-out provision is illusory in part because it requires consumers to submit a new opt-out request each year or be swept back into arbitration).

The illusory opt-out provision, coupled with Defendant's superior bargaining power and the take-it-or-leave it process, results in the TOU being an adhesive contract. *Armendariz v. Found. Health Psychcare Servs., Inc*., 24 Cal. 4th at 114 (Cal. 2000))*; c.f.* Order at 10. Therefore, the TOU is "procedurally unconscionable to at least some degree." *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1090 (9th Cir. 2024) (citation omitted).

**c. There is Oppression and No Surprise**

Because the "degree of procedural unconscionability of an adhesion agreement is

[3] Because it finds that the right to opt out is not meaningful, the Court does not need to determine what the opt-out provision applies to.

low" by itself, the Court now assesses whether there are other indications of oppression or surprise that would result in a higher degree of procedural unconscionability. *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013).

**i. Oppression**

The Court first assesses oppression. "Oppression occurs where a contract involves lack of negotiation and meaningful choice[.]" *OTO, LLC v. Kho,* 8 Cal.5th 111, 126 (2019) (citation omitted). Here, beyond being an adhesive contract, Plaintiffs argue that "Adobe's ability to unilaterally and retroactively alter the DRP further establishes oppression."[4] ECF 50-1 at 23. The Court agrees that the TOU permits unilateral modification of the TOU without prior notice. Subsection 1.5 ("We may make changes to the Terms from time to time, and if we do, we will notify you by revising the date at the top of the Terms and in some cases, we may provide you with additional notice . . . the amended terms will be effective immediately."). And as detailed previously, the TOU is unclear as to whether the amended terms would apply retroactively given the conflict between Subsection 1.5 and Subsection 14.1. *Supra* Section III.B.2.c. Thus, the Court finds that there is oppression. *See Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 683 (9th Cir. 2024) (finding procedural unsociability in part because the terms permitted unilateral modification without prior notice and would apply retroactively).

**ii. Surprise**

The Court then assesses surprise. "Surprise" concerns whether "the allegedly unconscionable provision is hidden within a prolix printed form" or "is otherwise beyond the reasonable expectation of the weaker party." *OTO LLC,* 8 Cal.5th at 126; *Morris v. Redwood Empire Bancorp*., 27 Cal. Rptr. 3d 797, 808 (Cal. Ct. App. 4th Dist. 2005).

Plaintiffs first argue that the Court incorrectly assessed Plaintiffs' purposeful

---

[4] The Court notes that Plaintiffs did not make this argument in their original Opposition despite not being related to the opt-out provision. *See* ECF 57 at 8 (arguing that it explained why their arguments regarding the *opt-out provision* could not have been previously made). However, because Defendant had had an opportunity to respond and only objected to Plaintiffs' arguments about the opt-out provision, the Court assesses this argument. ECF 55 at 7.

obfuscation arguments in the context of contract formation, that the conspicuousness of a link to the TOU is immaterial, and that the relevant terms are hidden. ECF 50-1 at 21–22, 24. The Court finds that it properly looked at inquiry notice and the conspicuousness of the TOU link when assessing procedural unconscionability. While the Court cannot conflate the requirements for contract formation with the question of unconscionability, courts often look to inquiry notice to determine surprise in its procedural unconscionability analysis. *See Tompkins v. 23andMe, Inc.,* No. 13-cv-05682-LHK, 2014 WL 2903752, at *15 (N.D. Cal. June 25, 2014) ("California courts have relied on the degree of notice surrounding the contract to assess the procedural unconscionability of the arbitration provision."). Indeed, Plaintiffs Opposition stated that the "TOU is presented and accessible only though a hyperlink presented in small typeface and buried in an inconspicuous paragraph at the end of the process" in arguing procedural unconscionability. ECF 18 at 11.

However, the Court did err in failing to address Plaintiffs' argument that the DRP is "hidden . . . in multi-layered provisions without sufficient emphasis to draw attention to the critical terms." *Id.* The Court now finds that this argument mischaracterizes the DRP. The "mandatory arbitration provision and class action waiver in Section 14" is referenced in the first paragraph of the TOU in bold and capitalized font. TOU at 1. Further, the DRP is identified by a numbered, bolded subheading aptly titled "Dispute Resolution, Class Action Waiver, Arbitration Agreement." TOU at 10. *See Kilgore v. KeyBank, Nat. Ass'n,* 718 F.3d 1052, 1059 (9th Cir. 2013) (finding that the arbitration clause was not buried in fine print in the Note because it was in its own section, clearly labeled, in boldface). Plaintiffs did not point the Court to any alleged "legalese" that would result in surprise. ECF 50-1 at 24.

