Douglas A. Winthrop (No. 183532)
douglas.winthrop@arnoldporter.com
Jeremy T. Kamras (No. 237377)
jeremy.kamras@arnoldporter.com
Joseph Farris (No. 263405)
joseph.farris@arnoldporter.com
Tommy Huynh (No. 306222)
tommy.huynh@arnoldporter.com
Mark E. Raftrey (No. 352610)
mark.raftrey@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
Four Embarcadero Center, 14th Floor
San Francisco, CA 94111-4164
Telephone: 415-471-3100
Facsimile: 415-471-3400

*Counsel for Defendant*
*Adobe Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

STEPHANIE WOHLFIEL and VIANCA MARQUEZ,

*Plaintiffs*,

v.

ADOBE INC.,

*Defendant*.

Case No. 5:25-cv-6562-NC

**DEFENDANT ADOBE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Assigned to: Hon. Nathanael M. Cousins

Date: Dec. 2, 2026
Time: 11:00 a.m.
Place: Courtroom 5, 4th Floor

# TABLE OF CONTENTS


Page

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

A. Adobe's Services And Its Subscription Model ........ 2

B. Procedural History ........ 3

C. Plaintiffs' Second Amended Complaint ........ 5

III. STATEMENT OF ISSUES TO BE DECIDED ........ 6

IV. LEGAL STANDARDS ........ 6

V. ARGUMENT ........ 7

A. Plaintiffs' Claims Alleging That Adobe Did Not Clearly Disclose The "Annual" Term Commitment Of The "Annual, Billed Monthly" Plan Fail To State A Claim As A Matter of Law ........ 7

B. Plaintiff Marquez's UCL Claim Premised On CARL Fails Because She Is Not A California Consumer ........ 11

C. Plaintiff Wohlfiel Fails To Allege That She Renewed Her Subscriptions Such That She May Not Allege Harm From Renewal ........ 12

D. Plaintiffs Fail To Allege Any Entitlement To Equitable Relief ........ 13

E. The No-Simple-Cancellation Claims And Related Class And Subclasses Should Be Dismissed ........ 17

F. Plaintiffs Cannot Maintain Nationwide Class Claims For Their California Consumer Protection Or Common-Law Claims ........ 19

VI. CONCLUSION ........ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 7

*Barnum Timber Co. v. EPA*,
633 F.3d 894 (9th Cir. 2011) ..... 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..... 7

*Chebul v. Tuft & Needle, LLC*,
2024 WL 5257021 (C.D. Cal. Oct. 9, 2024) ..... 21

*Cimoli v. Alacer Corp.*,
587 F. Supp. 3d 978 (N.D. Cal. 2022) ..... 21

*Clevenger v. Welch Foods Inc.*,
2022 WL 18228288 (C.D. Cal. Dec. 14, 2022) ..... 16

*Davison v. Kia Motors Am., Inc.*,
2015 WL 3970502 (C.D. Cal. June 29, 2015) ..... 19

*DeArmey v. Hawaiian Isles Kona Coffee Co.*,
2019 WL 6723413 (C.D. Cal. July 22, 2019) ..... 21

*Debono v. Cerebral Inc.*,
2023 WL 300141 (N.D. Cal. Jan. 18, 2023) ..... 11

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ..... 9

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982) ..... 20

*Farrington v. A. Teichert & Son, Inc.*,
59 Cal. App. 2d 468 (1943) ..... 10

*Foret v. Adobe Inc.*,
2026 WL 2690261 (N.D. Cal. Sept. 14, 2026) ..... 11

*Gianino v. Alacer Corp.*,
846 F. Supp. 2d 1096 (C.D. Cal. 2012) ..... 20

*Gibson v. Jaguar Land Rover N. Am., LLC*,
2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) ....................15

*Gill v. Chipotle Mexican Grill, Inc.*,
2025 WL 1443767 (C.D. Cal. May 19, 2025) ....................16

*Goldstein v. Gen. Motors LLC*,
2022 WL 484995 (S.D. Cal. Feb. 16, 2022) ....................14, 16

*Gonzalez v. Am. Honda Motor Co.*,
720 F. Supp. 3d 833 (C.D. Cal. 2024) ....................21

*Gradney v. Polar Beverages*,
797 F. Supp. 3d 1016 (N.D. Cal. 2025) ....................16

*Hageman v. Hyundai Motor Am.*,
2024 WL 694378 (C.D. Cal. Jan. 5, 2024) ....................21

*Hernandez v. Burger*,
102 Cal. App. 3d 795 (1980) ....................20

*Herskowitz v. Apple Inc.*,
940 F. Supp. 2d 1131 (N.D. Cal. 2013) ....................7

*Hoffman v. 162 N. Wolfe LLC*,
228 Cal. App. 4th 1178 (2014), *as modified on denial of reh'g* (Aug. 13, 2014) ....................9

*Huu Nguyen v. Nissan N. Am., Inc.*,
2017 WL 1330602 (N.D. Cal. Apr. 11, 2017) ....................14

*In re Bridgestone/Firestone, Inc.*,
288 F.3d 1012 (7th Cir. 2002) ....................19

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
712 F. Supp. 2d 958 (N.D. Cal. 2010) ....................18

*Jackson v. Suzuki Motor of Am., Inc.*,
2024 WL 3914666 (C.D. Cal. July 9, 2024) ....................21

*Joyce v. Guthy-Renker, LLC*,
2026 WL 1164686 (N.D. Cal. Apr. 29, 2026) ....................16

*Marsh v. First Bank of Delaware*,
2014 WL 2085199 (N.D. Cal. May 19, 2014) ....................1, 14, 20

*Martinez v. Newsom*,
46 F.4th 965 (9th Cir. 2022) ....................12

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ....................19, 20, 21

*McCann v. Foster Wheeler LLC*,
48 Cal. 4th 68 (2010) ....................19, 20

*Miller v. Gen. Motors Corp.*,
2003 WL 168626 (N.D. Ill. Jan. 26, 2003) ....................20

*Moore v. Am. Honda Motor Co., Inc.*,
740 F. Supp. 3d 814 (N.D. Cal. 2024) ....................17

*Moreno v. C.H. Robinson Worldwide, Inc.*,
2025 WL 3141862 (N.D. Cal. Nov. 10, 2025) ....................17

*Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*,
9 Cal. 5th 279 (2020) ....................16, 21

*Noll v. eBay Inc.*,
2013 WL 2384250 (N.D. Cal. May 30, 2013) ....................11

*Phillips v. Brooklyn Bedding LLC*,
2024 WL 2830663 (N.D. Cal. Mar. 28, 2024) ....................14, 16