Plaintiffs then argue that Adobe's unconscionable cost-shifting measure in Subsection 14.4 imposes considerable surprise. ECF 50-1 at 24.[5] The Court finds that it

[5] The Court again notes that Plaintiffs did not make this argument in their original Opposition despite not being related to the opt-out provision. *See* ECF 57 at 8. However,

does not need to determine the unconscionability of the cost-shifting measure in Subsection 14.4 because it only applies to arbitration fees, and Defendants have waived their right to compel arbitration.

As such, the Court finds that the TOU has minimal procedural unconscionability.

**3. The Court Finds That There is Substantive Unconscionability**

The Court then assesses the TOU's substantive unconscionability. Substantive unconscionability examines whether the contract terms are overly harsh or one-sided. *Fisher v. MoneyGram Int'l*, Inc., 66 Cal. App. 5th 1084, 1104 (2021). Plaintiffs argued that the primary provisions in the DRP—its arbitration provision, class action waiver, one-year limitations period, and pre-dispute notice requirement—are substantively unconscionable. The Court assesses each and finds that there is substantive unconscionability.

**a. The Court Declines to Assess the Arbitration Provision and Delegation Clause**

Plaintiffs argue that the arbitration provision and delegation clause are unconscionable. ECF 18 at 12. The Court does not need to determine the unconscionability of the arbitration provision and delegation clause because it found that Defendant waived its right to compel arbitration as to both clauses.

**b. The Class Action Waiver is Substantively Unconscionable Under *Discover Bank***

Plaintiffs argue that the class action waiver is invalid under *Discover Bank v. Superior Court*, 36 Cal.4th 148, 152 (2005). ECF 18 at 13. Plaintiffs argue that *Discover Bank* applies and is not preempted by *AT&T Mobility LLC v. Concepcion*, 563 U.S. 33 (2011), when, as here, the class action waiver is not coupled with a valid arbitration provision. *Id.* (citing *Suski v. Marden-Kane, Inc.*, No. 21-cv-04539-SK, 2022 WL

---

because Defendant had had an opportunity to respond and only objected to Plaintiffs' arguments about the opt-out provision, the Court assesses this argument. ECF 55 at 7.

3974259, at *4 (N.D. Cal. Aug. 31, 2022)). Defendant argues that the class action waiver is coupled with an arbitration provision and is thus preempted. ECF 20 at 15.

*Discover Bank* is a California rule stated that when a class action waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, the waiver is unconscionable and should not be enforced. 36 Cal.4th at 162–63. *Concepcion* held that although the Federal Arbitration Act (FAA) preserves generally-applicable contract defenses, it does not permit state law defenses "that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Elite Logistics Corp. v. Wan Hai Lines, Ltd.*, No. B252543, 2015 WL 3522606, at *13 (Cal. Ct. App. June 4, 2015) (citing *Concepcion*, 563 U.S. at 335). As such, *Concepcion* held that the FAA preempted *Discover Bank* when the rule would require classwide arbitration. *Jeong v. Nexo Cap. Inc.*, No. 21-cv-02392-BLF, 2023 WL 2717255, at *4 n.1 (N.D. Cal. Mar. 29, 2023). Conversely, the FAA does not preempt *Discover Bank* when a class waiver is not coupled with an arbitration provision. *Id.*

The Court finds that the class action waiver is not coupled with a valid arbitration provision, and thus, *Discover Bank* applies. Because Defendant waived its right to compel arbitration, there is no enforceable arbitration agreement. *Supra* Section III.A; *Optimumedicine, LLC v. Hightail Air Charter, LLC*, No. 26-cv-00191-CDS-BNW, 2026 WL 2517587, at *5 (D. Nev. Aug. 25, 2026) (finding that there is no enforceable arbitration agreement when a defendant waives its right to compel arbitration). Therefore, the waiver can only apply to non-arbitrable disputes. And *Concepcion* only preempts state law defenses "that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Elite Logistics Corp.*, 2015 WL 3522606, at *13. It follows that *Discover Bank* applies to the case at hand. *See Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 578 (N.D. Cal. 2025) (finding that *Concepcion* does not preempt *Discover*

*Bank* where the defendant did not seek to enforce an arbitration agreement). While Plaintiffs' cited cases involve class waivers where the contract did not have an arbitration agreement or the parties were not involved in the arbitration agreement, the arbitration agreement here is effectively unenforceable. *See Jeong,* 2023 WL 2717255, at *4 n.1; *Suski v. Marden-Kane, Inc.*, No. 21-cv-04539-SK, 2022 WL 3974259, at *5 (N.D. Cal. Aug. 31, 2022). And the cases' principles stand that FAA only preempts *Discover Bank* when it would require class wide arbitration.