*Pilgrim v. Universal Health Card, LLC*,
660 F.3d 943 (6th Cir. 2011) ....................20

*Romoff v. Gen. Motors LLC*,
574 F. Supp. 3d 782 (S.D. Cal. 2021), *aff'd,* 2023 WL 1097258 (9th Cir. Jan. 30, 2023) ........9

*Ryan v. Starco Brands, Inc.*,
2024 WL 5102651 (N.D. Cal. Apr. 19, 2024) ....................16

*Sharma v. Volkswagen AG*,
524 F. Supp. 3d 891 (N.D. Cal. 2021) ....................16

*Simon v. E. Ky. Welfare Rts. Org.*,
426 U.S. 26 (1976) ....................13

*Sims Snowboards, Inc. v. Kelly*,
863 F.2d 643 (9th Cir. 1988) ....................19

*Singh v. Adobe Inc.*,
3:24-cv-03980-JSC (N.D. Cal. Mar. 12, 2025) (Dkt. 36) ....................13

*Singh v. Adobe Inc.*,
No. 3:24-cv-03980-JSC (N.D. Cal. Feb. 13, 2025) (Dkt. 34) ....................13

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) .....14, 16

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016).....12, 17

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).....12

*United States v. Adobe, Inc.*,
791 F. Supp. 3d 966 (N.D. Cal. 2025) ..... *passim*

*Vallarta v. United Airlines, Inc.*,
497 F. Supp. 3d 790 (N.D. Cal. 2020) .....9, 10

*Warner v. Tinder Inc.*,
105 F. Supp. 3d 1083 (C.D. Cal. 2015) .....11

**Statutes**

California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ..... *passim*

California's Automatic Renewal Law, Cal. Bus. & Prof. Code § 17600, *et seq.* .....2, 4, 6, 11

California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ..... *passim*

California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ..... *passim*

Restore Online Shoppers' Confidence Act .....4, 7, 8, 9, 11

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) .....6, 7, 13

Federal Rule of Civil Procedure 12(b)(6) .....7

Federal Rule of Civil Procedure 23.....21

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 2, 2026, at 11:00 a.m., or as soon thereafter as available, in the courtroom of the Honorable Nathanael M. Cousins, located at 280 South 1st Street, San Jose, California 95113, Defendant Adobe Inc. ("Adobe") will and hereby does move the Court for an order dismissing certain of Plaintiffs' claims or, at a minimum, dismissing the nationwide class allegations.

Specifically, Adobe moves to dismiss certain claims under Federal Rule of Civil Procedure 12(b)(1) and/or 12(b)(6) because: (1) certain of the statements alleged to be misleading already have been held otherwise as a matter of law; (2) Plaintiff Marquez fails to allege that she is a consumer in California, as required to the extent her Unfair Competition Law claims are predicated on an alleged violation of the California Automatic Renewal Law; (3) Plaintiff Wohlfiel fails to allege that she renewed any subscription, defeating her claims predicated on a renewal; (4) Plaintiffs fail to allege that they are entitled to pursue equitable relief; (5) Plaintiffs lack standing to bring claims or classes premised on Adobe's alleged failure to provide a simple cancellation mechanism; and (6) Plaintiffs cannot maintain nationwide class claims.

This Motion is based on the Second Amended Complaint; this Notice of Motion; Adobe's Memorandum of Points and Authorities; the papers on file; any Reply which Adobe may file in support of this Motion; and any evidence and argument presented to the Court.

Dated: October 13, 2026

ARNOLD & PORTER KAYE SCHOLER LLP

By: *<u>/s/ Jeremy T. Kamras</u>*

Douglas A. Winthrop
Jeremy T. Kamras
Joseph Farris
Tommy Huynh
Mark E. Raftrey

*Counsel for Defendant Adobe Inc.*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Adobe makes its popular creative tools available online through customer-friendly subscription practices. Adobe clearly and conspicuously discloses the terms that govern the contractual subscription agreement with each consumer during the enrollment process before and after checkout, including providing numerous disclosures about the Early Termination Fee ("ETF") associated with its "Annual, Billed Monthly" plans. As its name makes clear, the "Annual, Billed Monthly" plan is an annual subscription that offers customers the convenience of paying on a monthly basis, instead of requiring an up-front payment for the full year (which is another option Adobe provides to customers via its "Annual, Prepaid" subscription plans). Adobe also offers several easy-to-use cancellation options. Despite Adobe's clear disclosures and customer-friendly enrollment and cancellation processes, in the Second Amended Complaint ("SAC"), Plaintiffs allege that they purchased "Annual, Billed Monthly" subscriptions to Adobe products while not understanding that they had expressly agreed to an annual commitment and to pay an ETF should they desire to cancel before the end of the annual term. Dkt. No. 65 ("SAC") ¶¶ 99, 104, 111, 116. Plaintiffs assert that their lack of awareness of the annual term and/or other practices related to the enrollment and cancellation processes give rise to various causes of action. For multiple reasons, the Court should dismiss certain of Plaintiffs' claims, including their nationwide class claims.

First, Plaintiffs' allegations that Adobe's disclosure regarding the "annual" nature of the "Annual, Billed Monthly" plan was misleading were rejected as a matter of law in another case in this District involving Adobe, which analyzed materially identical disclosures under the same reasonable consumer standard that applies to Plaintiffs' claims here. This Court previously dismissed Plaintiffs' claims predicated on these allegations because of a failure to adequately allege reliance without reaching Adobe's argument concerning the reasonable consumer standard. Plaintiffs have since amended their allegations to plead reliance, but still fail to adequately plead that the annual commitment was not clearly disclosed under the reasonable consumer standard.

<u>Second</u>, Plaintiff Marquez—an alleged Nebraska resident—cannot maintain her Unfair Competition Law ("UCL") claim predicated on California's Automatic Renewal Law ("CARL") because she does not allege that she is a consumer in California.

<u>Third</u>, Plaintiff Wohlfiel cannot bring any claims based on subscription renewals because she does not allege that her subscriptions ever renewed; to the contrary, she alleges that she cancelled all her subscriptions prior to renewal and paid ETFs.

<u>Fourth</u>, Plaintiffs again fail to allege that the remedies available to them at law are inadequate; although they no longer seek injunctive relief, they still seek disgorgement and restitution, which are forms of equitable relief to which they are not entitled.

<u>Fifth</u>, Plaintiffs lack standing to maintain any claims or classes premised on the alleged failure to provide a simple cancellation mechanism because neither Plaintiff alleges that she faced any procedural difficulty in cancelling her subscription(s).