Thus, the Court assesses the class action waiver's unconscionability under *Discover Bank.* Plaintiffs argue that all three parts of the *Discover Bank* test are met because (1) it is a contract of adhesion drafted by a party that has superior bargaining power, (2) the agreement occurs in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and (3) it is alleged that the party with the superior bargaining power had carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money. ECF 18 at 14. Defendants give no argument beyond stating that the TOU was not adhesive because of the opt-out provision. ECF 20 at 15. However, the Court found that the opt-out provision was illusory and the TOU was adhesive. *Supra* Section III.B.2.b. As such, the Court finds that the class action waiver is substantively unconscionable under *Discover Bank.*

**c. The One-Year Limitations Period is Substantively Unconscionable**

Plaintiffs argue that the one-year limitations period is unconscionable because it is unidirectional and significantly shorter than the statutory periods for claims under the CLRA (three years), the UCL (four years), the FAL (three years), and the common law claims (three or four years). ECF 18 at 16. Defendant argues that it is conscionable because the one-year limitation period is bidirectional. ECF 20 at 8.

The Court finds that regardless of whether the time limitation is bidirectional or unidirectional, the one-year limitations period is substantively unconscionable in the context of Plaintiffs' claims. A one-year statute of limitation is considerably shorter than

the otherwise applicable three to four year limitations period. *Fisher*, 66 Cal. App. 5th at 1105. While California courts "have afforded contracting parties considerable freedom to modify the length of a statute of limitations," contractually shortened limitations periods have not been "recognized outside the context of straightforward transactions in which the triggering event for either a breach of a contract or for the accrual of a right is immediate and obvious. *Moreno v. Sanchez,* 106 Cal. App. 4th 1415, 1430 (2003); *Gostev v. Skillz Platform, Inc.*, 88 Cal. App. 5th 1035, 1060 (2023).

**d. The Pre-Dispute Notice Requirement is Somewhat Substantively Unconscionable**

Plaintiffs argue that the DRP imposes an "onerous, mandatory, one-sided informal dispute resolution process." ECF 18 at 17. The dispute resolution process requires the consumer to mail a written Notice of Claim that must provide Defendant with fair notice of their identity, a description of the nature and basis of their Claim, and the relief they are seeking. TOU at 10.

Plaintiffs reason that the notice requirement is unconscionable because the notice "is left entirely to Adobe's discretion, giving the company unilateral authority to determine whether a consumer has me the threshold to proceed and creates a mechanism for Adobe to delay or deny access to judicial remedies. *Id.* However, Plaintiffs do not point the Court to any authority to support their reasoning, only conclusorily stating without citing that "Courts have recognized that such procedural hurdles . . . are indicative of a substantively unconscionable scheme." ECF 18 at 24. Based on Plaintiffs' reasoning, the Court is unpersuaded. The Ninth Circuit authority has found that "pre-arbitration dispute resolution procedures are commonplace and can both be 'reasonable and laudable.'" *Bielski v. Coinbase*, 87 F.4th 1003, 1014 (9th Cir. 2023) (citing *Serpa*, 215 Cal. App. 4th 695, 695). Similar to *Bielski,* the TOU lays out the steps a consumer must take if they have a dispute with Defendant: contact Defendant and provide a written Notice of Claim to the address that includes their identity, a description of the nature and basis of the claim, and the relief they are seeking. TOU at 10; 87 F.4th at 1014 (finding that the agreement

United States District Court
Northern District of California

lays out the steps a user must take, including resolving a dispute informally and filing a formal complaint). The Court does note, however, that it is a user-only pre-arbitration dispute resolution process. The Court finds that the pre-dispute notice requirement would have some substantive unconscionability.