<u>Finally</u>, Plaintiffs cannot bring claims under California's consumer protection statutes and common law on behalf of a nationwide class, and the nationwide class claims must be dismissed.

## II. BACKGROUND

### A. Adobe's Services And Its Subscription Model

Adobe provides services that power creative expression, such as applications like Acrobat and Lightroom, which Plaintiffs allege they purchased via subscriptions. SAC ¶¶ 99, 111. Adobe offers a flexible subscription model that caters to a variety of customer preferences. Customers can opt for monthly or yearly subscriptions, and pay all-at-once, or as-they-go. Specifically, these plans are as follows:

- <u>Monthly</u>: The "Monthly" plan is a month-to-month contract, billed monthly, which customers can cancel any time, for no fee.
- <u>Annual, Prepaid</u>: The "Annual, Prepaid" plan is an annual contract, billed up front, which provides a discount on the average monthly cost compared to the "Monthly" plan.

- Annual, Billed Monthly: Adobe's third option, "Annual, Billed Monthly," is a hybrid: it is an annual contract that allows customers to pay in monthly installments, and which provides nearly the same discount as the "Annual, Prepaid" plan. Though customers commit for one year, they can still cancel their subscription during the first year by paying a cancellation fee of half of the remaining monthly installments. After the first year, customers retain the discounted monthly price, and can cancel the plan at any time without paying a fee.

When customers purchase a subscription, they are presented with the names of the available subscription options and their monthly prices. *See* SAC ¶ 44, Example B. Customers can cancel their subscriptions online in around a minute, can contact live representatives on the phone to cancel, or can use web chat to cancel. Adobe's customer base has rapidly expanded in recent years because of—not in spite of—the customer-friendly subscription options it provides.

### B. Procedural History

On August 4, 2025, Plaintiffs filed their original Complaint alleging that Adobe's subscription enrollment process does not clearly and conspicuously disclose the material terms of its "Annual, Billed Monthly" ("ABM") subscription option and that Adobe fails to provide a simple cancellation mechanism. Dkt. No. 1 ("Compl.") ¶¶ 39-82. Plaintiffs made numerous allegations about the allegedly deceptive nature of the enrollment process, including that "Adobe's enrollment process fails to clearly and conspicuously disclose and intentionally obscures material terms of the ABM plan, including but not limited to that the subscription is a one-year commitment and not a monthly plan, the existence of an early termination fee, the relationship of the early termination fee to the one-year contract, and the amount of the early termination fee." *Id.* ¶ 39. Plaintiffs alleged further that "consumers often learn about the early termination fee for the first time" when they seek to cancel. *Id.* ¶ 73. Plaintiffs also criticized the cancellation process because allegedly "Adobe fails to provide simple, accessible ways to cancel, and instead purposefully designed its cancellation process to be confusing and frustrating." *Id.* ¶ 77.

Plaintiffs asserted six Counts: (I) violation of California's UCL, Cal. Bus. & Prof. Code § 17200, *et seq.*, including as a result of allegedly violating CARL, Cal. Bus. & Prof. Code § 17600, *et seq.*; (II) Conversion; (III) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; (IV) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (V) Unjust Enrichment/Restitution; and (VI) Negligent Misrepresentation.

Adobe moved to dismiss the Complaint on various grounds. Dkt. No. 7. On March 31, 2026, the Court issued an order granting Adobe's motion because Plaintiffs did not sufficiently allege that they complied with contractual pre-litigation dispute resolution requirements in Adobe's Terms of Use ("TOU"). Dkt. No. 48. Plaintiffs then moved for reconsideration, arguing that Adobe waived its right to invoke its arbitration provision and thus could not invoke those requirements, and that the contract was unconscionable and thus unenforceable. Dkt. No. 50-1.

On September 2, 2026, the Court granted Plaintiffs' motion for reconsideration and granted in part and denied in part Adobe's motion to dismiss. Dkt. No. 62. The Court found that certain provisions of the TOU were unconscionable under the procedural circumstances and facts of the case, and thus Adobe's arguments concerning Plaintiffs' failure to fulfill the conditions precedent were moot. *Id.* The Court also held that Plaintiffs insufficiently alleged actual reliance and thus dismissed their UCL, FAL, and CLRA claims with leave to amend, without reaching certain of Adobe's other arguments. *Id.* at 26-27. The Court did not reach the merits of Adobe's additional argument that the "annual" nature of the ABM plan is not misleading as a matter of law, noting that Adobe had not yet explained why the analysis in *United States v. Adobe, Inc.*, 791 F. Supp. 3d 966 (N.D. Cal. 2025), under the Restore Online Shoppers' Confidence Act ("ROSCA") applies to Plaintiffs' six claims in this action. Dkt. No. 62 at 28. The Court further held that Plaintiffs failed to allege entitlement to injunctive or equitable relief and dismissed those claims with leave to amend. *Id.*

### C. Plaintiffs' Second Amended Complaint

Plaintiffs filed their SAC on September 28, 2026. Dkt. No. 65. The SAC asserts the same six Counts as the Complaint. Plaintiffs seek to represent the following classes and subclasses:

- the "Termination Fee" class, defined as all persons in the United States who within the four years preceding the filing of the Complaint "incurred and/or paid fees for cancelling an ABM subscription";
- the "ABM" class, defined as all persons in the United States who within the four years preceding the filing of the Complaint "paid the full year contract of the ABM subscription";
- the "ABM Cancellation Attempt" subclass, defined as all persons in the United States who within the four years preceding the filing of the Complaint "initiated or attempted canceling their ABM subscription but ultimately did not complete the cancellation process and thereafter paid the full year contract of the ABM subscription";
- the "Consumer Subclass," defined as all persons in the United States who within the four years preceding the filing of the Complaint either paid fees for cancelling an ABM subscription or paid the full year of an ABM subscription "who purchased their ABM subscription primarily for personal, family, or household purposes." *Id.* ¶ 135.

**Wohlfiel's Subscriptions.** Plaintiff Wohlfiel alleges that she "purchased approximately ten ABM subscriptions for Adobe Lightroom" between "July 2023-September 2023," which she used "for a photography job." *Id.* ¶¶ 99-100. She alleges that "in or around the end of November 2023, Plaintiff Wohlfiel began the process of cancelling the subscriptions." *Id.* ¶ 106. "From November 2023-January 2024, Plaintiff Wohlfiel began progressively cancelling subscriptions, paying the early termination fee for each cancelled product." *Id.* ¶ 110.