**4. The TOU is Unconscionable and Inseverable**

When determining unconscionability, procedural and substantive unconscionability "need not be present in the same degree." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017). Rather, there is a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (citations omitted). Here, there was a moderate level of procedural unconscionability due to a contract of adhesion and unilateral modifcation. There is also a moderate level of substantive unconscionability of the pre-dispute notice requirement and higher levels of substantive unconscionability for the class action waiver and one-year limitation period provision. As such, the Court finds that all three provisions are unconscionable.

"If a California court concludes that a contract contains one or more unconscionable clause, it may: (1) refuse to enforce a contract that was 'unconscionable at the time it was made'; (2) 'enforce the remainder of the contract without the unconscionable clause'; or (3) 'limit the application of any unconscionable clause as to avoid any unconscionable result . . . A court may 'refuse to enforce the entire agreement' only when it is 'permeated' by unconscionability." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1272 (9th Cir. 2017) (citations omitted). Courts have identified three reasons for denying severance of unconscionable terms: (1) "[i]f the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced," *Armendariz*, 24 Cal.4th at 114, (2) an "arbitration agreement contains more than one unlawful provision" may "indicate a systematic effort to impose arbitration on [a consumer] . . . as an inferior forum that works to the [business's] advantage" and may justify a conclusion "that the arbitration agreement is permeated by an unlawful purpose," and (3) if "there is no single provision a court can

strike or restrict in order to remove the unconscionable taint from the agreement," the court would have to "reform the contract, not through severance or restriction, but by augmenting it with additional terms," which would exceed its power to cure a contract's illegality.'" *Ali v. Daylight Transport, LLC*, 59 Cal. App. 5th 462, 481 (2020).

Here, the Court finds that there were three sections that were unconscionable: the class action waiver, one-year limitations period, and notice requirement. Additionally, the one-year limitations period may intertwine with the pre-dispute notice requirement to result in more unconscionability. *See Bielski*, 27 F.4th at 1015 (finding that a provision can be more substantively unconscionable if the unfair dispute resolution process is paired with a time restriction). This shows that the central purpose of the contract may be tainted with illegality, and the Court finds that it cannot sever the contract. *Armendariz,* 24 Cal.4th at 114. The Court will therefore not enforce the remaining provisions.

### C. The Court Grants in Part and Denies in Part Defendant's Motion to Dismiss

#### 1. Defendant's Arguments About the One-Year Limitation and Conditions Precedent are Moot

Defendant argues that Plaintiffs' claims are barred by the one-year contractual limitations period and by their failure to fulfill their conditions precedent. However, the Court finds these arguments moot because it found these provisions to be unenforceable.

#### 2. Plaintiffs Insufficiently Alleged Actual Reliance

Defendant argues that Plaintiffs have not alleged actual reliance on any Adobe specific statement or omission, which results in a failure to state a claim for Count I (UCL), Count III (FAL), and Count IV (CLRA). ECF 7 at 13. Defendant alleges this is because Plaintiffs only conclusorily allege in a single paragraph that they "relied" on anything, Plaintiffs are silent on their personal experiences with the enrollment and cancellation process, and the allegations are vague. ECF 7 at 14–15.

The UCL, FAL, and CLRA mandate allegations of actual reliance. *Kwikset Corp. v. Superior Ct.*, 51 Cal.4th 310, 322 (2011). To prove reliance on an omission, a plaintiff

United States District Court
Northern District of California

must show that the defendant's nondisclosure was an immediate cause of the plaintiff's injury-producing conduct. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). The parties do not dispute that a plaintiff may do so by simply proving "that, had the omitted information been disclosed, one would have been aware of it and behaved differently." *Id.* (citing *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1093 (1993)); ECF 20 at 10; ECF 18 at 19.