**Marquez's Subscriptions.** Plaintiff Marquez alleges that she "purchased an ABM subscription . . . for her personal, household, and/or family purposes" in or around mid-June 2023. *Id.* ¶ 111. She alleges that she "initiated" the cancellation process in or around mid-July 2023, but "[a]fter learning about the early termination fee, Plaintiff Marquez ceased the cancellation process

so as not to incur the fee." *Id.* ¶¶ 118, 121. "Plaintiff Marquez has retained her ABM subscription from the date of purchase through the filing of this action." *Id.* ¶ 122.

Unlike the Complaint, the SAC asserts the CLRA claim and the UCL claim predicated on an alleged CARL violation on behalf of only Plaintiff Marquez and the "Consumer Subclass." SAC ¶¶ 155-56 (CARL-predicated claims), ¶ 194 (CLRA). The SAC also no longer seeks injunctive relief, but seeks damages under Counts II (Conversion), IV (CLRA), and VI (Negligent Misrepresentation), and restitution or disgorgement under Counts I (UCL), III (FAL), IV (CLRA), and V (Unjust Enrichment/Restitution).

## III. STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiffs' claims predicated on allegations that Adobe did not clearly disclose the annual commitment of the "Annual, Billed Monthly" plan should be dismissed.

2. Whether Plaintiff Marquez's UCL claim predicated on violations of CARL should be dismissed because she is not a consumer in California.

3. Whether Plaintiff Wohlfiel's claims should be dismissed to the extent they contest renewal features because her subscriptions were never renewed.

4. Whether Plaintiffs' claims for equitable relief should be dismissed because they have not alleged the remedies available to them at law are inadequate.

5. Whether Plaintiffs' claims based on the alleged failure to provide a simple cancellation mechanism should be dismissed for lack of standing, and whether the ABM Class, ABM Cancellation Attempt Subclass, and corresponding portions of the "Consumer Subclass" should also be dismissed for lack of a proper named representative or cognizable injury.

6. Whether Plaintiffs' nationwide class claims should be dismissed.

## IV. LEGAL STANDARDS

"A Rule 12(b)(1) motion to dismiss tests whether a complaint alleges grounds for federal subject matter jurisdiction. A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction. . . . Once a party has moved to dismiss for lack of subject matter jurisdiction under

Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction." *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1138 (N.D. Cal. 2013).

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## V. ARGUMENT

### A. Plaintiffs' Claims Alleging That Adobe Did Not Clearly Disclose The "Annual" Term Commitment Of The "Annual, Billed Monthly" Plan Fail To State A Claim As A Matter of Law

The Court should dismiss Plaintiffs' claims to the extent they are predicated on allegations that Adobe does not disclose that the ABM plan requires an annual commitment with monthly billing. The plan's name expressly discloses both features. As another court in this District held as a matter of law in *United States v. Adobe, Inc.*, 791 F. Supp. 3d 966 (N.D. Cal. 2025) ("*Adobe*"), the annual term commitment of the ABM plan was clearly and conspicuously disclosed and no reasonable consumer would be misled about the plan's duration. *Id.* at 984-85.

Although Adobe previously moved to dismiss on this basis, the Court did not reach the merits of Adobe's argument, having otherwise dismissed Plaintiffs' claims predicated on misrepresentation because Plaintiffs had failed to adequately allege reliance (Dkt. No. 62 at 26-27); the Court also noted that Adobe had not explained "why the same analysis [under ROSCA in *Adobe*] should apply to the six causes of action in this Complaint, none of which are ROSCA." *Id.* at 28. The Court should now reach this issue because, as explained below, *Adobe* evaluated materially identical disclosures under the same reasonable consumer standard that governs all of Plaintiffs' claims.

The subscription selection pages at issue in *Adobe* and here are materially identical. *Compare Adobe*, 791 F. Supp. 3d at 985 (image on the left), *with* SAC ¶ 44, Example B (image on the right).







As shown above, both pages display the same three subscription plan options together for comparison—"Annual, billed [or paid] monthly"; "Monthly"; and "Annual, prepaid"—and use the same hierarchy for the ABM plan's disclosures.[1] The plan name appears first, followed by the price in a larger, bolded font and a disclosure alerting customers that a "[f]ee applies if you cancel after" a certain time.

In assessing those disclosures under ROSCA, the *Adobe* court considered whether "Adobe clearly and conspicuously disclosed . . . that its APM plan was an annual plan." 791 F. Supp. 3d at 984-85; *see also id.* at 983 ("[T]he Court must determine whether the government has alleged

[1] As Plaintiffs acknowledge, "[t]he ABM plan has also been called the 'Annual, paid monthly' plan." SAC ¶ 27 n.8.

that Adobe does not 'clearly and conspicuously disclose[] all material terms of the transaction before obtaining the consumer's billing information.'"). The SAC here requires the Court to make the same determination, repeatedly alleging that Adobe had not "clearly, conspicuously, and accurately disclosed the year-long commitment . . . in its enrollment process." SAC ¶¶ 164-65 (UCL), 185-86 (FAL), 205-06 (CLRA). The *Adobe* court also applied the exact same reasonable consumer standard in assessing the annual disclosure under ROSCA, asking whether "[a] reasonable consumer would [] be misled by this disclosure." 791 F. Supp. 3d at 985.

All of Plaintiffs' claims require the same reasonable consumer analysis. In *Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016), the Ninth Circuit held that UCL, FAL, and CLRA claims "are governed by the 'reasonable consumer' test," which requires Plaintiffs to allege a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* at 965 (quotation marks omitted). Similarly, negligent misrepresentation requires determining whether "it was reasonable for the plaintiff to have relied on the misrepresentation." *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1194 (2014), *as modified on denial of reh'g* (Aug. 13, 2014). Where a conversion claim is premised on a failure to disclose as here, courts also apply the reasonable consumer standard. *See Vallarta v. United Airlines, Inc.*, 497 F. Supp. 3d 790, 809-10, 811 (N.D. Cal. 2020) (explaining that "to the extent [p]laintiffs' claim is premised on [d]efendant's failure to disclose . . . the [c]ourt rejects this claim" because "a reasonable consumer would not be deceived by [d]efendant's conduct"). Finally, for purposes of unjust enrichment, "conduct cannot be considered 'unjust' [where] the [c]omplaint fails to adequately allege facts to support an inference that [the defendant's] conduct is deceptive" to a reasonable consumer. *Romoff v. Gen. Motors LLC*, 574 F. Supp. 3d 782, 790 (S.D. Cal. 2021), *aff'd,* 2023 WL 1097258 (9th Cir. Jan. 30, 2023); *see also Ebner*, 838 F.3d at 968 ("Because we have concluded that the FAC fails to state a claim under any of these [California] statutes, the unjust enrichment cause of action has been mooted."). Thus, although Plaintiffs' claims are not ROSCA, each turns on the same reasonable-consumer analysis that the *Adobe* court undertook.