The Court finds that Plaintiffs insufficiently alleged actual reliance. Defendant's argument that Plaintiffs only conclusorily allege in a single paragraph that they "relied" on anything to be persuasive because there are other ways to sufficiently allege reliance. For example, courts have found that "one need only prove that, had the omitted information been disclosed one would have been aware of it and behaved differently" to show actual reliance. *See, e.g., Daniel*, 806 F.3d at 1225. Plaintiffs appear to attempt to allege the standard found in *Daniel* here, as Plaintiffs' Complaint contains the following allegations: (1) "Plaintiffs and the Class would not have purchased the subscription or they would have cancelled their subscriptions earlier had the terms associated with the subscription, including the early termination fee, been clearly disclosed" in Counts I and IV, (2) "Plaintiffs and the Class would not have purchased the subscription had they know [sic] the true terms and conditions" in Count III. Compl. ¶¶ 131, 144, 155. However, while Plaintiffs have alleged that they would have behaved differently had Defendant disclosed the defects, they have not sufficiently alleged that they would have been aware of any disclosure. *In re Apple Processor Litig.*, No. 22-cv-16164, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023); ECF 18 at 19 (not listing that Plaintiffs alleged as such). As such, Plaintiffs insufficiently alleged actual reliance for Counts I, III, and IV. The Court does not reach Defendant's remaining arguments about Counts I, III, and IV. This includes Defendant's argument that Plaintiffs fail to sufficiently allege that (1) Plaintiffs Wohlfiel and Marquez are not consumers under CLRA, and (2) Plaintiffs renewed their subscription such that they may contest compliance with ARL or allege harm from renewal. ECF 7 at 17–19.

United States District Court
Northern District of California

### 3. *Adobe* Does Not Foreclose Plaintiffs' Arguments

Defendant then argues that the Court should dismiss, as a matter of law, Plaintiffs' claims to the extent they are predicated on allegations that Defendant does not disclose that the ABM plan requires an annual commitment without monthly billing because *United States v. Adobe, Inc.*, 791 F. Supp. 3d 966 (N.D. Cal. 2025), held that the ABM plan is not deceptive in this regard. ECF 7 at 15–16. Defendant argues that this is the core premise of Counts I, II, III, IV, V, and VI. *Id.*

The Court notes that *United States v. Adobe*, as a district court case, is not binding. The Court also notes that while *Adobe* found that a similar enrollment page "clearly and conspicuously disclosed that its APM plan is an annual or yearly plan," it found so under the Restore Online Shoppers' Confidence Act (ROSCA). 791 F. Supp. 3d at 984–85. Defendant has not explained to the Court why the same analysis should apply to the six causes of action in this Complaint, none of which are ROSCA. Thus, the Court finds that at this stage, *Adobe* does not foreclose Plaintiffs' argument that Defendant does not disclose that the ABM plan requires an annual commitment without monthly billing.

### 4. Plaintiffs Insufficiently Alleged Any Entitlement to Injunctive and Other Equitable Relief

Defendant then argues that Plaintiffs failed to allege facts establishing the inadequacy of a remedy at law or a risk of future harm absent injunctive relief, such that they may pursue claims for injunctive and other equitable relief. ECF 7 at 20. Plaintiffs agree that their Complaint lacks the requisite allegations to be entitled to injunctive or other equitable relief. ECF 18 at 24. The Court therefore dismisses any injunctive or equitable relief.

In sum, the Court VACATES its original Order granting Defendant's Motion to Dismiss. It now GRANTS IN PART Defendant's Motion to Dismiss as to Counts I, III, IV, and DENIES IN PART Defendant's Motion to Dismiss as to Counts II, V, and VI. It also GRANTS Defendant's Motion to Dismiss as to any injunctive relief, restitution, or

United States District Court
Northern District of California

disgorgement under Counts I, III, IV, V, and VI. The Court does so with leave to amend because it finds that amendment would not be futile. *See* ECF 18at 24.

## IV. CONCLUSION

In summary, the Court GRANTS Plaintiffs' Motion for Reconsideration and reassesses its Motion to Dismiss Order. After reconsideration, the Court FINDS that Defendant waived its right to compel arbitration as a whole and the opt-out provision did not prevent procedural unconscionability. The Court therefore VACATES its Order granting Defendant's Motion to Dismiss. The Court's Order denying Plaintiffs' Rule 23(d) Motion and Defendant's Rule 12(f) Motion to Strike remains. It now GRANTS IN PART Defendant's Motion to Dismiss as to Counts I, III, IV, and any injunctive, restitution, or disgorgement, and DENIES IN PART Defendant's Motion to Dismiss as to Counts II, V, and VI with leave to amend. Plaintiffs must file their amended complaint or notify the Court that they do not wish to amend by September 28, 2026. Plaintiffs may not add any new parties or claims without further leave of Court. Plaintiffs should also address what they would like to do with their amended complaint on file at ECF 52.

**IT IS SO ORDERED.**

Dated: September 2, 2026

NATHANAEL M. COUSINS
Chief United States Magistrate Judge