In its analysis, the *Adobe* court emphasized that "all three plans appear together, allowing the consumer to compare each," and that "[t]he plan name is unavoidable and uses diction and syntax understandable to ordinary consumers: 'Annual, paid monthly.'" *Adobe*, 791 F. Supp. 3d at 985. "Annual" clearly and conspicuously discloses the annual nature of the ABM plan; "paid monthly" identifies the billing schedule. Plaintiffs' allegations that the ABM subscription "displays only a monthly price," SAC ¶ 46, and that the "cost of the subscription [is] displayed in large, bold type," *id.* ¶ 45, describe the same features of the subscription page considered in *Adobe*. Those features did not alter the court's conclusion because "no reasonable consumer would believe based on the title and context of the plan that its term was more or less than one year." *Adobe*, 791 F. Supp. 3d at 985.

Applying the same analysis here defeats the misleading-annual-commitment theory underlying Plaintiffs' UCL, FAL, CLRA, and negligent misrepresentation claims. Plaintiffs' UCL, FAL, and CLRA claims each allege that Adobe misrepresented or hid "the annual commitment" to induce consumers to purchase the ABM subscription. SAC ¶¶ 150(a), (b); *id.* ¶¶ 178(a), (b); *id.* ¶¶ 198(a), (b). Plaintiffs' negligent misrepresentation claim similarly alleges that Adobe "misrepresented, omitted, and/or hid material facts regarding its subscription plans, including but not limited to subscription lengths." *Id.* ¶ 222.

Nor can Plaintiffs sustain their conversion or unjust enrichment/restitution claims by recasting the alleged concealment of the annual commitment as unauthorized charges or unjustly retained payments. Plaintiffs' conversion claim takes aim at "unauthorized charges imposed by Defendant on the payment methods of Plaintiffs." *Id.* ¶ 172. To the extent Plaintiffs contend that the monthly payments under the ABM plan were unauthorized because Adobe concealed the annual commitment, that theory fails because the name and context of the plan expressly disclosed that commitment. "[T]he law is well settled that there can be no conversion where [the plaintiff] either expressly or impliedly assents to or ratifies the taking, use or disposition of [her] property." *Vallarta*, 497 F. Supp. 3d at 810-11 (quoting *Farrington v. A. Teichert & Son, Inc.*, 59 Cal. App. 2d 468, 474 (1943)). Similarly, Plaintiffs' claim for unjust enrichment and restitution challenges

Adobe "retaining revenues from the subscriptions." SAC ¶ 216. To the extent the alleged injustice is that Adobe obtained those revenues by concealing the annual commitment, the claim depends on the same implausible deception theory.

In sum, the different claims (ROSCA in *Adobe* versus Plaintiffs' six claims) do not change what the disclosures say or what a reasonable consumer would understand. To the extent Plaintiffs rely on *Foret v. Adobe Inc.*, 2026 WL 2690261 (N.D. Cal. Sept. 14, 2026), that decision is inapposite because it did not address whether the ABM plan's annual term commitment was clearly disclosed; rather, the decision addressed whether "other aspects of the sign-up process were plausibly misleading." *Id.* at *8. The Court should thus dismiss each claim to the extent it rests on the theory already rejected in this District—that the "Annual, Billed Monthly" plan misleadingly concealed an annual commitment.

### B. Plaintiff Marquez's UCL Claim Premised On CARL Fails Because She Is Not A California Consumer

CARL applies only to "any business that makes an automatic renewal offer or continuous service offer to a consumer ***in this state***." Cal. Bus. & Prof. Code § 17602(a) (emphasis added); *see also Noll v. eBay Inc.*, 2013 WL 2384250, at *6 (N.D. Cal. May 30, 2013) ("The Legislature employed specific language in Section 17602 limiting recovery . . . to California consumers."). Plaintiff Marquez alleges that she "is an individual residing in Bellevue, Nebraska, where she intends to remain, and is a citizen of Nebraska for jurisdictional purposes." SAC ¶ 7. She pleads no other connection to California. Because she is not a consumer in California, her UCL claim predicated on violations of CARL must be dismissed without leave to amend. *See, e.g.*, *Noll*, 2013 WL 2384250, at *6 (dismissing CARL-predicated claims without leave to amend where plaintiffs alleged that they were residents of Florida and Arizona); *Debono v. Cerebral Inc.*, 2023 WL 300141, at *3 (N.D. Cal. Jan. 18, 2023) (dismissing CARL-predicated UCL, FAL, and CLRA claims because plaintiffs did not allege they were consumers in California); *see also, e.g.*, *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1097-98 (C.D. Cal. 2015) (dismissing CARL claim because plaintiff was not a California citizen).

### C. Plaintiff Wohlfiel Fails To Allege That She Renewed Her Subscriptions Such That She May Not Allege Harm From Renewal

Certain of Plaintiff Wohlfiel's claims under the UCL and FAL are predicated on allegations relating to automatic renewals. SAC ¶¶ 150(c)-(d) (UCL claim premised on Adobe "[f]ailing to clearly and conspicuously disclose material terms of its auto-renewing subscriptions" and "[f]ailing to obtain customers' express informed consent to the automatic renewal feature before charging the customer"), 178(c)-(d) (FAL claim premised on Adobe "[f]ailing to clearly and prominently advertise essential terms of its auto-renewing subscriptions, including renewal conditions and costs," and "[f]ailing to adequately disclose the automatic renewal feature of its subscriptions prior to charging customers"). Those renewal-based theories require Plaintiff Wohlfiel to allege an injury traceable to an automatic renewal.

Article III standing requires a plaintiff to show that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). "And standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). At the motion to dismiss stage, Article III requires allegations of "specific facts plausibly explaining" why the standing requirements are met. *Barnum Timber Co. v. EPA,* 633 F.3d 894, 899 (9th Cir. 2011).

Plaintiff Wohlfiel alleges no such injury because she fails to allege facts to establish that she was subject to an automatic renewal. In fact, she does not even allege she was subject to *any* renewal. She alleges that she cancelled each of her ABM subscriptions for Lightroom *before* renewal—within two to seven months after purchase. SAC ¶¶ 99, 110. Plaintiff Wohlfiel also cannot cure this deficiency by looking to other members of the putative class because "even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class.'" *Martinez*

*v. Newsom*, 46 F.4th 965, 970 (9th Cir. 2022) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976)).

In another case in this District, a court dismissed similar claims predicated on Adobe's ABM plan for this reason. *Singh v. Adobe Inc.*, No. 3:24-cv-03980-JSC (N.D. Cal. Feb. 13, 2025) (Dkt. 34). There, Adobe moved to dismiss the exact same six causes of action that were asserted in this case—under California's UCL, FAL, CLRA, conversion, unjust enrichment / restitution, and negligent misrepresentation (plus a claim for fraud not asserted here) under Rule 12(b)(1) for lack of standing where the plaintiff's subscription had never renewed. *Singh*, Dkt. 29 at 9-14. In a hearing on that motion, the court found that the ABM plan was not subject to "monthly" renewals such that there could be no standing in the absence of an annual renewal and dismissed the claims premised on that theory: "It's not a monthly contract that automatically renews. It is an annual contract that then automatically renews for another year." Transcript of Hearing on Motion to Dismiss at 15:8-12, *Singh v. Adobe Inc.*, 3:24-cv-03980-JSC (N.D. Cal. Mar. 12, 2025) (Dkt. 36) (transcript available on docket).

For the same reason, this Court should dismiss Plaintiff Wohlfiel's claims. She was not harmed by an "automatic renewal" because she does not allege that her subscriptions were ever annually renewed. Plaintiff Wohlfiel "purchased approximately ten ABM subscriptions" for Lightroom from July to September 2023. SAC ¶ 99. Then, "[f]rom November 2023-January 2024, Plaintiff Wohlfiel began progressively cancelling subscriptions, paying the early termination fee for each cancelled product." *Id.* ¶ 110. Therefore, the longest possible time period that one of Plaintiff Wohlfiel's subscriptions could have been active is July 2023 to January 2024, a period of only seven months. Since Plaintiff Wohlfiel canceled each subscription before one year had elapsed, none of her subscriptions ever renewed. Accordingly, Plaintiff Wohlfiel was not harmed by a renewal and does not have standing to sue on the basis of allegations related to renewal.

**D. Plaintiffs Fail To Allege Any Entitlement To Equitable Relief**

In their original Complaint, Plaintiffs sought equitable relief in the form of restitution, disgorgement, and injunctive relief. Compl. ¶¶ 133, 146, 159, 165; *id.* Prayer for Relief (E). In

granting in part Adobe's motion to dismiss the Complaint, the Court held that Plaintiffs failed to allege entitlement to any equitable relief. Dkt. No. 62 at 28. In their SAC, Plaintiffs abandon any injunctive relief claim, and seek only restitution and disgorgement. SAC Prayer for Relief (D).

But Plaintiffs still fail to allege facts establishing the inadequacy of their available legal remedies, such that they may not pursue restitution and disgorgement. *See, e.g.*, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA"; affirming dismissal of claims) (citing cases). A legal remedy is adequate where it would provide "the same amount of money for the exact same harm" for which Plaintiffs seek equitable relief. *Id.* Plaintiffs identify no injury that their available legal remedies—if properly pled—would inadequately compensate. Indeed, Plaintiffs concede that "damages under [their] legal claims are measured by each plaintiff's individual loss," SAC ¶¶ 170, 191, 213, 220, but identify no shortfall in that compensation.

In an effort to demonstrate their entitlement to restitution and disgorgement, the SAC instead identifies purported differences among Plaintiffs' claims, but none excuse the above deficiencies. *First*, Plaintiffs allege that negligent misrepresentation does not "reach the same conduct" as their equitable claims because "negligent misrepresentation requires an affirmative misstatement and does not reach Adobe's omissions or its unfair, as opposed to fraudulent, practices." SAC ¶¶ 170, 191, 213, 220. However, it does not "matter that the legal and equitable claims [are] not 'interchangeable.'" *Phillips v. Brooklyn Bedding LLC*, 2024 WL 2830663, at *2 (N.D. Cal. Mar. 28, 2024). The relevant question is whether "the damages and equitable claims for past harm rest on the same alleged" misconduct and whether damages would adequately compensate that underlying harm. *Goldstein v. Gen. Motors LLC*, 2022 WL 484995, at *6 (S.D. Cal. Feb. 16, 2022) (finding adequate remedy where damages and equitable claims "rest on the same alleged overpayment," and collecting cases); *Huu Nguyen v. Nissan N. Am., Inc.*, 2017 WL 1330602, at *4 (N.D. Cal. Apr. 11, 2017) (finding an adequate remedy at law because "[p]laintiff

seeks damages to compensate for 'the exact same' alleged harm 'that forms the basis of' [p]laintiff's requests for a restitutionary redesign program and an injunction compelling repair").

They do here: all six claims seek the same alleged monetary losses arising from the same alleged misrepresentations or omissions about Adobe's ABM subscription. *See* SAC ¶¶ 159 (UCL, alleging "Defendant misrepresented and/or omitted the material terms and conditions of its ABM subscription plan to consumers in its enrollment process"), 172 (Conversion, alleging "unauthorized charges imposed by Defendant on the payment methods of Plaintiffs and Class Members" and incorporating all preceding paragraphs), 180 (FAL, alleging "Defendant misrepresented and/or omitted the material terms and conditions of its ABM subscription plan to consumers in its enrollment process"), 200 (CLRA, alleging same), 215 (Unjust Enrichment/Restitution, alleging "Plaintiffs and Class Members conferred a benefit upon Defendant by making subscription payments beyond those they understood or intended to undertake, and/or by paying an early termination fee"), 222 (Negligent Misrepresentation, alleging "Defendant misrepresented, omitted, and/or hid material facts regarding its subscription plans, including but not limited to subscription lengths, billing practices, cancellation procedures, and automatic payment terms").

*Second*, Plaintiffs allege that conversion "reaches only specific, identifiable sums wrongfully taken" and thus does not "provide the same relief" as Plaintiffs' equitable claims. SAC ¶¶ 170, 191, 213, 220. However, Plaintiffs have not alleged facts explaining why monetary damages recovering those identifiable sums "would not make Plaintiff[s] or the putative class whole." *Gibson v. Jaguar Land Rover N. Am., LLC*, 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020) (holding plaintiff may not bring equitable claims for this reason). Instead, Plaintiffs' own allegations point to the adequacy of damages: Plaintiffs seek restitution of "early termination fees and installment payments," SAC ¶¶ 170, 191, 213, 220, which are the same monetary losses underlying Plaintiffs' conversion and other legal claims.

*Third*, Plaintiffs allege that "damages under Plaintiffs' legal claims . . . require different and more demanding proof." SAC ¶¶ 170, 191, 213, 220. Even if true, "the mere fact that a legal

claim is 'harder to prove and require[s] additional showings of proof' does not mean the legal remedy is inadequate." *Joyce v. Guthy-Renker, LLC*, 2026 WL 1164686, at *3 (N.D. Cal. Apr. 29, 2026) (quoting *Phillips*, 2024 WL 2830663, at *2); *see also, e.g.*, *Gradney v. Polar Beverages*, 797 F. Supp. 3d 1016, 1029 (N.D. Cal. 2025) (rejecting argument that legal damages were inadequate because UCL unfair claim was "technically less rigorous"); *Clevenger v. Welch Foods Inc.*, 2022 WL 18228288, at *5 (C.D. Cal. Dec. 14, 2022) ("mere differences in proof between the claims does not make the [legal] remedy inadequate"); *Gill v. Chipotle Mexican Grill, Inc.*, 2025 WL 1443767, at *5 (C.D. Cal. May 19, 2025) ("Plaintiffs argue that restitution could be higher or easier to obtain than damages. But the court is not persuaded that these allegations sufficiently reflect an *inadequate* remedy at law." (citations omitted)). Plaintiffs' related assertion that restitution "can be determined on a class-wide basis from Adobe's own records," SAC ¶¶ 170, 191, 213, 220, likewise concerns the method of proof, not the adequacy of compensation.

*Fourth*, that Plaintiffs "seek restitution in the alternative to their legal remedies," *id.*, is irrelevant. "It makes no difference if the equitable claim is the only claim being sought or a claim in the alternative." *Goldstein*, 2022 WL 484995, at *6; *see also Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907 (N.D. Cal. 2021) ("The issue is not whether a pleading may seek distinct forms of relief in the alternative"). Rather, the issue is "whether a prayer for equitable relief states a claim if the pleading does not demonstrate the inadequacy of a legal remedy. On that point, *Sonner* holds that it does not." *Sharma*, 524 F. Supp. 3d at 907; *see also Ryan v. Starco Brands, Inc.*, 2024 WL 5102651, at *7 (N.D. Cal. Apr. 19, 2024) ("[W]hether Plaintiff may pursue different forms of relief in the alternative is irrelevant; he must still provide allegations sufficient to demonstrate his entitlement to each form of relief requested.").

For these reasons, all claims and requests for equitable relief in the SAC should be dismissed. That requires dismissal of Counts I (UCL), III (FAL), and V (Unjust Enrichment/Restitution) in their entirety because those counts seek only equitable relief. *See Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*, 9 Cal. 5th 279, 326 (2020)

(confirming the equitable nature of UCL and FAL claims). The Court should also dismiss Plaintiff Marquez's requests for equitable relief under Count IV (CLRA). SAC ¶ 212.

Dismissal should be without further leave to amend. The Court identified and afforded Plaintiffs an opportunity to cure their failure to allege an inadequate remedy at law, yet the SAC still fails to cure this pleading deficiency. *See Moreno v. C.H. Robinson Worldwide, Inc.*, 2025 WL 3141862, at *3 (N.D. Cal. Nov. 10, 2025) (dismissing UCL claim without leave to amend "because the claim suffers from the same deficiencies identified in the [p]rior [o]rder" with respect to an adequate remedy at law); *Moore v. Am. Honda Motor Co., Inc.*, 740 F. Supp. 3d 814, 829-30 (N.D. Cal. 2024) (dismissing claims for equitable relief without leave to amend where plaintiffs failed to plead that they lacked an adequate remedy at law after being made aware of the deficiency in their pleading).

### E. The No-Simple-Cancellation Claims And Related Class And Subclasses Should Be Dismissed

While Plaintiffs allege that "Adobe fails to provide simple, accessible ways to cancel" subscriptions, SAC ¶ 78, *see also id.* ¶¶ 79-83, neither alleges that a complex, "confusing," or "frustrating" cancellation process prevented or impeded her cancellation. Plaintiff Wohlfiel alleges that she successfully cancelled each of her subscriptions. *Id.* ¶ 110. Plaintiff Marquez alleges that she "ceased the cancellation process so as not to incur the [early termination] fee." *Id.* ¶ 121. Those allegations do not establish Article III standing to bring claims premised on the alleged failure to provide a simple cancellation mechanism because neither Plaintiff alleges an injury plausibly traceable to procedural obstacles in Adobe's cancellation process. *See Spokeo*, 578 U.S. at 338.

The SAC supplies no facts connecting either Plaintiff's injury to the allegations that "Adobe fails to provide simple, accessible ways to cancel." SAC ¶ 78; *see also id.* ¶ 82 ("During the cancellation process, Adobe also frequently attempts to convince consumers to terminate the cancellation process by offering add-ons, free trials, discounts, and other promotions."). Their allegations instead concern the ETF: Plaintiff Wohlfiel paid it, and Plaintiff Marquez continued

her subscription to avoid it. Those allegations do not establish injury traceable to Plaintiffs' theory based on failure to provide a simple cancellation mechanism. Accordingly, Plaintiffs' claims should be dismissed to the extent they rest on that theory.

The class allegations cannot supply the missing individual injury. Because "a lead plaintiff cannot prosecute a class action based on claims [s]he could not advance individually," *In re Wells Fargo Mortg.-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 965 (N.D. Cal. 2010), the class claims premised on an alleged failure to provide a simple cancellation mechanism must also be dismissed.

This conclusion requires the dismissal of both the "ABM" class and the "ABM Cancellation Attempt" subclass in their entirety, including the portions of the "Consumer Subclass" encompassing those two groups. SAC ¶ 135. The ABM Class encompasses three potential groups, the latter two of which could also fall within the Cancellation Attempt Subclass: (1) consumers who never attempted to cancel their ABM subscription; (2) consumers who attempted to cancel their ABM subscription but did not complete the process because of its alleged complexity; and (3) consumers who attempted to cancel their ABM subscription but did not complete the process to avoid the ETF associated with ending their annual commitment early. Neither Plaintiff alleges that she falls within the first or second group, and thus neither can advance claims based on those consumers' experiences. As to the third group, these consumers knowingly chose to continue their subscriptions rather than incur the ETF. As discussed in Section A, *supra*, the ABM plan expressly disclosed an annual commitment, and paying for that commitment does not establish a cognizable injury: those consumers received the annual subscriptions they bargained for. Even Plaintiff Marquez, the only Plaintiff who attempted cancellation but did not complete the process, made a knowing decision to continue paying for the ABM plan. Accordingly, Plaintiffs have identified neither a named representative capable of pursuing the first two groups' claims nor a cognizable injury supporting the third group's claims. The Court should therefore dismiss the "ABM" class, "ABM Cancellation Attempt" subclass, and the corresponding portions of the "Consumer Subclass."

### F. Plaintiffs Cannot Maintain Nationwide Class Claims For Their California Consumer Protection Or Common-Law Claims

Finally, the Court should dismiss Plaintiffs' nationwide class claims. An overwhelming tide of caselaw and bedrock principles of federalism preclude applying the laws of one state to the claims of consumers in 50 different states. In its landmark *Bridgestone* decision, the Seventh Circuit rejected an attempt to do exactly what Plaintiffs are trying to do here, and held that the "conclusion that one state's law would apply to claims by consumers throughout the country . . . is a novelty." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1016 (7th Cir. 2002). The Ninth Circuit followed in *Mazza*, holding that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012).

In the case at bar, California's choice-of-law rules will govern which substantive law controls the claims of the purported class members, because a court sitting in diversity applies the choice-of-law rules of its forum state. *See Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643, 645 (9th Cir. 1988). California applies the governmental interest test, which involves (1) examining the relevant law of each state to determine if they are different, (2) evaluating each state's interest in applying its own laws to determine if there is a "true conflict," and (3) evaluating each state's interests to determine which would be more impaired if its own laws were not applied. *Mazza*, 666 F.3d at 590 (citing *McCann v. Foster Wheeler LLC,* 48 Cal. 4th 68, 81-82 (2010)). Under this test, there is a "true conflict" between California law and the laws of the other 49 states, and the state where the consumer was induced to buy the product, entered into the purchase transaction, and incurred their alleged economic injury is the state whose interests would be more impaired.

The first two parts of the test are conclusively established as a matter of law. The *Bridgestone* court recognized that "[s]tate consumer-protection laws vary considerably." 288 F.3d at 1018; *see also Davison v. Kia Motors Am., Inc.*, 2015 WL 3970502, at *2 (C.D. Cal. June 29, 2015) ("[D]ifferences in consumer protection law among states are not trivial because they involve essential requirements to establish a claim, types of relief and remedies available to a

plaintiff, and other dispositive issues.”). With respect to negligent misrepresentation claims, there are “material variations among the states’ . . . negligent misrepresentation laws” concerning scienter, reliance, standards of proof, statutes of limitation, and available damages. *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1101 (C.D. Cal. 2012); *see also Miller v. Gen. Motors Corp.*, 2003 WL 168626, at *2 (N.D. Ill. Jan. 26, 2003) (“No court has held that the fifty states’ . . . common laws of fraudulent omission, are so similar that a single forum state’s law could be applied to a multi-state class.”). Unjust enrichment also differs dramatically from one state to the next. *Mazza*, 666 F.3d at 591 (“[E]lements necessary to establish a claim for unjust enrichment also vary materially from state to state.”). So too does conversion. *See Marsh v. First Bank of Delaware*, 2014 WL 2085199, at *5 (N.D. Cal. May 19, 2014) (finding “significant differences in the states’ laws” with respect to claims for conversion).

The third part of the governmental-interest test directly tracks with *Mazza* and confirms that the laws of Plaintiffs’ and other putative class members’ home states apply to their claims. As the Ninth Circuit noted in *Mazza*, “with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest.” 666 F.3d at 593 (quoting *Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (1980)). And the “place of the wrong” is “the state where the last event necessary to make the actor liable occurred,” *i.e.*, the state where allegedly misleading advertisements were seen and purportedly relied upon by consumers when making purchases. *See id.* (citing *McCann*, 48 Cal. 4th at 94 n.12). “Conversely, California’s interest in applying its law to residents of foreign states is attenuated.” *Id.* at 594 (citing *Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982)). Therefore, Plaintiffs cannot maintain nationwide classes under California law.

The Court can and should dismiss the national class allegations now. Where, as here, the “key reality” is that Plaintiffs’ claims “are governed by different States’ laws, a largely legal determination,” there is no reason to wait because “no proffered or potential factual development offers any hope of altering that conclusion.” *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011). Courts accordingly regularly dismiss or strike nationwide class

allegations based on the choice-of-law analysis at the pleading stage. *See, e.g.*, *Cimoli v. Alacer Corp.*, 587 F. Supp. 3d 978, 987 (N.D. Cal. 2022) ("[T]he Court finds that this is a case similar to the many Northern District of California and Ninth Circuit cases where courts have found the choice of law analysis appropriate to conduct at the pleading stage." (collecting cases)); *Chebul v. Tuft & Needle, LLC*, 2024 WL 5257021, at *5 (C.D. Cal. Oct. 9, 2024) (striking Plaintiff's nationwide class claims at the pleading stage because "Plaintiff has not offered any explanation as to how class discovery would alter the outcome of the *Mazza* analysis"); *Jackson v. Suzuki Motor of Am., Inc.*, 2024 WL 3914666, at *8 (C.D. Cal. July 9, 2024) (rejecting plaintiffs' "argu[ment] that the court should wait until discovery and class certification to assess the viability of their nationwide claims"); *Gonzalez v. Am. Honda Motor Co.*, 720 F. Supp. 3d 833, 846 (C.D. Cal. 2024) (striking nationwide class allegations because plaintiff "fails to explain how any factual development could impact the choice-of-law analysis here"); *Hageman v. Hyundai Motor Am.*, 2024 WL 694378, at *4, 5 (C.D. Cal. Jan. 5, 2024) ("it is appropriate to strike Plaintiffs' *nationwide* class allegations," as "it would make little sense to wait until class certification proceedings to resolve it given the burdens class certification and other class-related discovery imposes on parties" (quotation marks omitted)); *DeArmey v. Hawaiian Isles Kona Coffee Co.*, 2019 WL 6723413, at *3 (C.D. Cal. July 22, 2019) ("It is not premature to determine that material variations in state common law render a nationwide class unworkable as to the common law claims. Federal Rule of Civil Procedure 23, which governs class certification, permits the Court to address these legal issues at the pleading stage." (citation omitted)).

## VI. CONCLUSION

For the reasons stated above, Adobe respectfully requests that the Court dismiss all claims premised on an alleged failure to clearly disclose the ABM plan's annual commitment; Plaintiff Marquez's UCL claim predicated on an alleged CARL violation; Plaintiff Wohlfiel's renewal-predicated claims; all claims for equitable relief; all claims and classes premised on an alleged failure to provide a simple cancellation process; and Plaintiffs' nationwide class claims.

Dated: October 13, 2026

ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ Jeremy T. Kamras*

Douglas A. Winthrop
Jeremy T. Kamras
Joseph Farris
Tommy Huynh
Mark E. Raftrey

*Counsel for Defendant Adobe Inc.*